UNITED STATES DISTRICT COURT

FOR THE

WESTERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| Matthew Borowski, | ) | Case No. 23-257 |
|     *Plaintiff* | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DECLARATORY** |
| | ) | **AND INJUNCTIVE RELIEF** |
| U.S. Customs and Border Protection, | ) | |
|     *Defendant* | ) | |

## COMPLAINT

Plaintiff Matthew Borowski, *pro se*, hereby brings this action to redress his civil and legal rights, and alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action in which the plaintiff, Matthew Borowski, seeks relief under the Administrative Procedure Act ("APA") 5 U.S.C. § 706(2)(A) seeking declaratory and injunctive relief for the revocation of his "NEXUS" membership by defendant U.S. Customs and Border Protection ("CBP"), and under the Freedom of Information Act, 5 U.S.C. § 552, for injunctive and other appropriate relief and seeking the disclosure and release of agency records improperly withheld from plaintiff by defendant.

1

## JURISDICTION

2. The APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

3. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

4. The Court has federal question jurisdiction over the case pursuant to 28 U.S.C. § 1331

## VENUE

5. Venue is proper in the Western District of New York pursuant to 28 U.S.C. § 1391 and 5 U.S.C. § 552(a)(4)(B) in that the principal place of business of plaintiff and, the place in the United States where the plaintiff spends the majority of his time, is within the boundaries of the Western District of New York. Further, the defendant is a U.S. government agency and has offices and operations within the Western District of New York and also, a substantial part of the events or omissions giving rise to this claim occurred in the Western District of New York.

## PARTIES

6. Plaintiff Matthew Borowski is a citizen of the United States, a duly licensed attorney at law and is admitted to practice in the State of New York. Plaintiff resides in Canada and maintains his principal place of business in Erie County, New York. He practices Immigration Law and has been in private practice since 2013 in Buffalo, New York. He is a partner of Borowski Witmer Immigration Lawyers, with principal office at 4343 Union Road, Cheektowaga, NY 14225. A substantial part of his practice involves

representing non-citizens in the Immigration Courts and federal courts, including detainees at the Buffalo Federal Detention Facility (BFDF) in Batavia, New York. He is one of a very small number of lawyers in private practice in Western New York who routinely represent detained non-citizens. He is a vocal advocate for immigrants' rights and has participated in political speech criticizing government policies with respect to immigration.

7. Defendant U.S. Customs and Border Protection ("CBP") is a federal agency, a component of the U.S. Department of Homeland Security, and maintains its local field office at 300 Airborne Pkwy W #300, Cheektowaga, NY 14225. CBP administers the "NEXUS" Trusted Traveler Program, which allows members to use expedited border crossing lanes at ports of entry.

## FACTS

8. Plaintiff initially applied for a NEXUS card on November 13, 2011 and has held a NEXUS card since approximately 2012. He began private practice of law in Buffalo, New York in 2013 and has been commuting on an almost daily basis across the U.S./Canada border since then, utilizing his NEXUS card to cross the border.

9. On December 14, 2013, Plaintiff's wife was violently attacked by a CBP officer, Vincent Mordino, when she was innocently reaching into the backseat of the family vehicle to aid her crying infant son, Andrew Borowski, during the course of an "outbound inspection" at the Peace Bridge Plaza. That attack was captured on video and was subsequently covered by multiple news media outlets in the Buffalo area, some of which aired the video of the incident.

10. Immediately after the attack, Plaintiff's wife was detained by CBP in the presence of Plaintiff and his children; subsequently CBP Officer Mordino took Plaintiff's and his wife's NEXUS cards and revoked them. Plaintiff, his wife, and children were held in secondary inspection for approximately three hours. Toward the end of this unlawful detention, Plaintiff's wife was given a ticket for the charge of "failure to obey lawful order" with a $75.00 fine written on it.

11. On March 28, 2014, after a bench trial, United States Magistrate Judge Jeremiah McCarthy dismissed the charge against Plaintiff's wife.

12. Shortly thereafter, NEXUS cards of the Plaintiff and his wife were returned to them by CBP at the NEXUS Enrollment Center in Fort Erie, Ontario, by the NEXUS Supervisor, after written demand was made by Plaintiff.

13. On or about December 16, 2016, Plaintiff filed a lawsuit against CBP Officer Vincent Mordino alleging civil rights violations.

14. On multiple occasions after that incident, and during the pendency of Plaintiff's wife's lawsuit against him, CBP Officer Mordino threatened and harassed Plaintiff, who crosses the border as part of his daily commute, during secondary inspection at the Peace Bridge. On one of those occasions, CBP Officer Mordino lunged at Plaintiff from behind the counter and had to be forcibly restrained by other CBP officers. Plaintiff is unaware of any disciplinary action taken against Mordino for his egregious conduct.

15. On or about August 11, 2017, Plaintiff submitted an application to renew his NEXUS card. The lawsuit against Mordino was pending at that time. No interview was conducted. On September 17, 2017, a renewal NEXUS card was issued with a validity until November 1, 2022.

16. In July 2018, Plaintiff engaged in a brief protest of a policy of the Buffalo Immigration Court to require all entrants to stand with their arms and legs spread open while facing a portrait of Donald Trump during security screening. On July 11, 2018, Plaintiff arrived at the immigration court with a blank white poster board which he held up with his hands so as to obscure the view of Donald Trump's portrait. The protest was against the court's hanging of the portrait directly in front of the immigrants being screened upon entering the facility, and also in protest of Donald Trump's immigration policy. Plaintiff did not in any way impede or otherwise interfere with security screening at the facility, yet was harassed by the contract security guards and by Federal Protective Service (FPS) officer Nielsen, and charged with violating 4 C.F.R. 102-74.390, for "creating a disturbance in lobby." The U.S. Attorney's Office for the Western District of New York declined to prosecute the charge and it was dismissed.

17. Throughout 2018 and 2019, Plaintiff continued his advocacy efforts and outspoken criticism of immigration policy under the Trump administration, through online postings, involvement with the local immigration bar, the Upstate New York chapter of the American Immigration Lawyers Association, involvement with other local immigrant rights advocate groups, and continued involvement in *pro bono* and other efforts representing asylum seekers, detained migrants, and other vulnerable populations in Western New York. This advocacy included numerous instances of representing clients in CBP custody at the border, or making applications for waivers or admission at the border.

18. On February 20, 2019, at approximately 12:05 PM, Plaintiff crossed the Peace Bridge into Buffalo, New York on his way to work. Almost immediately after arriving at the

primary inspection booth at the Peace Bridge Port of Entry, CBP Officer Pasquarella ordered Plaintiff to put his 2011 Dodge Grand Caravan in park, turn off the ignition, and keep his hands on the steering wheel. A team of CBP Officers arrived, and Plaintiff was ordered to keep his hands in sight while exiting the vehicle, and ordered to walk backwards with his hands in the air, and then place his hands on the rear glass of the vehicle. At that point Plaintiff was frisked by an officer whom he believes to have been CBP Officer Chmielowiec. Plaintiff was not given any explanation for why he was being arrested. Plaintiff was escorted by CBP Officer Chmielowiec into a secured area inside the secondary inspection building, where he was ordered to empty his pockets. Plaintiff's briefcase was searched, and he was detained for a period of time while his vehicle was searched by CBP personnel. Plaintiff was then told that he is free to go at approximately 12:20 PM. Plaintiff asked for further explanation about why he was arrested and detained, but no explanation was provided. Plaintiff asked to speak to CBP Chief Marty Lawrence, who was not willing to provide any explanation for the arrest and detention.

19. The vast majority of Plaintiff's daily crossings were without incident. Plaintiff was never cited nor warned for violating any customs or immigration laws, despite crossing the border almost every workday for approximately one decade. Indeed, Plaintiff was routinely sent to secondary inspection and his vehicle and person were searched, but never was found to have violated any of the rules, despite being subjected to an arguably higher level of scrutiny and being a frequent border crosser.

20. On May 26, 2022, Plaintiff applied to renew his NEXUS membership, which was due to expire in November 2022. At the time, CBP policy allowed for NEXUS members to

continue using their memberships past the expiry date as long as their renewal process was pending, due to major backlogs.

21. On December 20, 2022, Plaintiff received two letters, one styled "Denial Notification" and one styled "Revocation Notification" through the online "Trusted Traveler Programs" portal, informing him that his NEXUS membership has been revoked. The only reason given for the revocation/denial was "You do not meet program eligibility requirements."

22. On December 20, 2022, Plaintiff made a "Reconsideration Request" with CBP, which remains "Pending Review."

23. On December 20, 2022, after receiving the "Denial Notification" and "Revocation Notification," Plaintiff went to the NEXUS Enrollment Center in Niagara Falls, New York to ask for clarification on why his NEXUS membership was revoked. The officers at the Enrollment Center refused to allow Plaintiff to enter the building and did not provide him with any information. Plaintiff attempted to serve them with a FOIA request in writing, but they refused to accept it.

24. On or about December 21, 2022, Plaintiff went to the Peace Bridge Port of Entry and spoke with NEXUS Supervisor Schwab at the Enrollment Center on the U.S. side. NEXUS Supervisor Schwab declined to provide Plaintiff with the reason(s) for the revocation of his NEXUS membership. Plaintiff brought up an incident in January 2018 whereby he returned to the U.S. at Dulles Airport from a vacation in Mexico and forgot that he had a banana in his carry-on bag, but which he promptly declared verbally to the CBP Officer, who allowed him to dispose of the banana in the garbage. Supervisor Schwab informed Plaintiff that that incident was not the reason for the revocation, but

that he could not share the actual reason for the revocation. Plaintiff asked Supervisor Schwab if the issues in the past with CBPO Mordino could have played a role in the revocation. Supervisor Schwab did not confirm or deny such, but when Plaintiff stated that his NEXUS has previously been renewed in 2017, stated to Plaintiff essentially that sometimes past incidents can "catch up to you in the future." Supervisor Schwab declined to accept a FOIA request in writing, and instead informed Plaintiff to file a FOIA request through the mail or online.

25. Plaintiff submitted a FOIA request to CBP on December 22, 2022 using the online "SecureRelease Portal" under request number CBP-FO-2023-022688. To date, no reply has been received by Plaintiff.

26. On December 31, 2022, Plaintiff applied for another Trusted Traveler Program, "TSA PreCheck" and was approved for that program. Previously, his NEXUS membership functioned for TSA Precheck purposes too. That program provides for the use of a special expedited airport screening line, with relaxed screening requirements, when traveling domestically or internationally from a U.S. airport. Plaintiff clearly is not flagged as a security risk in U.S. federal government databases if his TSA PreCheck membership was approved almost immediately after applying.

27. Plaintiff continues to cross the border on his daily commute and is forced to use the regular travel lanes, which has resulted in him being late for meetings and appointments on several occasions. He has been unable to use the Whirlpool Rapids bridge, which is designated for use only by NEXUS members. His immediate family members, being his wife, three sons, mother, and one of his brothers, all hold NEXUS memberships and he is unable to travel in the same vehicle with them when they are crossing using the NEXUS

lanes. When the peak summer travel season begins, he will face increasing delays, sometimes on the order of three hours or more, to cross the border, and will be forced to cancel business meetings and appointments and adjust his hours of travel in order to cross the border. All of this, despite never having violated the conditions of the program nor any other laws, and with absolutely no explanation from CBP. Plaintiff believes the decision to revoke his NEXUS was arbitrary, capricious, and/or retaliatory and in violation of the law due to Plaintiff having represented his wife against a CBP officer who physically assaulted and arrested her without just cause, due to Plaintiff having made public statements to the media against CBP treatment of that incident and against the conduct of CBP officers associated with that incident, due to his protest against Donald Trump at the Immigration Court, and due to his ongoing advocacy work for undocumented migrants and representation of non-citizens detained by CBP and sent into ICE custody at the Buffalo Federal Detention Facility. Plaintiff believes that CBP intends to damage Plaintiff's business as an Immigration Attorney and damage the ability of local immigrants to receive the legal representation they so desperately need, by restricting Plaintiff's ability to easily cross the border in order to provide such representation. Further, Plaintiff also believes that CBP waited until the lawsuit against CBPO Mordino was dismissed before revoking his NEXUS membership, as the optics of an unwarranted revocation during the pendency of that lawsuit could have been potentially harmful to them.

28. Plaintiff has an elderly mother who suffers from health problems, and a brother who was diagnosed with cancer, both of whom he travels routinely into the U.S. from his Canadian home to visit and assist. Further, all of Plaintiff's business activities are in the U.S.,

including his law firm and his rental properties which he manages himself. Plaintiff relies on the NEXUS membership, of which he has been a compliant, law-abiding member for over a decade, to smoothly travel back and forth between the two countries. Plaintiff, who is a licensed attorney in both New York State and Canada, has a clean driving record, clean criminal record, and has never violated any customs laws or regulations. The revocation of his NEXUS pass is arbitrary and capricious and in violation of the law. CBP has refused to provide any explanation of why it revoked his NEXUS pass and has also ignored his FOIA request, all in contravention of the law.

## CAUSES OF ACTION

### FIRST CLAIM: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

29. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

30. The above described actions and conduct of the defendant, were arbitrary and capricious and/or in violation of the law, as a retaliatory measure taken by CBP. As a result of the foregoing, Plaintiff suffered the injuries and damages set forth above.

### SECOND CLAIM: FAILURE TO RESPOND TO FOIA REQUEST

31. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

32. To date, defendant CBP has not provided the records requested by plaintiff in his FOIA request, notwithstanding the FOIA's requirement of an agency response within twenty (20) working days.

33. Plaintiff has exhausted the applicable administrative remedies with respect to its FOIA request to defendant CBP. Plaintiff filed the request through the online portal and waited patiently for three months. CBP has ignored the request. Further, CBP refused to accept the written request in writing on multiple occasions.

34. Defendant CBP has wrongfully withheld the requested records from plaintiff.

## PRAYER

35. Wherefore plaintiff prays that this Court:

   a. Order defendant to restore Plaintiff's membership in the NEXUS program without delay;

   b. Order defendant to disclose the requested records in their entireties and make copies available to Plaintiff;

   c. Provide for expeditious proceedings in this Action;

   d. Avoid Plaintiff his costs and any reasonable attorneys' fees incurred in this action; and

   e. Grant such other and further relief as this Court may deem just and proper.

Dated: Buffalo, New York
       March 22, 2023

  Matthew K. Borowski /s/  
Matthew K. Borowski, Esq.
4343 Union Road
Buffalo, NY 14225
(716) 330-1503 tel
(716) 710-5445 fax
E-mail: matthew@borowskilaw.com

*Pro Se*