# UNITED STATES DISTRICT COURT

## FOR THE

## WESTERN DISTRICT OF NEW YORK

--------------------------------------------------------
                                               )
Matthew Borowski,                              )          Case No. 23-257
            *Plaintiff*                        )
                                               )
v.                                             )          **COMPLAINT FOR DECLARATORY**
                                               )          **AND INJUNCTIVE RELIEF**
U.S. Customs and Border Protection,            )
            *Defendant*                        )
--------------------------------------------------------

## AMENDED COMPLAINT

Plaintiff Matthew Borowski, *pro se*, hereby brings this action to redress his civil and legal

rights, and alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action in which the plaintiff, Matthew Borowski, seeks relief under the

   Administrative Procedure Act ("APA") 5 U.S.C. § 706(2)(A) seeking declaratory and

   injunctive relief for the revocation of his "NEXUS" membership by defendant U.S.

   Customs and Border Protection ("CBP"), under the First, Fourth, Fifth, and Fourteenth

   amendments to the Constitution of the United States of America for violation of his rights

   to free speech, to freedom from unreasonable arrest, search and seizure, to freedom from

   compelled speech, to freedom from being deprived of liberty and property without due

1

process of law, to freedom from being forced to self-incriminate, to due process and equal protection under the law; under the Federal Tort Claims Act for false arrest, false imprisonment, battery, and intentional infliction of emotional distress, and under the Freedom of Information Act, 5 U.S.C. § 552, for injunctive and other appropriate relief and seeking the disclosure and release of agency records improperly withheld from plaintiff by defendant.

## JURISDICTION

2. The APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

3. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

4. The Court has federal question jurisdiction over the case pursuant to 28 U.S.C. § 1331

## VENUE

5. Venue is proper in the Western District of New York pursuant to 28 U.S.C. § 1391 and  5 U.S.C. § 552(a)(4)(B) in that the principal place of business of plaintiff and, the place in the United States where the plaintiff spends the majority of his time, is within the boundaries of the Western District of New York.  Further, the defendant is a U.S. government agency and has offices and operations within the Western District of New

York and also, a substantial part of the events or omissions giving rise to this claim occurred in the Western District of New York.

## PARTIES

6. Plaintiff Matthew Borowski is a citizen of the United States, a duly licensed attorney at law and is admitted to practice in the State of New York. Plaintiff resides in Canada and maintains his principal place of business in Erie County, New York. He practices Immigration Law and has been in private practice since 2013 in Buffalo, New York. He is a partner of Borowski Witmer Immigration Lawyers, with principal office at 4343 Union Road, Cheektowaga, NY 14225. A substantial part of his practice involves representing non-citizens in the Immigration Courts and federal courts, including detainees at the Buffalo Federal Detention Facility (BFDF) in Batavia, New York. He is one of a very small number of lawyers in private practice in Western New York who routinely represent detained non-citizens. He is a vocal advocate for immigrants' rights and has participated in political speech criticizing government policies with respect to immigration.

7. Defendant U.S. Customs and Border Protection ("CBP") is a federal agency, a component of the U.S. Department of Homeland Security, and maintains its local field office at 300 Airborne Pkwy W #300, Cheektowaga, NY 14225.  CBP administers the "NEXUS" Trusted Traveler Program, which allows members to use expedited border crossing lanes at ports of entry.

## FACTS

8. Plaintiff initially applied for a NEXUS card on November 13, 2011 and has held a NEXUS card since approximately 2012.

9. Plaintiff began private practice of law in Buffalo, New York in 2013 and has been commuting on an almost daily basis across the U.S./Canada border since then, utilizing his NEXUS card to cross the border the vast majority of the time.

10. On December 14, 2013, Plaintiff's wife was attacked by a CBP officer, Vincent Mordino, when she was reaching into the backseat of the family vehicle to aid her crying infant son, Andrew Borowski, during the course of an "outbound inspection" at the Peace Bridge Plaza. That attack was captured on video and was subsequently covered by multiple news media outlets in the Buffalo area, some of which aired the video of the incident.

11. Immediately after the attack, Plaintiff's wife was detained by CBP in the presence of Plaintiff and his children; subsequently CBP Officer Mordino took Plaintiff's and his wife's NEXUS cards and revoked them. Plaintiff, his wife, and children were held in secondary inspection for approximately three hours. Toward the end of this unlawful detention, Plaintiff's wife was given a ticket for the charge of "failure to obey lawful order" with a $75.00 fine written on it.

12. On March 28, 2014, after a bench trial, United States Magistrate Judge Jeremiah McCarthy dismissed the charge against Plaintiff's wife.

13. Shortly thereafter, NEXUS cards of the Plaintiff and his wife were returned to them by CBP at the NEXUS Enrollment Center in Fort Erie, Ontario, by the NEXUS Supervisor, after written demand was made by Plaintiff.

14. On or about December 16, 2016, Plaintiff filed a lawsuit against CBP Officer Vincent Mordino alleging civil rights violations.

15. On multiple occasions after that incident, and during the pendency of Plaintiff's wife's lawsuit against him, CBP Officer Mordino threatened and/or harassed Plaintiff, who crosses the border as part of his daily commute, during secondary inspection at the Peace Bridge.

16. On one of those occasions, CBP Officer Mordino lunged at Plaintiff from behind the counter and had to be forcibly restrained by other CBP officers.

17. Upon information and belief, no disciplinary action was ever taken against Mordino for his conduct against Plaintiff.

18. On or about August 11, 2017, Plaintiff submitted an application to renew his NEXUS card. The lawsuit against Mordino was pending at that time. No interview was conducted.

19. On September 17, 2017, a renewal NEXUS card was issued with a validity until November 1, 2022.

20. The FOIA response from CBP shows a note from September 17, 2017 which states "No disqualifying information found" which was made by a "Director" during a "Director Review." Upon information and belief, CBP reviewed all information they had with respect to Plaintiff at this time and determined that Plaintiff was entitled to a renewal of his NEXUS pass.

21. In July 2018, Plaintiff engaged in a brief protest of a policy of the Buffalo Immigration Court to require all entrants to stand with their arms and legs spread open while facing a portrait of Donald Trump during security screening. On July 11, 2018, Plaintiff arrived at the immigration court with a blank white poster board which he held up with his hands so

as to obscure the view of Donald Trump's portrait. The protest was against the court's

hanging of the portrait directly in front of the immigrants being screened upon entering

the facility, and also in protest of Donald Trump's immigration policy. Plaintiff did not in

any way impede or otherwise interfere with security screening at the facility, yet was

harassed by the contract security guards and by Federal Protective Service (FPS) officer

Nielsen, and charged with violating 4 C.F.R. 102-74.390, for "creating a disturbance in

lobby." The U.S. Attorney's Office for the Western District of New York declined to

prosecute the charge and it was dismissed.

22. Throughout 2018 and 2019, Plaintiff continued his advocacy efforts and outspoken

criticism of immigration policy under the Trump administration, through online postings,

involvement with the local immigration bar, the Upstate New York chapter of the

American Immigration Lawyers Association, involvement with other local immigrant

rights advocate groups, and continued involvement in *pro bono* and other efforts

representing asylum seekers, detained migrants, and other vulnerable populations in

Western New York. This advocacy included numerous instances of representing clients

in CBP custody at the border, or making applications for waivers or admission at the

border.

23. On February 20, 2019, at approximately 12:05 PM, Plaintiff crossed the Peace Bridge

into Buffalo, New York on his way to work. Almost immediately after arriving at the

primary inspection booth at the Peace Bridge Port of Entry, CBP Officer Pasquarella

ordered Plaintiff to put his 2011 Dodge Grand Caravan in park, turn off the ignition, and

keep his hands on the steering wheel. A team of CBP Officers arrived, and Plaintiff was

ordered to keep his hands in sight while exiting the vehicle, and ordered to walk

backwards with his hands in the air, and then place his hands on the rear glass of the
vehicle. At that point Plaintiff was frisked by an officer whom he believes to have been
CBP Officer Chmielowiec. Plaintiff was not given any explanation for why he was being
arrested. Plaintiff was escorted by CBP Officer Chmielowiec into a secured area inside
the secondary inspection building, where he was ordered to empty his pockets. Plaintiff's
briefcase was searched, and he was detained for a period of time while his vehicle was
searched by CBP personnel. Plaintiff was then told that he is free to go at approximately
12:20 PM. Plaintiff asked for further explanation about why he was arrested and
detained, but no explanation was provided. Plaintiff asked to speak to CBP Chief Marty
Lawrence, who was not willing to provide any explanation for the arrest and detention.

24. Since becoming a member of the NEXUS program, Plaintiff was sent to secondary
inspection numerous times, and his vehicle and person were searched, but never was
found to have violated any of the rules.

25. On January 3, 2018, a CBP officer at an airport falsely entered a notation into CBP's
internal computer system stating that Plaintiff "failed to declare banana" and also falsely
stated in that notation that "Plaintiff lied stating that is the first time he uses global entry
when he comes and goes into Canada and us all the time." Plaintiff forgot to declare the
banana through the electronic kiosk, but then verbally declared the banana to the first
officer he was able to flag down. Plaintiff was unfamiliar with how the Global Entry
kiosk worked. Plaintiff never lied to CBP and it was, in fact, Plaintiff's first time using
the Global Entry kiosk at an airport; crossing the land border using a NEXUS card is
different from flying into the U.S. and using Global Entry.

26. On May 26, 2022, Plaintiff applied to renew his NEXUS membership, which was due to expire in November 2022. At the time, CBP policy allowed for NEXUS members to continue using their memberships past the expiry date as long as their renewal process was pending, due to major backlogs.

27. On December 20, 2022, Plaintiff received two letters, one styled "Denial Notification" and one styled "Revocation Notification" through the online "Trusted Traveler Programs" portal, informing him that his NEXUS membership has been revoked. The only reason given for the revocation/denial was "You do not meet program eligibility requirements."

28. On December 20, 2022, Plaintiff made a "Reconsideration Request" with CBP.

29. On December 20, 2022, after receiving the "Denial Notification" and "Revocation Notification," Plaintiff went to the NEXUS Enrollment Center in Niagara Falls, New York to ask for clarification on why his NEXUS membership was revoked. The officers at the Enrollment Center refused to allow Plaintiff to enter the building and did not provide him with any information. Plaintiff attempted to serve them with a FOIA request in writing, but they refused to accept it. A CBP Officer told Plaintiff that he should be disbarred as an attorney for attempting to serve them a FOIA request in writing, laughed, and stated that "you should know better as an attorney." Other CBP officers concurred and also laughed at Plaintiff. CBP wrote into their internal notes that "he was advised that he should know it is improper to 'serve' papers in the manner he was attempting," referring to the FOIA request. CBP also wrote into their internal notes that Plaintiff was "mildly confrontational" which is a lie. Plaintiff was respectful at all times, simply requesting answers as to why his NEXUS pass was revoked. Plaintiff notes that on CBP's

very own website, available at https://www.cbp.gov/site-policy-notices/foia/records, it states the following: "Some records may not be available through the CBP FOIA Office. The table below lists common FOIA requests and the agency/program office that can respond to these requests. Record/Request Type: U.S. Customs and Border Protection (CBP) Trusted Traveler Programs: Note: If you are seeking information on a trusted traveler application denial, contact the relevant enrollment center. Where to Submit FOIA Request: Enrollment Centers: FAST Global Entry NEXUS SENTRI." Plaintiff notes that he followed CBP's own directions by attempting to submit his FOIA request directly to the enrollment center, only to be met with insults and ridicule by the CBP officers on staff.

30. On or about December 21, 2022, Plaintiff went to the Peace Bridge Port of Entry and spoke with NEXUS Supervisor Schwab at the Enrollment Center on the U.S. side. NEXUS Supervisor Schwab declined to provide Plaintiff with the reason(s) for the revocation of his NEXUS membership. Plaintiff brought up an incident in January 2018 where he returned to the U.S. at Dulles Airport from a vacation in Mexico and forgot that he had a banana in his carry-on bag, but which he promptly declared verbally to the CBP Officer, who allowed him to dispose of the banana in the garbage. Supervisor Schwab informed Plaintiff that that incident was not the reason for the revocation, but that he could not share the actual reason for the revocation. Plaintiff asked Supervisor Schwab if the issues in the past with CBPO Mordino could have played a role in the revocation. Supervisor Schwab did not confirm or deny such, but when Plaintiff stated that his NEXUS has previously been renewed in 2017, stated to Plaintiff essentially that sometimes past incidents can "catch up to you in the future."  Supervisor Schwab also

declined to accept a FOIA request in writing, and instead informed Plaintiff to file a

FOIA request through the mail or online, despite the guidance on CBP's own website

stating that such requests should be submitted directly to the enrollment centers.

31. Plaintiff, after having been rebuffed from filing a written FOIA request at both the

Whirlpool Bridge and the Peace Bridge, submitted a FOIA request to CBP on December

22, 2022 using the online "SecureRelease Portal" under request number CBP-FO-2023-

022688.

32. On December 31, 2022, Plaintiff applied for another Trusted Traveler Program, "TSA

PreCheck" and was subsequently approved for that program. That program provides for

the use of a special expedited airport screening line, with relaxed screening requirements,

when traveling domestically or internationally from a U.S. airport.

33. Plaintiff clearly is not flagged as a security risk in U.S. federal government databases if

his TSA PreCheck membership was approved.

34. On March 22, 2023, Plaintiff filed the initial complaint in this lawsuit and served copies

on CBP and the U.S. Attorney's Office.

35. On April 5, 2023, Plaintiff was arrested and detained by CBP at the Peace Bridge while

driving his morning commute to work. Plaintiff's vehicle was temporarily seized by CBP,

despite Plaintiff being told that it would not be, and it was driven to a secondary

inspection area parking lot by a CBP officer. Plaintiff was detained in a locked detention

area. Plaintiff was told that the reason he was detained and his vehicle was seized was

because he did not want to tell the CBP officer at the primary inspection booth what his

plans were upon entering the United States, a question that Plaintiff feels violates his

privacy and his right against compelled speech. Plaintiff spoke with CBP Watch

Commander Mann, who told Plaintiff that he agrees that Plaintiff is not legally required to discuss his plans for the day with the CBP officer, since he is a U.S. citizen and is entitled to return to the United States. However, Mann essentially told Plaintiff that failing to answer all of CBP's questions would result in further arrests of Plaintiff and that Plaintiff should be prepared to be arrested any time he refuses to answer a question by CBP.

36. CBP subsequently notated their computer system with a report that falsely stated that "subject indicated to the Primary Officer that his citizenship was irrelevant."

37. Plaintiff did, in fact, announce that he was a U.S. citizen and presented a valid U.S. passport immediately upon arriving at the primary inspection booth on April 5, 2023.

38. On May 25, 2023, on the eve of the deadline for the government to respond to the complaint after a 30-day extension that Plaintiff consented to, Plaintiff received a response to his FOIA request containing various documents. The documents were heavily redacted. The documents have numerous (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E) redactions with no explanation given as to why they were redacted. Plaintiff believes that a lot of pertinent information was wrongly redacted without justification.

39. On May 29, 2023, Plaintiff spoke with Watch Commander Scoma and then sent CBP a letter by fax demanding that they review the audio recording of the April 5, 2023 exchange and correct the false statement in their records.

40. On June 8, 2023, CBP informed Plaintiff that they reviewed the audio recordings from the April 5, 2023 encounter, admitted that Plaintiff was right and that it was indeed falsely notated in the system that Plaintiff stated "that his citizenship was irrelevant."

CBP informed Plaintiff that they would be making an amendment to that note in their system.

41. The May 25, 2023 FOIA response indicated that a denial of the reconsideration request for the NEXUS pass was sustained by the Ombudsman on April 12, 2023, "based on the totality of noncompliance with the inspection process on numerous occasions."

42. The "numerous occasions" cited by the Ombudsman are 3 in 2013, 1 in 2014, 1 in 2016, and the "latest in 2023." All of these "numerous occasions" (6 in total over the course of a decade) except the "latest in 2023" pre-date the renewal of Plaintiff's NEXUS card in 2017.

43. The FOIA response also shows a note from September 17, 2017 which states "No disqualifying information found" which was made by a "Director" during a "Director Review." This "Director Review" would have been after all of the "numerous occasions" of "noncompliance with the inspection process" which purportedly supported the revocation and denial of Plaintiff's NEXUS pass in December 2022.

44. There is also a partially redacted note from February 26, 2019 which says "Still meets eligibility criteria."

45. CBP has not explained to Plaintiff why CBP found "No disqualifying information" and his NEXUS pass was renewed in 2017, and a further review in 2019 found that he "Still meets eligibility criteria," but then CBP in December 2022 decided that his pass should be revoked based on the old events that allegedly occurred in 2012, 2014, and 2016.

46. The events that CBP cited in 2013, 2014, and 2016 were not "disqualifying" and were based on false narratives or unsupported conclusory statements such as "subject was argumentative" reported by CBP officers out of animus towards Plaintiff.

47. The notes by CBP officers which claim that Plaintiff was "noncompliant" or "confrontational" were entered by CBP officers due to personal animus, as retaliation for Plaintiff's exercise of his right to free speech under the First Amendment of the United States Constitution, or due to Plaintiff's unwillingness to engage in compelled speech in violation of his rights under the First, Fourth, and Fifth Amendments.

48. Plaintiff did not violate any laws or regulations and was compliant with CBP's screening process at the border at all times.

49. Plaintiff sometimes asked questions about the screening process, asked to be permitted to observe the search of his vehicle, or asked for a supervisor's involvement due to his fear of reprisal from CBP officers for having sued CBP and CBPO Mordino.

50. Plaintiff's questions or requests apparently displeased some CBP officers who regard anything other than unwavering compliance without discussion to be "noncompliant."

51. CBP officers were aware of Plaintiff's occupation as a defender of immigrants, and his outspoken political views on border and immigration issues as well as his protest of Donald Trump.

52. CBP officers and supervisors deliberately put derogatory notations into their internal system in an attempt to "flag" or otherwise "punish" Plaintiff.

53. The April 5, 2023 incident during which he was arrested in retaliation to the filing of this lawsuit, is the one referred to as the "latest in 2023" which was used by the CBP Ombudsman in their sustainment of the denial of Plaintiff's NEXUS pass.

54. CBP was aware that Plaintiff had appealed to the Ombudsman, had spoken with the NEXUS officers at the Whirlpool Bridge and the NEXUS supervisor at the Peace Bridge, deliberately arrested Plaintiff on April 5, 2023 and entered a false derogatory note into

the system to further harass Plaintiff and provide a rationale for the Ombudsman to deny his reconsideration request.

55. CBP has engaged in a pattern of harassment and mistreatment of Plaintiff.

56. On June 8, 2023, at approximately 8:30 a.m., Plaintiff was arrested and detained by CBP at the Peace Bridge.

57. The Primary Inspection Officer, identified to Plaintiff as CBPO Brown, called Plaintiff "crazy" after Plaintiff attempted to explain to her that he will answer questions about his citizenship and declarations of goods but will not discuss his purpose for entering the United States, and that Plaintiff was doing so both as a form of protest against the unfair revocation of his NEXUS pass and because, as a United States Citizen, he does not need to engage in compelled speech that violates his privacy in order to enter his country of citizenship.

58. The Primary Inspection Officer on June 8, 2023 physically assaulted and battered Plaintiff when, without warning, she grabbed Plaintiff's cell phone out of his hand through his open car window.

59. On June 8, 2023, Plaintiff at no time presented a threat to anyone and was simply crossing the border, as he does daily, on his way to the office. The Inspection Officer would not allow Plaintiff to fully explain the reasons why he did not wish to divulge his plans for the day.

60. On June 8, 2023, Plaintiff was surrounded by a large group of CBP officers and ordered out of his vehicle. He was then handcuffed and his vehicle was seized by CBP. He was marched into a room in the building, where he spoke a Watch Commander who agreed with him that, while CBP agents certainly may ask the purpose of travel into the U.S., a

U.S. Citizen is not required to divulge their plans or what they are going to do upon entering the United States.

61. The Watch Commander told Plaintiff that he should just tell them that he is going to his office, in order to avoid being handcuffed and detained in the future.

62. Plaintiff asked the Watch Commander if the officers could be trained to not call for backup and have him arrested simply because he refused to answer questions about his intended activities after entering the U.S., and was told that re-training the officers was not a possibility.

63. Plaintiff explained to the Watch Commander that he was refusing to answer such intrusive personal questions as a form of protest against the unfair revocation of his NEXUS pass and as an affirmation of his right to not be compelled to engage in speech with a law enforcement officer. Plaintiff expressed his concern with answering questions about his intended activities upon entering the country, and explained that an inaccurate or incomplete statement could potentially be prosecuted as a crime under federal law.

64. 18 U.S.C. § 1001 makes it a federal crime to make a false statement to a government agent. Answering a government agent's questions opens a person up to potential exposure to prosecution, should that government agent believe that the answers are not complete and correct.

65. Plaintiff reiterated that he has no problem with stating his citizenship, providing a valid travel document, and answering questions about what goods, if any, he is bringing into the country. Plaintiff also stated that he believed he had a constitutional right against making such compelled statements, and further that his refusal to answer this question was also a form of protest since he has been forced to spend hours in line crossing the

border due to the revocation of his NEXUS pass. Bennett again reiterated that, in order to avoid future handcuffing and detention, Plaintiff should "just tell them that you're going to the office."

66. None of these arrests and detentions resulted in any charges being filed against Plaintiff, any contraband being located and/or seized, or any violation of any rules or regulations being alleged. Plaintiff was, at all times, compliant with CBP Officers, answering all questions pertinent to his admissibility to the U.S. as a natural-born U.S. citizen and passport holder.

67. Indeed, in his many thousands of trips across the border over more than a decade as a cross-border commuter, Plaintiff has never violated any regulations or laws.

68. Plaintiff continues to cross the border on his daily commute and is forced to use the regular travel lanes, which has resulted in him being late for meetings and appointments on several occasions.

69. Plaintiff has been unable to use the Whirlpool Rapids bridge, which is designated for use only by NEXUS members.

70. Plaintiff's immediate family members, being his wife, three sons, mother, and one of his brothers, all hold NEXUS passes and he is unable to travel in the same vehicle with them when they are crossing using the NEXUS lanes.

71. Plaintiff faces increasing delays, sometimes on the order of three hours or more, to cross the border, and will be forced to cancel business meetings and appointments and adjust his hours of travel in order to cross the border.

72. Plaintiff believes the decision to revoke his NEXUS was arbitrary, capricious, and retaliatory and in violation of the law due to Plaintiff having represented his wife against

a CBP officer who physically assaulted and arrested her without just cause, due to

Plaintiff having made public statements to the media against CBP treatment of that

incident and against the conduct of CBP officers associated with that incident, due to his

protest against Donald Trump at the Immigration Court, and due to his ongoing advocacy

work for undocumented migrants and representation of non-citizens detained by CBP and

sent into ICE custody at the Buffalo Federal Detention Facility. Plaintiff has, on multiple

occasions been arrested by CBP, handcuffed and detained for no just cause, without

probable cause or even reasonable suspicion.

73. Plaintiff believes that CBP intends to damage Plaintiff's business as an Immigration

Attorney and damage the ability of local immigrants to receive the legal representation

they so desperately need, by restricting Plaintiff's ability to easily cross the border in

order to provide such representation.

74. Plaintiff also believes that CBP waited until the lawsuit against CBPO Mordino was

dismissed before revoking his NEXUS membership, as the optics of an unwarranted

revocation during the pendency of that lawsuit could have been potentially harmful to

them.

75. Plaintiff has an elderly mother who suffers from health problems, and a brother who was

diagnosed with cancer, both of whom he travels routinely into the U.S. from his Canadian

home to visit and assist. Further, all of Plaintiff's business activities are in the U.S.,

including his law firm and his rental properties which he manages himself. Plaintiff relies

on the NEXUS membership, of which he has been a compliant, law-abiding member for

over a decade, to smoothly travel back and forth between the two countries.

76. Plaintiff, who is a licensed attorney in both New York State and Canada, has a clean driving record, clean criminal record, and has never violated any customs laws or regulations. The revocation of his NEXUS pass is arbitrary and capricious and in violation of the law. CBP has refused to provide any explanation of why it revoked his NEXUS pass.

77. CBP has verbally admitted to false information in their incident report for April 5, 2023 when Plaintiff was arrested by CBP; Plaintiff contends that numerous other CBP incident reports also contain false information that describes Plaintiff in derogatory ways, and that all of these were the result of the aftermath of CBPO Mordino's assault of his wife and the subsequent legal action that followed, and CBP's internal culture of obfuscation, denial, and unaccountability.

## CAUSES OF ACTION

### FIRST CLAIM: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

78. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

79. The above described actions and conduct of the defendant, were arbitrary and capricious and/or in violation of the law, as a retaliatory measure taken by CBP. As a result of the foregoing, Plaintiff suffered the injuries and damages set forth above.

### SECOND CLAIM: FAILURE TO FULLY RESPOND TO FOIA REQUEST

80. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

81. While CBP did finally respond to the FOIA request after this lawsuit was filed, and on the eve of the deadline for the U.S. Attorney's Office to respond, the response is heavily redacted and numerous documents are missing pertinent information.

82. Thus, Defendant CBP has wrongfully withheld the requested records from plaintiff.

83. Plaintiff has exhausted the applicable administrative remedies with respect to its FOIA request to defendant CBP. Plaintiff filed the request through the online portal and waited patiently for nearly 5 months for the response. When the response came, it was not complete, and large portions of the data were wrongfully redacted. No explanation has been provided for the redactions.

**THIRD CLAIM: FALSE ARREST**

84. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

85. Plaintiff was falsely arrested by CBP. Excessive force was used. CBP routinely sends travelers to secondary inspection but does not handcuff or detain them in a secured, locked area unless there is reason to do so. Plaintiff has been handcuffed and detained in a secured area for no reason other than to harass, intimidate, and punish him.

**FOURTH CLAIM: FALSE IMPRISONMENT**

86. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

87. Plaintiff was falsely imprisoned by CBP. Excessive force was used. CBP routinely sends travelers to secondary inspection but does not handcuff or detain them in a secured,

locked area unless there is reason to do so. Plaintiff has been handcuffed and detained in a secured area for no reason other than to harass, intimidate, and punish him.

## FIFTH CLAIM: ASSAULT AND BATTERY

88. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

89. Plaintiff was assaulted and battered by CBP by the placing of handcuffs on him.

90. Plaintiff was assaulted and battered by CBP by the forcible taking of his cell phone from his hand by a CBP officer with no warning and no prior instruction to hand over the cell phone. The officer's actions put Plaintiff in apprehension for his safety.

## SIXTH CLAIM: UNLAWFUL SEIZURE

91. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

92. Plaintiff's cell phone, and vehicle, were unlawfully seized by CBP, for no purpose other than to intimidate, harass, and punish him.

## SEVENTH CLAIM: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

93. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

94. Defendant has engaged in a pattern or practice of harassment of Plaintiff, arresting him on multiple occasions for no lawful reason, to intimidate, harass, and punish him and to cause him emotional distress.

## EIGHTH CLAIM: DEPRIVATION OF FREE SPEECH AND EXPRESSION, VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS UNDER THE FIRSTAMENDMENT

95. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

96. The above described actions and conduct of the defendant, acting under color of law, deprived Plaintiff of his rights to free expression and association, and was done due to defendant's personal animus and bias against the content of Plaintiff's speech and actions, and in retaliation against Plaintiff for his views, both imputed and expressed, and his exercise of constitutionally protected speech; was done to interfere with, and chill, the exercise of free speech and association, and was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of Defendant's acts, was done without lawful justification or reason, and was designed to and did cause specific and serious pain and suffering in violation of Plaintiff's constitutional rights as guaranteed under the First Amendment.

97. Defendant has violated Plaintiff's rights under the Constitution of the United States by attempting to punish him for his speech, attempting to compel speech, seizing his property and person unlawfully, and depriving him of his liberty and property without due process of the law.

98. As a result of the foregoing, Plaintiff suffered the injuries and damages set forth above.

## NINTH CLAIM: EXCESSIVE FORCE

### Deprivation of Rights Under the Fourth and Fifth Amendments

99. The defendant's search and seizure of the plaintiff's conveyance and person, and physically attacking, restraining, handcuffing, and detaining Plaintiff, was unconstitutional and without probable cause, and did violate the plaintiff's constitutional right to be free from an unreasonable seizure of his conveyance and person and the right to be free from the use of excessive, unreasonable, and unjustified force under the Fourth Amendment and the Plaintiff's right to due process under the Fifth Amendment.

100.    As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional pain and humiliation, was deprived of his liberty, and was otherwise damaged and injured.

## PRAYER

Wherefore plaintiff prays that this Court:

a.  Order defendant to restore Plaintiff's membership in the NEXUS program without delay;

b.  Order defendant to disclose the requested records in their entireties and make copies available to Plaintiff;

c.  Order defendant to refrain from repeated harassment of Plaintiff as he crosses the border on his daily commute to work;

d.  Order defendant to refrain from attempting to compel his speech under penalty of extrajudicial punishment;

e.  Provide for expeditious proceedings in this Action;

f.  Avoid Plaintiff his costs and any reasonable attorneys' fees incurred in this action; and

g.  Grant such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: Buffalo, New York

      June 20, 2023

                                         _Matthew K. Borowski /s/_____
                                         Matthew K. Borowski, Esq.
                                         4343 Union Road
                                         Buffalo, NY 14225
                                         (716) 330-1503 tel
                                         (716) 710-5445 fax
                                         E-mail: matthew@borowskilaw.com

                                         *Pro Se*