UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MATTHEW BOROWSKI

                        Plaintiff,                        23-CV-257

v.

U.S. CUSTOMS AND BORDER PROTECTION

                        Defendant.

---

## STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

In support of its motion for partial summary judgment, defendant, U.S. Customs and Border Protection ("CBP"), by his attorney, Trini E. Ross, United States Attorney for the Western District of New York, Mary K. Roach, Assistant United States Attorney, of counsel, hereby submits the following Statement of Material Facts as to which there is No Genuine Issue to be Tried:

**A. NEXUS Program**

1. NEXUS is jointly administered by the United States and Canada and "allows pre-approved low-risk travelers expedited processing for travel between the United States and Canada at dedicated processing lanes, at designated northern border ports of entry, at NEXUS kiosks at U.S. preclearance airports in Canada, and at marine reporting locations." Declaration of Michael J. Millich (Dkt. #7-1) ("Millich Dec."), ¶ 8; 75 Fed. Reg. 82,202, 82,202 (Dec. 29, 2010).

2. NEXUS requires applicants to be approved independently by both CBP and the Canada Border Services Agency. *Id.,* ¶ 8.

3. With respect to CBP, applicants apply through CBP's Trusted Traveler Program website. *Id.* 9. CBP then reviews the applicants' information and checks it against various government databases. *Id.*

4. Applicants with complete applications that meet the eligibility criteria are notified that they have been conditionally approved and can schedule a personal interview at a CBP Enrollment Center. *Id.*

5. The approval for NEXUS membership is contingent on the final decisions regarding the vetting of the application, the submission of fingerprints, and the results of the interview. *Id.*

6. The memberships are valid for five years, after which a member must reapply and undergo renewal vetting and may require an interview. *Id.*

7. This vetting, like the initial processing, includes checks of various government databases. *Id.*

8. In addition, all members are vetted against a set of law enforcement databases on a recurrent basis, which could identify information that may lead to the revocation of membership before the membership expiration date. Based on the specifics of the application, approvals, denials, and revocations can be carried out at multiple points in the enrollment spectrum. *Id.*

   B. **Plaintiff's NEXUS Membership**

9. Plaintiff applied for a NEXUS membership on or about November 13, 2011. *Id.*, ¶ 17.

10. Plaintiff's application was approved, and he was enrolled in NEXUS. *Id.*

11.     Following an inspection in December 2013, Mr. Borowski's membership was revoked on December 16, 2013. *Id.*, ¶ 18.

12.     Plaintiff sought review by the CBP Ombudsman, who granted discretionary consideration, and his NEXUS membership was restored on or about April 25, 2014. *Id.*, ¶ 19.

13.     Plaintiff applied to renew his membership on or about August 25, 2017, and the application was approved, effective on or about September 17, 2017. *Id.* ¶ 20.

14.     Plaintiff again applied to renew his membership on or about May 26, 2022. *Id.*, ¶ 21.

15.     On or about December 20, 2022, CBP provided plaintiff with two letters, one revoking his membership and one denying his membership. *Id.* These letters stated that he does "not meet program eligibility requirements based on the vetting, which included review of information in CBP's law enforcement databases." *Id.*

16.     Plaintiff sought review by the CBP Ombudsman, who, on April 12, 2023, sustained the denial. *Id.*, ¶¶ 23-24.

17.     Plaintiff was provided notice of this decision on April 12, 2023, in a letter stating that "it has been determined that no change is warranted at this time." *Id.*, ¶ 24.

C. **Plaintiff's FOIA Application and CBP's Response**

18.     On December 22, 2022, CBP received a request from Plaintiff under FOIA seeking the following information:

> All documents, records, information, database entries, or any other electronically stored information (ESI), papers, notes, documents pertaining to the trusted Traveler Program application(s), renewals, revocations, denials, for MATTHEW BOROWSKI with NEXUS Program Membership #982419666, relating to the denial/revocation dated December 20, 2022 including reason(s) for denial.  I also request any and all notes, document,

3

>derogatory information, information about any purported violations, and/or entries in CBP Databases that were consulted or used as a basis for the denial.

Declaration of Patrick A. Howard dated October 12, 2023 ("Howard Dec."), a copy of which is attached to the Appendix as Exhibit A, ¶ 11.

19. On May 25, 2023, CBP released 251 pages of records responsive to Plaintiff's request. *Id.,* ¶ 20. Of those pages, 61 were fully released to Plaintiff, and 190 pages were released in part with FOIA-exempt information redacted. *Id.*

### D. Federal Court Action

20. On March 22, 2023, Plaintiff filed a complaint in the U.S. District Court for the Western District of New York asserting two claims. Docket #1. The first claim, brought under the Administrative Procedures Act, related to CBP's determination that Plaintiff did not meet NEXUS eligibility requirements. *Id*. ¶¶ 29-30. The second claim sought to compel CBP to produce documents in response to Plaintiff's FOIA request. *Id*. at ¶¶31-34.

21. On May 26, 2023, CBP moved to dismiss the Complaint on various grounds; it sought dismissal of the FOIA claim on the grounds that it was moot because CBP had processed plaintiff's FOIA request. *See,* Dkt. #7, Defendant's Memorandum of Law in Support of Motion to Dismiss filed on May 26, 2023, Dkt. 7-3, at pp. 10-12.

22. On June 20, 2023, Plaintiff filed an amended complaint ("Amended Complaint") asserting seven claims. Dkt. #9. The Amended Complaint included an amended FOIA claim averring that CBP's response to Plaintiff's FOIA request "was heavily redacted and numerous documents are missing pertinent information", that CBP "wrongfully withheld the requested records from plaintiff" and that CBP's response "not

complete, and large portions of the data were wrongfully redacted." *Id*. at ¶ 81-83.  Plaintiff seeks to have the court "[o]rder defendant to disclose the requested records in their entireties and make copies available to plaintiff." *Id*. at Prayer for Relief.

23. On August 29, 2023, CBP filed a motion to dismiss all claims in the Amended Complaint except the FOIA claim and asked that the Court extend CBP's time to answer or move for summary judgment as to the FOIA claim to October 16, 2023.  Dkt. #13.

24. By order dated July 21, 2023, this Court extended CBP's time within which to answer or move with respect to the Amended Complaint to October 16, 2023. Dkt.14.

**E.  Facts Relating to CBP's Processing of Plaintiff's FOIA Request**

25. Patrick A. Howard is a Branch Chief within FOIA Division at CBP, U.S. Department of Homeland Security ("DHS"). Howard Dec. ¶ 1.

26. Howard has been a Branch Chief in the FOIA Division since February 8, 2015.  In this capacity, he oversees a staff of Government Information Specialists ("GIS") involved in the processing of requests for records submitted to CBP pursuant to FOIA, 5 U.S.C. § 552; the Privacy Act ("PA"), 5 U.S.C. § 552a; and other activities conducted pursuant to applicable records access provisions. *Id.*

27. Howard is familiar with CBP's procedures for responding to FOIA requests. He provides technical and administrative supervision and direction to a group of FOIA specialists in processing FOIA requests, and he assists with FOIA/PA litigation matters and is familiar with the processing of FOIA/PA responses, including, at times, by directly reviewing them for adequacy and compliance with federal laws and regulations. *Id.,* ¶ 2.

28. Howard is also familiar with the FOIA requests submitted to CBP on December 22, 2022, by Plaintiff *Id.,* ¶ 4.

29. The Howard Declaration is based upon Howard's personal knowledge, which includes knowledge acquired through information furnished to him in the course of his official duties and CBP files that he personally reviewed in the course of his official duties. *Id.,* ¶ 3; Appx., Ex. A.

30. The Howard Declaration describes CBP's handling of Plaintiff's FOIA requests, summarizes the relevant facts and correspondence regarding Plaintiff's FOIA request, explains the searches CBP conducted in responding to the request, and details CBP's withholdings of responsive information pursuant to FOIA exemptions. Howard Dec. ¶ 5.

**CBP's Process for Responding to FOIA Requests**

31. CBP is a component law enforcement agency of DHS with statutory responsibility for safeguarding America's borders and facilitating legitimate trade and travel. CBP is comprised of more than 60,000 employees charged with enforcing hundreds of Federal statutes. This includes approximately 45,000 armed law enforcement officers—CBP Officers, U.S. Border Patrol Agents, and CBP Air and Marine Agents—engaged in carrying out CBP's expansive border security mission to protect the borders of the United States against terrorists and instruments of terror, enforce customs and immigration, and foster our Nation's economy by facilitating lawful international trade and travel. *Id.,* ¶ 6.

32. The FOIA Division at CBP reviews FOIA requests, determines whether responsive records exist and, if so, whether they can be released in accordance with the FOIA. In processing such requests, the FOIA Division consults with CBP personnel and, when appropriate, with other components in DHS, as well as other Executive Branch agencies. *Id.,* ¶ 7.

33. Generally, when CBP receives a FOIA request that reasonably describes the records requested and complies with CBP's rules governing the procedures for FOIA requests, CBP initially must search for, and retrieve, potentially responsive records. *Id.,* ¶ 8.

34. Once CBP has completed its search and located potentially responsive records, it must process those records for release. Processing records requires reviewing records for responsiveness to the request, and reviewing responsive records to excise and withhold information that falls within any one of the FOIA's nine statutory exemptions from disclosure set forth at 5 U.S.C. § 552(b). *Id.,* ¶ 9.

35. To review responsive records for information exempt from disclosure, a CBP FOIA processor must (1) meticulously examine, line-by-line, each responsive page to identify potential redactions; (2) apply redactions, if necessary; and (3) individually label each redaction with the applicable exemption or exemptions. *Id.,* ¶ 10.

1. **Plaintiff's FOIA Request**

36. On December 22, 2022, CBP received a request from Plaintiff under FOIA seeking the following information:

> All documents, records, information, database entries, or any other electronically stored information (ESI), papers, notes, documents pertaining to the trusted Traveler Program application(s), renewals, revocations, denials, for MATTHEW BOROWSKI with NEXUS Program Membership #982419666, relating to the denial/revocation dated December 20, 2022 including reason(s) for denial. I also request any and all notes, document, derogatory information, information about any purported violations, and/or entries in CBP Databases that were consulted or used as a basis for the denial.

*Id.,* ¶ 11.

2. **CBP's Search for Records**

37. Upon receiving Plaintiff's request, the FOIA Division staff evaluated the request and determined where responsive information would likely be contained. *Id.,* ¶ 12.

38.     The FOIA Division searched for responsive records in two CBP systems.  The FOIA Division staff searched CBP's Global Enrollment System (GES) by using Plaintiff's NEXUS membership number and the Analytical Framework for Intelligence (AFI) system by using first and last name. *Id.,* ¶ 13.

39.     The GES database is the system used to adjudicate NEXUS Application- be using plaintiff's NEXUS membership number.  is a centralized information system that CBP uses to facilitate enrollment of and vetting processes for trusted traveler programs, including the NEXUS program. *Id.,* ¶ 14.

40.     The AFI system consolidates and enhances information from existing operational systems by using different analytical capabilities and tools that provide link analysis between data elements as well as the ability to detect trends, patterns, and emerging threats. The AFI system includes advanced search capabilities into existing data sources and allows users to search several databases simultaneously.  *Id.,* ¶ 15.

41.     Based on Mr. Howard's experience in the FOIA Division, this search for records was reasonably designed to identify and locate records responsive to Plaintiff's request. *Id.,* ¶ 16.

42.     The FOIA Division's search yielded 251 pages of responsive records. *Id.,* ¶ 17.

43.     The responsive records were compiled for CBP's law enforcement purposes in that they were created and used by CBP in its law enforcement mission to secure the international borders of the United States.  This includes records relating to Plaintiff's encounters with CBP personnel at ports of entry, and relating to his participation in CBP's

NEXUS program, which directly relate to CBP's law enforcement activities and border security purposes. *Id.,* ¶ 18.

44. The responsive records were processed by personnel from the FOIA Division in the manner described above. *Id.,* ¶ 19.

45. Of the 251 pages of records responsive to Plaintiff's request, 61 were fully released to Plaintiff, and 190 were released in part with FOIA-exempt information redacted. *Id.,* ¶ 20.

### 4. CBP's Determination Regarding Segregability

46. In responding to Plaintiffs' requests, the FOIA Division reviewed each record page by page and line-by-line to confirm that any withholdings were proper and determine whether any segregable, non-exempt information could further be released. CBP did not withhold non-exempt information. *Id.,* ¶ 21.

### 5. CBP's Application of FOIA Exemptions

47. CBP withheld information pursuant to FOIA exemptions 5 U.S.C. §§ 552(b)(5), (b)(6), (b)(7)(C), and (b)(7)(E) on the records provided to Plaintiff. These withholdings are described below. *Id.,* ¶ 22.

#### a. FOIA Exemption (b)(5)

48. FOIA Exemption (b)(5) exempts from disclosure "intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption incorporates the deliberative-process privilege. *Id.,* ¶ 23.

49. Consistent with the rationale underlying the deliberative-process privilege, Exemption (b)(5) applies to predecisional, deliberative records. *Id.,* ¶ 24.

50. CBP applied Exemption (b)(5) to information subject to the deliberative-process privilege. As identified in the *Vaughn* index, attached hereto as **Exhibit A**, CBP applied Exemption (b)(5) to five pages of records—consisting of intra-agency emails—that were redacted in full. *Id.,* ¶ 25.

51. Those five pages of records constitute internal, predecisional deliberations and recommendations of CBP employees pertaining to Plaintiff's NEXUS eligibility, and they predate CBP's decision regarding Plaintiff's NEXUS eligibility. In addition to being exempt under (b)(5), these five pages of records also contain information that is further exempt from disclosure under Exemptions (b)(6), (b)(7)(C), and (b)(7)(E). *Id.*

52. Release of those predecisional, deliberative records could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occur when CBP officials engage in decision-making processes. *Id.,* ¶ 26.

53. If CBP officials knew that their comments, discussions, and recommendations would be released for public consumption, they would be more circumspect in what they put in writing, thereby impeding candid discussions of the issues surrounding a decision. *Id.*

    **b. FOIA Exemption (b)(7)(E)**

54. FOIA Exemption (b)(7)(E) exempts from disclosure "records or information complied for law enforcement purposes" that, if released "would disclose techniques and procedures for law enforcement investigations or prosecutions" or "would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). This

exemption covers law enforcement "techniques and procedures" not generally known to the public," and it covers law enforcement "guidelines" if disclosure of those guidelines "could reasonably be expected to risk circumvention of the law." *Id.,* ¶ 27. CBP is constrained in describing the techniques, procedures, and guidelines withheld under Exemption (b)(7)(E) so as to avoid revealing the very information CBP seeks to protect. *Id.,* ¶ 28.

55. As identified in the *Vaughn* index, **Exhibit A,** CBP applied Exemption (b)(7)(E) to withhold the following general types of information in records that was compiled for law enforcement purposes.

> **i. Information relating to techniques and procedures for inspecting travelers and assessing law enforcement risks associated with travelers**.

56. CBP withheld information relating to techniques and procedures for inspecting travelers and assessing law enforcement risks associated with travelers. This includes information relating to methods used by CBP to detect travelers' criminal activity, and criteria used by CBP to determine which travelers require further scrutiny. *Id.,* ¶30. This includes methods for processing and querying records in law enforcement systems and databases, including how information in those systems and databases is accessed and searched, and how encounters are documented in those systems and databases, methods used by CBP to assess travelers' NEXUS eligibility, including the names of the CBP and third-party agency/department systems and databases used to assess such eligibility, the information from those systems and databases used to assess such eligibility, and the manner in which such information is integrated and analyzed. *Id.*

57. For example, CBP withheld information on numerous documents describing specific methods used by CBP officers to inspect Plaintiff during encounters at ports of entry. *Id.,* ¶ 31. **Exhibit A** to Howard Dec.

58. CBP withheld information describing the reasons that Plaintiff was referred, on several occasions, for a secondary inspection, how CBP personnel used law enforcement computer systems and databases—to include identifying how those systems and databases were queried and the results of those queries—stemming from CBP's encounters with Plaintiff, and information showing how CBP personnel used law enforcement computer systems and databases—to include identifying how those systems and databases were queried and the results of those queries—stemming from its encounters with Plaintiff, and in its assessment of his NEXUS eligibility. *Id.*

59. This withheld information is not generally known by the public. *Id.,* ¶ 32.

60. Disclosure of this information would be detrimental to both CBP and the law enforcement community because, for example, it could be used by individuals attempting to circumvent or violate immigration and customs laws to alter patterns of conduct, predict CBP's investigative strategy, adopt new methods of operation to conceal criminal activity, and develop countermeasures to thwart the effectiveness of CBP's law enforcement efforts. *Id.,* ¶ 33.

61. Disclosure would also threaten efforts to foster open communication across agencies and cohesive law enforcement and national security efforts, and it could have far-reaching effects, impairing other agencies' law enforcement operations or their ability to effectively carry out their respective missions. *Id.*

**ii. Information relating to CBP systems and databases**

63. CBP withheld information relating to CBP systems and databases because disclosure of this information could be used to locate, access, and navigate internal law

enforcement computer systems and databases, and could allow manipulation or deletion of data and/or interfere with enforcement proceedings. *Id.,* ¶ 34.

64. This includes the functionalities and capabilities of law enforcement systems and databases; identification, function, and transaction codes for those systems and databases, as well as case tracking numbers. *Id.,* ¶ 35.

65. This information is not generally known by the public. *Id.,* ¶ 36.

c. **FOIA Exemptions (b)(6) and (b)(7)(C)**

66. FOIA Exemption (b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). This protection is afforded to information that would infringe on the personal privacy of individuals about whom it pertains and involves a balancing of the public's right to know the information against the individual's right to privacy. *Id.,* ¶ 37.

67. FOIA Exemption (b)(7)(C) exempts from disclosure records or information compiled for law enforcement purposes, which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(5). This exemption protects, among other information, the identity of law enforcement personnel and third parties referenced in files compiled for law enforcement purposes. *Id.,* ¶ 38.

68. CBP applied Exemptions (b)(6) and (b)(7)(C) in tandem to records, which were compiled for law enforcement purposes, such that information in those records protected by one exemption is also protected by the other. *Id.,* ¶ 39.

69. As identified in the *Vaughn* index, CBP applied these exemptions to withhold personally identifiable information about CBP law enforcement personnel and other CBP

employees, such as their names, email addresses, telephone numbers, unique hash identification numbers, and other personal identifiers. *Id.,* ¶ 40. **Exhibit A** to Howard Dec.

70. For example, on numerous documents, CBP withheld the names of CBP officers and supervisory CBP officers who inspected Plaintiff at ports of entry. *Id.*

71. CBP also withheld on several documents the unique hash identification numbers, used in CBP computer systems, that identify CBP law enforcement personnel involved in inspecting and processing Plaintiff. Howard Dec., *Id.*

72. Withholding this information protects CBP personnel from harassment and annoyance in their private lives due to the conduct of their official duties, which could conceivably result from public disclosure of their identity. *Id.*

73. As identified in the *Vaughn* index, CBP also applied these exemptions to withhold the names of non-employee third parties, as well as information by which those individuals could be identified, such as license plate numbers that may be registered to a third-party. *See,* **Exhibit A** to Howard Declaration; Howard Dec., ¶ 41.

74. Withholding this information protects those third parties from comment, speculation, and stigmatizing connotation associated with being identified in a law enforcement record. Howard Dec., ¶ 41.

75. None of the CBP employees or third parties whose personal information was withheld provided authorization to release their personal information. *Id.,* ¶ 42.

76. Those CBP employees and third parties have a privacy interest to be free of unwarranted attention, and releasing their identities, without their authorization, would violate their legitimate privacy interests. *Id.,* ¶ 43.

77. Disclosing the identities of these CBP employees or third parties would constitute unwarranted invasion of privacy without meaningfully shedding light on how the government performs its duties. *Id.*

78. Whatever minimal interest the public could have in knowing the personal information of these CBP employees and third parties does not outweigh the personal privacy interests of these CBP employees and third parties. *Id.*

Dated: October 16, 2023

          Respectfully Submitted,

          TRINI E. ROSS
          United States Attorney

BY:      S/MARY K. ROACH
          Assistant United States Attorney
          United States Attorney's Office
          Western District of New York
          138 Delaware Avenue
          Buffalo, New York 14202
          (716) 843-5700 Ext. 866
          Mary.k.roach@usdoj.gov