IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

MATTHEW BOROWSKI

                Plaintiff,                23-CV-257

v.

U.S. CUSTOMS AND BORDER PROTECTION

                Defendant.

### DEFENDANT'S APPENDIX TO STATEMENT OF MATERIAL FACTS

The defendant, United States Customs and Border Protection, by its attorney, Trini E. Ross, United States Attorney for the Western District of New York, Mary K. Roach, Assistant United States Attorney, of counsel, submits the following Appendix to the Statement of Material Facts relating to the above-referenced matter:

Exhibit A - Declaration of Patrick A. Howard

DATED: Buffalo, New York, October 16, 2023.

                                          TRINI E. ROSS
                                          United States Attorney

                        BY:    S/MARY K. ROACH
                                    Assistant U.S. Attorney
                                    U.S. Attorney's Office
                                    Western District of New York
                                    138 Delaware Avenue
                                    Buffalo, New York 14202
                                    716-843-5866
                                    mary.k.roach@usdoj.gov

# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MATTHEW BOROWSKI

                              Plaintiff,                              23-CV-257

v.

U.S. CUSTOMS AND BORDER PROTECTION

                              Defendant.

_____

## DECLARATION OF PATRICK A. HOWARD

I, Patrick A. Howard, hereby state as follows:

1. I am a Branch Chief within the Freedom of Information Act Division ("FOIA Division") at U.S. Customs and Border Protection ("CBP"), U.S. Department of Homeland Security ("DHS"). I have been a Branch Chief in the FOIA Division since February 8, 2015. In this capacity, I oversee a staff of Government Information Specialists ("GIS") involved in the processing of requests for records submitted to CBP pursuant to Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; the Privacy Act ("PA"), 5 U.S.C. § 552a; and other activities conducted pursuant to applicable records access provisions.

2. I am familiar with CBP's procedures for responding to FOIA requests. I provide technical and administrative supervision and direction to a group of FOIA specialists in processing FOIA requests, and I assist with FOIA/PA litigation matters. I am personally familiar with the processing of FOIA/PA responses, including, at times, by directly reviewing them for adequacy and compliance with federal laws and regulations.

3. The statements I make in this declaration are based upon my personal knowledge, which include knowledge acquired through information furnished to me in the course of my official duties and CBP files that I personally reviewed in the course of my official duties.

4. I am familiar with the FOIA request submitted to CBP on December 22, 2022, by Plaintiff Matthew Borowski.

5. The purpose of this declaration is to describe CBP's handling of Plaintiff's FOIA requests. This declaration summarizes the relevant facts and correspondence regarding Plaintiff's FOIA request, explains the searches CBP conducted in responding to the request, and details CBP's withholdings of responsive information pursuant to FOIA exemptions.

### CBP's Process for Responding to FOIA Requests

6. CBP is a component law enforcement agency of DHS with statutory responsibility for safeguarding America's borders and facilitating legitimate trade and travel. CBP is comprised of more than 60,000 employees charged with enforcing hundreds of Federal statutes. This includes approximately 45,000 armed law enforcement officers—CBP Officers, U.S. Border Patrol Agents, and CBP Air and Marine Agents—engaged in carrying out CBP's expansive border security mission to protect the borders of the United States against terrorists and instruments of terror, enforce customs and immigration, and foster our Nation's economy by facilitating lawful international trade and travel.

7. Broadly, the FOIA Division at CBP reviews FOIA requests, determines whether responsive records exist and, if so, whether they can be released in accordance with the FOIA. In processing such requests, the FOIA Division consults with CBP personnel and, when appropriate, with other components in DHS, as well as other Executive Branch agencies.

8. Generally, when CBP receives a FOIA request that reasonably describes the records requested and complies with CBP's rules governing the procedures for FOIA requests, CBP initially must search for, and retrieve, potentially responsive records.

9. Once CBP has completed its search and located potentially responsive records, it must process those records for release. Processing records requires reviewing records for responsiveness to the request, and reviewing responsive records to excise and withhold information that falls within any one of the FOIA's nine statutory exemptions from disclosure set forth at 5 U.S.C. § 552(b).

10. To review responsive records for information exempt from disclosure, a CBP FOIA processor must (1) meticulously examine, line-by-line, each responsive page to identify potential redactions; (2) apply redactions, if necessary; and (3) individually label each redaction with the applicable exemption or exemptions.

### Plaintiff's FOIA Request

11. On December 22, 2022, CBP received a request from Plaintiff under FOIA seeking the following information:

> All documents, records, information, database entries, or any other electronically stored information (ESI), papers, notes, documents pertaining to the trusted Traveler Program application(s), renewals, revocations, denials, for MATTHEW BOROWSKI with NEXUS Program Membership #982419666, relating to the denial/revocation dated December 20, 2022 including reason(s) for denial. I also request any and all notes, document, derogatory information, information about any purported violations, and/or entries in CBP Databases that were consulted or used as a basis for the denial.

## CBP's Search for Records

12. Upon receiving Plaintiff's request, the FOIA Division staff evaluated the request and determined where responsive information would likely be contained.

13. The FOIA Division searched for responsive records in two CBP systems. The FOIA Division staff searched CBP's Global Enrollment System (GES) by using Plaintiff's NEXUS membership number and the Analytical Framework for Intelligence (AFI) system by using first and last name.

14. The GES system is a centralized information system that CBP uses to facilitate enrollment of and vetting processes for trusted traveler programs, including the NEXUS program.

15. The AFI system consolidates and enhances information from existing operational systems by using different analytical capabilities and tools that provide link analysis between data elements as well as the ability to detect trends, patterns, and emerging threats. The AFI system includes advanced search capabilities into existing data sources and allows users to search several databases simultaneously.

16. Based on my experience in the FOIA Division, this search for records was reasonably designed to identify and locate records responsive to Plaintiff's request.

17. The FOIA Division's search yielded 251 pages of responsive records.

18. The responsive records were compiled for CBP's law enforcement purposes in that they were created and used by CBP in its law enforcement mission to secure the international borders of the United States. This includes records relating to Plaintiff's encounters with CBP personnel at ports of entry, and relating to his participation in CBP's NEXUS program, which directly relates to CBP's law enforcement activities and border security purposes.

19. The responsive records were processed by personnel from the FOIA Division in the manner described above.

20. On May 25, 2023, CBP released 251 pages of records responsive to Plaintiff's request. Of those pages, 61 were fully released to Plaintiff, and 190 were released in part with FOIA-exempt information redacted.

## CBP's Determination Regarding Segregability

21. In responding to Plaintiffs' requests, the FOIA Division reviewed each record page by page and line-by-line to confirm that any withholdings were proper and determine whether any segregable, non-exempt information could further be released. CBP did not withhold non-exempt information.

## CBP's Application of FOIA Exemptions

22. CBP withheld information pursuant to FOIA exemptions 5 U.S.C. §§ 552(b)(5), (b)(6), (b)(7)(C), and (b)(7)(E) on the records provided to Plaintiff. These withholdings are described below.

### FOIA Exemption (b)(5)

23. FOIA Exemption (b)(5) exempts from disclosure "intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption incorporates the deliberative-process privilege.

24. Consistent with the rationale underlying the deliberative-process privilege, Exemption (b)(5) applies to predecisional, deliberative records.

25. CBP applied Exemption (b)(5) to information subject to the deliberative-process privilege. As identified in the *Vaughn* index, attached hereto as **Exhibit A**, CBP applied Exemption (b)(5) to five pages of records—consisting of intra-agency emails—that were redacted in full. Those five pages of records constitute internal, predecisional deliberations and recommendations of CBP employees pertaining to Plaintiff's NEXUS eligibility, and they predate CBP's decision regarding Plaintiff's NEXUS eligibility. In addition to being exempt under (b)(5), these five pages of records also contain information that is further exempt from disclosure under Exemptions (b)(6), (b)(7)(C), and (b)(7)(E), which is discussed below.

26. Release of those predecisional, deliberative records could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occur when CBP officials engage in decision-making processes. If CBP officials knew that their comments, discussions, and recommendations would be released for public consumption, they would be more circumspect in what they put in writing, thereby impeding candid discussions of the issues surrounding a decision.

### FOIA Exemption (b)(7)(E)

27. FOIA Exemption (b)(7)(E) exempts from disclosure "records or information complied for law enforcement purposes" that, if released "would disclose techniques and procedures for law enforcement investigations or prosecutions" or "would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). This exemption covers law enforcement "techniques and procedures" not generally known to the public," and it covers law enforcement "guidelines" if disclosure of those guidelines "could reasonably be expected to risk circumvention of the law."

28. CBP is constrained in describing the techniques, procedures, and guidelines withheld under Exemption (b)(7)(E) so as to avoid revealing the very information CBP seeks to protect.

29. As identified in the *Vaughn* index, **Exhibit A,** CBP applied Exemption (b)(7)(E) to

withhold the following general types of information in records that was compiled for law enforcement purposes:

### *Information relating to techniques and procedures for inspecting travelers and assessing law enforcement risks associated with travelers.*

30. CBP withheld information relating to techniques and procedures for inspecting travelers and assessing law enforcement risks associated with travelers. This includes information relating to methods used by CBP to detect travelers' criminal activity, and criteria used by CBP to determine which travelers require further scrutiny. This includes methods for processing and querying records in law enforcement systems and databases, including how information in those systems and databases is accessed and searched, and how encounters are documented in those systems and databases. And this includes methods used by CBP to assess travelers' NEXUS eligibility, including the names of the CBP and third-party agency/department systems and databases used to assess such eligibility, the information from those systems and databases used to assess such eligibility, and the manner in which such information is integrated and analyzed.

31. For example, CBP withheld information on numerous documents describing specific methods used by CBP officers to inspect Plaintiff during encounters at ports of entry. **Exhibit A.** CBP withheld information describing the reasons that Plaintiff was referred, on several occasions, for a secondary inspection. CBP withheld information showing how CBP personnel used law enforcement computer systems and databases—to include identifying how those systems and databases were queried and the results of those queries—stemming from CBP's encounters with Plaintiff. And CBP withheld information showing how CBP personnel used law enforcement computer systems and databases—to include identifying how those systems and databases were queried and the results of those queries—stemming from its encounters with Plaintiff, and in its assessment of his NEXUS eligibility.

32. This withheld information is not generally known by the public.

33. Disclosure of this information would be detrimental to both CBP and the law enforcement community because, for example, it could be used by individuals attempting to circumvent or violate immigration and customs laws to alter patterns of conduct, predict CBP's investigative strategy, adopt new methods of operation to conceal criminal activity, and develop countermeasures to thwart the effectiveness of CBP's law enforcement efforts. Disclosure would also threaten efforts to foster open communication across agencies and cohesive law enforcement and national security efforts, and it could have far-reaching effects, impairing other agencies' law enforcement operations or their ability to effectively carry out their respective missions.

### *Information relating to CBP systems and databases.*

34. CBP withheld information relating to CBP systems and databases because disclosure of this information could be used to locate, access, and navigate internal law enforcement computer systems and databases, and could allow manipulation or deletion of data and/or interfere with enforcement proceedings.

35. This includes the functionalities and capabilities of law enforcement systems and

databases; identification, function, and transaction codes for those systems and databases, as well as case tracking numbers.

36. This information is not generally known by the public.

### FOIA Exemptions (b)(6) and (b)(7)(C)

37. FOIA Exemption (b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). This protection is afforded to information that would infringe on the personal privacy of individuals about whom it pertains and involves a balancing of the public's right to know the information against the individual's right to privacy.

38. FOIA Exemption (b)(7)(C) exempts from disclosure records or information compiled for law enforcement purposes, which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(5). This exemption protects, among other information, the identity of law enforcement personnel and third parties referenced in files compiled for law enforcement purposes.

39. CBP applied Exemptions (b)(6) and (b)(7)(C) in tandem to records, which were compiled for law enforcement purposes, such that information in those records protected by one exemption is also protected by the other.

40. As identified in the *Vaughn* index, CBP applied these exemptions to withhold personally identifiable information about CBP law enforcement personnel and other CBP employees, such as their names, email addresses, telephone numbers, unique hash identification numbers, and other personal identifiers. **Exhibit A**. For example, on numerous documents, CBP withheld the names of CBP officers and supervisory CBP officers who inspected Plaintiff at ports of entry. CBP also withheld on several documents the unique hash identification numbers, used in CBP computer systems, that identify CBP law enforcement personnel involved in inspecting and processing Plaintiff. Withholding this information protects CBP personnel from harassment and annoyance in their private lives due to the conduct of their official duties, which could conceivably result from public disclosure of their identity.

41. As identified in the *Vaughn* index, CBP also applied these exemptions to withhold the names of non-employee third parties, as well as information by which those individuals could be identified, such as license plate numbers that may be registered to a third-party. **Exhibit A**. Withholding this information protects those third parties from comment, speculation, and stigmatizing connotation associated with being identified in a law enforcement record.

42. None of the CBP employees or third parties whose personal information was withheld provided authorization to release their personal information.

43. Those CBP employees and third parties have a privacy interest to be free of unwarranted attention, and releasing their identities, without their authorization, would violate their legitimate privacy interests. Disclosing the identities of these CBP employees or third parties would

constitute unwarranted invasion of privacy without meaningfully shedding light on how the government performs its duties. Whatever minimal interest the public could have in knowing the personal information of these CBP employees and third parties does not outweigh the personal privacy interests of these CBP employees and third parties.

44. I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 12th day of October 2023.

*Patrick Howard*
_____
Patrick A. Howard
Branch Chief, FOIA Division
Privacy and Diversity Office
Office of the Commissioner

# EXHIBIT A

*Matthew Borowski v. U.S. Customs and Border Protection*
Case No. 23-CV-257

*Vaughn* Index

| Document Name and Description | Bates Page(s) | Exemptions | Document Disposition | Basis for Withholding |
|---|---|---|---|---|
| Global Enrollment System records, twenty-seven (27) pages in length. Released to Plaintiff by email dated May 25, 2023, as a PDF entitled: 2023-022688-TTP_Redacted_pp.pdf | 000001-000027 | (b)(5); (b)(6); (b)(7)(C); (b)(7)(E) | Released in part. Withheld internal CBP emails subject to the deliberative process privilege. Withheld information containing names and/or identifying information of CBP officers and personnel. Withheld information pertaining to law enforcement techniques and procedures, including inspection techniques and procedures, queries conducted in law enforcement databases and the results of such queries, non-public law enforcement database identification numbers, and investigative conclusions and determinations compiled for law enforcement purposes. | Exemption (b)(5) was applied to five (5) pages of the document containing intra-agency email communications between CBP personnel, subject to the deliberative process privilege, as the emails are both pre-decisional and deliberative. The deliberative process privilege protects the integrity of the deliberative processes within CBP, specifically information documenting CBP's decision-making process. Disclosure of this information would create a chilling effect that would harm internal Agency open discourse, and could create public confusion in releasing non-finalized, pre-decisional records. Exemptions (b)(6) and (b)(7)(C) have been applied within these documents, compiled for law enforcement purposes, to names and/or identifying information of government employees that would identify those individuals if released. Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure. Release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information. Exemption (b)(7)(E) has been applied, which includes information explaining law enforcement techniques and procedures. Such information is not generally known or publicly disclosed. Disclosure of law enforcement techniques and procedures |

*Matthew Borowski v. U.S. Customs and Border Protection*
Case No. 23-CV-257

*Vaughn* Index

|  |  |  |  | would be debilitating and detrimental to both CBP and the law enforcement community, and it would enable individuals to alter their patterns of conduct, adopt new methods of operation, and effectuate other countermeasures, thereby corrupting the integrity of ongoing border inspections and investigations. Release of internal codes and non-public database information, either standing alone or in combination with other information, presents a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law, detrimental to CBP's mission in securing the U.S. border and facilitating lawful travel and trade. Disclosure of law enforcement techniques and procedures relating to investigative conclusions and determinations compiled for law enforcement purposes would corrupt the integrity of law enforcement and other screening activities at the border, thereby aiding individuals who seek to violate immigration and customs laws. |
|---|---|---|---|---|

*Matthew Borowski v. U.S. Customs and Border Protection*
Case No. 23-CV-257

*Vaughn* Index

| | | | | |
|---|---|---|---|---|
| Narrative from Analytical Framework for Intelligence system, one (1) page in length, relating to March 19, 2013, border crossing of Matthew Borowski.<br><br>Released to Plaintiff by email dated May 25, 2023, as a PDF entitled: 03192013 Full Narrative_Redacted_pp.pdf | 000028 | (b)(6); (b)(7)(C); (b)(7)(E) | Released in part. Withheld information containing names of CBP officers, a license plate number of unknown registration, and information pertaining to law enforcement inspection techniques and procedures. | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents, compiled for law enforcement purposes, to names of government employees. Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure. Exemptions (b)(6) and (b)(7)(C) have also been applied to a license plate number of unknown registration, and thus the license plate may be registered to a third party. Third parties maintain significant personal privacy interests in not having their identifying information disclosed in the context of CBP records. Release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information.<br><br>Exemption (b)(7)(E) has been applied, which includes information pertaining to law enforcement techniques and procedures. Such information is not generally known or publicly disclosed. Disclosure of law enforcement techniques and procedures would be debilitating and detrimental to both CBP and the law enforcement community, and it would enable individuals to alter their patterns of conduct, adopt new methods of operation, and effectuate other countermeasures, thereby corrupting the integrity of ongoing border inspections and investigations. |

*Matthew Borowski v. U.S. Customs and Border Protection*
Case No. 23-CV-257

*Vaughn* Index

| Description | Bates | Exemptions | Disposition | Justification |
|---|---|---|---|---|
| Narrative from Analytical Framework for Intelligence system, one (1) page in length, relating to April 18, 2013 border crossing of Matthew Borowski. Released to Plaintiff by email dated May 25, 2023, as a PDF entitled: 04182013 Full Narrative_Redacted_pp.pdf | 000029 | (b)(6); (b)(7)(C); (b)(7)(E) | Released in part. Withheld information containing name of CBP officer, and information pertaining to law enforcement inspection techniques and procedures. | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents, compiled for law enforcement purposes, to names of government employees. Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure. Release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information.  Exemption (b)(7)(E) has been applied, which includes information pertaining to law enforcement techniques and procedures. Such information is not generally known or publicly disclosed. Disclosure of law enforcement techniques and procedures would be debilitating and detrimental to both CBP and the law enforcement community, and it would enable individuals to alter their patterns of conduct, adopt new methods of operation, and effectuate other countermeasures, thereby corrupting the integrity of ongoing border inspections and investigations. |

*Matthew Borowski v. U.S. Customs and Border Protection*
Case No. 23-CV-257

*Vaughn* Index

| | | | | |
|---|---|---|---|---|
| Narrative from Analytical Framework for Intelligence system, one (1) page in length, relating to November 3, 2014 border crossing of Matthew Borowski.<br><br>Released to Plaintiff by email dated May 25, 2023, as a PDF entitled: 11032014 Full Narrative_Redacted_pp.pdf | 000030 | (b)(6); (b)(7)(C); (b)(7)(E) | Released in part. Withheld information containing names of CBP officers, and information pertaining to law enforcement inspection techniques and procedures. | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents, compiled for law enforcement purposes, to names of government employees. Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure. Release of such information would constitute an unwarranted invasion of personal privacy.<br><br>Exemption (b)(7)(E) has been applied, which includes information pertaining to law enforcement techniques and procedures. Such information is not generally known or publicly disclosed. Disclosure of law enforcement techniques and procedures would be debilitating and detrimental to both CBP and the law enforcement community, and it would enable individuals to alter their patterns of conduct, adopt new methods of operation, and effectuate other countermeasures, thereby corrupting the integrity of ongoing border inspections and investigations. |

*Matthew Borowski v. U.S. Customs and Border Protection*
Case No. 23-CV-257

*Vaughn* **Index**

| | | | | |
|---|---|---|---|---|
| Narrative from Analytical Framework for Intelligence system, two (2) pages in length, relating December 14, 2013 border crossing of Matthew Borowski.<br><br>Released to Plaintiff by email dated May 25, 2023, as a PDF entitled: 12142013 Full Narrative_Redacted_pp.pdf | 000031-000032 | (b)(6); (b)(7)(C); (b)(7)(E) | Released in part. Withheld information containing names and/or identifying information of CBP officers and personnel, names and/or identifying information of third parties, and a license plate number of unknown registration. Withheld information pertaining to law enforcement inspection techniques and procedures, including the criteria and reasons used as the basis for selecting individuals for additional inspection procedures, and investigative conclusions and determinations compiled for law enforcement purposes. | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents, compiled for law enforcement purposes, to names of government employees, and personally identifiable information and other identifying details of third-party individuals, that would identify those individuals if released. Exemptions (b)(6) and (b)(7)(C) have also been applied to a license plate number of unknown registration, and thus the license plate may be registered to a third party. Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure. Further, third parties maintain significant personal privacy interests in not having their identifying information disclosed in the context of CBP records. Release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information.<br><br>Exemption (b)(7)(E) has been applied, which includes information pertaining to law enforcement techniques and procedures. Such information is not generally known or publicly disclosed. Disclosure of law enforcement techniques and procedures would be debilitating and detrimental to both CBP and the law enforcement community, and it would enable individuals to alter their patterns of conduct, adopt new methods of operation, and effectuate other countermeasures, thereby corrupting the integrity of ongoing border inspections and investigations. Disclosure of law enforcement |

6

*Matthew Borowski v. U.S. Customs and Border Protection*
Case No. 23-CV-257

*Vaughn* Index

|  |  |  |  |  |
|---|---|---|---|---|
|  |  |  |  | techniques and procedures relating to the criteria used as the basis for selecting individuals for additional inspection procedures, and investigative conclusions and determinations compiled for law enforcement purposes, would corrupt the integrity of law enforcement and other screening activities at the border, thereby aiding individuals who seek to violate immigration and customs laws. |
| Inspection records from the Analytical Framework for Intelligence system, one hundred and sixty-seven (167) pages in length.<br><br>Released to Plaintiff by email dated May 25, 2023, as a PDF entitled: CBP-FO-2023-022688_fc_Redacted_pp.pdf | 000033-000199 | (b)(6); (b)(7)(C); (b)(7)(E) | Released in part. Withheld information containing names and/or identifying information of CBP officers and personnel, names and/or identifying information of third parties, and license plate numbers of unknown registration. Withheld information pertaining to law enforcement techniques and procedures, including inspection techniques and procedures, queries conducted in law enforcement databases and the results of such queries, non-public law enforcement database identification numbers, non-public law enforcement codes, the criteria and reasons used as the basis for selecting individuals for | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents, compiled for law enforcement purposes, to names and/or identifying information of government employees, and personally identifiable information and other identifying details of third-party individuals, that would identify those individuals if released. Exemptions (b)(6) and (b)(7)(C) have also been applied to license plate numbers of unknown registration, and thus said license plates may be registered to a third party. Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure. Further, third parties maintain significant personal privacy interests in not having their identifying information disclosed in the context of CBP records. Release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information.<br><br>Exemption (b)(7)(E) has been applied, which includes information pertaining to law enforcement techniques and procedures. Such information is not |

*Matthew Borowski v. U.S. Customs and Border Protection*
Case No. 23-CV-257

## *Vaughn* Index

| | | | | additional inspection procedures, and investigative conclusions and determinations compiled for law enforcement purposes. | generally known or publicly disclosed. Disclosure of law enforcement techniques and procedures would be debilitating and detrimental to both CBP and the law enforcement community, and it would enable individuals to alter their patterns of conduct, adopt new methods of operation, and effectuate other countermeasures, thereby corrupting the integrity of ongoing border inspections and investigations. Release of internal codes and non-public database information, either standing alone or in combination with other information, presents a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law, detrimental to CBP's mission in securing the U.S. border and facilitating lawful travel and trade. Disclosure of law enforcement techniques and procedures relating to the criteria used as the basis for selecting individuals for additional inspection procedures, and investigative conclusions and determinations compiled for law enforcement purposes, would corrupt the integrity of law enforcement and other screening activities at the border, thereby aiding individuals who seek to violate immigration and customs laws. |
|---|---|---|---|---|---|

*Matthew Borowski v. U.S. Customs and Border Protection*
Case No. 23-CV-257

*Vaughn* Index

| | | | | |
|---|---|---|---|---|
| Spreadsheet depicting border crossings of Matthew Borowski, fifty-two (52) pages in length.<br><br>Released to Plaintiff by email dated May 25, 2023, as a PDF entitled: CBP-FO-2023-022688-ee_rc_pp.pdf | 000200-000251 | Not applicable. | Released in full. | Not applicable. |

9