UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MATTHEW BOROWSKI

                    Plaintiff,                                23-CV-257

v.

U.S. CUSTOMS AND BORDER PROTECTION

                    Defendant.
_____


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

TRINI E. ROSS
United States Attorney

BY:    MARY K. ROACH
        Assistant U.S. Attorney
        U.S. Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, New York 14202
        716-843-5866
        mary.k.roach@usdoj.gov

## TABLE OF CONTENTS

Factual Background And Procedural History...................................................1

Point I – Summary Judgment Dismissing the FOIA Claim is Appropriate
In This Case.....................................................................................2

    A.  Standard of Review on a Motion for Summary Judgment in
        an Action Brought Under FOIA.................................................2

    B.  CBP Conducted a Reasonable Search for Records Responsive
        to Plaintiff's FOIA Request, and Properly Withheld Information
        from those Documents Based on Enumerated FOIA Exemptions............4

        1.  CBP's Search Was Reasonable.................................................4

        2.  CBP Properly Withheld Exempt Information From Disclosure............7

        3.  Segregability...........................................................7

        4.  CBP Properly Withheld Information Under Exemption (b)(5)..............9

        5.  CBP Properly Withheld Informatioin Under Exemption (b)(7)(E)........11

            a.  Information relating to techniques and procedures for
               inspecting travelers and assessing law enforcement risks
               associated with travelers.................................................16

            b.  Information relating to CBP systems and
               databases................................................................19

        6.  CBP Properly Withheld Information Under Exemptions (b)(6)
           And (b)(7)(C)...........................................................20

Conclusion.....................................................................................25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*ACLU Found. v. U.S. Dep't Homeland Sec.*, 243 F. Supp. 3d 393 (S.D.N.Y. 2017)------------------14

*Adamowicz v. Internal Revenue Serv.*, 402 Fed. Appx. 648 (2d Cir. 2010)----------------------------- 5

*Allard K. Lowenstein Int'l Hum. Rts. Project v. Dep't of Homeland Security*, 626 F.3d 678 (2d Cir. 2010)------------------------------------------------------------------------------------------------------13,14,15

*Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 30 F. Supp. 3d 67(D.D.C. 2014) - 13,16

*Am. Immigration Lawyers Ass'n v. U.S. Dep't of Homeland Sec.*, 485 F. Supp. 3d 100 (D.D.C. 2020)------------------------------------------------------------------------------------------------------2,8,16,20

*Andrus v. Corning, Inc.*, 2016 WL 5372467 (W.D.N.Y. Sept. 26, 2016)------------------------------- 3

*Asian Law Caucus v. U.S. Dep't of Homeland Sec.*, 2008 WL 5047839(N.D. Cal. Nov. 24, 2008) ---------------------------------------------------------------------------------------------------------------------18

*Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274 (2d Cir. 2009) ------------------------------ 21,24

*Berryhill v. Bonneville Power Admin.*, 509 F. Supp. 3d 1288 (D. Or. 2020)----------------------------10

*Bishop v U.S. Dep't of Homeland Security*, 45 F. Supp. 3d 380 (S.D.N.Y. 2014)-------------12,14,17

*Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37 (D.C. Cir. 2010)----------------------------------15

*Bloomberg, L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 649 F.Supp.2d 262 (S.D.N.Y. 2009)--- 3

*Buckley v U.S. Department of Justice,* 2021 WL 5371463 (W.D.N.Y. Nov. 18, 2021). -3,11,13,21

*Campbell v. U.S. Dep't of Justice*, 164 F.3d 20 (D.C. Cir. 1998)----------------------------------------15

*Carney v. U.S. Dept. of Justice,* 19 F. 3d 807(2d Cir 1994)------------------------------------------- 5

*Concepcion v. U.S. Customs & Border Prot.*, 907 F. Supp. 2d 133(D.D.C. 2012)-----------------------13

*Conti v. U.S. Dep't of Homeland Sec.*, 2014 WL 1274517 (S.D.N.Y. Mar. 24, 2014)---------------22

*Cook v. National Archives and Records Admin.*, 758 F.3d 168 (2d Cir. 2014) ------------------------21

*Etessami v. U.S. Customs & Border Prot.*, 2017 U.S. Dist. LEXIS 169388 (D.D.C. May 19, 2017) ---------------------------------------------------------------------------------------------------------------------18

*Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615 (1982)----------------------------------------11

*Fed. Labor Relations Auth. v. U.S. Dep't of Veterans Affairs*, 958 F.2d 503 (2d Cir. 1992)----------- 7

*Fox News Network, LLC v. U.S. Dep't of Treasury*, 911 F. Supp. 2d 261 (S.D.N.Y. 2012) ---------10

*Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356 (S.D.N.Y. 2002) ----------------------------------4,5

*Gonzalez v. U.S. Citizenship & Immigr. Servs.*, 475 F. Supp. 3d 334 (S.D.N.Y. 2020)-------17,20,23

*Grand Central P'ship, Inc. v. Cuomo*, 166 F.3d 473 (2d Cir. 1999)-----------------------------------------4,5

*Halpern v. Fed. Bureau of Investigation*, 181 F.3d 279 (2d Cir. 1999)---------------------------------- 3

*Hasbrouck v. U.S. Customs & Border Prot.*, 2012 WL 177563 (N.D. Cal. Jan. 23, 2012) ----------18

*Hernandez v. Mesa*, 140 S. Ct. 735 (2020)-------------------------------------------------------------------12

*Hopkins v. U.S. Dep't of Hous. & Urb. Dev.*, 929 F.2d 81 (2d Cir. 1991)--------------------------------- 9

*Human Rights Watch v. U.S. Dep't of Justice*, 2015 WL 5459713 (S.D.N.Y. Sept. 16, 2015) ----12

*Immigrant Def. Project v. U.S. Dep't of Homeland Sec.*, 2023 WL 1966178 (S.D.N.Y. Feb. 13, 2023) --------------------------------------------------------------------------------------------------------------------20

*Inner City Press/Cmty. on the Move v. Bd. of Governors of the Fed. Reserve Sys.*, 463 F.3d 239 (2d Cir. 2006) ----------------------------------------------------------------------------------------------------- 8

*John Doe Agency v. John Doe Corp.*, 493 U.S. 146 (1989)-------------------------------------------------- 7

*Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141(D.C. Cir. 2006)---------------------------24

*Kennedy v. U.S. Dep't of Homeland Sec.*, 2004 WL 2284691 (W.D.N.Y. Oct. 8,2004)-------------- 4

*Knight First Amendment Inst. at Columbia Univ. v. U.S. Citizenship & Immigr. Servs.*, 30 F.4th 318 (2d Cir. 2022) -----------------------------------------------------------------------------3,4,9,11,13,14,15

*Kuzma v. U.S. Dep't of Justice*, 2016 WL 9446868 (W.D.N.Y. Apr. 18, 2016) ------------------------
-----------------------------------------------------------------------------------------------------3,4,5,7,13,21, 22

*Kuzma v. U.S. Dep't of Justice*, 692 F. App'x 30 (2d Cir. 2017) -------------------------------------- 3

*Lesar v. United States Dep't of Justice*, 636 F.2d 472(D.C. Cir. 1980)--------------------------------- 4

*Long v. Office of Personnel Mgmt*, 692 F.3d 185(2d Cir. 2012)-----------------------------------------22

*Massey v. Fed. Bureau of Investigation*, 3 F. 3d 620 (2d Cir. 1993)-------------------------------------- 3

*Mayer Brown LLP v. Internal Revenue Serv.*, 562 F.3d 1190 (D.C. Cir. 2009) ------------------------15

*Milner v. U.S. Dep't of the Navy*, 562 U.S. 562 (2011)------------------------------------------------12

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) ---------------------------------------22

*Natural Res. Defense Council v. U.S. Envtl. Prot. Agency*, 954 F.3d 150 (2d Cir. 2020) -------------- 7

*New York Times v.U.S. Dep't of Educ.*, 2023 WL 2267438 (S.D.N.Y. Feb. 28, 2023) -------------- 9

*New York Times Company v. U.S. Dep't of Justice*, 939 F.3d 479 (2d Cir. 2019) ----------------------- 7

*Paco v. U.S. Customs & Border Prot.*, 2016 WL 344522 (D.N.J. Jan. 27, 2016)-------------18,19,23

*Perry v. Block*, 684 F.2d 121(D.C. Cir. 1982) ------------------------------------------------------------ 5

*Pickering v. United States DOJ*, 2021 U.S. Dist. LEXIS 234206 (W.D.N.Y. Dec. 7, 2021)-------17

*Rojas-Vega v. U.S. Immigration & Customs Enforcement*, 302 F. Supp. 3d 300 (D.D.C. 2018) ----18

*Shapiro v. U.S. Dep't of Justice*, 893 F.3d 796 (D.C. Cir. 2018)--------------------------------------17

*Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106 (D.C. Cir. 2007)------------------------------------- 8

*Tigue v. U.S. Dep't of Justice*, 312 F.3d 70 (2d Cir. 2002) -------------------------------------------- 9

*U.S. Dep't. of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749 (1989) ----------------22

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021) ----------------------------9,10

*U.S. Department of State v. Washington Post*, 456 U.S. 595 (1982) --------------------------------------21

*Vazquez v. U.S. Dep't of Justice,* 887 F. Supp. 2d 114 (D.D.C. 2012)--------------------------------14

*Wilner v. Nat. Security Agency*, 592 F.3d 60 (2d Cir. 2009)------------------------------------------- 4

*Wood v. Fed. Bureau of Investigation*, 432 F.3d 78 (2d Cir. 2005)-----------------------------------21

## STATUTES

5 U.S.C. § §552 -------------------------------------------------------------------- passim

6 U.S.C. § 211---------------------------------------------------------------------------12

6 U.S.C. § 211(c)(5)); ----------------------------------------------------------------12

## RULES

Fed.R.Civ.P. 56 ------------------------------------------------------------------------------------------------------------------- 5

This Memorandum of Law is submitted on behalf of U.S. Customs and Border

Protection ("CBP") in support of its motion for partial summary judgment pursuant to Fed.

R. Civ. P. 56 dismissing Plaintiff's claim that CBP improperly withheld documents sought

by plaintiff under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On December 22, 2022, CBP received Plaintiff's FOIA request seeking information

relating to the denial/revocation of his NEXUS[1] Pass. Specifically, he sought:

> All documents, records, information, database entries, or any other
> electronically stored information (ESI), papers, notes, documents pertaining
> to the trusted Traveler Program application(s), renewals, revocations, denials,
> for MATTHEW BOROWSKI with NEXUS Program Membership
> #982419666, relating to the denial/revocation dated December 20, 2022
> including reason(s) for denial. I also request any and all notes, document,
> derogatory information, information about any purported violations, and/or
> entries in CBP Databases that were consulted or used as a basis for the denial.

Statement of Material Facts to Which There Is No Genuine Issued To Be Tried ("SMF"), ¶
18

On March 22, 2023, Plaintiff filed a Complaint in the U.S. District Court for the

Western District of New York asserting two claims. Docket #1. The first claim, brought

under the Administrative Procedures Act, related to CBP's determination that Plaintiff did

not meet NEXUS eligibility requirements. *Id.* at ¶ 20. The second claim sought to compel

CBP to produce documents in response to Plaintiff's FOIA request. *Id.*

---

[1] NEXUS is jointly administered by the United States and Canada and "allows pre-approved low-risk travelers expedited processing for travel between the United States and Canada at dedicated processing lanes, at designated northern border ports of entry, at NEXUS kiosks at U.S. preclearance airports in Canada, and at marine reporting locations." Declaration of Michael J. Millich (Dkt. #7-1) ("Millich Dec."), ¶ 8; 75 Fed. Reg. 82,202, 82,202 (Dec. 29, 2010). CBP respectfully refers the Court to the discussion of CBP's Trusted Traveler Programs, Plaintiff's NEXUS membership and Plaintiff's FOIA request set forth at pp. 2-5 of CBP's Memorandum of Law in Support of Defendant's Motion to Dismiss (Dkt. 13 at pp. 2-5), the Declaration of Michael J. Millich (Dkt. #7-1)("Millich Dec."), ¶¶ 5-26, and the Statement of Material Facts as to Which there is No Genuine Issue to be Tried, filed herewith.

On May 25, 2023, CBP released 251 pages of records responsive to Plaintiff's FOIA request. SMF ¶ 19. On May 26, 2023, CBP moved to dismiss the FOIA claim asserted in the Complaint on the grounds that it was moot because CBP processed Plaintiff's FOIA claim on May 25, 2023. Dkt. 7.

On June 20, 2023, Plaintiff filed an Amended Complaint which included a second cause of action asserting an amended FOIA claim. Dkt. #9. Plaintiff claimed CBP's response to his FOIA request was heavily redacted, that numerous documents were missing pertinent information, that CBP "wrongfully withheld the requested records from plaintiff" and that CBP's response was "not complete, and large portions of the data were wrongfully redacted." *Id.*, ¶¶ 80-83. Plaintiff sought an order requiring CBP to disclose the requested records in their entireties. *Id.*, Prayer for Relief.

On August 29, 2023, CBP filed a motion to dismiss all claims in the Amended Complaint except the FOIA claim and asked that the Court extend CBP's time to answer or move for summary judgment as to the FOIA claim. Dkt. #13. By order dated July 21, 2023, this Court extended CBP's time within which to answer or move with respect to the second cause of action in Amended Complaint to October 16, 2023. Dkt. #14.

## POINT I

## SUMMARY JUDGMENT DISMISSING THE FOIA CLAIM IS APPROPRIATE IN THIS CASE

### A. Standard of Review on a Motion For Summary Judgment in an Action Brought Under FOIA

FOIA requires federal agencies to "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Am. Immigr. Lawyers' Ass'n v. U.S. Dep't of Homeland Sec.*, 485 F. Supp. 3d 100, 107 (D.D.C.

2020).  Indeed, FOIA is premised on "a policy strongly favoring public disclosure of

information in the possession of federal agencies." *Knight First Amendment Inst. at Columbia*

*Univ. v. U.S. Citizenship & Immigr. Servs.*, 30 F.4th 318, 327 (2d Cir. 2022) (quoting *Halpern v.*

*Fed. Bureau of Investigation*, 181 F.3d 279, 291 (2d Cir. 1999)).  "Agencies are required to

disclose requested documents unless they fall within an enumerated exemption." *Halpern*,

181 F.3d at 286-87.  FOIA thus "requires the fullest possible public disclosure of

government-kept records yet at the same time maintains the confidentiality of sensitive

information based on narrowly tailored exemptions intended to protect certain interests."

*Kuzma v. U.S. Dep't of Justice*, 2016 WL 9446868, *3 (W.D.N.Y. Apr. 18, 2016), *aff'd sub nom.*

*Kuzma v. U.S. Dep't of Justice*, 692 F. App'x 30 (2d Cir. 2017).

"Federal courts are required to conduct *de novo* review of an agency's decision to

withhold requested records under the FOIA." *Kuzma*, 2016 WL 9446868, *3 (*citing Massey*

*v. Fed. Bureau of Investigation*, 3 F. 3d 620, 622 (2d Cir. 1993)).  Summary judgment is the

preferred method for resolving FOIA disputes. *Bloomberg, L.P. v. Bd. of Governors of Fed.*

*Reserve Sys.*, 649 F.Supp.2d 262, 271 (S.D.N.Y. 2009).  "A party is entitled to summary

judgment 'if the movant shows that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law.'" *Andrus v. Corning, Inc.*, 2016

WL 5372467 *3 (W.D.N.Y. Sept. 26, 2016) (quoting Rule 56(a)).

To prevail on a motion for summary judgment in a FOIA case, the defending agency

has the burden of showing that its search was adequate and that any withheld documents

fall within an exemption to the FOIA. *Buckley v U.S. Department of Justice,* 2021 WL

5371463 *6 (W.D.N.Y. Nov. 18, 2021).  The agency "may rely on a *Vaughn* index, which

consists of 'affidavits to the court that describe with reasonable specificity the nature of the

documents at issue and the justification for nondisclosure; the description provided in the affidavits must show that the information logically falls within the claimed exemption.'" *Kuzma*, 2016 WL 9446868, at *3 citing *Lesar v. United States Dep't of Justice*, 636 F.2d 472, 481 (D.C. Cir. 1980). Agency affidavits are presumed to have been made in good faith. *Wilner v. Nat. Security Agency*, 592 F.3d 60, 69 (2d Cir. 2009).

"This presumption is not rebutted by bare allegations or speculative claims that additional documents exist." *Kuzma*, 2016 WL 9446868, *4 (*citing Grand Central P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999)). "If the agency's submissions are facially adequate, summary judgment is warranted unless the plaintiff can make a showing of bad faith on the part of the agency or present evidence that the exemptions claimed by the agency should not apply." *Id.* at *4 (*quoting Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002)). Indeed, on summary judgment, the Court is to accept an agency's affidavits as true unless they are "controverted by either contrary evidence in the record or by evidence of agency bad faith." *Knight,* 30 F.4th at 329.

### B. CBP Conducted a Reasonable Search for Records Responsive to Plaintiff's FOIA Request, and Properly Withheld Information from those Documents Based on Enumerated FOIA Exemptions

#### 1. CBP's Search Was Reasonable

In response to a request for records under FOIA, agencies are required to conduct a search "reasonably designed to identify and locate responsive documents" but need not "take extraordinary measures to find the requested records." *See Kuzma*, 2016 WL 9446868, *4 (quoting *Kennedy v. U.S. Dep't of Homeland Sec.*, 2004 WL 2284691, *2 (W.D.N.Y. Oct. 8, 2004)); *Kuzma*, 692 Fed. Appx. at 32 ("An adequate search is one 'reasonably calculated to discover the requested documents.'") (citing *Grand Cent. P'ship*, 166 F.3d at 489).

"If an agency sufficiently demonstrates that it has conducted a reasonable search for responsive documents, it has fulfilled its obligations under FOIA." *Kuzma*, 2016 WL 9446868, *4 (citing *Garcia*, 181 F. Supp. 2d at 366). An agency can meet this burden by supplying affidavits from appropriate officials setting forth facts indicating that a thorough search was conducted. *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982) ("[A]ffidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA."). Moreover, "the law demands only a "relatively detailed and nonconclusory affidavit or declaration." *Adamowicz v. Internal Revenue Serv.*, 402 Fed. Appx. 648, 650-51 (2d Cir. 2010) (quoting *Grand Cent. P'Ship, Inc.*, 166 F.3d at 488-89). Significantly, "[a]n affidavit from an employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search." *Carney v. U.S. Dept. of Justice,* 19 F. 3d 807, 814 (2d Cir 1994).

Here, CBP conducted a search reasonably designed to identify and locate documents responsive to Plaintiff's request, as described in the declaration from Patrick A. Howard ("Howard Declaration"), attached to the Appendix to the Statement of Material Facts as Exhibit A. Howard is the Branch Chief within CBP's FOIA Division. SMF, ¶ 25. Broadly, the FOIA Division at CBP reviews FOIA requests, determines whether responsive records exist and, if so, whether they can be released in accordance with the FOIA. SMF, ¶ 32. In processing such requests, the FOIA Division consults with CBP personnel and, when appropriate, with other components in the U.S. Department of Homeland Security ("DHS"), as well as other Executive Branch agencies. *Id.*

Generally, when CBP receives a FOIA request that reasonably describes the records requested and complies with CBP's rules governing the procedures for FOIA requests, CBP initially searches for, and retrieves, potentially responsive records.  SMF, ¶ 33.  Once CBP has completed its search and located potentially responsive records, it processes those records for release.  *Id.* at ¶ 34.  Processing records requires reviewing records for responsiveness to the request, and reviewing responsive records to excise and withhold information that falls within any one of the FOIA's nine statutory exemptions from disclosure set forth at 5 U.S.C. § 552(b).  *Id.*  To review responsive records for information exempt from disclosure, a CBP FOIA processor must (1) meticulously examine, line-by-line, each responsive page to identify potential redactions; (2) apply redactions, if necessary; and (3) individually label each redaction with the applicable exemption or exemptions.  *Id.* at ¶ 35.

Upon receipt of Plaintiff's FOIA request, the FOIA Division staff evaluated the request, determined where responsive information would likely be contained and searched for responsive records in two CBP systems.  *Id* at ¶ 37.  For information pertaining to Plaintiff's participation in the NEXUS program, FOIA Division staff searched CBP's Global Enrollment System ("GES") database—the system used to adjudicate NEXUS applications—by using Plaintiff's NEXUS membership number. *Id.* at ¶ 38.  The FOIA Division also searched the Analytical Framework for Intelligence System ("AFI"), which consolidates and enhances information from existing operational systems by using different analytical capabilities and tools that provide link analysis between data elements as well as the ability to detect trends, patterns, and emerging threats. The AFI system includes advanced search capabilities into existing data sources and allows users to search several

databases simultaneously. *Id.* at ¶¶ 38, 40. These searches yielded 251 responsive pages. *Id.* at ¶ 42. The responsive materials, which were compiled for law enforcement purposes, were processed, in the manner described above, and were provided to Plaintiff on May 25, 2023. *Id.* at ¶ 38. Thus, CBP's search for responsive records in response to Plaintiff's FOIA request was reasonably designed to identify and locate responsive documents, thereby fulfilling CBP's search obligations under FOIA.

### 2. CBP Properly Withheld Exempt Information From Disclosure

FOIA requires an agency "to disclose records on request, unless they fall within one of nine exemptions." *Natural Res. Defense Council v. U.S. Envtl. Prot. Agency*, 954 F.3d 150, 154 (2d Cir. 2020). "[W]hen responsive records fall within any of the applicable exemptions, disclosure is not required." *See Kuzma*, 2016 WL 9446868, *5 (*citing Fed. Labor Relations Auth. v. U.S. Dep't of Veterans Affairs*, 958 F.2d 503, 508 (2d Cir. 1992)). "[I]mportant interests [are] served by [FOIA's] exemptions." *New York Times Company v. U.S. Dep't of Justice*, 939 F.3d 479, 488 (2d Cir. 2019). These exemptions "are as much a part of FOIA's purposes and policies as the statute's disclosure requirement." *Id.* Indeed, the exemptions "are intended to have meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). CBP withheld information under four FOIA exemptions: 5 U.S.C. §§ 552(b)(5) ("Exemption (b)(5)"), (b)(6) ("Exemption (b)(6)"), (b)(7)(C) ("Exemption (b)(7)(C)"), and (b)(7)(E) ("Exemption (b)(7)(E)"). SMF, ¶ 47.

### 3. Segregability

FOIA requires government agencies to disclose "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt." *Kuzma,* 2016 WL

9446868, *6 (quoting 5 U.S.C. § 552(b)). Non-exempt portions of a record may be withheld only if they are "inextricably intertwined" with the exempt portions. *Id.* (quoting *Inner City Press/Cmty. on the Move v. Bd. of Governors of the Fed. Reserve Sys.*, 463 F.3d 239, 249 n. 10 (2d Cir. 2006)). An agency is entitled to a presumption that it complied with FOIA's segregability requirements. *Id.* (citing *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)).

Personnel from the FOIA Division reviewed all 251 responsive pages, line-by-line, to confirm that any withholdings were proper and to determine whether any segregable, non-exempt information could further be released. SMF, ¶ ¶42,46. In doing so, they determined that 61 of those pages included no exempt information, and those materials were released to Plaintiff in full. *Id.* at ¶ 45. They determined that 190 pages included information that was covered by one or more FOIA exemptions, and those materials were released in part. *Id.* CBP did not withhold non-exempt information. *Id.* at ¶ 46. Accordingly, CBP conducted an appropriate segregability review. ¶ 46. *See, Am. Immigration Lawyers Ass'n.*, 485 F. Supp. 3d at 113 ("CBP represents that its 'analysts and attorneys reviewed each release of records line-by-line to confirm that any withholdings were proper, examined whether any discretionary waiver of any exemption was warranted, and determined whether any segregable, non-exempt information could further be released. …Based on this review, CBP concluded that 'all reasonably segregable portions of the relevant records have been released to AILA.' The Court finds that this representation combined with the *Vaughn* indexes satisfy CBP's segregability obligation.").

#### 4.  CBP Properly Withheld Information Under Exemption (b)(5)

Exemption (b)(5) covers "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency . . . " 5 U.S.C. § 552(b)(5).  "[T]his exemption incorporates . . . the deliberative process privilege." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021)); *see also Knight*, 30 F. 4th at 333-34 ("'Congress intended to incorporate into [Exemption (b)(5)] all the normal civil discovery privileges,' including the deliberative process privilege.") (quoting *Hopkins v. U.S. Dep't of Hous. & Urb. Dev.*, 929 F.2d 81, 84 (2d Cir. 1991)).

The "deliberative process privilege shields from disclosure 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Sierra Club, Inc.*, 141 S. Ct. at 785.  The privilege "encourage[s] candor, which improves agency decision making," by "blunt[ing] the chilling effect that accompanies the prospect of disclosure." *Id.* at 184. Indeed, the deliberative process privilege rests on "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is 'to enhance the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *New York Times v. U.S. Dep't of Educ.*, 2023 WL 2267438 *5 (S.D.N.Y. Feb. 28, 2023) (quoting *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002).

Consistent with the rationale underlying the deliberative process privilege, Exemption (b)(5) applies to "predecisional, deliberative documents."  *See Sierra Club*, 141 S. Ct. at 785.  Generally, "[d]ocuments are 'predecisional' if they were generated before the

agency's final decision on [a] matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." *Id.*

CBP applied Exemption (b)(5) to five pages of records consisting of intra-agency emails. SMF, ¶ 50, Exhibit A.  Those records constitute internal pre-decisional deliberations and recommendations of CBP employees pertaining to Plaintiff's NEXUS eligibility, and they predate CBP's decision regarding Plaintiff's NEXUS eligibility. *Id.*, ¶ 51.

Release of those predecisional, deliberative records could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occur when CBP officials engage in decision-making processes.  SMF, ¶ 52.  If CBP officials knew that their comments, discussions, and recommendations would be released for public consumption, they would be more circumspect in what they put in writing, thereby impeding candid discussions of the issues surrounding a decision. *Id.*, ¶ 53 *see also Fox News Network, LLC v. U.S. Dep't of Treasury*, 911 F. Supp. 2d 261 (S.D.N.Y. 2012) (withholding under the deliberative process privilege an email thread reflecting the personal views of agency officials concerning a news report); *Berryhill v. Bonneville Power Admin.*, 509 F. Supp. 3d 1288 (D. Or. 2020) (finding that withheld emails were entitled to protection because they were made before the agency made a final decision as to how to proceed, and they reflected personal opinions and suggestions of agency employees, including the give-and-take of agency internal deliberations on how to proceed in a particular matter).

Accordingly, these five pages fall within the deliberative process privilege and are exempt from disclosure under Exemption (b)(5).[2]

---

[2] Those five pages also include information that is also exempt from disclosure under Exemptions (b)(6), (b)(7)(C), and (b)(7)(E), which are discussed below.

### 5. CBP Properly Withheld Information Under Exemption (b)(7)(E)

Exemption (b)(7)(E) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law . . . ." 5 U.S.C. § 552(b)(7)(E).

This exemption excludes documents from FOIA's disclosure requirement if an agency satisfies two conditions. *See Knight*, 30 F. 4th at 327. "First, the agency must show that the records were 'compiled for law enforcement purposes.'" *Id.* (quoting 5 U.S.C. § 552(b)(7)). "Second, the agency must show that the records either (1) 'would disclose *techniques and procedures* for law enforcement investigations or prosecutions'; or (2) 'would disclose *guidelines* for law enforcement investigations or prosecutions' *and* 'such disclosure could reasonably be expected to risk circumvention of the law.'" *Id.* (emphasis in original) (quoting 5 U.S.C. § 552(b)(7)(E)).

The threshold requirement for qualifying under Exemption (b)(7)(E)— that records were compiled for law enforcement purposes— "turns on the purpose for which the document sought to be withheld was prepared." *Knight*, 30 F.4th at 327 (quoting *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 624 (1982)). "The Supreme Court has interpreted this requirement broadly." *Id.* An agency must merely "establish a rational nexus between the agency's activity in compiling the documents and its law enforcement duties." *Buckley*, 2021 WL 5371463 *7 (quoting *New York Times Co.*, 390 F. Supp. 3d. 499, 513 (S.D.N.Y. 2019). Courts broadly construe the terms "law enforcement" and "compiled," with law

enforcement purposes consisting of either civil or criminal matters, or an agency's "proactive steps designed to prevent criminal activity and maintain security." *Id.* (quoting *Human Rights Watch v. U.S. Dep't of Justice*, 2015 WL 5459713 *5 (S.D.N.Y. Sept. 16, 2015) and *Milner v. U.S. Dep't of the Navy*, 562 U.S. 562, 582 (2011)). "The act of compiling records for law enforcement purposes requires only 'that a document be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption.'" *Id.*

CBP satisfies this threshold requirement of Exemption (b)(7)(E). CBP is a component law enforcement agency of DHS with statutory responsibility for safeguarding America's borders and facilitating legitimate trade and travel. *See* 6 U.S.C. § 211; *Hernandez v. Mesa*, 140 S. Ct. 735, 746 (2020) ("[T]he responsibility for attempting to prevent the illegal entry of dangerous persons and goods rests primarily with the U.S. Customs and Border Protection Agency, and one of its main responsibilities is to detect, respond to, and interdict terrorists, drug smugglers and traffickers, human smugglers and traffickers, and other persons who may undermine the security of the United States.") (citing 6 U.S.C. § 211(c)(5)); *see also*, SMF, ¶ 31, detailing CBP's statutory responsibilities.

Here, the responsive records were compiled for CBP's law enforcement purposes in that they were created and used by CBP in its law enforcement mission to secure the international borders of the United States. SMF, ¶ 31. This includes records relating to Plaintiff's encounters with CBP personnel at ports of entry, and relating to his participation in CBP's NEXUS program, which directly relate to CBP's law enforcement activities and border security purposes. *Id.* As such, there is no dispute that the records at issue here were compiled for law enforcement purposes. *See Bishop v. U.S. Dep't of Homeland Sec.*, 45 F.

Supp. 3d 380, 391 (S.D.N.Y. 2014) (holding that CBP "documents satisfy the 'law enforcement purposes' requirement inasmuch as they pertain to CBP's attempts to control the borders and identify potential criminal activity or illegal immigration"); *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 30 F. Supp. 3d 67, 75 (D.D.C. 2014) (finding that CBP documents satisfied the law enforcement purposes requirement where "the withheld records ha[d] a rational nexus to the agency's law-enforcement duties, including the prevention of terrorism and unlawful immigration"); *Concepcion v. U.S. Customs & Border Prot.*, 907 F. Supp. 2d 133, 140-41 (D.D.C. 2012) (finding that CBP's "Passenger Activity report regarding [the plaintiff] is a law enforcement record within the scope of Exemption 7").

"Once it is determined that the information at issue was compiled for law enforcement purposes . . . , a court must determine whether release of the records or information would disclose (1) techniques or procedures for law enforcement investigations or prosecutions, or (2) guidelines for law enforcement investigations or prosecutions, if disclosure could reasonably be expected to risk circumvention of the law." *Kuzma*, 2016 WL 9446868, at *11.

The first clause covers records that disclose "techniques and procedures" for law enforcement investigations or prosecutions. *See Allard K. Lowenstein Int'l Hum. Rts. Project v. Dep't of Homeland Security*, 626 F.3d 678, 681 (2d Cir. 2010) (citing 5 U.S.C. § 552(b)(7)). "Techniques and procedures . . . refers to how law enforcement officials go about investigating a crime." *Knight*, 30 F. 4th at 329 (quoting *Lowenstein*, 626 F.3d at 682). "Stated simply, 'techniques or procedures' includes both law enforcement methods—the actions that law enforcement personnel take to identify and neutralize bad actors—as well as the triggers for the application of methods." *Id.; see also Buckley*, 2021 WL 5371463 *17

13

(stating that a "technique" is "a technical method of accomplishing a desired aim," and a "procedure" is "a particular way of doing something or going about the accomplishment of something.") (quoting *Lowenstein*, 626 F.3d at 681).

Exemption (b)(7)(E) covers investigative techniques and procedures not generally known to the public. *ACLU Found. v. U.S. Dep't Homeland Sec.*, 243 F. Supp. 3d 393, 402 (S.D.N.Y. 2017). More recently, the Second Circuit stated that "law-enforcement documents revealing techniques and procedures are exempt from disclosure *per se*." *Knight*, 30 F.4th at 329. Such information is thus protected without a need for "demonstration of harm." *See Lowenstein*, 626 F.3d at 681. "The key issue in determining whether redacted material contains 'techniques or procedures' under Exemption 7(E) is whether disclosure of that material would reveal particulars about the way in which an agency enforces the law and the circumstances that will prompt it to act." *Knight*, 30 F.4th at 331. Indeed, "an agency does not have to release all details concerning law enforcement techniques just because some aspects of them are known to the public.'" *Bishop*, 45 F. Supp. 3d at 391. Even commonly known procedures may be protected if their disclosure could reduce or nullify their effectiveness. *Id.,* at 387 (quoting *Vazquez v. U.S. Dep't of Justice,* 887 F. Supp. 2d 114, 116-17 (D.D.C. 2012)).

The second type of information protected by Exemption (b)(7)(E) is "guidelines for law enforcement investigations or prosecutions if . . . disclosure could reasonably be expected to risk circumvention of the law." *Lowenstein*, 626 F.3d at 681 (citing 5 U.S.C. § 552(b)(7)(E)). The term guidelines gives "an indication or outline of future policy or conduct" and reflects how an agency allocates its resources." *Id.,* at 682.

While law-enforcement documents revealing techniques and procedures are exempt from disclosure *per se*, documents revealing guidelines are exempt only "if such disclosure could reasonably be expected to risk circumvention of the law." *Knight*, 30 F. 4th at 329 (quoting *Lowenstein*, 626 F.3d at 681). "Thus, to withhold 'guidelines for law enforcement,' an agency must make an additional showing that is not required before withholding 'techniques or procedures.'" *Id.* at 327. This exception for guidelines "looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 42 (D.C. Cir. 2010); *see also Mayer Brown LLP v. Internal Revenue Serv.*, 562 F.3d 1190, 1193 (D.C. Cir. 2009) ("Exemption 7(E) clearly protects information that would *train* potential violators to evade the law or *instruct* them how to break the law," and "exempts information that could *increase the risks* that a law will be violated or that past violators will escape legal consequences."). Thus, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding." *Blackwell*, 646 F.3d at 42. Where an agency specializes in law enforcement, as CBP does, *see* SMF, ¶ 31; its decision to invoke Exemption (b)(7)(E) is entitled to deference. *See Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998).

Here, CBP applied Exemption (b)(7)(E) in numerous instances to withhold information revealing law enforcement "techniques" and "procedures." SMF, ¶¶ 56-58. This withheld information, which is not generally known to the public, *see id.* at ¶ 59, is exempt from disclosure *per se*. Even if the withheld information is considered "guidelines"

instead of "techniques" or "procedures," it was nonetheless properly withheld under

Exemption (b)(7)(E) because disclosure of such information could "reasonably be expected

to risk circumvention of the law." *Id.* at ¶ 60.

CBP is constrained in describing the techniques, procedures, and guidelines withheld

under Exemption (b)(7)(E) so as to avoid revealing the very information CBP seeks to

protect. SMF, ¶ 54; *Am. Immigration Lawyers Ass'n*, 485 F. Supp. 3d. at 108. As described in

the Howard Declaration and accompanying *Vaughn* index, CBP applied Exemption

(b)(7)(E) to the following general types of information:

   a.   **Information relating to techniques and procedures for inspecting travelers
        and assessing law enforcement risks associated with travelers SMF, ¶¶ 56-
        61**

This includes information relating to methods used by CBP to detect travelers'

criminal activity, and criteria used by CBP to determine which travelers require further

scrutiny. *Id.* at ¶ 56. This also includes methods for processing and querying records in law

enforcement systems and databases, including how information in those systems and

databases is accessed and searched, and how encounters are documented in those systems

and databases. *Id.* And this includes methods used by CBP to assess travelers' NEXUS

eligibility, including the names of the CBP and third-party agency/department systems and

databases used to assess such eligibility, the information from those systems and databases

used to assess such eligibility, and the manner in which such information is integrated and

analyzed. *Id.*

For example, CBP withheld information on numerous documents describing specific

methods used by CBP officers to inspect Plaintiff during encounters at ports entry. SMF, ¶

57. CBP withheld information describing the reasons that Plaintiff was referred, on several

16

occasions, for a secondary inspection. *Id.* 58. CBP withheld information showing how

CBP personnel used law enforcement computer systems and databases—to include

identifying how those systems and databases were queried and the results of those queries—

stemming from CBP's encounters with Plaintiff. *Id.* And CBP withheld information

showing how CBP personnel used law enforcement computer systems and databases—to

include identifying how those systems and databases were queried and the results of those

queries—stemming from its encounters with Plaintiff, and its assessment of his NEXUS

eligibility. *Id.*

This type of information is regularly withheld under Exemption (b)(7)(E). *See, e.g.,*

*Bishop v U.S. Dep't of Homeland Security*, 43 F. Supp. 3d at 387-89 (withholding information

from inspection records about the names of the law enforcement databases that were

queried by CBP relating to the plaintiffs and the results of those queries, and withholding

information from secondary inspection reports information about examination and

inspection procedures and internal reporting requirements, including identifying the reasons

why a person traveling through border security is chosen for additional screening); *Pickering*

*v. United States DOJ,* 2021 U.S. Dist. LEXIS 234206, at \*59 (W.D.N.Y. Dec. 7, 2021) (finding

that the identities of non-public databases and the search results of those databases were

properly withheld under Exception 7(E)); *Gonzalez v. U.S. Citizenship & Immigr. Servs.*, 475 F.

Supp. 3d 334, 351-52 (S.D.N.Y. 2020) (holding that the manner by which the law

enforcement agencies "label cases, access databases, and maintain information regarding

cases in general falls within FOIA Exemption 7(E) for 'law enforcement technique and

procedures.'"); *Shapiro v. U.S. Dep't of Justice*, 893 F.3d 796, 800 (D.C. Cir.

2018) (concluding that the FBI appropriately withheld records under Exemption 7(E) on the

basis that "releasing them would provide information on how a database is searched, organized, and reported"); *Rojas-Vega v. U.S. Immigration & Customs Enforcement*, 302 F. Supp. 3d 300, 310-11 (D.D.C. 2018) (agreeing with the defending agency's assertion that "the manner by which ICE employees label cases, access databases, and maintain information regarding a case 'is both a law enforcement technique and procedure that is not commonly known to the public.'"); *Etessami v. U.S. Customs & Border Prot.*, 2017 U.S. Dist. LEXIS 169388, *8-9 (D.D.C. May 19, 2017) (holding that CBP properly redacted "information that would reveal the results of specific law enforcement database queries"); *Hasbrouck v. U.S. Customs & Border Prot.*, 2012 WL 177563, *4 (N.D. Cal. Jan. 23, 2012) (finding that CBP could rely on Exemption 7(E) to avoid "disclosure of the list of 'personal' or 'unique' identifiers by which data can be retrieved" from law enforcement databases about an individual); *Asian Law Caucus v. U.S. Dep't of Homeland Sec.*, 2008 WL 5047839, *4-5 (N.D. Cal. Nov. 24, 2008) (withholding under Exemption 7(E) "information about the operation of watchlists" and "specific topics for questioning individuals attempting to enter the United States" and "procedures for coordination with other law enforcement agencies").

Like Plaintiff here, the plaintiff in *Paco v. U.S. Customs & Border Prot.*, 2016 WL 344522 (D.N.J. Jan. 27, 2016), requested FOIA records relating to CBP's determination to revoke his membership in one of CBP's Trusted Traveler Programs. *Id.* at *1. CBP released eleven pages of redacted records from GES, withholding under Exemption (b)(7)(E): (1) the lower left-hand corner of all pages of the biographic summary, request list, comment list, and risk assessment worksheet; (2) a portion of the comment list under "Comment;" and (3) portions of the Risk Assessment Worksheet that included "Query Results," "Findings," and "Supporting Information." *Id.* at *6. CBP invoked this exemption to protect "information

that would reveal how queries were conducted in specific law enforcement databases and the results of those queries." *Id.* The court found that CBP properly withheld the information because it could be used to circumvent the law by allowing individuals to "alter their patterns of conduct, adopt new methods of operation, relocate, change associations, and effectuate other countermeasures thus corrupting the integrity of ongoing and future investigations." *Id.* at 6.

As with the information in *Paco*, disclosure of this type of information in this case would be detrimental to both CBP and the law enforcement community because, for example, it could be used by individuals attempting to circumvent or violate immigration and customs laws to alter patterns of conduct, predict CBP's investigative strategy, adopt new methods of operation to conceal criminal activity, and develop countermeasures to thwart the effectiveness of CBP's law enforcement efforts. SMF ¶ 60. Disclosure would also threaten efforts to foster open communication across agencies and cohesive law enforcement and national security efforts, and it could have far-reaching effects, impairing other agencies' law enforcement operations or their ability to effectively carry out their respective missions. *Id.* at ¶ 61. Moreover, the information withheld in response to Plaintiff's FOIA request is not generally known by the public. SMF, ¶ 59. Thus, CBP properly redacted information relating to techniques and procedures for inspecting travelers and assessing law enforcement risks associated with travelers.

      **b.**      **Information relating to CBP systems and databases SMF ¶¶ 63-65.**

This information is not generally known by the public. *Id.* at ¶ 63. Disclosure of this information could be used to locate, access, and navigate internal law enforcement computer

systems and databases, and could allow manipulation or deletion of data and/or interfere with enforcement proceedings. *Id*. at ¶ 34.

This information is routinely withheld under Exemption (b)(7)(E). *Immigrant Def. Project v. U.S. Dep't of Homeland Sec.*, 2023 WL 1966178, *10 (S.D.N.Y. Feb. 13, 2023) (stating that "[m]ultiple courts have concluded that information regarding internal databases and access procedures are exempt from disclosure" and agreeing with the defendant agency that disclosure of this information would risk circumvention of the law because "[k]nowledge of . . . system database codes can lead to denial-of-service attacks and/or manipulation of systems if access is gained"); *Gonzalez*, 475 F. Supp. 3d at 351-52 ("Courts frequently find that . . . case event codes and URLs of internal law enforcement databases [are] properly withheld under Exemption 7(E)."); *Am. Immigration Lawyers Ass'n*, 485 F. Supp. 3d. at 111 (stating it is "unnecessary to justify each redaction for 'names of databases,' 'internal system codes,' or 'information related to CBP system interfaces' because access to any of this information exposes CBP systems to potential threats and unwanted access").

The withheld information at issue in this case is precisely the type of information that Exemption (b)(7)(E) is designed to protect. Because the information withheld by CBP pertains directly to CBP's enforcement of customs and immigration laws and falls squarely within Exemption (b)(7)(E), CBP properly withheld information under Exemption (b)(7)(E).

### 6. CBP Properly Withheld Information Under Exemptions (b)(6) and (b)(7)(C)

Exemption (b)(6) permits the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The exemption is intended to "protect individuals

from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Kuzma*, 2016 WL 9446868, *8.

"To determine whether identifying information may be withheld pursuant to Exemption 6, the court 'must: (1) determine whether the identifying information is contained in 'personnel and medical files and similar files;' and (2) balance the public need for the information against the individual's privacy interest in order to assess whether disclosure would constitute a clearly unwarranted invasion of personal privacy." *Buckley*, 2021 WL 5371463 *13 (quoting *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 291 (2d Cir. 2009) and *Wood v. Fed. Bureau of Investigation*, 432 F.3d 78, 86 (2d Cir. 2005)).

"Similar files" is a broad category that includes "detailed Government records on an individual which can be identified as applying to that individual." *U.S. Department of State v. Washington Post*, 456 U.S. 595, 602 (1982). "In keeping with the purpose of FOIA, it is the personal nature of the information contained in a record that controls, not the label on the file in which it is contained." *Kuzma*, 2016 WL 9446868, *8, citing *Washington Post,* ("The protection of an individual's right of privacy which Congress sought to achieve by preventing the disclosure of information which might harm the individual surely was not intended to turn upon the label of the file which contains the damaging information.").

"Second, if the record is a personnel or medical or similar file, the court must 'balance the public need for the information against the individual's privacy interest in order to assess whether disclosure would constitute a clearly unwarranted invasion of personal privacy.'" *Cook v. National Archives and Records Admin.*, 758 F.3d 168, 174 (2d Cir. 2014). In this regard, the court must determine "whether disclosure of the files would compromise a substantial, as opposed to *de minimis*, privacy interest, because if no significant privacy

interest is implicated FOIA demands disclosure." *Id. (quoting Long v. Office of Personnel Mgmt*, 692 F.3d 185, 191 (2d Cir. 2012)).

Similarly, Exemption (b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Because the CBP records at issue here were compiled for law enforcement purposes, as discussed above, Exemption (b)(7)(C) is properly invoked when the invasion of personal privacy outweighs the public's interest in disclosure. *See Kuzma*, 2016 WL 9446868, at 8 (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-72 (2004)). This exemption is more expansive than Exemption (b)(6) because, "whereas Exemption 6 refers to disclosures that 'would constitute' an invasion of privacy, Exemption 7(C) encompasses any disclosure that could reasonably be expected to constitute such an invasion.'" *See U.S. Dep't. of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 756 (1989).

Because Exemptions (b)(6) and (b)(7)(C) both balance individuals' privacy interests in protecting personal information from disclosure against the public interest in disclosure under similar standards, they are often analyzed together. *Conti v. U.S. Dep't of Homeland Sec.*, 2014 WL 1274517, *17 (S.D.N.Y. Mar. 24, 2014).

Here, CBP applied Exemptions (b)(6) and (b)(7)(C) in tandem to records, which were compiled for law enforcement purposes, such that information in those records protected by one exemption is also protected by the other. SMF, ¶ 68. CBP applied these exemptions to withhold personally identifiable information about CBP law enforcement personnel and other CBP employees, such as their names, email addresses, telephone numbers, unique

hash identification numbers, and other personal identifiers. SMF, ¶ 69. For example, on numerous documents, CBP withheld the names of CBP officers and supervisory CBP officers who inspected Plaintiff at ports of entry. *Id.* at ¶ 70. CBP also withheld on several documents the unique hash identification numbers, used in CBP computer systems, that identify CBP law enforcement personnel involved in inspecting and processing Plaintiff. *Id.* at ¶ 71.

Withholding this information protects CBP personnel from harassment and annoyance in their private lives due to the conduct of their official duties, which could conceivably result from public disclosure of their identity. *Id. See also Gonzalez*, 475 F. Supp. 3d at 351-52 ("Courts frequently find that . . . personally identifiable information pertaining to Government agents and third parties . . . is properly withheld under Exemption 7(E)"); *Paco*, 2016 WL 344522, *5 (finding that CBP properly redacted under Exemptions (b)(6) and (b)(7)(C) "terminal identifiers" and the names and phone numbers CBP employees who conducted records searches and reviews, because disclosure would "amount[] to a 'clearly unwarranted invasion of personal privacy' that provides little insight to the public as to why CBP revoked Plaintiff's membership in the global traveler program, or how CBP responds to such inquiries generally."). Indeed, the Second Circuit Court of Appeals has recognized that government investigative personnel may be subject to harassment or embarrassment if their identities are disclosed. *See, e.g., Wood*, 432 F.3d at 78. Thus, the right of CBP employees to have their identities withheld from disclosure outweighs the public interest, if any, in releasing that information.

CBP also applied these exemptions to withhold the names of non-employee third parties, as well as information by which those individuals could be identified, such as license

plate numbers that may be registered to a third-party.  SMF, ¶ 73.  Withholding this

information protects those third parties from comment, speculation, and stigmatizing

connotation associated with being identified in a law enforcement record.  SMF *See,* ¶ 74.

*Associated Press*, 554 F.3d at 285 ("It is well established that identifying information such as

names, addresses, and other personal information falls within the ambit of privacy concerns

under FOIA"); *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir.

2006) (withholding files about an individual and "bits of personal information, such as

names and addresses.").

     Here, none of the CBP employees or third parties whose personal information was

withheld provided authorization to release their personal information.  SMF, ¶ 75.  Those

CBP employees and third parties have a privacy interest to be free of unwarranted attention,

and releasing their identities, without their authorization, would violate their legitimate

privacy interests.  *Id*. at ¶ 76.  Disclosing the identities of these CBP employees or third

parties would constitute unwarranted invasion of privacy without meaningfully shedding

light on how the government performs its duties.  *Id*. at ¶ 77.  Whatever minimal interest the

public could have in knowing the personally information of these CBP employees and third

parties does not outweigh the personal privacy interests of these CBP employees and third

parties.  *Id*. at ¶ 78.  Accordingly, CBP's designation of Exemptions (b)(6) and (b)(7)(C) was

proper.

## CONCLUSION

The Court should grant CBP's motion for summary judgment, and Plaintiff's FOIA claim should be dismissed in its entirety with prejudice.

DATED:  Buffalo, New York, October 16, 2023

> TRINI E. ROSS
> United States Attorney
>
> BY:    S/MARY K. ROACH
> Assistant U.S. Attorney
> U.S. Attorney's Office
> Western District of New York
> 138 Delaware Avenue
> Buffalo, New York 14202
> 716-843-5866
> mary.k.roach@usdoj.gov