UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MATTHEW BOROWSKI,

                    Plaintiff,

            v.

U.S. CUSTOMS AND BORDER
PROTECTION,

                    Defendant.
_____

**DECISION AND ORDER**

1:23-CV-00257 EAW

## INTRODUCTION

Plaintiff Matthew Borowski ("Plaintiff") regularly crosses the United States-Canada border as he commutes from his home in Canada to his office in Cheektowaga, New York, putting him in almost daily contact with defendant U.S. Customs and Border Protection ("CBP") ("Defendant"). By his own count, he has crossed the border thousands of times over more than a decade. At times, the interactions between Plaintiff (and his family) and Defendant have been contentious.

Plaintiff's amended complaint, which is the operative pleading, alleges numerous claims related to his interactions with Defendant. (Dkt. 9). First, Plaintiff asserts a claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), for Defendant's revocation of his membership in the NEXUS Trusted Traveler Program ("NEXUS program") as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." (*Id.* at ¶ 1). Second, Plaintiff alleges claims under the Federal Tort Claims Act ("FTCA") for false arrest, false imprisonment, battery, and intentional infliction of

- 1 -

emotional distress.  (*Id.*).  Third, Plaintiff alleges claims under the First, Fourth, Fifth, and Fourteenth Amendments of the Constitution ("constitutional claims") for violation of his rights to free speech, freedom from compelled speech, freedom from unreasonable arrest, search and seizure, deprivation of liberty and property without due process of law, freedom from self-incrimination, and deprivation of due process and equal protection under the law. (*Id.*).  Fourth, Plaintiff argues a violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for improperly withholding agency records.  (*Id.*).

Presently before the Court is Defendant's motion to dismiss the APA, FTCA, and constitutional claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  (Dkt. 13).[1]  For the reasons that follow, the Court denies Defendant's motion directed to the APA claim, but grants it with respect to the FTCA and constitutional claims.

## FACTUAL BACKGROUND

The following facts are taken from the allegations in Plaintiff's amended complaint. (Dkt. 9).  As required at this stage of the proceedings, Plaintiff's allegations are treated as true.

Plaintiff, an attorney representing himself in this action,[2] is a U.S. citizen who practices immigration law in Western New York, is a vocal advocate for immigrants' rights,

---

[1]     Defendant has separately filed a motion for partial summary judgment directed to the FOIA claim.  (Dkt. 19).  That motion will be addressed in due course in a separate Decision and Order.

[2]     Plaintiff argues that he "should be accorded due consideration as a pro se plaintiff" because he is not a civil rights lawyer, his claims implicate a "complicated area of law[,]

and has participated in political speech criticizing the federal government's immigration policies. (*Id.* at ¶ 6). He represents non-U.S. citizens in Immigration Court and federal court as a substantial part of his practice. (*Id.*). Plaintiff is a licensed attorney in New York and Canada, has clean criminal and driving records, and has not violated customs laws or regulations. (*Id.* at ¶ 76).

Given his regular commute between Canada and New York, Plaintiff obtained membership in the NEXUS program to expedite his border crossings by using dedicated lanes at ports of entry. (*See id.* at ¶¶ 7, 9). Defendant administers the NEXUS program. (*Id.* at ¶ 7). Plaintiff used his NEXUS card "the vast majority of the time" to cross the border since he was first approved for the NEXUS program in approximately 2012 and began practicing law in Buffalo, New York in 2013. (*Id.* at ¶¶ 8-9). All of Plaintiff's business activities are in the United States, including rental properties that he manages, as well as his law practice. (*Id.* at ¶ 75). Plaintiff relied on his NEXUS membership to routinely travel across the border for over ten years. (*Id.*).

On December 14, 2013, Plaintiff's wife was attacked by Vincent Mordino ("Mordino"), a CBP officer, when she reached into the back of the family's vehicle to

---

and [he] ha[s] numerous other obligations." (Dkt. 17 at 1). The Court rejects this argument. Although "a court is ordinarily obligated to afford a special solicitude to *pro se* litigants," this allowance does not normally extend to a lawyer representing himself. *Bank v. Sirlin*, 830 F. App'x 690, 690 (2d Cir. 2020) ("Bank is an attorney representing himself and thus he is not entitled to special solicitude") (citing *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010)). Plaintiff, an attorney admitted to practice before this Court, elected to commence this litigation on his own and act as his own attorney. He will be held to the same standards and expected to comply with the same requirements applicable to all attorneys appearing before the Court.

comfort her crying infant while Mordino inspected the vehicle.[3]  (*Id.* at ¶ 10).  Mordino collected and revoked the NEXUS cards of Plaintiff and his wife.  (*Id.* at ¶ 11).  Defendant detained Plaintiff's wife and held Plaintiff, his wife, and their children in secondary inspection for approximately three hours.  (*Id.*).  Plaintiff's wife was given a ticket for "failure to obey lawful order" with a $75.00 fine written on it.  (*Id.*).  On March 28, 2014, United States Magistrate Judge McCarthy dismissed the charge against Plaintiff's wife after a bench trial.  (*Id.* at ¶ 12).  Defendant returned the NEXUS cards of Plaintiff and his wife after Plaintiff made a written demand for their return.  (*Id.* at ¶ 13).  After the incident between Plaintiff's wife and Mordino and while Plaintiff's wife's lawsuit against him was ongoing, Mordino threatened and/or harassed Plaintiff during Plaintiff's commutes across the border.  (*Id.* at ¶ 15).  On one occasion, Mordino lunged at Plaintiff and had to be restrained by other officers employed by Defendant.  (*Id.* at ¶ 16).

Plaintiff submitted a renewal application for the NEXUS program on or about August 11, 2017, and he received a new NEXUS card on September 17, 2017, valid through November 1, 2022.  (*Id.* at ¶¶ 18-19).  Defendant's records dated September 17, 2017, and released through FOIA indicate that an unnamed "Director" noted "[n]o disqualifying

---

[3]     In 2016, Plaintiff's wife brought an action in this District against Mordino arising from the incident on December 14, 2013.  While not material to the instant action, the Court notes that Mordino's motion for summary judgment was granted, and the court found that Mordino's actions "were objectively reasonable under the circumstances, and that no reasonable juror could conclude otherwise."  *Borowski v. Mordino*, 1:16-CV-999 LJV (MJR), 2020 WL 6084941, at *7 (W.D.N.Y. July 21, 2020), *report and recommendation adopted*, 2020 WL 6083425 (W.D.N.Y. Oct. 15, 2020).

information found" during a "Director Review" of Plaintiff's NEXUS renewal application. (*See id.* at ¶ 43).

On January 3, 2018, Plaintiff forgot to declare a banana in his carry-on bag at Washington Dulles International Airport after arriving on a flight from Mexico.  (*Id.* at ¶¶ 25, 30).  Plaintiff used a Global Entry kiosk at an airport for the first time and was unfamiliar with how the kiosk worked, and he verbally declared the banana to the first officer employed by Defendant that he could locate.  (*Id.*).  An officer employed by the Defendant noted the incident in the agency's computer system and indicated that Plaintiff "lied stating that is the first time he uses global entry when he comes and goes into Canada and us all the time."  (*Id.* at ¶ 25).

On July 11, 2018, Plaintiff engaged in a brief protest at the Immigration Court in Buffalo against a policy requiring building entrants to stand and face a photo of then-President Trump while undergoing a physical security screening and against the Trump administration's immigration policy.  (*Id.* at ¶ 21).  Plaintiff held up a poster board while being screened to obscure the photo of then-President Trump and was harassed by contract security guards and Federal Protective Service Officer Nielsen.  (*Id.*).  Plaintiff was charged with violating "4 C.F.R. 102-74.390"[4] for "creating a disturbance in lobby," but the United States Attorney's Office for the Western District of New York declined to prosecute the charge.  (*Id.*).  Plaintiff continued his advocacy efforts and public criticism of the Trump

---

[4]     The Court was not able to locate a relevant federal regulation at Title 4 of the Code of Federal Regulations and assumes that the operative regulation in this context is 41 C.F.R. § 102-74.390.

administration's immigration policy, including while representing clients in the custody of Defendant. (*Id.* at ¶ 22).

Over time, Defendant sent Plaintiff to secondary inspection on numerous occasions and searched his vehicle and person when he was a member of the NEXUS program, but Plaintiff was not found to have violated any rules. (*Id.* at ¶ 24). On February 20, 2019, Plaintiff crossed the border into Buffalo as part of his regular commute. (*Id.* at ¶ 23). At the primary inspection booth, Pasquarella, an officer employed by Defendant, ordered Plaintiff to put his vehicle in park, turn off the ignition, and keep his hands on the steering wheel. (*Id.*). Other officers arrived, and Plaintiff was ordered to exit his vehicle, walk backwards with his hands in the air, and then place his hands on the back window of his vehicle. (*Id.*). Plaintiff was frisked by an officer he believed was named Chmielowiec, and the officer took Plaintiff into a secured area inside the secondary inspection building, where he was ordered to empty his pockets. (*Id.*). Defendant held Plaintiff for approximately two hours and 15 minutes, during which it searched his briefcase and vehicle, before releasing him. (*See id.*). Plaintiff asked why he was arrested and detained but was given no explanation, including by Chief Marty Lawrence, who was employed by Defendant. (*Id.*).

According to Defendant's records dated February 26, 2019, and released via FOIA, Plaintiff "[s]till meets eligibility criteria" for the NEXUS program. (*See id.* at ¶ 44). Plaintiff applied to renew his NEXUS membership on May 26, 2022, since his NEXUS card was due to expire in November 2022. (*Id.* at ¶ 26). Defendant's policy at the time

allowed NEXUS members to use their cards past their expiration date if the member's renewal application was pending.  (*Id.*).

On December 20, 2022, Plaintiff received two letters indicating that his NEXUS membership had been revoked because he did "not meet program eligibility requirements." (*Id.* at ¶ 27).  Defendant provided no further explanation.  (*Id.*).  That same day, Plaintiff filed a "Reconsideration Request" with Defendant.  (*Id.* at ¶ 28).  Also that day, Plaintiff went to the NEXUS Enrollment Center in Niagara Falls, New York, to ask why his membership had been revoked.  (*Id.* at ¶ 29).  Officers employed by Defendant did not provide Plaintiff with any information and refused to accept a written FOIA request that he attempted to serve on them.  (*Id.*).  Officers mocked Plaintiff for attempting to file a FOIA request in this manner and noted in internal notes that Plaintiff was "mildly confrontational."  (*Id.*).  Plaintiff subsequently submitted an online FOIA request to Defendant on December 22, 2022.  (*Id.* at ¶ 31).

On or about December 21, 2022, Plaintiff spoke with NEXUS Supervisor Schwab, who declined to tell Plaintiff why his NEXUS membership had been revoked.  (*Id.* at ¶ 30). Schwab indicated that the incident in 2018 when Plaintiff forgot to declare the banana in his carry-on bag was not the reason for the revocation but refused to share the actual reason. (*Id.*).  Plaintiff asked if his past issues with Mordino could have played a role in the revocation, which Schwab did not confirm or deny, but he noted that past incidents can "catch up to you in the future."  (*Id.*).

On December 31, 2022, Plaintiff applied for "TSA PreCheck," another Trusted Traveler Program, and was approved on an unspecified date. (*See id.* at ¶ 32). Plaintiff filed the first complaint in this action on March 22, 2023. (*Id.* at ¶ 34).

On April 5, 2023, Defendant arrested Plaintiff while he was crossing the border during his morning commute. (*Id.* at ¶ 35). Defendant temporarily seized Plaintiff's vehicle and held him in a locked detention area. (*Id.*). Plaintiff was told that he was detained because he refused to tell the officer at the primary inspection booth his plans upon entering the United States. (*Id.*). Plaintiff told the officer at the inspection booth that he was a U.S. citizen and presented a valid U.S. passport. (*Id.* at ¶ 37). Plaintiff spoke with Watch Commander Mann, an officer employed by Defendant, and Mann agreed that Plaintiff is not legally required to discuss his plans with the officer in the inspection booth. (*Id.* at ¶ 35). Mann essentially told Plaintiff that he should be prepared to be arrested whenever he refused to answer Defendant's questions during their interactions. (*Id.*).

On April 12, 2023, Defendant's Ombudsman sustained the denial of Plaintiff's reconsideration request to reinstate his NEXUS membership "based on the totality of noncompliance with the inspection process on numerous occasions," according to Defendant's records. (*Id.* at ¶ 41). The Ombudsman cited three incidents in 2013, one incident in 2014, one incident in 2016, and the "latest in 2023" as the "numerous occasions" justifying revocation. (*Id.* at ¶ 42).

Plaintiff received Defendant's response to his FOIA request on May 25, 2023. (*Id.* at ¶ 38). The documents were heavily redacted with no explanations provided. (*Id.*).

- 8 -

On May 29, 2023, Plaintiff faxed Defendant a letter demanding that the agency review the audio recording of the interaction with Plaintiff on April 5, 2023, and correct a note in Defendant's records that stated that Plaintiff "indicated to the Primary Officer that his citizenship was irrelevant." (*See id.* at ¶¶ 36, 39). Ten days later, Defendant informed Plaintiff that it had reviewed the audio recording and would amend its records since the Plaintiff's statement had been recorded incorrectly. (*See id.* at ¶ 40).

On June 8, 2023, Brown, the primary inspection officer at the border and who was employed by Defendant, arrested Plaintiff. (*Id.* at ¶¶ 56-57). The officer physically assaulted and battered Plaintiff by grabbing his cell phone out of his hand through his open car window without warning. (*Id.* at ¶ 58). Brown called Plaintiff "crazy" after Plaintiff attempted to explain that he would only answer questions about his citizenship and to declare any goods that he was carrying, but that he would not discuss his purpose for entering the United States in protest of Defendant's revocation of his NEXUS membership and because answering the question was compelled speech. (*Id.* at ¶ 57). A large group of officers employed by Defendant surrounded Plaintiff, ordered him out of his vehicle, and handcuffed him. (*Id.* at ¶ 60). Plaintiff spoke to a watch commander, who agreed that while an officer may inquire into an individual's purpose of travel, a U.S. citizen is not required to share their plans once in the country. (*Id.*). The watch commander told Plaintiff to tell officers that he is going to his office to avoid being handcuffed and detained in the future. (*Id.* at ¶ 61).

Since Defendant revoked his NEXUS membership in December 2022, Plaintiff uses regular travel lanes on his daily commute across the U.S.-Canada border, causing him to

face delays, sometimes for three hours or longer.  (*See id.* at ¶¶ 68, 71).  Plaintiff's wife, children, and extended family members are NEXUS members, and he cannot travel in the same vehicle with them when they use dedicated NEXUS lanes.  (*Id.* at ¶ 70).  His elderly mother and his brother live in the United States and suffer health problems, and Plaintiff routinely travels to visit them.  (*Id.* at ¶ 75).  Plaintiff will be forced to cancel business meetings and appointments and adjust his hours of travel to accommodate the border-crossing process.  (*Id.* at ¶ 71).

## PROCEDURAL BACKGROUND

Plaintiff commenced the instant action on March 22, 2023 (Dkt. 1) and filed an amended complaint on June 20, 2023 (Dkt. 9).  Defendant filed a motion to dismiss the APA, FTCA, and constitutional claims in the amended complaint for lack of subject matter jurisdiction on July 21, 2023.  (Dkt. 13).  Plaintiff filed a response in opposition to the motion to dismiss on August 21, 2023 (Dkt. 17), and Defendant filed its reply in further support of its motion to dismiss on August 29, 2023 (Dkt. 18).

## DISCUSSION

### I.    Legal Standard—Rule 12(b)(1)

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it."  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation and citation omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "When considering a motion

to dismiss for lack of subject matter jurisdiction . . ., a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).  In addition, a court is not limited to the allegations in the complaint and can "refer to evidence outside the pleadings," *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002), but it "may not rely on conclusory or hearsay statements contained in . . . affidavits," *J.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004).  "Indeed, a challenge to the jurisdictional elements of a plaintiff's claim allows the Court to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 289 F. Supp. 2d 392, 399 (S.D.N.Y. 2003) (quotation omitted), *aff'd*, 403 F.3d 76 (2d Cir. 2005).

## II.  Defendant's Motion to Dismiss the APA Claim

Defendant argues that Plaintiff's claim under the APA for Plaintiff's revoked NEXUS membership should be dismissed because the APA does not authorize judicial review of a decision left to the agency's sole discretion and Plaintiff has not sustained a legal wrong.  (Dkt. 13-3 at 11).  Because Plaintiff is still able to cross the U.S.-Canada border without his NEXUS card, "no rights, obligations or legal consequences flow from" the cancellation of Plaintiff's NEXUS card, according to Defendant.  (*Id.* at 15).

The APA "functions as an 'omnibus judicial-review provision,' permitting 'suit[s] for [agency] violations of numerous statutes of varying character that do not themselves include causes of action for judicial review.'"  *Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 128 (2d Cir. 2020) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014)).  "'In determining whether a suit can be

brought under the APA, "[w]e begin with the strong presumption that Congress intends judicial review of administrative action."'" *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (citation omitted). "However, the APA explicitly excludes from judicial review those agency actions that are 'committed to agency discretion by law.' The Supreme Court has specified at least two occasions in which that exclusion applies: '[I]n those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply,' and when 'the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011) (citations omitted); *see also Conyers*, 558 F.3d at 143 ("review under the APA may be excepted where: (i) 'statutes preclude judicial review;' or (ii) 'agency action is committed to agency discretion by law'") (quoting *Nat. Res. Def. Council v. Johnson,* 461 F.3d 164, 171 (2d Cir. 2006)). "Making this determination requires an examination of both the 'express language' of the statute, as well as 'the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.'" *Conyers*, 558 F.3d at 143 (quotations and citations omitted).

Even when a statute provides that a type of "agency action is committed to agency discretion by law," if the agency "announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy . . . could constitute action that must be overturned as 'arbitrary, capricious, or an abuse of discretion.'" *Salazar v. King*, 822 F.3d 61, 76 (2d Cir. 2016) (quoting *I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996)); *see also Ortiz v. Orange*

*County, N.Y.*, No. 23 CV 2802 (VB), 2024 WL 113705, at *8-9 (S.D.N.Y. Jan. 10, 2024) (denying motion to dismiss APA claim when immigration agencies adopted and followed "self-imposed rules" that limited their discretionary authority afforded under the federal statute). Courts have considered an agency's "Dear Colleague Letters," "the actions the agency has already taken," and agency manuals as sources that provide law to apply meaningful standards against which to judge the agency's exercise of discretion. *Salazar*, 822 F.3d at 80-81; *Nat. Res. Def. Council v. Dep't of Interior*, 410 F. Supp. 3d 582, 605 (S.D.N.Y. 2019).[5]

Here, the language of 8 U.S.C. § 1753, the authorizing statute for the NEXUS program, is relatively broad and does not outline an individual's eligibility for the program, nor does it explicitly preclude judicial review. According to the relevant sub-section of the statute:

> United States border inspections agencies . . . acting jointly and under an agreement of cooperation with the Government of Canada, may conduct joint United States-Canada inspections projects on the international border between the two countries. Each such project may provide alternative inspections services and shall undertake to harmonize the criteria for inspections applied by the two countries in implementing those projects.

8 U.S.C. § 1753(a).[6] Defendant has published two lists of disqualifying factors that it considers when determining a person's eligibility: one in a Federal Register Notice and the

---

[5]    Because of this, Defendant's suggestion that it is somehow dispositive that the factors relevant to eligibility for the NEXUS program are not codified in a final regulation (Dkt. 13-3 at 13 n.3) is misplaced and not a correct statement of the law.

[6]    Defendant references § 1753(c) of the authorizing statute, seemingly to suggest that this provision precludes judicial review because it references the APA as not applying to "fee setting for services and other administrative requirements relating to projects. . . ."

other on its website.   Utilization of Global Entry Kiosks by NEXUS and SENTRI

Participants, 75 Fed. Reg. 82202-01 (proposed Dec. 29, 2010), 2010 WL 5343109

("Federal Register Notice"); *NEXUS Eligibility*, U.S. Customs and Border Protection (Mar.

7, 2022), https://www.cbp.gov/travel/trusted-traveler-programs/nexus/nexus-eligibility

(last visited Feb. 20, 2024) ("NEXUS eligibility website").   The lists are not identical but

are largely similar, and any differences in wording are immaterial to Defendant's instant

motion.[7]   Defendant identifies one factor among the seven or eight specified, and argues

---

(*See* Dkt. 13-3 at 13).  Defendant's cursory discussion of this sub-section of the statute does not establish why it would deprive a court of jurisdiction in this action, nor can the Court ascertain from the plain text of this provision that it would do so.

[7]        According to the Federal Register Notice, Defendant identifies seven factors that may disqualify a person from the NEXUS program: (1) "The individual provides false or incomplete information on his or her application;" (2) "The individual has been convicted of a criminal offense in any country;" (3) "The individual is a subject of an ongoing investigation by any federal, state or local law enforcement agency in any country;" (4) "The individual has been found to have violated any customs, agriculture, or immigration regulation or laws in any country;" (5) "The individual is inadmissible to the United States or Canada under applicable immigration laws or regulations, including applicants with approved waivers of inadmissibility or parole documentation;" (6) "The individual does not intend to lawfully reside in either Canada or the United States for the term of his or her NEXUS membership;" or (7) "The individual cannot satisfy CBP of his or her low-risk status or meet other NEXUS program requirements."

In comparison, according to the NEXUS eligibility website, Defendant identifies eight factors.  "You may not be eligible for participation in the NEXUS program if you:" (1) "Provide false or incomplete information on the application;" (2) "Have been convicted of any criminal offense or have pending criminal charges, including outstanding warrants (to include driving under the influence);" (3) "Have been found in violation of any customs, immigration or agricultural regulations or laws in any country;" (4) "Are subjects of an ongoing investigation by any federal, state or local law enforcement agency;" (5) "Have been denied for the purchase of a firearm;" (6) "Have received a criminal pardon from any country;" (7) "Are inadmissible to the U.S. under immigration regulation, including applicants with approved waivers of inadmissibility or parole documentation;" or (8) "Cannot satisfy CBP or Canada Border Services Agency of your low-risk status."

that it renders the NEXUS program immune from APA review.  The factor relied on by Defendant provides that a person may be disqualified from the NEXUS program if he or she "cannot satisfy CBP of his or her low-risk status or meet other program requirements." (Dkt. 13-3 at 14).  According to Defendant, "there is no guidance at all from which the Court can evaluate CBP's assessment of risk status."  (Dkt. 18 at 7).

The Court disagrees.  The fact that the agency identifies "risk status" as a factor to consider in connection with eligibility for the NEXUS program does not mean that there is no meaningful standard against which to judge the agency's decision.  In other words, while the CBP has certain discretion in administering the NEXUS program, the exercise of that discretion is not beyond review under the APA.  There are identified and measurable factors that are relevant to the CBP's exercise of its discretion, including an individual's "risk status," and that decision-making process is subject to judicial review.  *See Salazar*, 822 F.3d at 79-80 ("[E]ven when an agency has some discretion to make an initial decision, judicial review is not precluded if the plaintiffs can show that there is sufficient law to apply to the initial decision, so that a court can evaluate the agency's exercise of its discretion in deciding if the initial triggering condition has been met.").

At least two other courts have agreed with this Court's assessment.  In *Martinez v. United States Customs and Border Protection*, No. 20-cv-02726 (APM), slip op. at 2 (D.D.C. Nov. 11, 2021), the court denied CBP's motion to dismiss on the same ground that Defendant argues here and found that the seven factors that CBP listed in the Federal Register Notice and on the NEXUS eligibility website "are 'self-imposed constraints' that

supply a judicially manageable standard for review" for the NEXUS program.[8]  The court noted that CBP had published a regulation, 8 C.F.R. § 235.12(b)(2) (2020), listing seven factors that could disqualify an individual from Global Entry, another Trusted Traveler Program, and "[t]hose same factors apply to eligibility for the NEXUS program." *Martinez*, No. 1:20-cv-02726 (APM), slip op. at 2.

Likewise, in *McLean v. Morgan*, No. 20-2145-JWB, 2020 WL 5094683, at *6 (D. Kan. Aug. 28, 2020), the court found that § 235.12(b)(2) "clearly sets forth factors which the agency will consider in denying participation" in the Global Entry program, thereby permitting judicial review.  As noted in *Martinez*, the factors relevant to eligibility for the NEXUS program and the Global Entry program are similar.  While the Global Entry program's criteria are codified in a final regulation and the NEXUS program criteria is contained in the Federal Register Notice and the NEXUS eligibility website, this is a distinction without a difference for purposes of assessing applicability of review under the APA.  *See Salazar*, 822 F.3d 76 ("[W]hether there is 'law to apply' that provides 'judicially manageable standards' for judging an agency's exercise of discretion, the courts look to the statutory text, the agency's regulations, and informal agency guidance that govern the agency's challenged action.  Agency regulations and guidance can provide a court with law to apply because, '[a]s the Supreme Court noted "where the rights of individuals are

---

[8]     The D.C. Circuit, in affirming the district court's subsequent grant of summary judgment for CBP, noted that it "assum[ed] without deciding" that CBP's denial of the plaintiff's applications to the NEXUS program was reviewable under the APA.  *Martinez v. United States Customs and Border Protection*, No. 22-5229, 2023 WL 2815918, at * 1 (D.C. Cir. Apr. 5, 2023).

affected, it is incumbent upon agencies to follow their own procedures."'" (citations omitted)).

The cases relied upon by Defendant are distinguishable.  In *Roberts v. Napolitano*, 792 F. Supp. 2d 67 (D.D.C. 2011), the court concluded that judicial review was not available with respect to eligibility determinations concerning the Global Entry program, but at the time the regulations discussed in *Martinez* and *McLean* had not been adopted and the court assessed APA reviewability solely in the context of the statute.  *Id*. at 73-74.  *See McLean*, 2020 WL 5094683, at *6 ("In *Napolitano*, the court only discussed the statute when determining that there were 'no judicially manageable standards.'  Notably, the proposed regulation had yet to become final at that time.").

Defendant also relies on *Jajati v. U.S. Customs and Border Protection*, No. 3:22-cv-00175-RBM-AGS, 2022 WL 9529850, at *5-6 (S.D. Cal. Oct. 14, 2022), *appeal pending*, No. 22-56015 (9th Cir.) and *Woodward v. United States Customs and Border Protection*, No. CV-20-00151-TUC-DCB, 2022 WL 294214, at *4 (D. Ariz. Feb. 1, 2022), but both of those cases dealt with reviewability of the SENTRI program, another Trusted Traveler program and one governed by different sources of law than the NEXUS program and its cousin, the Global Entry program.  (Dkt. 13-3 at 13).  "While Global Entry and SENTRI maintain similarities, the two are distinct programs, governed by separate regulations containing unique eligibility requirements."  *Jajati*, 2022 WL 9529850, at *6 (distinguishing *McLean*'s finding of jurisdictional authority under the APA for reviewing Global Entry eligibility).  For example, unlike the NEXUS program, the SENTRI program

regulations expressly provide that eligibility is "in the discretion of the district director. . . ." *Jajati*, 2022 WL 9529850, at *5 (quoting 8 C.F.R. § 235.7(a)(4)(x)).

Defendant's other argument—that Plaintiff's APA claim should be dismissed because "he has not been legally wrong"—also falls short. (*See* Dkt. 13-3 at 14). "The APA authorizes suit by '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61 (2004) (quoting 5 U.S.C. § 702). The "agency action" must be "final," and is defined to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act*." *Id.* at 62 (quoting § 551(13)). Here, Plaintiff has plausibly alleged that he has been adversely affected or aggrieved by agency action through Defendant's decision to disqualify him from the NEXUS program.

In sum, Plaintiff has met his burden in demonstrating by a preponderance of the evidence that subject matter jurisdiction exists to evaluate his claim under the APA. Defendant's published factors listed in the Federal Register Notice and on the NEXUS eligibility website provide law to apply and meaningful standards against which to judge the agency's exercise of discretion. Defendant's enumerated factors, first announced in 2010, are a "general policy," *Salazar*, 822 F.3d at 76 (quoting *Yueh-Shaio Yang*, 519 U.S. at 32) that governs how the agency exercises its discretion to disqualify individuals from the NEXUS program. Particularly given the well-established "strong presumption favoring judicial review of administrative action," *id*. at 75 (citing *Mach Mining, LLC v.*

*E.E.O.C.*, 575 U.S. 480, 486 (2015)), the Court concludes that Defendant's motion to dismiss the APA claim must be denied.

## III.    Defendant's Motion to Dismiss the FTCA Claims

Defendant contends that the Court lacks subject matter jurisdiction over Plaintiff's FTCA claims because only the United States—not a federal agency—can be sued under the statute and because Plaintiff failed to file an administrative claim with the appropriate federal agency.  (Dkt. 13-3 at 15-17).

The FTCA provides a limited waiver of the United States' sovereign immunity for "claims against the *United States*, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]" 28 U.S.C. § 1346(b)(1) (emphasis added).  A complaint alleging FTCA claims against a federal agency, rather than against the United States, must be dismissed for lack of subject matter jurisdiction.  *See, e.g.*, *Gutierrez-Flores v. U.S. Department of Justice*, No. 22-CV-57-LJV, 2024 WL 343137, at *3 (W.D.N.Y. Jan. 30, 2024) ("[a] federal agency is not a proper defendant under the FTCA") (quotation and citations omitted).  For this reason, Defendant's motion to dismiss the FTCA claims is granted.

Even if the amended complaint had properly named the United States as the defendant in this action, the Court would still lack subject matter jurisdiction.  "The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court.  This requirement is jurisdictional and cannot be waived." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005); *see* 28 U.S.C.

§ 2675(a) (a claimant cannot commence an action under the FTCA "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing"). Here, Defendant submitted a sworn declaration from Diana R. Meyer, a paralegal specialist with the Office of Assistant Chief Counsel in Defendant's Buffalo office, stating that Defendant's database records reveal no administrative tort claims filed by Plaintiff or on his behalf. (Dkt. 13-2). Plaintiff acknowledges that he did not file an administrative claim with Defendant.[9] (Dkt. 17 at 5). Accordingly, Plaintiff's FTCA claims cannot procced because Plaintiff failed to exhaust his administrative remedies.

## IV.     Defendant's Motion to Dismiss the Constitutional Claims

Defendant interprets Plaintiff's claims under the First, Fourth, Fifth, and Fourteenth Amendments as raising claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and argues that dismissal is necessary because this remedy is not available in suits against a federal agency, only individual federal officials. (Dkt. 13-3 at 17-18). The Court agrees, and indeed, Plaintiff does not even attempt to address this argument. (*See* Dkt. 17 at 5).[10]

---

[9]     Plaintiff requests that if his FTCA claims must be dismissed for failure to file an administrative claim, that any dismissal be without prejudice. "[W]hen a case is dismissed for lack of federal subject matter jurisdiction, Article III deprives federal courts of the power to dismiss the case with prejudice." *Leytman v. United States*, 832 F. App'x 720, 722 (2d Cir. 2020) (internal quotation marks omitted) (citing *Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017)). Accordingly, the FTCA claims are dismissed without prejudice.

[10]     Instead, Plaintiff focuses his response concerning the constitutional claims on the argument that *Egbert v. Boule*, 596 U.S. 482 (2022) was wrongly decided. (Dkt. 17 at 5).

"A *Bivens* action is a judicially-created remedy designed to provide individuals with a cause of action against federal officials who have violated their constitutional rights." *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (citation omitted). "An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself." *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994). To the extent that Plaintiff is asserting a *Bivens* remedy for alleged violations of his constitutional rights, the Court grants Defendant's motion to dismiss for lack of subject matter jurisdiction because Plaintiff has not properly named individual officers.[11]   *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (*Bivens* claims against federal agency and individuals in official capacity dismissed for lack of subject matter jurisdiction).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the amended complaint (Dkt. 13) is granted in part and denied in part. Specifically, the motion is granted with

---

While it is true that Plaintiff could not likely assert a *Bivens* claim in this context against individual officers, *see, e.g.*, *Morales v. United States*, No. 18-cv-4247 (CBA) (RER), 2023 WL 2129580, at *9-10 (E.D.N.Y. Feb. 17, 2023) (refusing to recognize Fourth Amendment search and seizure and Fifth Amendment due process claims against CBP officers); *Lovell v. Parker*, 618 F. Supp. 3d 127, 140 (E.D.N.Y. 2022) ("a *Bivens* action targeting the conduct of CBP officers at a border entry point has never been recognized by the Supreme Court"), that is not an argument raised by Defendant or the basis for the pending motion to dismiss.

[11]     Plaintiff listed a "Brown" as a party in the docket text when he filed his amended complaint. (*See* Dkt. 9). But Plaintiff did not list this individual in the caption of the amended complaint, nor as a party in the text of the amended complaint. (*See id.* at ¶¶ 6-7). Throughout the amended complaint and in his subsequent filings, Plaintiff refers only to a singular defendant in this action. To the extent that Plaintiff intended to include "Brown" as a party, he did not effectuate service or otherwise properly make this individual a party to this action. The Clerk of Court is directed to terminate "Brown" as a defendant.

respect to Plaintiff's FTCA and constitutional claims which are dismissed without prejudice, and the motion is denied with respect to Plaintiff's APA claim.

     SO ORDERED.

                                    ELIZABETH A. WOLFORD
                                    Chief Judge
                                    United States District Court

Dated: February 21, 2024
       Rochester, New York