UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MATTHEW BOROWSKI,

                  Plaintiff,

     v.

U.S. CUSTOMS AND BORDER
PROTECTION,

               Defendant.

_____

**DECISION AND ORDER**

1:23-CV-00257 EAW

## <u>INTRODUCTION</u>

Plaintiff Matthew Borowski ("Plaintiff") brings this action against defendant U.S. Customs and Border Protection ("CBP," "Defendant," or "the agency"), asserting claims pursuant to the Administrative Procedure Act (the "APA"), 5 U.S.C. § 706(2)(A), the Federal Tort Claims Act ("FTCA"), the First, Fourth, Fifth, and Fourteenth Amendments of the Constitution ("the constitutional claims"), and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  (Dkt. 9).[1]  Defendant has moved for summary judgment on the FOIA claim.  (Dkt. 19).  For the reasons discussed below, Defendant's summary judgment motion on the FOIA claim is denied without prejudice.

---

[1]     As noted below, on February 21, 2024, the Court issued a Decision and Order dismissing Plaintiff's FTCA and constitutional claims without prejudice.  (Dkt. 29).

## FACTUAL BACKGROUND

The following facts are taken from Defendant's "Statement of Material Facts as to which there is No Genuine Issue to be Tried" ("statement of undisputed material facts") (Dkt. 19-1) and Defendant's exhibits.[2]

The NEXUS program is jointly administered by the United States and Canada and allows pre-approved, low-risk travelers expedited processing when traveling between the two countries.  (*Id.* at ¶ 1).  Defendant and the Canada Border Services Agency must both approve applicants for the program.  (*Id.* at ¶ 2).  Defendant reviews an individual's application and checks it against various government databases, and applicants who meet the eligibility criteria can schedule an interview at a CBP Enrollment Center.  (*Id.* at ¶¶ 3-4).  Approval for NEXUS membership is contingent on Defendant's vetting of the application, fingerprint submission, and the interview results.  (*Id.* at ¶ 5).  NEXUS membership is valid for five years, after which a member must apply for renewal, which includes checks of government databases, vetting, and may require an interview.  (*Id.* at

---

[2]   Pursuant to Local Rule of Civil Procedure 56(a)(1), Defendant filed a statement of undisputed material facts in support of its summary judgment motion.  (*See* Dkt. 19-1).  Although Plaintiff filed a response, he failed to respond to each numbered paragraph in Defendant's statement as required by Local Rule 56(a)(2).  (*See* Dkt. 23).  Plaintiff, in his unsworn response, contests three facts that Defendant included in support of its summary judgment motion, but he does not argue that the alleged "inaccuracies" are material and fails to offer any evidentiary proof in opposition to the pending motion as required by Local Rule 56(a)(2).  (*See id.* at 5).  The Court therefore treats the facts set forth in Defendant's statement of undisputed material facts "admitted for purposes of" the instant motion where supported by admissible evidence in the record.  Loc. R. Civ. P. 56(a)(2); *see N.Y. State Teamsters Conf. Pension & Ret. Fund v. Express Servs. Inc.*, 426 F.3d 640, 648 (2d Cir. 2005).

¶¶ 6-7).[3]  Defendant also vets program members on a recurring basis by checking law enforcement databases and may revoke an individual's enrollment before the membership period has concluded.  (*Id.* at ¶ 8).

Plaintiff applied for NEXUS program membership on or about November 13, 2011, and Defendant approved his application.  (*Id.* at ¶¶ 9-10).  Defendant revoked Plaintiff's membership in the program on December 16, 2013, after an inspection.  (*Id.* at ¶ 11).[4]  At Plaintiff's request, Defendant's Ombudsman reviewed the revocation and granted "discretionary consideration," and Plaintiff's membership was restored on or about April 25, 2014.  (*Id.* at ¶ 12).[5]  Plaintiff applied to renew his membership on or about August 25, 2017, and his application was approved, effective on or about September 17, 2017.  (*Id.* at ¶ 13).  Plaintiff again applied to renew his membership on or about May 26, 2022, and on or about December 20, 2022, Defendant provided him with two letters, one of which

---

[3]     In arguing that Defendant's statement of undisputed material facts is inaccurate as to this point, Plaintiff states that he "believes that a NESUS [sic] member can, and is encouraged, to apply for a renewal prior to the expiration of their membership."  (Dkt. 23 at 5).  Plaintiff, by his own admission, is merely stating a belief.  Moreover, Plaintiff makes no argument as to why this issue is a material fact as it relates to his FOIA claim.

[4]     Plaintiff argues that his membership was not revoked after an inspection because he was leaving the United States to enter Canada, and therefore, CBP did not inspect him. (Dkt. 23 at 5).  He further contends that his and his wife's NEXUS cards were revoked after CBP officers stopped Plaintiff's family's vehicle and a CBP officer "brutally attacked" his wife.  (*Id.*).  Plaintiff makes no argument as to why this issue is a material fact as it relates to his FOIA claim.

[5]     In responding to this fact, Plaintiff states that his and his wife's NEXUS memberships were reinstated once his wife was acquitted of an offense for which Defendant "falsely" charged her after a CBP officer "brutally attacked" her.  (Dkt. 23 at 5). Again, Plaintiff makes no argument as to why this issue is a material fact as it relates to his FOIA claim.

revoked his NEXUS membership and the other of which denied his renewal request.  (*Id.* at ¶¶ 14-15).   According to the letters, Plaintiff did "not meet program eligibility requirements based on the vetting, which included review of information in CBP's law enforcement databases."  (*Id.* at ¶ 15).  Defendant's Ombudsman sustained the denial on April 12, 2023, and Plaintiff was notified by letter.  (*Id.* at ¶¶ 16-17).

On December 22, 2022, Defendant received Plaintiff's FOIA request, in which he sought the following information:

> All documents, records, information, database entries, or any other electronically stored information (ESI), papers, notes, documents pertaining to the trusted Traveler Program application(s), renewals, revocations, denials, for MATTHEW BOROWSKI with NEXUS Program Membership #982419666, relating to the denial/revocation dated December 20, 2022 including reason(s) for denial.  I also request any and all notes, document, derogatory information, information about any purported violations, and/or entries in CBP Databases that were consulted or used as a basis for the denial.

(*Id.* at ¶ 18).  Defendant provided its FOIA response to Plaintiff on May 25, 2023.  (*Id.* at ¶ 19).

Defendant is a law enforcement agency within DHS and employs armed law enforcement officers engaged in the agency's border security mission.  (*Id.* at ¶ 31). According to a declaration from Patrick A. Howard ("the Howard declaration"), a branch chief within FOIA Division at CBP, Defendant has procedures for responding to FOIA requests, starting with a search for potentially responsive records.  (*Id.* at ¶¶ 25, 33).  Once potentially responsive records are located, Defendant reviews them to ensure responsiveness and then to excise and withhold information that falls within one of the nine statutory exemptions from disclosure set forth at 5 U.S.C. § 552(b).  (*Id.* at ¶ 34).  When

reviewing records to identify information exempt from disclosure, Defendant's FOIA processors must (1) meticulously examine, line-by-line, each responsive page to identify potential redactions, (2) apply redactions, if necessary, and (3) individually label each redaction with the applicable exemption(s).  (*Id.* at ¶ 35).

Once the agency received Plaintiff's FOIA request, Defendant determined where responsive information would likely be contained.  (*Id.* at ¶ 37).  Defendant searched for responsive records in two of its systems, the Global Enrollment System (GES) and the Analytical Framework for Intelligence (AFI) system.  (*Id.* at ¶ 38).  GES was searched based on Plaintiff's NEXUS membership number, and AFI was searched based on Plaintiff's first and last name.  (*Id.*).  Defendant identified 251 pages of records that were responsive to Plaintiff's request, of which 61 pages were fully released to Plaintiff and 190 pages were released in part with certain information redacted.  (*Id.* at ¶¶ 42, 45).  The responsive records contained information relating to Plaintiff's encounters with CBP personnel at ports of entry and his participation in the NEXUS program.  (*Id.* at ¶ 43).  Defendant reviewed each record page-by-page and line-by-line in an attempt to confirm that only exempt information was withheld and to determine if non-exempt information could be segregated and released.  (*Id.* at ¶ 46).  Defendant allegedly did not withhold non-exempt information.  (*Id.*).  Defendant withheld information based on four FOIA statutory exemptions.  (*Id.* at ¶ 47).

Under the first exemption, 5 U.S.C. § 552(b)(5) ("Exemption 5"), Defendant withheld five full pages of records on the basis that they consisted of intra-agency emails constituting internal, predecisional deliberations and CBP employees' recommendations

regarding Plaintiff's NEXUS eligibility.  (*Id.* at ¶¶ 50-51).  In addition to Exemption 5, Defendant also withheld the five pages of emails on the basis that they also contain information that is further exempt from disclosure under the other three statutory exemptions that the agency claimed.  (*Id.* at ¶ 51).

Under the second exemption, 5 U.S.C. § 552(b)(7)(E) ("Exemption 7(E)"), Defendant withheld material on the basis that it was compiled for law enforcement purposes relating to techniques, procedures, and guidelines for law enforcement investigations or prosecutions.  (*See id.* at ¶ 54).  Among the information that Defendant withheld were descriptions of the specific methods that CBP officers used to inspect Plaintiff during encounters at ports of entry, the reasons that Plaintiff was referred for secondary inspections on several occasions, how CBP personnel used law enforcement systems and databases based on its encounters with Plaintiff and in assessing his NEXUS eligibility, and information relating to CBP systems and databases.  (*Id.* at ¶¶ 57-58, 63-64).

Under the third exemption, 5 U.S.C. § 552(b)(6) ("Exemption 6"), and under the fourth exemption, 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)"), Defendant withheld material on the basis that it contained personally identifiable information about CBP law enforcement personnel and other CBP employees, as well as information about non-employee third parties.  (*Id.* at ¶¶ 66-69, 73).  The agency applied the two exemptions in tandem because information in those records protected by one exemption is purportedly also protected by the other.  (*Id.* at ¶ 68).  For example, Defendant withheld the names of CBP officers and supervisors who inspected Plaintiff at points of entry, as well as the

unique hash identification numbers used in CBP computer systems that identify agency personnel involved in inspecting and processing Plaintiff.  (*Id.* at ¶¶ 70-71).  Among the withheld details about third parties were names and license plate numbers.  (*Id.* at ¶ 73).

## PROCEDURAL BACKGROUND

Plaintiff filed his initial complaint on March 22, 2023, asserting claims under the APA for Defendant's revocation of his NEXUS membership, and under FOIA to compel Defendant to produce documents in response to Plaintiff's FOIA request.  (Dkt. 1; Dkt. 19-1 at ¶ 20).  Defendant filed a motion to dismiss the complaint on May 26, 2023, arguing that the FOIA claim was moot because Defendant had processed the FOIA request.  (Dkt. 7; Dkt. 19-1 at ¶ 21).

On June 20, 2023, Plaintiff filed an amended complaint, which includes a claim under FOIA for improperly withholding requested records because Defendant provided an incomplete response to his FOIA request and wrongfully redacted information.  (Dkt. 9 at ¶¶ 80-83 ; Dkt. 19-1 at ¶ 22).  Defendant filed a motion to dismiss all claims except for the FOIA claim, and the Court extended Defendant's time to answer or to move for summary judgment as to the FOIA claim.  (Dkt. 13; Dkt. 14; Dkt. 19-1 at ¶¶ 23-24).

On October 16, 2023, Defendant filed the instant motion for summary judgment on the FOIA claim.  (Dkt. 19).  Plaintiff filed a response in opposition to the summary judgment motion.  (Dkt. 23).  Defendant completed briefing by filing a reply in further support of its motion for summary judgment on the FOIA claim.  (Dkt. 28).  The Court denied Defendant's motion to dismiss the APA claim and granted the motion with respect to the FTCA and constitutional claims on February 21, 2024.  (Dkt. 29).

## DISCUSSION

## I.     Legal Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact . . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial."  *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks and citation omitted).  Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347,

358 (2d Cir. 2011).  Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

## II.   Plaintiff's Opposition to the Partial Summary Judgment Motion is Inadequate

Plaintiff's response to the instant motion for partial summary judgment is fundamentally inadequate.[6]  As previously discussed above, *see* n.2, Plaintiff failed to comply with this District's Local Rules in his response, and he did not submit any evidentiary proof in support of his arguments.  Plaintiff's "Preliminary Statement" in his response (Dkt. 23 at 1-5) contains a series of unsworn and conclusory allegations, and the purported "inaccuracies" that he highlights in Defendant's statement of undisputed material facts are not countered with evidence to show that there is a genuine dispute as to any material fact.  *See* Fed. R. Civ. P. 56(a); *Robinson*, 781 F.3d at 44.  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Plaintiff has not

---

[6]    Plaintiff, an attorney admitted to practice before this Court, signed his response to the instant motion "*Pro Se*," seemingly to argue that he should be treated as a *pro se* litigant. (*See* Dkt. 23 at 19).  To the extent that Plaintiff is making this argument, the Court rejects it, for the reasons set forth in the Court's Decision and Order dated February 21, 2024. (Dkt. 29 at 2-3 n.2); *see Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).  Accordingly, Plaintiff will be held to the same standards and expected to comply with the same requirements applicable to all attorneys appearing before the Court.

submitted an affidavit or declaration based on his personal knowledge, nor has he otherwise set out facts that would be admissible at trial.

However, the flaws in Plaintiff's briefing papers do not relieve the Court of its obligation under Rule 56 to assess whether a party moving for summary judgment is entitled to judgment as a matter of law.  Indeed, even had Plaintiff failed to oppose the motion for summary judgment at all, the Court would have an independent duty to determine whether Defendant has satisfied its legal burden.  *See, e.g.*, *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004) ("Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law.").  Accordingly, the Court turns to the merits of Defendant's motion.

### III.   Defendant is Not Entitled to Summary Judgment on the FOIA Claim

Defendant argues that it is entitled to summary judgment because it conducted a reasonable search for documents that were responsive to Plaintiff's FOIA request, properly withheld information from those documents based on specific FOIA exemptions, and segregated non-exempt information to release.  (*See* Dkt. 19-3 at 10-31).

"FOIA was enacted 'to facilitate public access to Government documents,' and was designed 'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'"  *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 283 (2d Cir. 2009) (internal citations omitted).  "Consistent with FOIA's purpose and design, 'the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents.'"  *Id.* (quoting *U.S. Dep't of State v. Ray*, 502

U.S. 164, 173 (1991); *see CLEAR v. U.S. Customs & Border Prot.*, No. 19-CV-7079 (RER), 2022 WL 16636686, at *3 (E.D.N.Y. Nov. 2, 2022) ("The FOIA requires government agencies to disclose agency records unless those records fall under an enumerated exemption.") (citing *Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Dep't of Just.*, 697 F.3d 184, 194 (2d Cir. 2012)).  A district court reviews an agency's withholding of records based on a FOIA exemption *de novo*.  *See*, *e.g.*, *Osen LLC v. U.S. Dep't of State*, 360 F. Supp. 3d 258, 263 (S.D.N.Y. 2019); *Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 606 (S.D.N.Y. 2018); *see also* 5 U.S.C. § 552(a)(4)(B).

"Summary judgment is the procedural vehicle by which most FOIA actions are resolved." *Seife*, 298 F. Supp. 3d at 604 (quoting *N.Y. Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 509 (S.D.N.Y. 2007)).  "A federal agency responding to a FOIA request must (1) conduct an adequate search using reasonable efforts, (2) provide the information requested, unless it falls within a FOIA Exemption, and (3) provide any information that can be reasonably segregated from the exempt information." *N.Y. Times Co. v. U.S. Dep't of Just.*, 390 F. Supp. 3d 499, 511 (S.D.N.Y. 2019) (quotation omitted); *see also* 5 U.S.C. §§ 552(a)(3) and (b).  In addition, pursuant to the FOIA Improvement Act (the "FIA") of 2016, "it is not enough for the Government to show that an exemption applies.  Rather, the Government must also demonstrate that '(i) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or (ii) disclosure is prohibited by law.'" *N.Y. Times Co. v. Dep't of Health & Hum. Servs.*, 513 F. Supp. 3d 337, 346 (S.D.N.Y. 2021) (quoting 5 U.S.C. § 552(a)(8)(A)), *aff'd sub nom. N.Y. Times Co. v. U.S. Dep't of Health & Hum. Servs.*, 15 F.4th 216 (2d Cir. 2021).  "Stated

differently, pursuant to the FOIA Improvement Act, an agency must release a record—
*even if it falls within a FOIA exemption*—if releasing the record would not reasonably harm
an exemption-protected interest and if its disclosure is not prohibited by law." *Nat'l Day
Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 486 F. Supp. 3d 669, 691
(S.D.N.Y. 2020) (quoting *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 73 (D.D.C.
2018) and emphasis in original).

"A district court in a FOIA case may grant summary judgment in favor of an agency
on the basis of agency affidavits if they contain *reasonable specificity* of detail rather than
merely conclusory statements, and if they are not called into question by contradictory
evidence in the record or by evidence of agency bad faith." *Grand Cent. P'ship, Inc. v.
Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (quotation omitted and emphasis in original); *see
N.Y. Times Co.*, 390 F. Supp. 3d at 512 ("[A]n agency is entitled to summary judgment
when it has thoroughly searched for responsive records and has articulated reasonably
detailed explanations why any withheld documents fall within an exemption.") (quotation
omitted).  The Second Circuit "accord[s] a presumption of good faith to an agency's
affidavits or declarations, such that when an agency provides reasonably detailed
explanations to support its decision to withhold a document, its justification is sufficient if
it appears logical and plausible." *Behar v. U.S. Dep't of Homeland Sec.*, 39 F.4th 81, 88
(2d Cir. 2022) (quotations omitted).

## A.     Reasonableness of Search for Responsive Records

Defendant argues that it conducted a search reasonably designed to locate
documents responsive to Plaintiff's FOIA request by determining where responsive

information would likely be contained and then searching in two of its systems for the information.[7] (Dkt. 19-3 at 12).

"The agency bears the burden to demonstrate 'beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Knight First Amend. Inst. at Columbia Univ. v. Centers for Disease Control & Prevention*, 560 F. Supp. 3d 810, 820 (S.D.N.Y. 2021) (quoting *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency*, 877 F. Supp. 2d 87, 95 (S.D.N.Y. 2012)); *see Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994) ("In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate . . . ."). "[A]n agency's search need not be perfect, but rather need only be reasonable." *Grand Cent. P'Ship*, 166 F.3d at 489 (citation omitted).

To demonstrate the reasonableness of its search, "an agency must search all locations likely to contain responsive records[.]" *NAACP Legal Def. & Educ. Fund, Inc. v. Dep't of Just.*, 463 F. Supp. 3d 474, 484 (S.D.N.Y. 2020) (quotation omitted). "[C]ourts consider, among other things, 'the search terms and type of search performed' and the 'nature of the records system or database searched.'" *Id.* (citation omitted); *see Knight First Amend. Inst.*, 560 F. Supp. 3d at 820 (same). The agency "must identify the searched files and describe at least generally the structure of the agency's file system which renders any further search unlikely to disclose additional relevant information." *Nat'l Day Laborer Org. Network*, 877 F. Supp. 2d at 96 (quotations omitted); *see Vietnam Veterans of Am.*

---

[7]     Plaintiff makes no argument that Defendant failed to conduct an adequate search using reasonable efforts.  (*See generally* Dkt. 23 at 10-19).

*Conn. Greater Hartford Chapter 120 v. Dep't of Homeland Sec.*, 8 F. Supp. 3d 188, 206 (D. Conn. 2014) ("An agency need not describe all of its file systems, but instead an adequate description need only provide reasonable detail about the parameters and execution of an agency's search and aver that all files likely to contain responsive material were searched.") (quotation omitted).  Agency affidavits can establish the adequacy of a search when the affidavits are "relatively detailed and nonconclusory, and submitted in good faith."  *Seife*, 298 F. Supp. 3d at 607 (quoting *Grand Cent. P'ship*, 166 F.3d at 489); *see also Adamowicz v. Internal Revenue Serv.*, 402 F. App'x 648, 650 (2d Cir. 2010) ("the law demands only a relatively detailed and nonconclusory affidavit or declaration" to establish the adequacy of a search) (quotation omitted).

Here, Defendant avers that it searched for responsive records in two of its systems, GES and AFI.  (Dkt. 19-1 at ¶ 38).  However, Defendant has not generally explained the structure of its file system and why these two systems are the only locations where relevant information is likely to be contained within the agency.  *See The Few, the Proud, the Forgotten v. U.S. Dep't of Veterans Affs.*, 254 F. Supp. 3d 341, 359 (D. Conn. 2017) (noting that agency official "does not describe these offices or the structure of [their] file systems with the reasonable specificity required at the summary judgment stage") (quotations omitted); *Vietnam Veterans of Am.*, 8 F. Supp. 3d at 207 (citing failure of declarations to describe the agency's filing system and address why certain files were selected to be searched and not others).  Nor has Defendant explained why it chose to search GES using Plaintiff's NEXUS membership number and AFI using Plaintiff's first and last name, or why these search terms were comprehensive enough to locate responsive records.  *See*

*Immigrant Def. Project v. U.S. Immigr. & Customs Enf't*, 208 F. Supp. 3d 520, 527 (S.D.N.Y. 2016) (An agency can show "a good faith effort to design a comprehensive search" when it "has provided logical explanations for each of the decisions it made as to search terms to be used and how to conduct the searches.") (quotation omitted).  In addition, Defendant has not specified whether its search of the AFI system using Plaintiff's first and last name included searches of his first and last name together as well as by last name only. *See Knight First Amend. Inst.*, 560 F. Supp. 3d at 824-25 (noting that agency did not establish that search terms were "reasonably calculated to uncover responsive documents" when it failed to specify how Boolean searches were used or if terms were searched for only in conjunction, or separately).

Defendant describes its AFI program as follows:

> The AFI system consolidates and enhances information from existing operational systems by using different analytical capabilities and tools that provide link analysis between data elements as well as the ability to detect trends, patterns, and emerging threats.  The AFI system includes advanced search capabilities into existing data sources and allows users to search several databases simultaneously.

(Dkt. 19-1 at ¶ 40).  This vague language reads like the kind of "bureaucratic double-talk" that the Second Circuit has rejected as inadequate.  *See Halpern v. Fed. Bureau of Investigation*, 181 F.3d 279, 293 (2d Cir. 1999).  The Court cannot ascertain how the AFI system interacts with other CBP systems or databases or how its search capabilities into "existing data sources" would locate responsive records without overlooking records that would not have been found through a search of the GES system by Plaintiff's NEXUS membership number.  *See NAACP Legal Def.*, 463 F. Supp. 3d at 484 ("[A]n agency must

search all locations likely to contain responsive records; not simply where the records are 'most likely' to be found.") (quotation omitted).

Regarding its GES system, Defendant avers that it "is a centralized information system that CBP uses to facilitate enrollment of and vetting processes for trusted traveler programs, including the NEXUS program," but offers no additional details.  (*See* Dkt. 19-1 at ¶ 39).  According to the Howard declaration, based on "Howard's experience in the FOIA Division, this search for records was reasonably designed to identify and locate records responsive to Plaintiff's request."  (Dkt. 19-1 at ¶ 41).  This statement, when combined with the limited information that Defendant has provided about the AFI and GES systems and its choice of search terms, cannot allow the Court to find that Defendant has met its burden in establishing the reasonableness of its search for responsive records.  *See Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Immigr. & Customs Enf't*, 571 F. Supp. 3d 237, 246-47 (S.D.N.Y. 2021) ("The adequacy of the affidavits concerns whether they provide sufficiently detailed descriptions of the underlying facts—a separate question from this Court's legal determination as to whether the search was 'reasonably calculated to uncover all relevant documents' in response to the FOIA request.") (citation omitted in original).

### B.    Documents Withheld Under the Exemptions

Defendant argues that it properly withheld responsive records that fell within four defined exemptions under the FOIA statute, specifically Exemption 5, Exemption 6, Exemption 7(C), and Exemption 7(E).  (*See* Dkt. 19-3 at 13, 15-31).  Plaintiff argues that

Defendant's justifications of its withholdings are vague, inadequately supported, and made in bad faith given the history between the parties.  (*See* Dkt. 23 at 10-19).

"An agency that has withheld responsive documents pursuant to a FOIA exemption can carry its burden to prove the applicability of the claimed exemption by affidavit[.]" *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009); *see also* 5 U.S.C. § 552(a)(4)(B).  "Summary judgment is warranted . . . when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Spadaro v. U.S. Customs & Border Prot.*, 978 F.3d 34, 42 (2d Cir. 2020) (quoting *N.Y. Times v. Cent. Intel. Agency*, 965 F.3d 109, 114 (2d Cir. 2020)).  The agency "should describe the documents with as much information as possible without thwarting the exemption's purpose" and "specifically identif[y] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply." *Cox v. Dep't of Just.*, 504 F. Supp. 3d 119, 128 (E.D.N.Y. 2020) (quotation omitted); *see N.Y. Times Co. v. U.S. Food & Drug Admin.*, 529 F. Supp. 3d 260, 279 (S.D.N.Y. 2021) (agency affidavits "characterized by conclusory statements and devoid of fact-specific justifications" are insufficient).

It is well-established that an agency can prepare a submission pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), listing the titles and descriptions of records "to identify responsive documents and discharge its obligation to assert any claimed FOIA exemptions to the various documents withheld." *N.Y. Times Co. v. U.S. Dep't of Just.*, 758

F.3d 436, 438-39 (2d Cir. 2014) (collecting cases), *supplemented*, 762 F.3d 233 (2d Cir. 2014); *see Seife*, 298 F. Supp. 3d at 606 ("[W]hen invoking a FOIA exemption, agencies submit a '*Vaughn* index'—a list of withheld documents and claimed exemptions—and a '*Vaughn* affidavit,' describing the documents and the agency's rationale for withholding them."). The *Vaughn* submission has three functions:

> [1] it forces the government to analyze carefully any material withheld, [2] it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, [3] and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court.

*Halpern*, 181 F.3d at 291 (quotation omitted). Nevertheless, the Second Circuit has "eschewed rigid adherence to any particular indexing format under the *Vaughn* standard, opting instead for a functional approach." *Id.*

As explained above, demonstrating that a document falls within an exemption does not end the analysis. The FIA requires an agency to release even information that falls within a FOIA exemption if it cannot show that it "reasonably foresees that disclosure would harm an interest protected by an exemption" or that "disclosure is prohibited by law." *See Dep't of Health & Hum. Servs.*, 513 F. Supp. 3d at 346. The Second Circuit has held that the FIA "imposes an additional, independent burden on the agency" before it may withhold a record under one of FOIA's exemptions. *Seife v. U.S. Food & Drug Admin.*, 43 F.4th 231, 235 (2d Cir. 2022); *see Nat'l Day Laborer Org. Network*, 486 F. Supp. 3d at 698 & n.8 (noting that the FIA "imposes an independent and meaningful requirement on agencies") (quotation omitted). To ascertain whether an agency has shown that it reasonably foresees that disclosure would harm an interest protected by a FOIA exemption,

the court "must first discern the interests protected by" the exemption invoked.  *See Seife*, 43 F.4th at 234.  While Defendant has not expressly cited to the FIA, its *Vaughn* index includes under the column titled "Basis for Withholding" an identification of the harms it anticipates would flow from disclosure.  (*See* Dkt. 19-2 at 11-18).

### 1.   Exemption 6, Exemption 7(C), and Exemption 7(E)

Defendant's *Vaughn* submission with respect to Exemptions 6, 7(C), and 7(E) is fundamentally flawed because it lacks the requisite "reasonably specific detail" throughout to allow the Court to evaluate the appropriateness of each exemption applied.  *See Spadaro*, 978 F.3d at 42.  This lack of detail prevents the Court from analyzing specific documents or groups of documents under the relevant legal standard for each exemption cited, except for documents withheld pursuant to Exemption 5, which are discussed further below.

The *Vaughn* index divides the 251 responsive documents into seven groups, each of which range from one to 167 pages in length, and documents were withheld in six of the seven groups.  (*See* Dkt. 19-2 at 11-19).[8]  Defendant cites multiple FOIA exemptions for each group of documents but makes little to no effort to delineate which exemptions were applied to which pages or sections of pages.  For instance, in the group of documents labeled "Inspection records from the Analytical Framework for Intelligence system," which contained 167 pages (Bates numbers 000033-000199), Defendant withheld information under Exemptions 6, 7(C), and 7(E).  (Dkt. 19-2 at 17-18).  The *Vaughn*

---

[8]    In the seventh group, Defendant released a 52-page spreadsheet (Bates numbers 000200-000251) depicting Plaintiff's border crossings with no redactions.  (*See* Dkt. 19-2 at 19).

submission does not specify which exemptions applied to which page or sections of pages within those 167 pages, which falls far short of the requisite level of specificity required for the Court to ensure that each exemption was properly applied.  *See Cox*, 504 F. Supp. 3d at 128.  The same issue is also notably apparent in the group of documents titled "Global Enrollment System records," numbering 27 pages in length (Bates numbers 000001-000027).  (*See* Dkt. 19-2 at 11-12).[9]  Aside from identifying the five pages of email communications among CBP personnel pertaining to Plaintiff's NEXUS eligibility that were withheld under Exemption 5, Defendant makes no effort to delineate which exemptions were applied to which documents or sections of documents.  (*See* Dkt. 19-1 at ¶ 51, Dkt. 19-2 at 11-12).

Furthermore, the *Vaughn* submission is "devoid of fact-specific justifications."  *See U.S. Food & Drug Admin*, 529 F. Supp. 3d at 279.  The *Vaughn index* contains a column titled "Basis for Withholding," in which general explanations are offered for each

---

[9]     Defendant cites to *Paco v. U.S. Customs & Border Prot.*, No. 14-5017 (MLC), 2016 WL 344522 (D.N.J. Jan. 27, 2016), in support of its argument that it properly withheld information in GES records under Exemption 7(E).  (*See* Dkt. 19-3 at 24).  That case is distinguishable because CBP provided more information in its *Vaughn* submission than it did in the current action.  *See Paco*, 2016 WL 344522, at *6 ("CBP has withheld the following under Exemption 7(E): (1) the lower left-hand corner of all pages of the biographic summary, request list, comment list, and risk assessment worksheet; (2) a portion of the comment list under 'Comment'; and (3) portions of the Risk Assessment Worksheet that included 'Query Results,' 'Findings,' and 'Supporting Information.'").  No such detail is present in Defendant's *Vaughn* submission.  Furthermore, this case appears to predate and makes no reference to the FIA, so the court did not conduct the "foreseeable harm" analysis for each exemption claim.  *See New York Times Co. v. Dep't of Health & Hum. Servs.*, 513 F. Supp. 3d 337, 346 (S.D.N.Y. 2021); *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 486 F. Supp. 3d 669, 698 & n.8 (S.D.N.Y. 2020).

exemption cited for each group of documents.  For example, in the document titled "Narrative from Analytical Framework for Intelligence system, one (1) page in length, relating to March 19, 2013, border crossing of Matthew Borowski" (Bates number 000028), information was withheld under Exemptions 6, 7(C), and 7(E).  (Dkt. 19-2 at 13). The index offers the following justification for withholding material in this document pursuant to Exemption 7(E):

> Exemption (b)(7)(E) has been applied, which includes information pertaining to law enforcement techniques and procedures.  Such information is not generally known or publicly disclosed.  Disclosure of law enforcement techniques and procedures would be debilitating and detrimental to both CBP and the law enforcement community, and it would enable individuals to alter their patterns of conduct, adopt new methods of operation, and effectuate other countermeasures, thereby corrupting the integrity of ongoing border inspections and investigations.

(*Id.*).  Separately, the Howard declaration indicates—without reference to any specific document or group of documents—that Exemption 7(E) was applied, among other circumstances, to "numerous documents describing specific methods used by CBP officers to inspect Plaintiff during encounters at ports of entry."  (Dkt. 19-1 at ¶ 57).  The same exemption was also applied to unspecified records "describing the reasons that Plaintiff was referred, on several occasions, for a secondary inspection[.]"  (*Id.* at ¶ 58).  The Court cannot ascertain whether Defendant withheld information in the document relating to Plaintiff's March 19, 2013 border crossing under Exemption 7(E) because the information described the specific methods used to inspect Plaintiff at a port of entry, the reason Plaintiff was referred to secondary inspection, or for another reason under this exemption. Without this information, the Court cannot conduct a meaningful review "to fulfill its duty

of ruling on the applicability of the exemption" to a specific withholding.  *See Halpern*, 181 F.3d at 291.  This is but one example of this global shortcoming throughout the *Vaughn* submission.

Finally, Defendant fails to provide enough context to describe each group of documents for the Court to understand the fundamental nature of the information contained within them.  In other words, it is not clear if a specific document is a report, an email, a database entry, or some other type of document.  The *Vaughn* index contains a column titled "Document Name and Description," and each group of documents is described in a handful of words encompassing the document's name.  For instance, based on the document named "Narrative from Analytical Framework for Intelligence system, two (2) pages in length, relating December 14, 2013 border crossing of Matthew Borowski," the Court can only conclude that the document somehow pertains to Plaintiff's border crossing on that date. (*See* Dkt. 19-2 at 16).  Defendant's vague description of the AFI system in the Howard declaration does little to contextualize this record or any record contained in the AFI system.  (*See* Dkt. 19-1 at ¶ 40).  Among the information withheld from these two pages pursuant to Exemptions 6 and 7(C) was "a license plate number of unknown registration . . . [that] may be registered to a third party[]" and the "names and/or identifying information of CBP officers and personnel[.]"  (Dkt. 19-2 at 16).  The Court is left to speculate as to the context of these pieces of information, such as whether the third-party license plate was located near Plaintiff when he crossed the border, so that the license plate number was recorded in a government record, and the role and rank of the CBP law enforcement officers whose identities Defendant seeks to shield.  These details are

important to the Court's analysis. *See Long v. Off. of Pers. Mgmt.*, 692 F.3d 185, 191 (2d Cir. 2012) (In evaluating information withheld under Exemption 6, "[t]he analysis is context specific.   Names and other identifying information do not *always* present a significant threat to an individual's privacy interest.") (quotation omitted and emphasis in original).   In another instance, the *Vaughn* index describes a group of documents merely as "Inspection records from the Analytical Framework for Intelligence system, one hundred and sixty-seven (167) pages in length," withheld pursuant to Exemptions 6, 7(C), and 7(E). (Dkt. 19-2 at 17).   This document name conveys almost no information about the general substance of these records and how they relate to Plaintiff's FOIA request.   Defendant may well have appropriately withheld material from documents under the exemptions it has claimed, but the Court cannot reach that conclusion unless the agency's *Vaughn* submission provides basic context and background about the nature of the documents at issue.   *See Flores v. U.S. Dep't of Just.*, 391 F. Supp. 3d 353, 364-65 (S.D.N.Y. 2019) ("A *Vaughn* index 'must adequately describe each withheld document . . .'" (quoting *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 774 (D.C. Cir. 2002)); *see also Nat'l Day Laborer Org. Network*, 877 F. Supp. 2d at 96 ("Summary judgment is inappropriate . . . 'where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory.'") (citation omitted).

The flaws described above also prevent the Court from assessing whether the FIA has been satisfied.   Lacking meaningful information about the substance of the records, the Court cannot determine whether disclosure would reasonably be expected to harm the

interests identified by Defendant.  Again, it may well be the case that the FIA's standard has been met, but Defendant has not made that showing on the record before the Court.

In sum, Defendant's *Vaughn* submission is insufficient because it fails to "describe the justifications for nondisclosure with reasonably specific detail" and "demonstrate that the information withheld logically falls within the claimed exemption." *See Spadaro*, 978 F.3d at 42.  It further lacks sufficient information to permit the Court to determine that the FIA's standard has been met.  The flaws identified above in specific documents or groups of documents are examples of global deficiencies in the *Vaughn* submission, and any supplemental submission must provide "reasonably specific detail[s]" for all documents and information withheld, not just those identified herein.

### 2.    Exemption 5

Defendant has identified five pages of email communications among CBP personnel that were withheld under Exemption 5.  (Dkt. 19-2 at 11).  The Howard declaration further describes the documents as "constitute[ing] internal, predecisional deliberations and recommendations of CBP employees pertaining to Plaintiff's NEXUS eligibility, and they predate CBP's decision regarding Plaintiff's NEXUS eligibility."  (Dkt. 19-1 at ¶ 51). Defendant argues that these documents fall under the "deliberative process privilege" contained within Exemption 5.  (Dkt. 19-3 at 15).  In this circumstance, Defendant has provided enough information for the Court to analyze whether the agency has met its burden to justify its withholding under the exemption claimed.

Exemption 5 allows "intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency" to be

withheld.   5 U.S.C.  § 552(b)(5).   This "exemption has been interpreted to encompass traditional common law privileges against disclosure, including the . . . deliberative-process privilege[]." *Brennan Ctr. for Just. at N.Y. Univ. Sch. of L.*, 697 F.3d at 189 (citing *Nat'l Council of La Raza v. Dep't of Justice,* 411 F.3d 350, 356 (2d Cir. 2005)); *see Grand Cent. P'Ship*, 166 F.3d at 481 ("The 'deliberative process privilege,' . . . is encompassed within the executive privilege" under Exemption 5 of FOIA.).   The Second Circuit's "precedents have established that the deliberative process privilege protects only those records that bear on the formulation or exercise of policy-oriented judgment." *Nat. Res. Def. Council v. U.S. Env't Prot. Agency*, 19 F.4th 177, 184-85 (2d Cir. 2021) (quotation omitted).   "By contrast, '[t]he release of materials that do not embody agency judgments—for example, materials relating to standard or routine computations or measurements over which the agency has no significant discretion—is unlikely to diminish officials' candor or otherwise injure the quality of agency decisions.'"   *Id.* at 185 (quoting *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1436 (D.C. Cir. 1992)).   "Accordingly, a document may be withheld pursuant to this privilege if it is: '(1) predecisional, *i.e.,* prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.,* actually . . . related to the process by which policies are formulated.'"   *Am. C.L. Union v. Nat'l Sec. Agency*, 925 F.3d 576, 592 (2d Cir. 2019) (quoting *La Raza*, 411 F.3d at 356 (internal alterations omitted)); *see Grand Cent. P'Ship*, 166 F.3d at 482 (noting that "[t]he privilege protects recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency") (quotation and internal quotation marks omitted).

- 25 -

"In assessing whether a document is predecisional, courts . . . consider whether the government can:" (1) "pinpoint the specific agency decision to which the document correlates[;]" (2) "establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision[;]" and (3) "verify that the document precedes, in temporal sequence, the decision to which it relates." *New York Times Co. v. Dep't of Educ.*, 658 F. Supp. 3d 171, 185 (S.D.N.Y. 2023) (quotation omitted); *see Seife*, 298 F. Supp. 3d at 614.   In assessing whether a document is deliberative, "[c]ourts have looked to factors such as whether the document": (1) "formed an essential link in a specified consultative process[;]" (2) "reflect[s] the personal opinions of the writer rather than the policy of the agency[;]" and (3) "if released, would inaccurately reflect or prematurely disclose the views of the agency." *Dep't of Educ.*, 658 F. Supp. 3d at 185 (quotation omitted).   "As a general matter, the deliberative process 'privilege generally does not extend to purely factual material,' and any non-privileged material that is 'reasonably segregable' from the deliberative portions of records must be produced." *Id.* (internal citations omitted).

The information that Defendant has submitted is insufficient to allow the Court to determine that the five full pages of internal emails that it withheld pursuant to Exemption 5 were predecisional and deliberative.  The evidence in the Howard declaration—that the "records constitute internal, pre-decisional deliberations and recommendations of CBP employees pertaining to Plaintiff's NEXUS eligibility, and they predate CBP's decision regarding Plaintiff's NEXUS eligibility"—is the extent of the detail that Defendant offers

to justify withholding records pursuant to Exemption 5.  (Dkt. 19-1 at ¶ 51).[10]  Defendant does not identify the positions or roles of the CBP employees involved in the deliberations or who made recommendations, the date on which the emails were sent, or otherwise establish that the authors "prepared the document for the purpose of assisting the agency official charged with making the agency decision."  *See Dep't of Educ.*, 658 F. Supp. 3d at 185.  Defendant faults Plaintiff's argument that the agency should provide the date(s) of the emails because Plaintiff failed to cite a supporting legal authority, but Defendant's argument improperly shifts the burden to Plaintiff.  (*See* Dkt. 28 at 10).  Indeed, since Defendant's facts indicate that Plaintiff's NEXUS program eligibility was adjudicated multiple times—with varying outcomes—between 2011 and 2023 (*see* Dkt. 19-1 at ¶¶ 9-17), Defendant would need to specify the timeframe in which the emails were sent and which decision they preceded to establish that the records were predecisional.  Currently, the Court is left to guess whether the documents relate to a decision to grant, reinstate, or revoke Plaintiff's NEXUS membership, and this uncertainty means that Defendant has not met its burden to establish the predecisional nature of the emails, and more generally, the Second Circuit's requirement that the agency provide "*reasonably detailed explanations* to support its decision to withhold a document[.]" *See Behar*, 39 F.4th at 88 (emphasis added).

Moreover, there is an insufficient basis to allow the Court to conclude that the records were deliberative.  Defendant has not sufficiently explained the role of these emails

---

[10]     Defendant's *Vaughn* index merely states that Exemption 5 "was applied to five (5) pages of the document containing intra-agency email communications between CBP personnel, subject to the deliberative process privilege, as the emails are both pre-decisional and deliberative."  (Dkt. 19-2 at 11).

in the agency's consideration of Plaintiff's eligibility for the NEXUS program when it merely states that the documents contained CBP employees' deliberations and recommendations about Plaintiff's NEXUS eligibility. *See Seife*, 298 F. Supp. 3d at 618-19 ("Despite the conclusory assertion that the emails reflect the State Department's deliberations, the emails' roles in the deliberative process are not apparent from the State Department's submissions."); *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 811 F. Supp. 2d 713, 749 (S.D.N.Y. 2011) (The agency "asserts that '[t]he comments do not reflect any final agency policy or decision.'  However, that boilerplate assertion is insufficient.  Defendants must identify the role that the document played in the deliberative process."), *amended on reconsideration* (Aug. 8, 2011).  "Whether a particular document is exempt under (b)(5) depends not only on the intrinsic character of the document itself, but also on the role it played in the administrative process."  *Tigue v. U.S. Dep't of Just.*, 312 F.3d 70, 78 (2d Cir. 2002) (alteration in original).  Defendant would also need to establish that any withheld information did not reflect the agency's final determination on the decision discussed in the documents.  *See Brennan Ctr. for Just. at N.Y. Univ. Sch. of L.*, 697 F.3d at 195 ("[A] document claimed to be exempt will be found outside Exemption 5 if it closely resembles that which FOIA affirmatively requires to be disclosed: 'final opinions . . . made in the adjudication of cases[.]'") (citation omitted).  The records in question may meet this standard, but Defendant is not entitled to such a finding at this time given the limited information it has submitted.

Finally, Defendant has not met its burden under the FIA to demonstrate that it reasonably foresees that disclosure of information withheld pursuant to Exemption 5 would

harm an interest protected by this exemption.  "[A]n agency 'must explain *how* a particular Exemption 5 withholding would harm the agency's deliberative process.'  An agency may not 'perfunctorily state that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information' among or between government officials."  *Nat'l Day Laborer Org. Network*, 486 F. Supp. 3d at 691-92 (citation omitted and emphasis added).  According to Defendant, release of the five pages of emails "could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occur when CBP officials engage in decision-making processes," causing these officials "to be more circumspect in what they put in writing, thereby impeding candid discussions of the issues surrounding a decision."  (Dkt. 19-3 at 16).  As other courts have found, this boilerplate language is insufficient to satisfy the FIA's standard.  *See, e.g., Nat. Res. Def. Council v. U.S. Env't Prot. Agency*, No. 17-CV-5928 (JMF), 2019 WL 3338266, at *1 (S.D.N.Y. July 25, 2019) (rejecting agency's explanation that "[r]elease of the withheld information would discourage open and frank discussion" and "have a chilling effect on the Agency's decision-making processes"); *Judicial Watch*, 375 F. Supp. 3d at 101 (rejecting justification that "release of the redacted material would have the foreseeable harm of discouraging a frank and open dialogue among interagency staff").

In sum, while Defendant has provided more detailed justification about its withholding of information under Exemption 5 relative to the other three exemptions it has asserted, it still has not met its burden to establish that the emails in question were deliberative and predecisional, and that withholding them complies with the FIA.

Accordingly, Defendant is not entitled to summary judgment on documents withheld under Exemption 5.

## IV.    *In Camera* Review is Not Warranted at this Time

Plaintiff requests that the Court conduct an *in camera* review of the information that Defendant has withheld based on the vague, boilerplate nature of the *Vaughn* submission. (Dkt. 23 at 1).   In support of this request, Plaintiff argues that Defendant could be withholding records that explain why his NEXUS membership was revoked in 2022, despite Plaintiff allegedly "never violat[ing] any program rules."   (*See id.* at 4).   Plaintiff misunderstands the difference between the FOIA statute and discovery obligations under the Federal Rules of Civil Procedure.   "The primary purpose of the FOIA was not to benefit private litigants or to serve as a substitute for civil discovery."   *Baldrige v. Shapiro*, 455 U.S. 345, 360 & n.14 (1982) ("Unlike the FOIA . . . the discovery provisions under the Federal Rules focus upon the need for the information rather than a broad statutory grant of disclosure."); *cf. Jabar v. U.S. Dep't of Just.*, 62 F.4th 44, 51 (2d Cir. 2023) ("[T]he discovery provisions of the Federal Rules of Criminal Procedure and the FOIA *provide two independent schemes* for obtaining information through the judicial process.") (quotation omitted and emphasis in original).   Plaintiff asserts a cause of action pursuant to the APA based on Defendant's revocation of his membership in the NEXUS program.   (*See* Dkt. 9 at ¶¶ 78-79).   Plaintiff's request for records under the FOIA statute is a separate cause of action, evaluated under a different legal standard, and derives from a different objective: "a policy strongly favoring *public disclosure* of information in the possession of federal agencies."   *See Halpern*, 181 F.3d at 286 (emphasis added).   Plaintiff has a mechanism—

the discovery process—through which to obtain information in support of his claim under the APA, and his litigation objectives there are irrelevant to the question of whether Defendant has properly withheld records from public release pursuant to a FOIA exemption. *See Frankel v. Sec. & Exch. Comm'n*, 460 F.2d 813, 818 (2d Cir. 1972) (finding documents not releasable under FOIA while noting that "[i]n the discovery procedure a district judge will be able to balance the need for the documents with the need for confidentiality").

Plaintiff further asserts that *in camera* review is necessary because Defendant "has shown itself to be a bad actor." (*See* Dkt. 23 at 10-11). Plaintiff asserts that the agency is acting in bad faith based in part on its alleged actions stemming from interactions between Plaintiff and his wife and CBP officials at the United States-Canada border crossing and the revocation of Plaintiff's NEXUS membership. (*See id.* at 1-3, 10-11). Plaintiff also seemingly implies that Defendant acted in bad faith because his FOIA request "was ignored until I sued CBP for the release of the records." (*See id.* at 3). First, even if Defendant did not respond to Plaintiff's FOIA request in a timely manner, this circumstance alone does not evidence bad faith. *See Grand Cent. P'Ship*, 166 F.3d at 489-90 (noting that agency's delayed production of over 1,000 pages of documents was not evidence of bad faith); *see also Smith v. U.S. Marshals Serv.*, No. 19-CV-3572-LTS, 2021 WL 1177692, at *5 (S.D.N.Y. Mar. 29, 2021) (despite a nearly three-year delay in responding to a FOIA request, "without more, an agency's delay does not render that agency's response one that should be treated as made in bad faith") (citations omitted). Second, Plaintiff has submitted no actual evidence that Defendant has acted in bad faith in responding to his FOIA request.

As the Court has already discussed, Plaintiff has merely offered unsworn allegations in his opposition to the instant motion.  Even if Plaintiff had presented the above allegations in an affidavit or declaration based on his personal knowledge, the Court cannot see how this information constitutes evidence of Defendant's bad faith with respect to responding to Plaintiff's FOIA claim, which is the issue in the instant motion.

Nevertheless, while the Court has the discretion to order an *in camera* review while conducting its *de novo* review of the FOIA exemptions that the agency has claimed, it declines to do so at this time, despite Defendant's plainly insufficient *Vaughn* submission. *See* 5 U.S.C. § 552(a)(4)(B) ("[T]he court shall determine the matter de novo, and *may* examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth[.]") (emphasis added).   "[T]he current FOIA regime does not incentivize agencies to file adequate declarations in the first instance – because they will likely be given another opportunity to seek summary judgment on the basis of revised declarations[.]" *Radar Online LLC v. Fed. Bureau of Investigation*, No. 17 Civ. 3956 (PGG), ___ F. Supp. 3d ___, 2023 WL 6122691, at *27 (S.D.N.Y. Sept. 19, 2023) (denying without prejudice the agency's motion for summary judgment as to documents for which the *Vaughn* submission was inadequate in justifying FOIA exemptions claimed).  Mindful of the Second Circuit's guidance that *in camera* review "should not be resorted to lightly," *see Halpern*, 181 F.3d at 295, and the fact that "courts routinely direct agencies to revise their *Vaughn* index when they prove inadequate," *see CLEAR*, 2022 WL 16636686, at *3 (collecting cases), the Court directs

Defendant to amend its *Vaughn* submission to address the deficiencies identified herein if it files a renewed motion for summary judgment.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. 19) is denied without prejudice.  Defendant may file a renewed motion for summary judgment within 60 days of the date of this Decision and Order.  Any renewed motion for summary judgment must be accompanied by submissions addressing the deficiencies set forth above and adequately justifying the information it has withheld pursuant to specified FOIA exemptions.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: May 10, 2024
       Rochester, New York