UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MATTHEW BOROWSKI

                    Plaintiff,                                23-CV-257

v.

U.S. CUSTOMS AND BORDER PROTECTION

                    Defendant.

---

## **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT**

TRINI E. ROSS
United States Attorney

BY:    MARY K. ROACH
       Assistant U.S. Attorney
       U.S. Attorney's Office
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York 14202
       716-843-5866
       mary.k.roach@usdoj.gov

# TABLE OF CONTENTS

Procedural History and Facts ......................................................................2

Standard of Review..................................................................................3

      Summary Judgment in FOIA Case...........................................................3

Argument .............................................................................................4

I.     CBP Complied with its Obligation to Search for Responsive Information and Properly Applied FOIA Exemptions in Responding to Plaintiff's FOIA Request............................................4

    A.  CBP Conducted Searches Reasonably Calculated to Uncover Responsive Records to the Request at Issue ...................................4

        1.  GES.........................................................................6

        2.  AFI..........................................................................7

        3.  Search Results..........................................................10

    B.  CBP Properly Withheld Information Pursuant to FOIA Exemption.......... 11

        1.  Exemption 5..............................................................12

        2.  Exemptions 6 and 7(c)....................................... ......15
            a.  Exemption 6.................................................. ... ....15

            b.  Exemption 7 (c).................................................16

        3.  Exemption 7 (E) )........................................................20
            a.  Records Withheld Under Exemption 7 (E)… were Withheld for Law Enforcement Purposes............................22

            b.  Information Relating to Law Enforcement Techniques and Procedures Utilized in Furtherance of CBP's Mission in Securing the United States Border and Facilitating Lawful Trade and Travel............................................................23

            c.  Information Relating to CBP Systems and Databases....................25

II.    CBP's Vaughn Index Adequately Explains Its Withholdings
        Under the FOIA Exemptions............................................................26

III.   CBP Complied with FOIA'S Segregability Requirement..........................28


Conclusion....................................................................................................29

## TABLE OF AUTHORITIES

**FEDERAL CASES**

Abdul-Alim v. Wray, 277 F. Supp.3d 199, 216 (D. Mass. 2017) ................................................. 17

Allard K. Lowenstein Int'l Hum. Rts. Project v. DHS, 626 F.3d 678, 681-82 (2d Cir. 2010). .................................. 21,22

Am Immigr. Council v. DHS, 30 F. Supp.3d 67, 75 (D.D.C. 2014) ............................................. 22

Am. Immigr. Laws. Ass'n v. DHS, 485 F. Supp.3d 100, 109 (D.D.C. 2020) .............................. 24

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986) ................................................. 3

Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996); ........... 28

Bishop v. DHS, 45 F. Supp.3d 380, 386-87 (S.D.N.Y. 2014) ............................................. 22,24-25

Borowski v. CBP, 1:23-CV-00257 EAW, 2024 WL 2099268, at *14 (W.D.N.Y. May 10, 2024) ................................. 1,26

Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. DHS, 331 F. Supp.3d 74, 97 (S.D.N.Y. 2018) ....................... 21

Brennan Ctr. for Just. at N.Y. Univ. Sch. of Law v. DOJ, 697 F.3d 184, 194 (2d Cir. 2012) ....................... 12

Canning v. DOJ, 567 F. Supp.2d 104, 110 (D.D.C. 2008) ................................................ 28

Carney v. DOJ, 19 F.3d 807, 812 (2d Cir.), cert. denied, 513 U.S. 823 (1994) ....................... 3,27

Carpenter v. DOJ, 470 F.3d 434, 438 (1st Cir. 2006) ................................................ 17

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ................................................ 3

CLEAR v. CBP, No. 19-CV-7079 (RER), 2022 WL 16636686, at *9 (E.D.N.Y. Nov. 2, 2022) ............ 21, 22, 23

Coastal States Gas Corp. v. DOE, 617 F.2d 854, 867 (D.C. Cir. 1980) ................................. 13

Commonwealth of Pa. Dep't of Pub. Welfare v. HHS, No. CIVA 05-1285, 2006 WL 3792628, at *59 (W.D. Pa. Dec. 21, 2006) ........................ 19

Crooker v. Tax Div. of U.S. Dep't of Justice, No. 94-CV-30129-MAP, 1995 WL 783236, at *17 (D. Mass. Nov. 17, 1995) ........................ 19

Dellums v. Powell, 642 F.2d 1351, 1360 (D.C. Cir. 1980) ................................................ 27

Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001) ................ 12

Dolin, Thomas & Solomon LLP v. U.S. Dep't of Lab., 719 F. Supp.2d 245, 255 (W.D.N.Y. 2010) .... 10

Families for Freedom v. CBP, 837 F. Supp.2d 287, 301 (S.D.N.Y. 2011) ............................. 16,18

Flores v. CIA, 829 F.3d 178, 182 (2d Cir. 2016) ................................................ 3

Garcia v. U.S. Dep't of Justice, Office of Information and Privacy, 181 F. Supp.2d 356, 366 (S.D.N.Y. 2002) .......... 4

Gatson v. FBI, No. 15-5068, 2017 WL 3783696, at *6 (D.N.J. Aug. 31, 2017) .......................... 10

Gonzalez v. USCIS, 475 F. Supp.3d 334, 351-52 (S.D.N.Y. 2020) ......................................... 25

Grand Cent. P'ship v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999) ........................................... 13

Greenberg v. Dep't of Treasury, 10 F. Supp.2d 3, 13 (D.D.C. 1998) ....................................... 5

Halpern v. FBI, 181 F.3d 279, 291 (2d Cir. 1999) ............................................................... 26

Inter Ocean Free Zone, Inc. v. U.S. Customs Serv., 982 F. Supp. 867, 871 (S.D. Fla. 1997 ................... 19,20

Iraq Refugee Assistance Project v. DHS, No. 12-cv-3461, 2017 WL 1155898, at *5 (S.D.N.Y. Mar. 27, 2017) ........... 21

Jabar v. DOJ, 17-CV-301JLS(F), 2021 WL 6427482, at *6 (W.D.N.Y. Nov. 24, 2021) ...................................... 3

Johnson v. CIA, 330 F. Supp.3d 628, 647 (D. Mass. 2018) ....................................................... 16

Jud. Watch, Inc. v. FDA, 449 F.3d 141, 151 (D.C. Cir. 2006) .................................................. 12,26,28

Judicial Watch, Inc. v. U.S. Dep't of Com., 375 F. Supp. 3d 93, 99–100 (D.D.C. 2019) ......................... 13

Katsiaficas v. CIA, No. 13-cv-11058-ADB, 2017 WL 2172437, at *5 (D. Mass. May 17, 2017) ...................... 11

Keys v. DOJ, 830 F.2d 337, 340 (D.C. Cir. 1987)) .............................................................. 21,27

King v. DOJ, 830 F.2d 210, 218-19 (D.C. Cir. (1987) .......................................................... 27

Knight First Amend. Inst. at Columbia Univ. v. USCIS, 30 F.4th 318, 328 (2d Cir. 2022) ...................... 21,22

Kowalczyk v. DOJ, 73 F.3d 386, 388 (D.C. Cir. 1996) ........................................................... 5

Marks v. DOJ, 578 F.2d 261, 263 (9th Cir. 1978) .............................................................. 5

Maynard v. CIA, 986 F.2d 547, 566 (1st Cir. 1993) ............................................................ 19

Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242, (D.C. Cir. 1977) ............................. 27,28

Mermerlstein v. DOJ, 19-CV-00312 (GRB)(JMW), 2021 WL 3455314, at *4 (E.D.N.Y. Aug. 4, 2021) ................. 3,21

Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003) ...................................... 3

Milner v. Dep't of Navy, 562 U.S. 562, 582 (2011) ( ......................................................... 21

Moffat v. DOJ, 716 F.3d 244, 250 n.4 (1st Cir. 2013) ........................................................ 17

Moradi v. Morgan, 527 F. Supp.3d 144, 155 (D. Mass. 2021) ................................................... passim

Morley v. CIA, 508 F.3d 1108, 1122 (D.C. Cir. 2007) ......................................................... 27

NTEU v. U.S. Customs Serv., 802 F.2d 525, 527 (D.C. Cir. 1986) .............................................. 27

N.Y. Times Co. v. DOJ, No. 14-CV-03776 (AT)(SN), 2016 WL 5946711, at *5 (S.D.N.Y. Aug. 18, 2016) ............. 11

Nat. Res. Def. Council v. EPA ("NRDC I"), No. 17 Civ. 5928 (JMF), 2019 WL 3338266, at *1 (S.D.N.Y. July 25, 2019).13

Nat. Res. Def. Council v. EPA, 19 F.4th 177, 192 (2d Cir. 2021).................................................12,13

Nat'l Day Laborer Org. Network v. ICE, 486 F. Supp. 3d 669, 691 (S.D.N.Y. 2020) .................................11,13

Nat'l Council of La Raza v. DOJ, 411 F.3d 350, 356 (2d Cir. 2005) ...............................................12

NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975) .........................................................12

Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990)..................................................5

Paco v. CBP, 2016 WL 344522, at *6 (D.N.J. Jan. 27, 2016).....................................................25

People for the Am. Way Found. v. Nat'l Park Serv., 503 F. Supp.2d 284, 294 (D.D.C. 2007) ....................26

Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982) ..............................................................4

Pickering v. DOJ, No. 14-CV-330-A, 2024 WL 2149035, at *10 (W.D.N.Y. May 14, 2024).........................21

Project South v. ICE, No. 121CV08440ALCBCM, 2024 WL 1116164, at *13 (S.D.N.Y. Mar. 12, 2024) .................16

Rosenberg v. U.S. Dep't of Def., 342 F. Supp. 3d 62, 73 (D.D.C. 2018) .........................................11

Roth v. DOJ, 642 F.3d 1161, 1173 (D.C. Cir. 2011) .............................................................17

SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 D.C. Cir. 1991 ...........................................4,5,27

Schrecker v. DOJ, 349 F.3d 657, 662 (D.C. Cir. 2003) ..........................................................6

Schwarz v. DOJ, No. 10-0562, 2010 WL 2836322, at *4 (E.D.N.Y. Jul. 14, 2010)..............................10

Strunk v. U.S. Dep't of State et al., 905 F. Supp.2d 142, 147–49 (D.D.C. 2012) ...............................26

Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007) ........................................28

Taylor v. DOJ, 257 F. Supp.2d 101, 113 (D.D.C. 2003) ........................................................17

Tigue v. DOJ, 312 F.3d 70, 80 (2d Cir. 2002)....................................................................13

U.S. Dep't of Def. v. Fed. Lab. Rels. Auth., 510 U.S. 487, 495 (1994) ........................................16

U.S. Dep't of Just. v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 775 (1989) ....................16,20

U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 150-51 (1989)...............................................4

U.S. Dep't of State v. Ray, 502 U.S. 164, 172 (1991) ...........................................................16

U.S. Fish and Wildlife Serv. v. Sierra Club, Inc., 592 U.S. 261, 262 (2021).....................................12

United States Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982.................................16

Weisberg v. DOJ, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ................................................................. 4

Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 73 (2d Cir. 2009) ....................................................... 3

Wood v. FBI, 432 F.3d 78, 86 (2d Cir. 2005) ............................................................................. 16

**STATUTES**

5 U.S.C. § 552 ........................................................................................................................ passim

**RULES**

Fed. R. Civ. P. 56 ......................................................................................................................... 3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

MATTHEW BOROWSKI,              )
                              )
        Plaintiff,            )
                              )            No. 23-cv-00257-EAW-MJR
        v.                    )
                              )
U.S. CUSTOMS AND              )
BORDER PROTECTION,            )
                              )
        Defendant.            )
_____ )

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT

This case arises from Plaintiff's request pursuant to the Freedom of Information Act ("FOIA" or "the Act"), 5 U.S.C. § 552, directed to defendant U.S. Customs and Border Protection ("CBP," the "Defendant," or "the Agency").[1] On October 16, 2023, CBP filed a Motion for Partial Summary Judgment (ECF No. 19). On November 24, 2023, Plaintiff filed a Response in Opposition (ECF No. 23), and on December 19, 2023, CBP filed a Reply (ECF No. 28). On May 10, 2024, the Court issued a Decision and Order ("D&O") (ECF No. 37) denying CBP's motion without prejudice and allowing CBP to file a renewed motion for summary judgment within 60 days. *See Borowski v. CBP*, 1:23-CV-00257 EAW, 2024 WL 2099268, at *14 (W.D.N.Y. May 10, 2024).

CBP conducted an adequate search for responsive records, and any withheld documents fall under one of FOIA's nine Exemptions. CBP, therefore, respectfully submits this Renewed Motion for Partial Summary Judgment as to Plaintiff's FOIA claims. In support

---

[1] There is also a pending claim by Plaintiff against CBP under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), which is not addressed in this motion.

of its motion, CBP submits the Declaration of Michael J. Millich ("Millich Dec."), the Supplemental Declaration of Patrick A. Howard ("Supp. Howard Dec."), as well as an updated *Vaughn* Index.

## PROCEDURAL HISTORY

A full recitation of the procedural background of Plaintiff's FOIA claim is set forth in the Court's D&O. ECF No. 37 at 7.

## FACTS

Defendant incorporates herein the facts set forth in Defendant's Statement of Material Facts to Which There is No Genuine Issue to be Tried ("Stmt.").

Since the Court issued the D&O, CBP re-processed and, on July 2, 2024, re-released all 251 pages of records responsive to Plaintiff's FOIA request to Plaintiff, with fewer redactions on three records. Stmt. ¶ 55. Specifically, CBP un-redacted portions of the intra-agency emails (pp. 000019-000023 of the FOIA release), with the remaining FOIA-exempt information redacted as delineated in the Supplemental Howard Declaration and in the *Vaughn* Index. *Id.* at ¶ 56. CBP also un-redacted the license plate numbers contained within the inspection narratives from Plaintiff's border inspections on March 19, 2013 (p. 000028 of the FOIA release), and December 14, 2013 (pp. 000031-000032 of the FOIA release), with the remaining FOIA-exempt information redacted as delineated in the Supplemental Howard Declaration and in the *Vaughn* Index. *Id.* at ¶ 57.

In addition to reprocessing the records released to Plaintiff, CBP also revised its supporting declarations and *Vaughn* Index, described more fully in Section II, *infra*, to address the Court's concerns stated in the D&O. For example, the *Vaughn* Index includes a "Summary of Exemption Categories" that explains the bases for withholdings under various FOIA

exemptions, which correspond with a more detailed accounting in the *Vaughn* Index of the redactions on particular Bates-numbered pages.

## STANDARD OF REVIEW

"Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).

### Summary Judgment in FOIA Cases

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Jabar v. DOJ*, 17-CV-301JLS(F), 2021 WL 6427482, at *6 (W.D.N.Y. Nov. 24, 2021) (quoting *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir.), *cert. denied*, 513 U.S. 823 (1994)).

"Affidavits or declarations are ordinarily the principal source of proof in FOIA cases on summary judgment motions." *Mermelstein v. DOJ*, 19-CV-00312 (GRB)(JMW), 2021 WL 3455314, at *4 (E.D.N.Y. Aug. 4, 2021) (citing *Flores v. CIA*, 829 F.3d 178, 182 (2d Cir. 2016) (additional citations omitted)). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009).

# ARGUMENT

CBP has appropriately searched for and provided records responsive to the request at issue, subject to the withholding of certain information pursuant to applicable FOIA Exemptions 5, 6, 7(C), and 7(E). CBP has disclosed all reasonably segregable information.

## I. CBP COMPLIED WITH ITS OBLIGATION TO SEARCH FOR RESPONSIVE INFORMATION AND PROPERLY APPLIED FOIA EXEMPTIONS IN RESPONDING TO PLAINTIFF'S FOIA REQUEST.

FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions. 5 U.S.C. § 552(b); *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989). Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA, and the FOIA claim is moot. *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982). Here, CBP conducted an appropriate search and released responsive records, subject to appropriate withholdings permitted under FOIA.

### A. CBP Conducted Searches Reasonably Calculated to Uncover Responsive Records in Response to the Request at Issue.

"If an agency demonstrates that it has conducted a reasonable search for relevant documents, it has fulfilled its obligations under FOIA and is entitled to summary judgment on this issue." *Garcia v. U.S. Dep't of Justice, Office of Information and Privacy*, 181 F. Supp.2d 356, 366 (S.D.N.Y. 2002) (citing *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*") (emphasis in original). ("'[T]he factual question . . . is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant.'") (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 D.C. Cir.

1991)). Agency affidavits "must show that the agency made a good faith effort to search for the requested documents, using methods 'reasonably calculated' to produce documents responsive to the FOIA request." *Id.*

Here, CBP has conducted a search of the records systems where responsive records were likely to be located, and no other records systems were likely to produce additional responsive records. Upon receiving Plaintiff's FOIA request, the CBP FOIA Division staff considered which CBP databases were likely to hold responsive information based upon a careful review of the content of the request itself and the nature of the records sought. Stmt. ¶ 29. The FOIA Division determined that responsive records pertaining to Plaintiff's request for records or information relating to the application, renewals, denial and revocation of Plaintiff's NEXUS membership on December 20, 2022, would be located in the Global Enrollment System ("GES") database, and that responsive records relating to Plaintiff's request for records that were consulted as part of the decision to deny and revoke Plaintiff's NEXUS membership would be located in the Analytical Framework for Intelligence ("AFI") system. No other records systems were likely to produce additional responsive records. *Id.* at ¶ 30.

It is appropriate for an agency to search for responsive records in accordance with the manner in which its records systems are indexed. *Greenberg v. Dep't of Treasury*, 10 F. Supp.2d 3, 13 (D.D.C. 1998). FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request when responsive documents are likely to be located in one place. *Kowalczyk v. DOJ*, 73 F.3d 386, 388 (D.C. Cir. 1996); *Marks v. DOJ*, 578 F.2d 261, 263 (9th Cir. 1978). Nor does FOIA require that an agency search every record system. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The process of

conducting an adequate search for documents requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and it is "hardly an area in which the courts should attempt to micromanage the executive branch." *Schrecker v. DOJ*, 349 F.3d 657, 662 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

In the Supplemental Howard Declaration, CBP has explained the structure of its systems and why these two systems are the only locations where relevant information is likely to be possessed by CBP. Stmt. ¶¶ 29-51.

1.    **GES**

GES consolidates records relating to the enrollment of, and vetting processes for, individuals seeking to participate in CBP's trusted traveler programs, including the NEXUS program. GES is the sole repository for trusted traveler program enrollment, application, and background investigation data. Records relating to CBP's assessment of a particular individual's eligibility and application processing are contained within the GES system. Stmt. ¶ 31. All individuals accepted into the NEXUS program receive a membership identification card and membership number specific to that individual. That membership number is reflected in the GES records for that particular individual. *Id.* at ¶ 32.

As to the search terms utilized, the FOIA Division searched GES using Plaintiff's NEXUS membership number. Stmt. ¶ 33. Using Plaintiff's NEXUS membership number allowed retrieval of all trusted traveler records relating to Plaintiff's NEXUS membership, including those records relating to Plaintiff's NEXUS denial and revocation dated December 20, 2022, as requested by Plaintiff in his FOIA request. *Id.* at ¶ 34. Consequently, searching GES using Plaintiff's first and last name would be unlikely to uncover additional, relevant records responsive to that portion of Plaintiff's request for records. *Id.* at ¶ 35.

Therefore, a search of GES utilizing Plaintiff's NEXUS membership number was reasonably designed to produce all records responsive to Plaintiff's request seeking Plaintiff's Trusted Traveler records, specifically those relating to the denial and revocation of Plaintiff's NEXUS membership on December 20, 2022. Stmt. ¶ 36. Thus, CBP has explained why it searched GES using plaintiff's NEXUS membership number, and why the search was reasonably designed to locate, and be comprehensive of, all responsive records.

## 2.    AFI

Likewise, CBP has explained why it searched the AFI system using Plaintiff's first and last name in conjunction with one another ("Matthew Borowski"), as provided within Plaintiff's FOIA request, and why this search was reasonably designed to locate responsive records. The records that formed the basis of the December 2022 denial of Plaintiff's NEXUS membership included Plaintiff's trusted traveler records, found in GES, as well as CBP border inspection records, which are found in the AFI system. Stmt. ¶ 37. CBP's AFI system incorporates and indexes data from several other CBP and U.S. Department of Homeland Security ("DHS") source data systems, including: Automated Targeting System ("ATS"), Advance Passenger Information System ("APIS"), Electronic System for Travel Authorization ("ESTA"), Border Crossing Information ("BCI"), TECS, Nonimmigrant and Immigrant Information System ("NIIS"), Seized Asset Case Tracking System ("SEACATS"), Department of Justice ("DOJ") Federal Bureau of Investigation ("FBI") Terrorist Screening Database, GES, and Enterprise Management Information System-Enterprise Data Warehouse ("EMIS-EDW"). *Id.* at ¶ 38.

For example, and as relevant here, CBP currently uses transaction-based systems such as TECS[2] (not an acronym) to input, access, or maintain law enforcement, inspection, intelligence-gathering, and operational records. Stmt. ¶ 39.

All travelers entering the United States must undergo DHS customs and immigration inspection to ensure that they are legally eligible to enter, and that their belongings are not being introduced into the United States contrary to law. It is not until those processes are complete that a traveler, with or without his or her belongings, is permitted to enter the United States. Depending on the method of conveyance used to travel to the United States (*e.g.*, air, sea, or land (pedestrian and vehicle)), CBP collects certain information from and about the traveling public at various stages of the international trip. Stmt. ¶ 41.

Unlike for those arriving by air or sea, CBP generally does not receive information about individuals traveling to the U.S. by foot or vehicle prior to their arrival at a Port of Entry. Vehicles are presented to CBP at the vehicle primary border crossing lanes upon arrival at a land Port of Entry. At vehicle primary, the CBP officer obtains information directly from the driver and traveler(s) within the vehicle via their travel documents (*e.g.*, passport), and/or through verbal communication. During CBP's primary and secondary inspection processes, CBP will collect a traveler's complete name (last name, first name, and middle name or initial). Stmt. ¶ 42.

The information collected at vehicle primary is used to query TECS to assist the CBP officer in determining the admissibility of the person(s) and otherwise inform the CBP officer charged with enforcing other U.S. laws at the border. If the CBP officer at primary determines

---

[2] TECS serves as the data repository for border screening and reporting for CBP's primary and secondary inspection processes, including the enforcement or inspection records pertaining to individuals. Stmt. ¶ 40.

that further examination is appropriate, then the vehicle and all of its occupants will be referred to vehicle secondary for processing. During a vehicle secondary inspection, a CBP officer may run law enforcement queries through the TECS Platform. A record of the inspection is entered into TECS. Stmt. ¶ 43.

AFI then ingests and consolidates the information from the TECS system, as well as the other source systems mentioned above, such that searching AFI is inclusive of searching those records ingested from TECS and other source systems. The data in AFI has been indexed in a way that allows searches for a particular individual across all information in a record. Inspection records contained within AFI as incorporated from CBP's source systems, including TECS, contain a traveler's complete name as provided via their travel documents and/or through verbal communication during the inspection process. Stmt. ¶ 44.

The FOIA Division searched AFI using Plaintiff's first and last name in conjunction with one another ("Matthew Borowski") as provided within Plaintiff's FOIA request. Stmt. ¶ 45. Because inspection records contain a traveler's complete name, a search utilizing Plaintiff's first and last name in conjunction with one another was reasonably designed to produce all records responsive to Plaintiff's request for records that were consulted as part of the decision to deny and revoke Plaintiff's NEXUS membership.[3] *Id.* at ¶ 46. Searching Plaintiff's first and last names separately would be unlikely to uncover additional records responsive to Plaintiff's request, and conversely, would be reasonably likely to produce voluminous records non-responsive to Plaintiff's request. *Id.* at ¶ 47.

---

[3] Because Plaintiff's NEXUS membership number pertains to CBP's Trusted Traveler program, a search for inspection records utilizing Plaintiff's NEXUS membership number would be unlikely to uncover additional, relevant records responsive to the portion of Plaintiff's FOIA request seeking records consulted or used as a basis for denial of Plaintiff's December 2022 NEXUS membership. Stmt. ¶ 48.

By searching the GES and AFI systems, the FOIA Division searched all files likely to contain records or information responsive to Plaintiff's request. Stmt. ¶ 49. No other custodians were likely to possess additional responsive records. *Id.* at ¶ 50. Any further search would be unlikely to uncover additional, relevant records responsive to Plaintiff's request. *Id.* at ¶ 51; *see Dolin, Thomas & Solomon LLP v. U.S. Dep't of Lab.*, 719 F. Supp.2d 245, 255 (W.D.N.Y. 2010) (determining search adequate where agency "has attested to multiple searches for responsive documents, describing in detail the scope of the search, and listing files and persons from whom information was sought"); *Schwarz v. DOJ*, No. 10-0562, 2010 WL 2836322, at *4 (E.D.N.Y. Jul. 14, 2010) (concluding agency search adequate where "[t]he affidavit of each agency demonstrates a thorough, careful search in every place where documents responsive to plaintiff's request might have been located"), *aff'd*, 417 F. App'x 102 (2d Cir. 2011); *Gatson v. FBI*, No. 15-5068, 2017 WL 3783696, at *6 (D.N.J. Aug. 31, 2017) (holding that "search terms and methodology" described in declaration were sufficient and noting that "the relevant inquiry is not whether the Government conducted the most expansive search possible or a perfect search," but rather, whether the search was "reasonably calculated" to uncover responsive records).

### 3.    Search Results

The FOIA Division's search yielded 251 pages of responsive records. Stmt. ¶ 52. The responsive records were processed by personnel from the CBP FOIA Division. *See id.* at ¶¶ 29-30. On May 25, 2023, CBP released 251 pages of records responsive to Plaintiff's request. *Id.* at ¶ 54.

CBP re-processed and, on July 2, 2024, re-released all 251 pages to Plaintiff, with fewer redactions on three records. Stmt. ¶ 55. Specifically, CBP un-redacted portions of the five

pages of intra-agency e-mails (pp. 000019-000023 of the FOIA release), with the remaining FOIA-exempt information redacted as delineated in the Supplemental Howard Declaration and in the *Vaughn* Index. *Id.* at ¶ 56. CBP also un-redacted the license plate numbers contained within the inspection narratives from Plaintiff's border inspections on March 19, 2013 (p. 000028 of the FOIA release), and December 14, 2013 (pp. 000031-000032 of the FOIA release), with the remaining FOIA-exempt information redacted as delineated in the Supplemental Howard Declaration and in the *Vaughn* Index. *Id.* at ¶ 57.

### B.    CBP Properly Withheld Information Pursuant to FOIA Exemptions.

Although CBP initially bears the burden of proving that its claimed exemptions apply, "[t]his burden is 'a light one,' as 'an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible.'" *Moradi v. Morgan*, 527 F. Supp.3d 144, 155 (D. Mass. 2021) (quoting *Katsiaficas v. CIA*, No. 13-cv-11058-ADB, 2017 WL 2172437, at *5 (D. Mass. May 17, 2017) (quoting *N.Y. Times Co. v. DOJ*, No. 14-CV-03776 (AT)(SN), 2016 WL 5946711, at *5 (S.D.N.Y. Aug. 18, 2016)).

As this Court observed in the D&O, pursuant to the FOIA Improvement Act of 2016 ("FIA"), 5 U.S.C. (a)(8)(a), "an agency must release a record—*even if it falls within a FOIA exemption*—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law." ECF No. 37 at 12 (emphasis in original) (citing *Nat'l Day Laborer Org. Network v. ICE*, 486 F. Supp. 3d 669, 691 (S.D.N.Y. 2020) (quoting *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018)). In determining "whether an agency has shown that it reasonably foresees that disclosure would harm an interest protected by a FOIA exemption, the court 'must first discern the interests protected by' the exemption invoked." *Id.* at 18-19.

### 1.    Exemption 5

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "The privilege is based 'on the policy of protecting the decision making processes of government agencies.'" *Brennan Ctr. for Just. at N.Y. Univ. Sch. of Law v. DOJ*, 697 F.3d 184, 194 (2d Cir. 2012) ("*Brennan Center*") (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). "An inter- or intra-agency document may be withheld pursuant to the deliberative process privilege [contained within Exemption 5] if it is: (1) 'predecisional,' *i.e.*, prepared in order to assist an agency decisionmaker in arriving at his decision,' and (2) 'deliberative,' *i.e.*, 'actually . . . related to the process by which policies are formulated.'" *Brennan Center*, 697 F.3d at 194 (quoting *Nat'l Council of La Raza v. DOJ*, 411 F.3d 350, 356 (2d Cir. 2005) (internal citation omitted)).

The Supreme Court has held that the deliberative process privilege "aims to improve agency decisionmaking by encouraging candor and blunting the chilling effect that accompanies the prospect of disclosure." *U.S. Fish and Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 262 (2021). The Second Circuit held that "[t]he deliberative process privilege is designed to promote the quality of agency decisions by preserving and encouraging candid discussion between officials. It is based 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.'" *La Raza*, 411 F.3d at 356 (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001)).

A document is "predecisional" if it is "generated before the adoption of an agency policy." *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006); *see also Nat. Res. Def.*

*Council v. EPA*, 19 F.4th 177, 192 (2d Cir. 2021) ("a record is predecisional if it relates to a specific decision *or a specific decisionmaking process* and was generated before the conclusion of that decision or process") (emphasis in original). "Protected by this privilege are 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" *Tigue v. DOJ*, 312 F.3d 70, 80 (2d Cir. 2002) (quoting *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999)).

A document is "deliberative" if it reflects "the give-and-take of the consultive process," either by assessing the merits of a particular viewpoint, or by articulating the process used by the agency to formulate a decision. *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 867 (D.C. Cir. 1980).

As to CBP's obligations under the FIA, "'to satisfy the foreseeable harm standard,' an agency 'must explain how a particular Exemption 5 withholding would harm the agency's deliberative process.'" *Nat'l Day Laborer Org. Network*, 486 F. Supp.3d at 691. "An agency may not 'perfunctorily state that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information' among or between government officials." *Id.* at 691-92; *Nat. Res. Def. Council v. EPA* ("*NRDC I*"), No. 17 Civ. 5928 (JMF), 2019 WL 3338266, at *1 (S.D.N.Y. July 25, 2019) (internal citations omitted) (quoting *Rosenberg*, 342 F. Supp. 3d at 78) (citing *Judicial Watch, Inc. v. U.S. Dep't of Com.*, 375 F. Supp. 3d 93, 99–100 (D.D.C. 2019)); *see also Judicial Watch*, 375 F. Supp. 3d at 100 ("boiler plate" and generalized articulations of harm insufficient).

CBP applied Exemption 5 to five pages of records, consisting of intra-agency emails. Stmt. ¶ 65. These five pages of records constitute internal predecisional deliberations and

13

recommendations of CBP employees pertaining to Plaintiff's NEXUS eligibility, and they predate CBP's 2014 decision regarding Plaintiff's NEXUS eligibility.[4] *Id.* at ¶ 66. The dates of the communications and the titles of the recipients of those emails are not redacted.

Specifically, the intra-agency emails consist of seven emails sent on April 2, 2014; April 4, 2014; April 17, 2014; April 18, 2014; and April 22, 2014. The authors of the emails, who were also recipients of the emails, were individuals occupying CBP positions who informed the decision whether to approve or deny Plaintiff's NEXUS membership reinstatement in April 2014. Those individuals included an Ombudsman for CBP's Trusted Traveler programs, two Border Security managers in the Boston and Buffalo Field Offices, respectively, an Assistant Port Director within the Port of Buffalo, and a Supervisory CBP Officer. The Ombudsman was the decision-maker relating to Plaintiff's NEXUS membership reinstatement on April 25, 2014. Stmt. ¶ 68.

The email deliberations to which Exemption 5 was applied concerned the reinstatement of Plaintiff's NEXUS membership. Stmt. ¶ 69. The content of the redacted portions of the emails includes deliberations, the expression of opinions, and recommendations as to whether Plaintiff's NEXUS program history and compliance with CBP's border inspection process supports a reinstatement of Plaintiff's trusted traveler status. *Id.* at ¶ 70. These opinions and recommendations were prepared for the purpose of assisting, and considered as part of, the Ombudsman's decision ultimately approving the reinstatement of Plaintiff's membership in the NEXUS program on April 25, 2014. *Id.* at ¶ 71.

---

[4] In addition to being exempt under Exemption 5, these five pages of records also contain information that is further exempt from disclosure under Exemptions 6, 7(C), and 7(E). *See* subsections B(2)-(4), *infra.*

The withheld information does not reflect CBP's final determination of Plaintiff's NEXUS membership reinstatement. Stmt. ¶ 72. A determination as to whether a particular individual is eligible to participate in the NEXUS program may include intra-agency deliberation to inform the decision-maker ultimately tasked with determining whether an applicant can satisfy CBP of his or her low-risk status or meet other program requirements. *Id.* at ¶ 73.

Release of the predecisional records containing intra-agency deliberations concerning a NEXUS eligibility determination would create a chilling effect that would harm internal Agency open discourse. If all NEXUS applicants could access internal deliberations about NEXUS eligibility, agency decisionmakers would be less likely to engage in open and candid expression of recommendations and opinions necessary to making such a determination. This, in turn, could negatively impact the quality of decisions affecting CBP's ability to carry out its mission in securing the United States border. Further, release of non-finalized, pre-decisional records could create public confusion. Stmt. ¶ 74. Thus, CBP provided reasonably specific detail sufficient to allow the Court to assess the appropriateness of the application of Exemption 5 to the five pages of predecisional emails and established that CBP reasonably foresees that disclosure of the five pages would harm CBP's deliberative processes.

### 2.    Exemptions 6 and 7(C)

a.    Exemption 6

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has interpreted Exemption 6 broadly to encompass any "information which applies to a particular individual." *United States Dep't of State v. Washington*

*Post Co.*, 456 U.S. 595, 602 (1982). Whether names and other identifying information are appropriately withheld under Exemption 6 is a two-part analysis. *Moradi*, 527 F. Supp.3d at 157 (citing *Johnson v. CIA*, 330 F. Supp.3d 628, 647 (D. Mass. 2018) (quoting *Families for Freedom v. CBP*, 837 F. Supp.2d 287, 301 (S.D.N.Y. 2011)). "First, [the Court] must determine whether the personal information is contained in a file similar to a medical or personnel file." *Id.* "Then, the Court must 'balance the public's need for the information against the individual's privacy interest to determine whether the disclosure of the names would constitute a clearly unwarranted invasion of personal privacy.'" *Id.* (quoting *Wood v. FBI*, 432 F.3d 78, 86 (2d Cir. 2005)).

"The 'only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contribut[ing] significantly to public understanding of the operations or activities of the government.'" *Project South v. ICE*, No. 121CV08440ALCBCM, 2024 WL 1116164, at *13 (S.D.N.Y. Mar. 12, 2024) (citing *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495 (1994) (quoting *U.S. Dep't of Just. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 775 (1989) (quotation marks omitted)). "[T]he Government's burden in establishing the requisite invasion of privacy to support an Exemption 6 claim is heavier than the standard applicable to Exemption 7(C)." *Moradi*, 527 F. Supp.3d at 157 (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 172 (1991)).

     b.    <u>Exemption 7(C)</u>

Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such [materials] . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Moradi*, 527 F. Supp.3d at 157 (quoting *Carpenter v. DOJ*, 470 F.3d 434, 438 (1st Cir. 2006) (quoting 5

U.S.C. § 552(b)(7)(C)). "The application of Exemption 7(C) requires the court to balance the privacy interest at stake in revealing the materials with the public interest in their release." *Id.*

"In determining whether a privacy interest exists in records related to law-enforcement agencies, it is well established that the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Id.* (citing *Abdul-Alim v. Wray*, 277 F. Supp.3d 199, 216 (D. Mass. 2017) (quoting *Taylor v. DOJ*, 257 F. Supp.2d 101, 113 (D.D.C. 2003)). "[T]he public's interest in disclosure is not furthered . . . by disclosure of information about individuals that is accumulated in . . . governmental files but that reveals little or nothing about an agency's own conduct." *Id.*

CBP applied Exemptions 6 and 7(C) in tandem to records, which were compiled for law enforcement purposes, such that information in those records protected by one exemption is also protected by the other. Stmt. ¶ 96; *see also Moradi*, 527 F. Supp.3d at 157 (quoting *Moffat v. DOJ*, 716 F.3d 244, 250 n.4 (1st Cir. 2013) (citing *Roth v. DOJ*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) ("Given that Exemption 7(C) 'protects similar interests and shields a broader range of information,' than Exemption 6, 'all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C).'")).

Exemptions 6 and 7(C) were applied to records compiled for law enforcement purposes which contain the names of CBP employees, personally identifying information ("PII") relating to CBP employees, and PII and other identifying details of third-party individuals that would identify those individuals if released. *See Vaughn* Index, Summary of Exemption Categories, pp. 2-3; Stmt. ¶¶ 96-102.

These records are "similar" to personnel or medical files, as other courts have held analogous documents to be. *Moradi*, 527 F. Supp.3d at 158 (citing *Families for Freedom*, 837 F.

Supp.2d at 301 & n.83 (noting that "similar files" has been construed to include "those containing investigations of alleged corruption, passport applications, asylum requests or detainee abuse")). Additionally, the responsive records were compiled for law enforcement purposes in that they were created and used by CBP in its law enforcement mission to secure the international borders of the United States. This includes Plaintiff's border inspection records at the United States border, and records relating to Plaintiff's participation in CBP's NEXUS program, which directly relate to CBP's law enforcement mission. Stmt. ¶ 53.

From the responsive records, CBP withheld the names of CBP employees.[5] Stmt. ¶ 98. CBP also withheld unique PII of CBP personnel.[6] *Id.* at ¶ 100. For each withholding, the CBP employee has a protectable privacy interest in the nondisclosure of their identity or other identifying information. Because CBP employees occupy sensitive, law enforcement positions, they face an increased risk of becoming the targets of harassment or attack. Withholding this information protects CBP employees from harassment in their private lives due to the conduct of their official duties, which could result from public disclosure of their identities. *Id.* at ¶ 103. Additionally, releasing the names of such employees would not meaningfully increase the public understanding of government operations, justifying such disclosure. Therefore, release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information. *Id.* at ¶ 104.

---

[5] These materials are designated as sub-category (b)(6), (b)(7)(C)-1 in the *Vaughn* Index, filed herewith.

[6] These materials are designated as sub-category (b)(6), (b)(7)(C)-2 in the *Vaughn* Index filed herewith.

While Plaintiff has made the general claim that "[t]here is a strong public interest in the accountability of law enforcement officials," ECF No. 23 at 16, he "has failed to indicate or point to how this withheld information would reveal anything significant about CBP's 'performance of its statutory duties,' or any other superior public interest." *Moradi*, 527 F. Supp.3d 144 at 159 (quoting *Maynard v. CIA*, 986 F.2d 547, 566 (1st Cir. 1993) (concluding officials' names were properly withheld where plaintiffs failed to "suggest how the disclosure of the names would reveal what the government is up to")). "Courts have consistently held that 'where the plaintiff has failed to demonstrate any superior public interest that would be served by disclosure, the competing interest of avoiding an unwarranted invasion of personal privacy takes precedence, and the information is exempt from disclosure under Exemption 7(C).'" *Id.* (quoting *Crooker v. Tax Div. of U.S. Dep't of Justice*, No. 94-CV-30129-MAP, 1995 WL 783236, at *17 (D. Mass. Nov. 17, 1995)).

A FOIA requester does not have the right to receive and examine documents just because the information may have some special significance to the requester, but not the public at large. After alleging that he was "personally attacked by CBP officers," Plaintiff stated that "he has an interest in knowing the names of the officers who made remarks or comments in the file CBP maintains on Plaintiff." ECF No. 23 at 16. "The identity of the FOIA requester and the requester's reasons for making the request have no bearing upon its entitlement to the information. . . . [W]hat is given to one requester is what is available to all who make the same request." *Commonwealth of Pa. Dep't of Pub. Welfare v. HHS*, No. CIVA 05-1285, 2006 WL 3792628, at *59 (W.D. Pa. Dec. 21, 2006) (quoting *Inter Ocean Free Zone, Inc. v. U.S. Customs Serv.*, 982 F. Supp. 867, 871 (S.D. Fla. 1997) (citing *Reporters Comm.*, 489 U.S.

at 771). FOIA's "sole concern is with what must be made public or not made public." *Id.*
(quoting *Reporters Comm.*, 489 U.S. at 772 (additional citation omitted)).

CBP also applied these Exemptions to withhold the names of non-employee third
parties, as well as information by which those individuals could be identified.[7] Stmt. ¶ 105.
Third parties maintain significant personal privacy interests in not having their identifying
information disclosed in the context of government records, as such release could subject
those parties to harassment, undue public attention, speculation, and stigmatizing
connotation associated with being identified in a law enforcement record. *Id.* at ¶ 106.
Further, releasing such names or identifying information would not meaningfully increase the
public understanding of government operations, justifying such disclosure. Therefore, release
of such information would constitute an unwarranted invasion of privacy that outweighs the
public interest in disclosure of such information. *Id.* at ¶ 107.

None of the CBP employees or third parties whose personal information was withheld
provided authorization to release their personal information. Stmt. ¶ 108. Accordingly, CBP
properly invoked Exemptions 6 and 7(C) for the narrow purpose of withholding personally
identifiable information relating to law enforcement officers and third parties.

###    3.    Exemption 7(E)

Exemption 7(E) permits the withholding of "records or information compiled for law
enforcement purposes" that, if released "would disclose techniques and procedures for law
enforcement investigations or prosecutions" or "would disclose guidelines for law
enforcement investigations or prosecutions if such disclosure could be reasonably expected to

---

[7] These materials are designated as sub-category (b)(6), (b)(7)(C)-3 in the *Vaughn* Index filed
herewith.

risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *see also Allard K. Lowenstein Int'l Hum. Rts. Project v. DHS*, 626 F.3d 678, 681-82 (2d Cir. 2010).

"Records containing information about law enforcement techniques and procedures are 'categorically exempt from FOIA disclosure, "without need for demonstration of harm."'" *Pickering v. DOJ,* No. 14-CV-330-A, 2024 WL 2149035, at \*10 (W.D.N.Y. May 14, 2024) (citing *Mermerlstein*, 2021 WL 3455314, at \*13, *report and recommendation adopted sub nom. Mermelstein v. DOJ*, No. 19-CV-00312, 2021 WL 11628214 (E.D.N.Y. Aug. 19, 2021) (quoting *Iraq Refugee Assistance Project v. DHS*, No. 12-cv-3461, 2017 WL 1155898, at \*5 (S.D.N.Y. Mar. 27, 2017)).

"To meet the threshold requirement that the withheld records or information were compiled for law enforcement purposes, 'an agency must establish a rational nexus between the agency's activity in compiling the documents and its law enforcement duties.'" *CLEAR v. CBP*, No. 19-CV-7079 (RER), 2022 WL 16636686, at \*9 (E.D.N.Y. Nov. 2, 2022) (internal quotation marks omitted) (quoting *Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. DHS*, 331 F. Supp.3d 74, 97 (S.D.N.Y. 2018); *Keys v. DOJ*, 830 F.2d 337, 340 (D.C. Cir. 1987)). "Law enforcement duties may entail 'not just the investigation and prosecution of offenses that have already been committed, but also proactive steps designed to prevent criminal activity and to maintain security.'" *Id.* (quoting *Knight First Amend. Inst. at Columbia Univ. v. USCIS*, 30 F.4th 318, 328 (2d Cir. 2022); *Milner v. Dep't of Navy*, 562 U.S. 562, 582 (2011) (Alito, J., concurring)).

With respect to techniques and procedures, "[t]he key issue . . . is whether disclosure of that material would reveal particulars about the way in which an agency enforces the law and the circumstances that will prompt it to act." *CLEAR*, 2022 WL 16636686, at \*9 (quoting

*Knight*, 30 F.4th at 331)). "In other words, 'the actions that law enforcement personnel take to identify and neutralize bad actors' and 'the triggers for the application of methods.'" *Id.* (quoting *Knight*, 30 F.4th at 330). "In contrast, guidelines give 'an indication or outline of future policy or conduct' and reflect how an agency allocates its resources." *Id.* (quoting *Lowenstein*, 626 F.3d at 682 (additional citation omitted)).

CBP is constrained in describing the techniques, procedures, and guidelines withheld under Exemption 7(E) so as to avoid revealing the very information CBP seeks to protect. Stmt. ¶ 76. CBP applied Exemption 7(E) to withhold the following general types of information in records that was compiled for law enforcement purposes:

a.   Records Withheld Under Exemption 7(E) Were Withheld for Law Enforcement Purposes

The records withheld under Exemption 7(E) were compiled for CBP's law enforcement purposes in that they were created and used by CBP in its law enforcement mission to secure the international borders of the United States. Stmt. ¶¶ 77, 79. This includes records relating to Plaintiff's encounters with CBP personnel at ports of entry, and relating to his participation in CBP's NEXUS program, which directly relates to CBP's law enforcement activities and border security purposes. As set forth below, this includes information obtained from CBP systems and databases for use in CBP's mission to secure the border. *See Bishop v. DHS*, 45 F. Supp.3d 380, 386-87 (S.D.N.Y. 2014) (threshold requirement satisfied when documents contain information "from law enforcement databases" and "collected and used by CBP in its mission to secure the border"); *Am Immigr. Council v. DHS*, 30 F. Supp.3d 67, 75 (D.D.C. 2014) (threshold requirement satisfied when there was a "rational nexus to [CBP]'s law-enforcement duties, including the prevention of terrorism and unlawful immigration"). "These documents meet the rational nexus standard and satisfy the threshold

requirement for Exemption 7(E)." *CLEAR*, 2022 WL 16636686, at *9 (threshold requirement satisfied where records created to "share information about CBP's law enforcement and counterterrorism efforts").

  b. <u>Information Relating to Law Enforcement Techniques and Procedures Utilized in Furtherance of CBP's Mission in Securing the United States Border and Facilitating Lawful Trade and Travel</u>

CBP withheld information relating to border inspection techniques and procedures utilized in inspecting and assessing law enforcement risks associated with travelers crossing the United States border.[8] Stmt. ¶ 85. CBP withheld information relating to the criteria used by CBP to determine which travelers require additional border inspection.[9] *Id.* at ¶ 86.

CBP also withheld information relating to the methods for processing and querying records in law enforcement systems and databases utilized in inspecting and assessing risk presented by a particular traveler, including how information in those systems and databases is accessed, searched, and documented, and the results of such queries.[10] Stmt. ¶ 87. CBP withheld information pertaining to investigative conclusions and determinations compiled for law enforcement purposes.[11] *Id.* at ¶ 88. CBP withheld non-public, intra-agency contact information, such as internal phone numbers or email addresses.[12] *Id.* at ¶ 89.

---

[8] These materials are designated as sub-category (b)(7)(E)-3 in the *Vaughn* Index filed herewith.

[9] These materials are designated as sub-category (b)(7)(E)-4 in the *Vaughn* Index filed herewith.

[10] These materials are designated as sub-category (b)(7)(E)-5 in the *Vaughn* Index filed herewith.

[11] These materials are designated as sub-category (b)(7)(E)-6 in the *Vaughn* Index filed herewith.

[12] These materials are designated as sub-category (b)(7)(E)-7 in the *Vaughn* Index filed herewith.

This withheld information is not generally known by the public. Stmt. ¶ 90. Disclosure of this information would be detrimental to both CBP and the law enforcement community. Disclosure of such information would reveal law enforcement sensitive techniques utilized in securing the U.S. border and in facilitating lawful trade and travel, thereby corrupting the integrity of law enforcement and other screening activities at the border. *Id.* at ¶ 91. Such information could be used by individuals attempting to circumvent or violate immigration and customs laws to alter patterns of conduct, predict CBP's investigative strategy, adopt new methods of operation to conceal criminal activity, and develop countermeasures to thwart the effectiveness of CBP's law enforcement efforts. Disclosure could also threaten efforts to foster open communication across agencies and cohesive law enforcement and national security efforts, and it could have far-reaching effects, impairing other agencies' law enforcement operations or their ability to effectively carry out their respective missions. *Id.* at ¶ 92.

Further, disclosure of such information could provide the public with potential targets or means to disrupt internal CBP communications and presents a risk that CBP systems could be compromised and exploited. Disclosure would also reveal the types of investigative information CBP collects, analyzes, and maintains, detrimental to CBP's mission in securing the U.S. border and facilitating lawful travel and trade. Stmt. ¶ 93.

Thus, CBP properly withheld this information under Exemption (7)(E). *See, e.g., Am. Immigr. Laws. Ass'n v. DHS*, 485 F. Supp.3d 100, 109 (D.D.C. 2020) ("Application of Exemption 7(E) for these documents is 'self-evident.' CBP cannot reveal the details of these techniques and procedures because doing so would allow those seeking to circumvent the federal immigration laws to extrapolate what to avoid and how to prepare, increasing the risk that they enter or remain in the United States illegally.") (internal citations omitted); *Bishop v*

*DHS*, 45 F. Supp.3d 380 (S.D.N.Y. 2014) (CBP properly withheld information from inspection records); *Gonzalez v. USCIS*, 475 F. Supp.3d 334, 351-52 (S.D.N.Y. 2020) (holding that the manner by which the law enforcement agencies "label cases, access databases, and maintain information regarding cases in general falls within FOIA Exemption 7(E) for 'law enforcement technique and procedures.'"); *Paco v. CBP*, 2016 WL 344522, at *6 (D.N.J. Jan. 27, 2016) (CBP properly withheld information from GES records because the information could be used to circumvent the law by allowing individuals to "alter their patterns of conduct, adopt new methods of operation, relocate, change associations, and effectuate other countermeasures thus corrupting the integrity of ongoing and future investigations.").

    c.    <u>Information Relating to CBP Systems and Databases</u>

CBP withheld information relating to CBP systems and databases because disclosure of this information could be used to locate, access, and navigate internal law enforcement computer systems and databases, and could allow manipulation or deletion of data and/or interfere with enforcement proceedings. Stmt. ¶ 80. Specifically, CBP withheld non-public law enforcement system and database information, functionalities, and capabilities, including how a database is utilized in the execution of CBP's law enforcement mission.[13] *Id*. at ¶ 81. CBP also withheld non-public, law enforcement sensitive CBP codes, numbers, and identifiers utilized in CBP law enforcement systems and databases.[14] *Id*. at ¶ 82.

This information is not generally known by the public. Stmt. ¶ 84. Disclosure of such law enforcement techniques and procedures would be debilitating and detrimental to both

---

[13] These materials are designated as sub-category (b)(7)(E)-1 in the *Vaughn* Index filed herewith.

[14] These materials are designated as sub-category (b)(7)(E)-2 in the *Vaughn* Index filed herewith.

CBP and the law enforcement community. Disclosure of this type of information, either standing alone or in combination with other information, presents a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law by gaining access to law enforcement sensitive information, detrimental to CBP's mission in securing the U.S. border and facilitating lawful travel and trade. *Id.* at ¶ 83.

Accordingly, CBP has withheld precisely the type of law enforcement information protected from disclosure under Exemption 7(E). *See, e.g., Strunk v. U.S. Dep't of State et al.*, 905 F. Supp.2d 142, 147–49 (D.D.C. 2012) (CBP properly withheld TECS-related computer transaction and function codes under Exemption 7(E)).

## II.    CBP's *VAUGHN* INDEX ADEQUATELY EXPLAINS ITS WITHHOLDINGS UNDER THE FOIA EXEMPTIONS

"There is no set formula for a *Vaughn* Index; instead, courts have held that it is the function, not the form that is important. The Second Circuit has "eschewed rigid adherence to any particular indexing format under the *Vaughn* standard, opting instead for a functional approach." *Borowski*, 2024 WL 2099268, at *8 (quoting *Halpern v. FBI*, 181 F.3d 279, 291 (2d Cir. 1999)); *see also People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp.2d 284, 294 (D.D.C. 2007) ("The adequacy of a *Vaughn* Index is not defined by its form, but rather its substance.").

Likewise, the sufficiency of a *Vaughn* Index is not determined by reference to the length of its document descriptions. *Jud. Watch*, 449 F.3d at 146 ("[W]e focus on the functions of the *Vaughn* Index, not the length of the document descriptions, as the touchstone of our analysis."). The purpose of the *Vaughn* Index is

"to permit adequate adversary testing of the agency's claimed right to an exemption," and enable "the District Court to make a rational decision whether the withheld material must be produced without actually viewing the document themselves, as well as to produce a record that will render the District Court's decision capable of meaningful review on appeal." Thus, when an agency seeks to withhold information, it must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." Specificity is the defining requirement of the *Vaughn* index and affidavit.

*King v. DOJ*, 830 F.2d 210, 218-19 (D.C. Cir. (1987) (quoting *NTEU v. U.S. Customs Serv.*, 802

F.2d 525, 527 (D.C. Cir. 1986), *Dellums v. Powell*, 642 F.2d 1351, 1360 (D.C. Cir. 1980), and

*Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977))). When

an agency's submission meets these criteria, it is "accorded a presumption of good faith."

*Carney*, 19 F.3d at 812 (quoting *SafeCard Servs., Inc.*, 926 F.2d at 1200).

CBP specifically revised its *Vaughn* Index to address the Court's concerns stated in the

D&O. *See, e.g.,* ECF No. 37 at 19-23. For example, the revised *Vaughn* Index includes a

"Summary of Exemption Categories" that explains the bases for withholdings under various

FOIA exemptions, which correspond with a more detailed accounting in the *Vaughn* Index

of the redactions on particular Bates-numbered pages. The new *Vaughn* also essentially

provides a page-by-page explanation of CBP's redactions and withholdings. *Cf.*, Bates pages

000200-000251, which were released in full. Courts have accepted such a "coded" index when

it adequately describes the documents and justifies the exemptions. *Keys,* 830 F.2d at 349-50.

("Each deletion was correlated specifically and unambiguously to the corresponding

exemption . . . [which] was adequately explained by functional categories"); *Morley v. CIA*,

508 F.3d 1108, 1122 (D.C. Cir. 2007) (affirming agency's use of coded *Vaughn* Index and

explaining that there is no requirement for "repetitive, detailed explanations for each piece of

withheld information – that is, codes and categories may be sufficiently particularized to carry

the agency's burden of proof") (quoting *Jud. Watch*, 449 F.3d at 147); *Garcia*, 181 F. Supp.2d

at 370 (accepting adequacy of agency's coded *Vaughn* Index).

## III.    CBP COMPLIED WITH FOIA'S SEGREGABILITY REQUIREMENT

Under FOIA, if a record contains information exempt from disclosure, any

"reasonably segregable," non-exempt information must be disclosed after redaction of the

exempt information. 5 U.S.C. § 552(b). Non-exempt portions of records need not be disclosed

if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc.,* 566 F.2d at

260. To establish that all reasonably segregable, non-exempt information has been disclosed,

an agency need only show "with 'reasonable specificity'" that the information it has withheld

cannot be further segregated. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79

(D.C. Cir. 1996); *Canning v. DOJ*, 567 F. Supp.2d 104, 110 (D.D.C. 2008). "Agencies are

entitled to a presumption that they complied with the obligation to disclose reasonably

segregable material," which must be overcome by some "quantum of evidence" by the

requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Here, in responding to Plaintiff's requests, the CBP FOIA Division reviewed each

record page-by-page and line-by-line to confirm that any withholdings were proper and

determine whether any segregable, non-exempt information could further be released. CBP

did not withhold non-exempt information. Stmt. ¶ 58. Therefore, the Court should find that

CBP has properly complied with its duty to segregate exempt from non-exempt information.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in Defendant's favor.

**DATED**:    Buffalo, New York, July 9, 2024.

                                    TRINI E. ROSS
                                    United States Attorney

                        BY:    S/MARY K. ROACH
                               S/SCOTT LEESON SROKA
                               Assistant United States Attorneys
                               United States Attorney's Office
                               Western District of New York
                               138 Delaware Avenue
                               Buffalo, New York 14202
                               716-843-5866
                               mary.k.roach@usdoj.gov