UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

MATTHEW BOROWSKI

                                    Plaintiff,                              23-CV-257

v.

U.S. CUSTOMS AND BORDER PROTECTION

                                    Defendant.

———————————————————————

**<u>MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO
EXAPND THE ADMINISTRATIVE RECORD AND COMPEL PRIVILEGE LOG</u>**

                                    TRINI E. ROSS
                                    United States Attorney

                    BY:    MARY K. ROACH
                           Assistant U.S. Attorney
                           U.S. Attorney's Office
                           Western District of New York
                           138 Delaware Avenue
                           Buffalo, New York 14202
                           716-843-5866
                           mary.k.roach@usdoj.gov

## TABLE OF CONTENTS

Argument.......................................................................................................................2

I.      Plaintiff is Not Entitled to Expansion or Supplementation of the
Administrative Record...............................................................................2

        a.  The Administrative Record is Complete.....................................5
        b.  Plaintiff Has Failed to Request or Justify Supplementation of the
            Record with Extra-Record Evidence.............................................9

            i.   Plaintiff has Failed to Assert that Additional Materials
                Are Necessary for the Court's Evaluation of the Agency's
                Decision or Administrative Record.......................................9
            ii.  Plaintiff Has Failed to Demonstrate Bad Faith or Improper
                Behavior on behalf of CBP..................................................10

II.     Plaintiff is Not Entitled to the Redacted Information in the
Administrative Record...............................................................................11

        a.  Plaintiff Has Not Established a Compelling Need for the
            Privileged Information..............................................................12

            i.   Deliberative Process Privileged Information............................13
            ii.  Law Enforcement Privileged Information................................15

        b.  Personally Identifiable Information............................................17

Conclusion...................................................................................................19

## TABLE OF AUTHORITIES

**Federal Cases**

*Ali v. Pompeo*, 2018 WL 2058152, at *5 (E.D.N.Y. May 2, 2018) ....................................................4

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983) .........................................2

*Brodsky v. U.S. Nuclear Regulatory Comm'n*, 507 F. App'x 48, 52 (2d Cir. 2013) .................................3

*Camp v. Pitts*, 411 U.S. 138, 142 (1973) ......................................................................................2

*Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 309 (S.D.N.Y. 2012)..............passim

*Dep't of Commerce v. New York*, 588 U.S. 752, 780-81 (2019)............................................................14

*Estate of Landers v. Leavitt*, 545 F.3d 98, 113 (2d Cir. 2008) .........................................................4,10

*Farm Sanctuary v. United States Dep't of Agric.*, 664 F. Supp. 3d 334, 346 (W.D.N.Y. 2023) ..... 2,3,4,11

*Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985)................................................2,4,9

*Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999) ......................................................13

*Hadwan v. United States Dep't of State*, 2021 WL 4037714, at *3 (S.D.N.Y. Sept. 3, 2021) ...............3,4

*In re The City of New York*, 607 F.3d 923, 945 (2d Cir. 2010) ............................................12,15,16,18

*Laxalt v. McClatchy*, 809 F.2d 885, 889 (D.C. Cir. 1987)................................................................18

*Nat. Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91, 97 (2d Cir. 2001)...........................................11

*Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997).......................................................2,4

*Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) ..........................................................11,13

*Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*,
No. 16 Civ. 1015, 2017 WL 3189446, at *22 (D. Md. July 27, 2017)...........................................11

*Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C.
2006) ...................................................................................................................................3,4

*Pascal Abidor, Nat'l Ass'n of Crim. Def. Laws. v. Johnson*, 2016 WL 3102017(E.D.N.Y. June 2, 2016) . 18

*Rosati v. Mayorkas*, 691 F. Supp. 3d 597, 602 (N.D.N.Y. 2023)......................................................3,8

*Saleh v. Blinken*, 596 F. Supp. 3d 405, 414-15 (E.D.N.Y. 2022), (2d Cir. Aug. 9, 2023) ...................... 8

*Spezzaferro v. Fed. Aviation Admin.,* 807 F.2d 169, 173 (Fed. Cir. 1986) ............................................ 10

*Sytrene Info. & Research Ctr., Inc. v. Sebelius*, 851 F. Supp. 2d 57, 63 (D.D.C. 2012) ........................... 3

*Tafas v. Dudas*, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008) ............................................................. 12

*U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.,* 510 U.S. 487, 494 (1994) .................................................. 17

**Statutes**

5 U.S.C. § 552a ................................................................................................................ 17
5 U.S.C. § 704 ..................................................................................................................... 2
5.U.S.C§ 706(2)(a). ............................................................................................................... 2

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO EXAPND THE ADMINISTRATIVE RECORD AND COMPEL PRIVILEGE LOG

Plaintiff Matthew Borowski's Amended Complaint, brought in part under the Administrative Procedures Act ("APA"), challenges Defendant Customs and Border Protection ("CBP")'s April 2023 decision denying Plaintiff's 2022 application to participate in CBP's NEXUS program.  ECF No. 9.  On May 15, 2024, CBP filed the Administrative Record in this matter, and on July 18, 2024, filed an Amended Administrative Record containing fewer redactions on three (3) records.  ECF Nos. 38, 45, 46.  In his Motion to Expand the Administrative Record and Compel Privilege Log, Plaintiff requests that this Court compel "a privilege log and for CBP to pony up the missing documents and to un-redact everything."  ECF No. 52, Plaintiff's Motion ("Pl. Mot.") p. 7.

First, Plaintiff has failed to overcome the strong presumption that CBP properly designated the administrative record.  Second, Plaintiff has neither requested that any specified extra-record evidence—not considered by the CBP decisionmaker in denying Plaintiff's NEXUS application—be added to the Administrative Record, nor has he demonstrated exceptional circumstances warranting such addition.  Finally, Plaintiff is not entitled to the information redacted from the Administrative Record.  Accordingly, Plaintiff's Motion requesting expansion of, and removal of all redactions in, the Administrative Record must be denied.

### ARGUMENT

### I.   Plaintiff is Not Entitled to Expansion or Supplementation of the Administrative Record

The APA provides a narrow avenue for judicial review of agency action, in which a court assesses whether an agency's final decision is rationally connected to, and supported

by, the facts and evidence that the agency considered. *See* 5 U.S.C. §§ 704, 706(2)(A); *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.,* 462 U.S. 87, 105 (1983) (A court's "only task is to determine whether the [agency has] considered the relevant factors and articulated a rational connection between the facts found and the choice made.").

In doing so, a reviewing court is generally "confined to the administrative record compiled by that agency when it made the decision." *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) (citing *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743-44 (1985); *Camp v. Pitts,* 411 U.S. 138, 142 (1973) (noting that the "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.")); *see also Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 309 (S.D.N.Y. 2012) ("It is the province of the agency to compile and submit the administrative record for review by the Court, and [c]ommon sense dictates that the agency determines what constitutes the whole administrative record....") (citation omitted).

"An agency's designation of the administrative record is entitled to a rebuttable presumption of administrative regularity, and a court is to assume the agency properly designated the Administrative Record absent clear evidence to the contrary." *Farm Sanctuary v. United States Dep't of Agric.,* 664 F. Supp. 3d 334, 346 (W.D.N.Y. 2023) (quotations and citations omitted). "In an APA case, a court should only consider materials outside the certified administrative record in special circumstances." *Rosati v. Mayorkas*, 691 F. Supp. 3d 597, 602 (N.D.N.Y. 2023) (quotations and citations omitted).

"Requests by a party to put materials before the Court that are outside the administrative record filed by the agency fall into two distinct categories. First, a party may supplement the administrative record if the party can show that materials exist that were

actually considered by the agency decision-makers but are not in the record as filed." *Hadwan v. United States Dep't of State*, 2021 WL 4037714, at *3 (S.D.N.Y. Sept. 3, 2021) (quotations and citations omitted). "Such a showing requires the party to rebut the 'strong presumption' that the agency properly designated the documents to be included in the record." *Id.* (citing *Brodsky v. U.S. Nuclear Regulatory Comm'n*, 507 F. App'x 48, 52 (2d Cir. 2013) (court must "afford deference to the agency's determination" of the record); *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) ("absent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity, that it properly designated the administrative record.")).

"To overcome that presumption, the party must put forth 'concrete evidence' showing that the purportedly excluded materials 'were before the agency *decision-maker.*'" *Id.* (citing *Comprehensive Cmty. Dev. Corp.*, 890 F. Supp. 2d at 309 (emphasis in original); *Pac. Shores*, 448 F. Supp. 2d at 6; *Sytrene Info. & Research Ctr., Inc. v. Sebelius*, 851 F. Supp. 2d 57, 63 (D.D.C. 2012) (holding that a plaintiff's "conclusory statements" that documents were before the decisionmakers "will not suffice; rather, the plaintiff must identify reasonable, non-speculative grounds for [his] belief that the documents were considered by the agency and not included in the record.") (quotations omitted)). "It is not enough for the party to show that the documents were somewhere within the agency; the party must show that any purportedly omitted documents were actually before the agency decision-maker." *Id.* (quotations and citations omitted).

Alternatively, a party may request that the court consider extra-record evidence. This may be done "when there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers." *Hoffman*, 132 F.3d at 14.

"Making a showing of bad faith 'is no small hurdle,' and courts will not 'ascribe [ ] nefarious motives to agency action as a general matter.' As such, a 'strong showing' cannot be made merely through 'naked assertions of bad faith.'" *Hadwan*, 2021 WL 4037714, at \*3 (citing *Ali v. Pompeo*, 2018 WL 2058152, at \*5 (E.D.N.Y. May 2, 2018); *Estate of Landers v. Leavitt*, 545 F.3d 98, 113 (2d Cir. 2008)).

A court may also consider extra-record evidence when supplemental materials would illuminate a complex record, or where the supplemental materials are necessary to evaluate whether the agency deviated from established agency practices or failed to consider all relevant factors. *Farm Sanctuary,* 664 F. Supp. 3d at 346.

"The Court must also be mindful that 'supplementation of the administrative record is the exception, not the rule.'" *Hadwan*, 2021 WL 4037714, at \*4 (citing *Pac. Shores,* 448 F. Supp. 2d at 5). Moreover, in the rare circumstances where supplementation of the record is required, the proper course of action is to remand to the agency, not through court-supervised discovery. *Florida Power & Light*, 470 U.S. at 744 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

In this matter, the Administrative Record is demonstrably complete, and Plaintiff has neither requested nor justified the supplementation of the Administrative Record with any extra-record evidence. Consequently, Plaintiff's Motion to Expand the Administrative Record must be denied.

### a.  The Administrative Record is Complete

Here, the CBP-compiled and filed Administrative Record contains all of the information considered by the CBP decisionmaker when deciding whether to approve or deny Plaintiff's 2022 NEXUS application, ultimately decided in April 2023. ECF No. 45,

Amended Administrative Record ("AAR"), Certification.  Thus, the Administrative Record is complete.

In his Motion, "Plaintiff asks for the record to be expanded with the fully redacted pages and any other documents that CBP has. . . Plaintiff believes that CBP is taking a narrow view of what information was 'considered by CBP when deciding whether to approve or deny Plaintiff's NEXUS applications filed with CBP on May 26, 2022 and December 20, 2022.'  They are not including any of the voluminous other information which could be seen or accessed by their Trusted Traveler Program staff or supervisors, such as my entire travel history. . ."  Pl. Mot. p. 4.  Plaintiff is "almost certain that there are numerous other materials" that CBP left out of the record.  *Id.* at 7.

Plaintiff's vague and unsworn assertions are insufficient to provide reasonable, non-speculative grounds that the alleged excluded materials were before the decisionmaker.  He thus fails to overcome the presumption of administrative regularity.

Additionally, such assertions are contradicted by Plaintiff's own argument that CBP considered the same information in its April 2023 denial of Plaintiff's NEXUS eligibility as the information CBP considered as part of Plaintiff's 2017 NEXUS eligibility determination.  In his Motion, Plaintiff asks, "[h]ow can it possibly be fair for CBP to renew my NEXUS pass, then upon subsequent renewal, revoke it due to the same considerations that they already determined did not warrant revocation in the first instance?"  Pl. Mot. p. 6.  Further, Plaintiff asserts that the challenged decision was "based upon events dating from 2013-2016, 6 in total, none of which was a crime or rules violation."  *Id.*

Thus, Plaintiff makes no substantive allegation that there were additional documents considered by the CBP decisionmaker in his April 2023 decision, which were not included

in the Administrative Record.  Rather, Plaintiff asserts (albeit incorrectly) that CBP

considered the same information for consecutive NEXUS eligibility determinations.

Moreover, while Plaintiff claims that he knows what evidence CBP considered in

deciding Plaintiff's NEXUS eligibility in 2023, Pl. Mot. p. 6, he contradictorily states that

"[i]t's not possible to fully understand what CBP's decision was based upon . . ." Pl. Mot.

p. 4. This conclusory assertion, without any citation or support, falls far short of rebutting

the strong presumption of regularity that CBP properly designated the Administrative

Record.

Further, a cursory review of the Administrative Record refutes Plaintiff's claim.

Under the APA, the Court may review an agency's final action.  In this matter, the final

agency action relating to Plaintiff's 2022 application to CBP's NEXUS program was the

CBP Ombudsman's April 2023 decision.  That decision was:

> based on the totality of noncompliance with the inspection process on numerous
> occasions. Applicant has 6 positive [redaction] (3 in 2013, 1 in 2014, 1 in 2016, and
> the latest in 2023) from inspections where the applicant's behavior is confrontational
> and/or his actions interfere with the inspection process.  Applicant was previously
> revoked for noncompliance in 2013 and Ombudsman granted discretion in April
> 2014 and gave applicant another opportunity for TTP enrollment, but specifically
> stated to the Enrollment Center to please warn applicant against future
> noncompliance during both outbound or inbound inspections.  Applicant likely
> should have been revoked for repeat noncompliance as noted in November 2014
> [redaction] or May 2016 [redaction].  Applicant has numerous crossings and 53 total
> secondary inspections.  Applicant's April 2023 [redaction] details alone are enough
> to warrant a sustained denial revocation based on statements of intended
> noncompliance the applicant made to the Watch Commander after the secondary
> inspection was complete.  Port and EC can remind the applicant that those who do
> not qualify for Trusted Traveler Program participation are not prohibited from
> entering the United States.  However, they are not permitted to use a Trusted
> Traveler dedicated lane to do so.  Does not warrant discretion at this time.

ECF No. 45, AAR, pp. 2-3.

Not only are the reasons for CBP's decision abundantly clear, the records referenced in the CBP Ombudsman's decision are also contained in the Administrative Record. *See* AAR, pp. 5-11 (April 4, 2023 border inspection records), 29-30 (May 22, 2016 border inspection records), 31-36 (November 3, 2014 border inspection records), 42-45 (December 14, 2013 border inspection records), 46-48 (April 18, 2013 border inspection records), 49-56 (March 19, 2013 border inspection records), 58-59 (spreadsheet of Plaintiff's secondary inspections), and 66 (2013 NEXUS revocation and 2014 reinstatement).

Plaintiff takes particular issue with the CBP Ombudsman's consideration of inspection records relating to his April 5, 2023 border crossing, alleging that the record contains false information. Pl. Mot. p. 5. Specifically, Plaintiff states that the inspection records falsely indicate that, during primary examination, the subject indicated to the primary officer that his citizenship was irrelevant. *Id.* Thus, in Plaintiff's view, because the decision relied upon alleged misrepresentation of facts, the denial of his NEXUS pass must be set aside.

Importantly, in the context of the instant motion, "[Plaintiff's] argument must be rejected. Plaintiff's allegations in favor of supplementation of the administrative record relate to the merits of his APA claim. . . [S]uch a determination is appropriate in the context of a motion for summary judgment, not a motion to supplement the record. Accordingly, plaintiff's request to supplement the record must be denied." *Rosati*, 691 F. Supp. 3d at 603 (citations omitted) (denying plaintiff's request to supplement the record where plaintiff argued that supplementation was necessary because USCIS relied upon a misapprehension of facts in denying his petition).[1]

---

[1] Even assuming Plaintiff's allegation that the documentation relating to the April 5, 2023 border crossing contained false information were true, the CBP Ombudsman based the April 2023 decision, in part, upon

Plaintiff's unsupported statement that it is not possible to understand the reasons for CBP's decision, Pl. Mot. p. 4, completely ignores the Administrative Record, which is replete with records and information demonstrating the reasoned basis for CBP's decision.

"[P]laintiff has not identified reasonable, non-speculative grounds for his belief that certain documents were considered by the agency and not included in the record. . . In short, plaintiff has not provided . . . any support for his claim that there were documents that were before the agency that have not been included in the AR.  There is no meaningful suggestion in plaintiff's submissions, let alone a strong showing, that the record before the Court is not complete."  *Saleh v. Blinken*, 596 F. Supp. 3d 405, 414-15 (E.D.N.Y. 2022), *aff'd* 2023 WL 5091819 (2d Cir. Aug. 9, 2023) (quotations and citations omitted).

Plaintiff has not even identified any specific documents that he believes were considered by the administrative decisionmaker that were impermissibly excluded from the record.  His conclusory speculation that the CBP decisionmakers "could" have "seen or accessed" other materials, "such as [Plaintiff's] entire travel history", Pl. Mot. p. 4, is insufficient to rebut the presumption that CBP properly designated the Administrative Record.  Accordingly, the Administrative Record as filed is complete.

---

statements that Plaintiff made—to the *Watch Commander*, *after* secondary inspection was complete—of Plaintiff's intended continued noncompliance with the border inspection process.  ECF No.45, AAR, pp. 2-3; *see also* AAR, p. 6, "WC Notes" ("Mr. Borowski stated he will not answer questions he felt that a USC does not need to answer . . . He claims that the officer does not need to know where in the US he is going.  I spoke to Mr. Borowski and advised him that if he does not answer the officer's questions, he may be sent or escorted to secondary and that the officers (sic) questions provide the officer with information to make a admit/refer decision.  Mr. Borowski stated he will not answer those questions as he is not bound by the NEXUS program as his card was revoked.").  Thus, the statements that Plaintiff takes issue with—made to the primary officer during primary inspection—were not the same statements which were considered by the CBP decisionmaker, as clearly delineated in the Administrative Record.

### b. Plaintiff Has Failed to Request or Justify Supplementation of the Record with Extra-Record Evidence

Plaintiff has neither requested the supplementation of the record with any specified extra-record evidence, nor has he sufficiently demonstrated exceptional circumstances warranting such introduction.

To the extent Plaintiff's arguments could be construed as requesting introduction of extra-record evidence not considered by the CBP decisionmaker, Plaintiff has failed to demonstrate that any specific extra-record evidence would inform the Court's review of the Administrative Record, or that CBP acted in bad faith.  Moreover, Plaintiff has wholly failed to demonstrate unusual circumstances justifying a departure from the general rule against considering extra-record evidence.  As noted above, even in such circumstances, the proper course of action would be for remand to CBP for additional investigation or explanation.  *Florida Power & Light*, 470 U.S. at 744.

### i. Plaintiff has Failed to Assert that Additional Materials Are Necessary for the Court's Evaluation of the Agency's Decision or Administrative Record

Plaintiff has not claimed that the instant record is so complex as to warrant supplementation with additional materials that would otherwise inform the Court's review. Indeed, Plaintiff argues that the record is "only 80 pages in length." Pl. Mot. p. 4.  Further, Plaintiff has not asserted that the Court needs to consider any specific supplemental materials in order to evaluate whether CBP failed to consider relevant factors or deviated from established CBP practices.  Accordingly, Plaintiff has failed to either request or justify expansion of the Administrative Record with any extra-record evidence.

### ii. Plaintiff Has Failed to Demonstrate Bad Faith or Improper Behavior on behalf of CBP

Furthermore, Plaintiff's motion is scant of evidence or argument that CBP has demonstrated bad faith in the compilation or production of the Administrative Record. Plaintiff states in his motion merely that "the litigation in this case over the FOIA shows ongoing bad faith" (Pl. Mot. p. 7), but at no point asserts there has been any bad faith or improper behavior as it relates to litigation of his APA claim. Plaintiff's assertions throughout that CBP is "hiding" things (Pl. Mot. p. 5, 6) refer to the redactions applied in the Administrative Record, discussed below.

Further, Plaintiff has neither alleged facts, nor provided any evidence, to support his conclusory assertion that this litigation demonstrates ongoing bad faith. Such naked assertions of bad faith are insufficient to ascribe any nefarious motive to CBP in this matter and overcome the presumption of good faith. *See, e.g., Estate of Landers*, 545 F.3d at 113 (stating that courts will not "ascribe ... nefarious motives to agency action as a general matter"); *Spezzaferro v. Fed. Aviation Admin.,* 807 F.2d 169, 173 (Fed. Cir. 1986) (to overcome the presumption of good faith, "[t]he proof must be almost irrefragable") (quotation and citations omitted).

In sum, Plaintiff has wholly failed to demonstrate that the Administrative Record is incomplete or otherwise requires extra-record documentation, and the Court should "assume the agency properly designated the Administrative Record absent clear evidence to the contrary." *Farm Sanctuary,* 664 F. Supp. 3d at 346 (quotation and citation omitted). Because Plaintiff has failed to meet his burden to overcome the presumption of administrative regularity, his Motion to Expand the Administrative Record should be denied.

**II.    Plaintiff is Not Entitled to the Redacted Information in the Administrative Record**

Plaintiff appears to simultaneously request the Court to compel CBP to both provide a privilege log and disclose the redacted information.

A privilege log is not required in APA matters because, as discussed below, privileged materials are not part of the Administrative Record. *See Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) ("The District Court correctly observed that predecisional and deliberative documents are not part of the administrative record to begin with, so they do not need to be logged as withheld from the administrative record.") (quotations omitted); *Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*, No. 16 Civ. 1015, 2017 WL 3189446, at *22 (D. Md. July 27, 2017) ("[N]o privilege log is required for deliberative materials that are not properly part of the administrative record in the first instance."). However, because a comparable index relating to many of the same records has already been provided to Plaintiff as part of Plaintiff's FOIA claim in this case, CBP has annexed a privilege log as Exhibit A to the Declaration of Ray Provencio ("Provencio Dec."), filed herewith.

Plaintiff's argument that the redactions from the Administrative Record do not make it possible for the Court to make its decision here misapprehends the APA inquiry. *See* Pl. Mot. p. 7; *Nat. Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91, 97 (2d Cir. 2001) (describing the court's role as limited to "examining the administrative record to determine whether the [agency] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment") (internal quotation and citation omitted). As discussed in detail *supra*, the Administrative Record, as filed by CBP with redactions, thoroughly reflects

11

CBP's reasons for, and the information underlying, the challenged decision. The redacted information is wholly irrelevant to the Court's inquiry here.

Moreover, Plaintiff's request to unredact all information in the Administrative Record is meritless not only because the redacted information is immaterial to the Court's inquiry, but also because a complete Administrative Record does not include privileged materials. *See, e.g., Comprehensive Cmty. Dev. Corp.*, 890 F. Supp. 2d at 312 ("[C]ourts have consistently recognized that, for the purpose of judicial review of agency action, deliberative materials antecedent to the agency's decision fall outside the administrative record."); *Tafas v. Dudas*, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008) ("A complete administrative record, however, does not include privileged materials, such as documents that fall within the deliberative process privilege, attorney-client privilege, and work product privilege.").

### a. Plaintiff Has Not Established a Compelling Need for the Privileged Information

Relating to Plaintiff's request that the Court compel CBP to disclose the redacted privileged information, Plaintiff has not rebutted the "strong presumption against lifting the privilege[s]" because he has not established a "compelling need" for the privileged information. *In re The City of New York*, 607 F.3d 923, 945 (2d Cir. 2010) (quotations and citations omitted). Moreover, even "demonstrating a 'compelling need' does not automatically entitle a litigant to privileged information"—the court must still balance "the public interest in nondisclosure against the need of a particular litigant for access." *Id.* (quotations, citations, and alterations omitted).

### i. Deliberative Process Privileged Information

CBP asserts the deliberative process privilege ("DPP") over one (1) document within the Administrative Record—Document 11—that falls within the core of the privilege:

internal, predecisional deliberations, opinions, and recommendations regarding Plaintiff's

NEXUS eligibility determination made in 2014.[2]   Provencio Dec. ¶ ¶ 18-19; *see also Grand*

*Cent. P'ship v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999) ("The [DPP] protects

recommendations, draft documents, proposals, suggestions, and other subjective documents

which reflect the personal opinions of the writer rather than the policy of the agency.")

(quotation marks omitted).

Disclosure of this information would create a chilling effect that would harm internal

Agency open discourse, and could create public confusion in releasing non-finalized, pre-

decisional records.  Provencio Dec. ¶ 19.  Further, release of the predecisional records

containing intra-agency deliberations concerning a NEXUS eligibility determination would

reasonably be expected to impede the open and candid expression of recommendations and

opinions necessary to making such a determination.  *Id.* Such a result would greatly

diminish the quality of decisionmaking of the government to the public's detriment.  *Id.*

Importantly, agency deliberations are not necessary or appropriate for judicial review

in an APA claim because "predecisional and deliberative documents are not part of the

administrative record to begin with" and, absent a showing of bad faith or improper

behavior, are "immaterial."  *Oceana, Inc.,* 920 F.3d at 865 (citations and quotations omitted).

Excluding deliberative materials from the Administrative Record serves two purposes: (1)

"it reflects that it is the agency's articulated justification for its decision that is at issue; the

private motives of agency officials are immaterial;" and (2) it "advances the functional goal

of encouraging the free flow of ideas within agencies, with agency employees not inhibited

---

[2] In his Motion, Plaintiff incorrectly asserts that Document 11 is fully redacted.  Pl. Mot. p. 6.  CBP filed an
Amended Administrative Record on July 18, 2024 (ECF No. 45) and those pages of Document 11 are clearly
not fully redacted.  AAR, pp. 37-41.

by the prospect of judicial review of their notes and internal communications, which would otherwise render agency proceedings . . . useless both to the agency and the courts." *Comprehensive Cmty. Dev. Corp.,* 890 F. Supp. 2d at 312 (quotations and citations omitted).

Notably, the determination to which those emails relate—Plaintiff's 2014 NEXUS eligibility determination—is not the subject of Plaintiff's claim. Provencio Dec. ¶ 18. Thus, the redacted information is also immaterial as this litigation does not involve a question concerning the intent of the decisionmaker or the decisionmaking process relating to Plaintiff's 2014 NEXUS application.

Moreover, to the extent that Plaintiff would attempt to rely on such communications and deliberations to challenge an agency rationale, the law is clear that Plaintiff may not do so. As the Supreme Court recently articulated, it is well settled that "a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record," and "a court may not reject an agency's stated reasons for acting simply because the agency might also have had other unstated reasons." *Dep't of Commerce v. New York,* 588 U.S. 752, 780-81 (2019).

Thus, Plaintiff has failed to demonstrate that the redacted DPP information is relevant to his claim sufficient to justify the extraordinary intrusion into the deliberative process privilege, and the Court should deny Plaintiff's request that such information be unredacted and included in the Administrative Record.

### ii.  Law Enforcement Privileged Information

As reflected in the privilege log, Exhibit A, CBP asserts the law enforcement privilege ("LEP") over information regarding law enforcement techniques and procedures utilized by CBP in securing the United States border. Provencio Dec., ¶12. Plaintiff has not

established any need for the LEP information redacted in the Administrative Record.

Moreover, the LEP information is immaterial to this Court's resolution as to whether CBP's

determination relating to Plaintiff's NEXUS eligibility was arbitrary and capricious or

otherwise contrary to law.

The LEP protects "information pertaining to law enforcement techniques and

procedures, information that would undermine the confidentiality of sources, information

that would endanger witness and law enforcement personnel or the privacy of individuals

involved in an investigation, and information that would otherwise . . . interfere with an

investigation." *In re The City of New York*, 607 F.3d at 948 (quotations, citation and

alteration omitted).

As reflected in the privilege log, the LEP information redacted from the

Administrative Record consists of: non-public law enforcement system and database

information, functionalities, and capabilities; non-public, law enforcement sensitive CBP

codes and identifiers; techniques and procedures utilized by CBP law enforcement in

inspecting individuals crossing the United States border; criteria used by CBP to determine

which travelers require additional border inspection; methods for processing and querying

records in CBP law enforcement systems and databases; non-public, intra-agency contact

information; non-public CBP system website addresses and information pertaining to access

of those systems; and investigative conclusions and determinations compiled for law

enforcement purposes. Provencio Dec.¶ 12.  This information is not generally known by the

public.  *Id.,* ¶ 13.

Release of such information would reveal  law enforcement procedures and

techniques utilized in securing the U.S. border and in facilitating lawful trade and travel,

disclosure of which would corrupt the integrity of law enforcement and other screening activities at the border. *Id.,* ¶ 14. The LEP information could be used by individuals attempting to circumvent or violate immigration and customs laws to alter patterns of conduct, predict CBP's investigative strategy, adopt new methods of operation to conceal criminal activity, and develop countermeasures to thwart the effectiveness of CBP's law enforcement efforts. *Id.,* ¶ 15-16. Disclosure of the LEP information further presents a risk that CBP systems and communications could be compromised or more effectively navigated and exploited, detrimental to CBP's law enforcement mission. *Id.,* ¶¶ 14-17. Additionally, disclosure of the LEP information could facilitate the admission of high-risk travelers into CBP's Trusted Traveler Programs. *Id.,* ¶ 16. .

Accordingly, the redacted information falls squarely within the LEP. Because Plaintiff has not established any need—let alone a compelling need—for the redacted LEP information, the Court need not engage in balancing the public interest in nondisclosure against Plaintiff's need for access. *In re The City of New York*, 607 F.3d at 945-47. Therefore, Plaintiff's request for disclosure of the LEP redacted information should be denied.

### b. Personally Identifiable Information

In addition to the aforementioned privileged information, information consisting of CBP employee names and the names or identifying information of third parties has been redacted from the Administrative Record. Specifically, the names of CBP employees were redacted from Administrative Record document numbers 3 (pp. 5-11), 7 (pp. 20-24), 8 (pp. 25, 27), 9 (pp. 29-30), 10 (pp. 31-36), 11 (pp. 37-41), 12 (pp. 42, 44), 13 (pp. 46, 48), 14 (pp. 49-56), and 17 (pp. 66-67, 69). Names and/or identifying information of third parties were

redacted from Administrative Record document numbers 9 (p. 30), 11 (pp. 37-41), 12 (pp. 44-45), and 17 (p. 69).

The aforementioned names and identifying information are properly excluded from the Administrative Record because they are irrelevant to the challenged decision underlying Plaintiff's APA claim.  Provencio Dec. ¶ 20.

Further, disclosure is prohibited under the Privacy Act, 5 U.S.C. § 552a, which generally bars disclosure of personal information, absent consent of the individual affected. In addition to third parties, the Privacy Act generally applies to federal employee personnel information.  *See, e.g., U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.,* 510 U.S. 487, 494 (1994) (finding that the addresses of agency employees were "records" covered by broad terms of Privacy Act, and their disclosure would thus be prohibited by law unless FOIA required release).

Disclosure of information otherwise protected under the Privacy Act may be disclosed if done "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(11).  Critically, to justify a court order, a party seeking information must satisfy the relevance standard of discovery set forth in Rule 26(b)(1) of the Federal Rules of Civil Procedure.  *Laxalt v. McClatchy,* 809 F.2d 885, 889 (D.C. Cir. 1987) (holding that "a party can invoke discovery of materials protected by the Privacy Act through the normal discovery process and according to the usual discovery standards, and the test of discoverability is the relevance standard"); *see also Pascal Abidor, Nat'l Ass'n of Crim. Def. Laws. v. Johnson*, 2016 WL 3102017, at *7 (E.D.N.Y. June 2, 2016).

Here, the names of CBP personnel and personally identifiable information of third parties should not be disclosed under the Privacy Act because Plaintiff has not established

the relevance of the information necessary to obtain court-ordered disclosure. Because such redacted information is neither evidence nor a valid explanation of CBP's reasoned basis underlying the decision that Plaintiff challenges, a court may not rely upon them in its review of the final agency action under the APA, and the information does not belong in an Administrative Record.[3] Importantly, Plaintiff provides no cognizable explanation as to why the redacted information—irrelevant to CBP's decision here—should be unredacted and included within the Administrative Record.

In sum, Plaintiff has not explained his need for any of the redacted information at all, particularly when the Administrative Record as filed amply reflects why Plaintiff was denied renewal of his NEXUS pass in 2023. Simply, the redacted information Plaintiff seeks has no bearing on his APA cause of action. Plaintiff has not established that the privileged material he seeks is relevant, and Plaintiff has failed to rebut the "strong presumption" against disclosure. Importantly, his unsubstantiated request "certainly does not outweigh the public's substantial interest in nondisclosure as a means to preserve the integrity" of the border and national security. *In re The City of New York*, 607 F.3d at 946.

Thus, Plaintiff's Motion to Compel provision of the redacted information should be denied as irrelevant and unjustified under the law.

## CONCLUSION

The Administrative Record is complete, and Plaintiff has failed to provide any evidence—let alone clear evidence—sufficient to overcome the rebuttable presumption of administrative regularity that CBP properly designated the Administrative Record. Further,

---

[3] Should this Court otherwise find that the names of CBP personnel and personally identifying information of third parties are relevant to the Court's APA inquiry in this matter, CBP reserves its right to seek a related protective order.

Plaintiff has neither requested that extra-record evidence be considered by the Court, nor otherwise demonstrated exceptional circumstances warranting supplementation of the Administrative Record with extra-record evidence.  Thus, Plaintiff's Motion for Expansion of the Administrative Record should be denied.  Finally, CBP has provided a privilege log, and Plaintiff is not otherwise entitled to the redacted information contained in the Administrative Record.  Accordingly, Plaintiff's Motion relating to his request for expansion of the Administrative Record and for CBP to remove all redactions in the Administrative Record must be denied.

DATED:  Buffalo, New York, September 23, 2024.

TRINI E. ROSS
United States Attorney

BY:   S/MARY K. ROACH
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5866
mary.k.roach@usdoj.gov