UNITED STATES DISTRICT COURT

FOR THE

WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| Matthew Borowski, <br>       Plaintiff <br><br> v. <br><br> U.S. Customs and Border Protection, <br><br> Defendant | Case No. 23-257 <br><br> RESPONSE IN OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

In response to Defendant CBP's renewed motion for summary judgment on the FOIA cause of action, I continue to hold the position that their FOIA response is in violation of the law because it unnecessarily and without legal justification redacts pertinent information. I ask the Court to either order full production of the documents, or conduct an *in camera* review of the withheld information.

I am a former[1] daily cross-border commuter, immigrant rights advocate and immigration lawyer. I have been vocal in my opposition to numerous DHS anti-migrant policies. This case

---

[1] Since the revocation of my NEXUS membership, I was forced to stop commuting from my home in Canada for reasons including because daily border crossing without a NEXUS card was frustrating, time-consuming, unpredictable, and untenable.

arises out of a Freedom of Information Act (FOIA) request filed by me, Matthew Borowski, seeking answers as to why CBP revoked my NEXUS membership after approximately a decade of membership during which I never once broke any of the rules. This revocation came shortly after the end of my wife's lawsuit against a CBP officer for assaulting and injuring her.

After CBP revoked my NEXUS pass in 2022, no answers were provided as to a reason for the revocation. I filed a FOIA request which was ignored until I sued CBP for the release of the records. When the records were released, they were heavily redacted. Even with the heavy redactions, it became apparent from a perusal of the records that CBP's 2022 revocation of my NEXUS pass appeared to be premised, at least on paper, upon falsified notations in CBP's system regarding encounters that occurred prior to my last NEXUS renewal. In fact, it appears that there are notes from CBP indicating that those notations were considered and that the decision was made to renew my NEXUS card at that time, citing no disqualifying information. Oddly enough, the same information which was not disqualifying in 2017, suddenly became disqualifying in 2022. Thus, it appears that CBP may have used reasons to deny my NEXUS renewal and revoke my membership, that it previously deemed insufficient for revocation. This would be arbitrary and capricious; if it wasn't likely retaliatory due to my outspoken criticism of CBP.

CBP's previous motion for summary judgment was denied; CBP now brings a second motion for summary judgment.

## STATEMENT OF THE LAW

The Freedom of Information Act adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies. *See FLRA v.*

*United States Dep't of Veterans Affairs,* 958 F.2d 503, 508 (2d Cir.1992); *Donovan v. FBI,* 806 F.2d 55, 57-58 (2d Cir.1986), *abrogated on other grounds, United States Dep't of Justice v. Landano,* 508 U.S. 165, 170, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). Specifically, FOIA requires that "each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules ..., shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3) (1994).

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotation marks omitted). Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information." *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 621 (1982). To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions." *Milner v. Dep't of Navy*, 562 U.S. 562, 562 (2011). Ultimately, "disclosure, not secrecy, is the dominant objective of the Act." *Rose*, 425 U.S. at 361. For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed." *Milner*, 562 U.S. at 565 (internal quotation marks and citations omitted). The underlying purpose of the FOIA is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *EPIC v. DHS*, 999 F. Supp. 2d 24, 29 (D.D.C. 2013) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). "In enacting FOIA,

Congress struck the balance it thought right—generally favoring disclosure, subject only to a handful of specified exemptions—and did so across the length and breadth of the Federal Government." *Milner*, 562 U.S. 562 at 571 fn. 5. As a result, the FOIA "mandates a strong presumption in favor of disclosure." EPIC v. DOJ, 511 F. Supp. 2d 56, 64 (D.D.C. 2007) (internal citations omitted).

FOIA clearly contemplates judicial review of agency decisions to withhold information and provides that a reviewing court "shall determine the matter *de novo,* and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions ..., and the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). In keeping with the policy of full disclosure, the exemptions are "narrowly construed with doubts resolved in favor of disclosure." *FLRA*, 958 F.2d at 508.

The Second Circuit dealt with what it termed a "very difficult issue" as to the degree of specificity required by the government when the government asserts to the court, in a sworn affidavit, that the redacted information falls within one of the nine statutory exemptions. *Halpern v. FBI*, 181 F. 3d 279 (2d. Cir. 1999). The Court stated that: "When a government agent can attest in a sworn affidavit that the redactions are necessary, and elaborate on the reasons for the redactions with sufficient specificity, the district court should be able to rule on the appropriateness of the redactions without conducting an *in camera* review of the redacted materials. However, while on the one hand, too much specificity on the part of the government can actually reveal the classified information, too little specificity can render judicial review of the agency's decisions all but impossible. Thus, it is the government's level of specificity in explaining the redactions it has made that is the focus of this decision."

The *Halpern* court cited *Vaughn v. Rosen,* where the District of Columbia Circuit Court of Appeals conceived of the document now known as the *Vaughn* affidavit as a means of overcoming the institutional difficulties inherent in FOIA litigation. *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973). The Second Circuit noted the *Vaughn* Court's observation that *de novo* review of nondisclosure in an adversarial tribunal could be "seriously distort[ed]" by the fact that the party seeking disclosure suffers from a lack of knowledge, relative to the agency, as to the precise contents of the documents in question. *Id.* at 824-25. The Second Circuit also noted the *Vaughn* Court's astute observation of "the institutional incentives that might encourage an agency to withhold as much information as possible and to claim the broadest possible exemptions under FOIA, thereby shifting the burden to the courts to sort through a seemingly endless 'morass of material'." *Id.* at 826.

*Halpern* goes on to state that:

> To correct the adversarial imbalance of information, and to permit more effective factual review, *Vaughn* held that an agency could meet its burden in FOIA litigation only by submitting documentation that met the following two requirements: First, the documentation must include "a relatively detailed analysis [of the withheld material] in manageable segments" without resort to "conclusory and generalized allegations of exemptions." *Id.* Second, the documentation must also provide "an indexing system [that] would subdivide the [withheld] document under consideration into manageable parts cross-referenced to the relevant

```
portion of the Government's justification." Id. at 827; see
also Ray v. Turner, 587 F.2d 1187, 1191-92 (D.C.Cir.1978)
(discussing Vaughn).
```

The *Halpern* Court, citing *Davin v. United States Dep't of Justice*, 60 F.3d 1043, 1050-51 (3d Cir.1995), adopted the holding that "[A] categorical approach, without the inclusion of specific factual information that correlates the claimed exemptions to the withheld documents, is not a sufficient *Vaughn* index."; *see also Church of Scientology, Int'l,* 30 F.3d at 230-35 (1st Cir.) (same); *Wiener,* 943 F.2d at 977-79 (9th Cir.) ("boilerplate" explanations without an effort to "tailor the explanation to the specific document withheld" were insufficient); *King v. United States Dep't of Justice,* 830 F.2d 210, 219-25 (D.C. Cir.1987) ("[c]ategorical description[s] of redacted material coupled with categorical indication of anticipated consequences of disclosure" was "clearly inadequate."); *see generally Samuel Gruber Educ. Project v. United States Dep't of Justice,* 24 F.Supp.2d 1, 5-8 (D.D.C.1998) (discussing "the near universal condemnation" of this categorical indexing scheme).

The *Halpern* Court held that "Summary judgment is appropriate where the agency declarations describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record or by evidence of agency bad faith. . . . Thus, the agency's justification is sufficient if it appears logical and plausible." *Halpern v. FBI*, 181 F. 3d 279 (2d. Cir. 1999), citing *Am. C.L. Union v. U.S. Dep't of Def.,* 901 F.3d 125, 133 (2d Cir. 2018), *as amended* (Aug. 22, 2018).

**ARGUMENT**

I.  **The Agency's Affidavit and Vaughn Index Are Not Specific, are Boilerplate, Make Conclusory, Vague Assertions, Are Tarnished By the Agency's Bad Faith Actions and Thus Do Not Justify Summary Judgment**

A reading of the agency's affidavit and *Vaughn* index sheds little light on whether or not the redactions made in the FOIA response were justified and reasonable, or even if the content that was redacted actually falls under any of the exceptions. Unfortunately, as is common in FOIA lawsuits and was contemplated by the Second Circuit in, Plaintiff lacks knowledge of the contents of the redacted materials. However, the defendants have provided very little specificity about the documents which they claim were rightfully redacted, resorting only to boilerplate statements and conclusory, unsupported speculation about the consequences of releasing that information.

*Halpern* held that a *Vaughn* index must provide reasonably specific detail and must demonstrate that the withheld information logically falls within the claimed exemption CBP appears to read the exclusions to FOIA very broadly, whereas Congress intended for them to be read narrowly. This, combined with the clear bad faith actions of CBP against Plaintiff (arresting him, detaining him, attacking his wife, revoking his NEXUS card, assaulting him on two separate occasions after the filing of this lawsuit), CBP has shown itself to be a bad actor. This Court should not permit the perfunctory production of a vague, conclusory *Vaughn* index to subvert the FOIA laws which were enacted by Congress to pierce the veil of administrative secrecy and allow for public scrutiny of administrative agency actions. This Court should conduct an *in camera* review of the withheld materials to determine whether CBP has characterized its redactions correctly and whether any of the exclusions from FOIA actually apply.

The vague, boilerplate nature of the Vaughn index is apparent from the lack of specificity provided. With regard to the Global Enrollment System records, 27 pages in length, CBP stated that "Exemption (b)(5) was applied to five (5) pages of the document containing intra-agency email communications between CBP personnel, subject to the deliberative process privilege, as the emails are both pre-decisional and deliberative. The deliberative process privilege protects the integrity of the deliberative processes within CBP, specifically information documenting CBP's decision-making process. Disclosure of this information would create a chilling effect that would harm internal Agency open discourse, and could create public confusion in releasing non-finalized, pre-decisional records." CBP now provides slightly more detail, stating that "[t]he email deliberations to which FOIA Exemption (b)(5) was applied concerned the reinstatement of Plaintiff's NEXUS membership." Document 44-2 at 14. They go on to state that "The content of the redacted portions of the emails includes deliberations, the expression of opinions, and recommendations as to whether Plaintiff's NEXUS program history and compliance with CBP's border inspectional process supports a reinstatement of Plaintiff's trusted traveler status." This additional information makes the non-disclosure all the more concerning. What kind of "chilling effect" does the disclosure of internal agency discourse create, where a public agency is expected to follow the law and not discriminate against members of the public? What kind of "public confusion" could arise by the release of these records? How are these records functionally any different than the records that were disclosed which contained CBP's notes about border stops? This is a blatant example of just the type of boilerplate *Vaughn* index contemplated by the *Halpern* Court, where an administrative agency copies and pastes rote justifications for their over-reaching withholding of information in response to a FOIA request.

Likewise with respect to the non-disclosure of names under (b)(6) and (b)(7)(C). No specific mention is made of the types of information, just a vague statement of "names and/or identifying information of government employees that would identify those employees if released." Well, there is no privacy interest of a law enforcement officer engaged in their duties in a public place, and many of these officers are front-line or secondary-inspection CBP officers who wear a name badge and identify themselves to the public, not back-room FBI investigators engaged in secret investigations of terrorists and organized crime groups. Without more specificity, this Court cannot reasonably determine whether the exemptions properly apply.

The rest of the *Vaughn* index continues to be full of similarly boilerplate, conclusory statements, exactly the type of statements contemplated under *Halpern* to be insufficient to carry the defendant's burden for summary judgment. FOIA would lack any teeth whatsoever if the responding agency could just provide rote boilerplate affidavits to end any lawsuit seeking disclosure of records; this Court's important job in our democratic system of checks and balances is to act as a check and balance on the executive branch. This function of the judiciary will become even more important in the coming years should the despotic criminal Donald Trump be re-elected as commander in chief.

**II.     Defendant Has Not Provided Adequate Support for the Withheld Information Properly Falling Under the Claimed Exclusions to FOIA**

CBP cites 5 U.S.C. § 552(b)(6) and (b)(7)(C) exemptions as justified. However, those exemptions do not provide "blanket" exemptions of all personally identifiable information. Disclosure of the identities of CBP agents is not a protected privacy interest. They are public servants doing their jobs. Exemption (6) states that the FOIA disclosure provisions are inapplicable to "... personnel and medical files and similar files the disclosure of which would

constitute a clearly unwarranted invasion of personal privacy." In *Wood v. FBI*, 432 F. 3d 78 (2d. Cir. 2005). the F.B.I. contended that the requested information in a FOIA request was exempt from disclosure under both Exemptions (6) and (7) of 5 U.S.C. § 552(b). In that case, the requested information was not contained in personnel or medical files. Since the requested information was not contained in personnel or medical files, the F.B.I. had to show that the documents withheld were "similar files" within the meaning of that section, and that disclosure of the information contained in the documents would constitute a "clearly unwarranted invasion of personal privacy." *Lamont v. Dept. of Justice,* 475 F.Supp. 761, 781 (S.D.N.Y.1979).

Exemption 6 is intended to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982). Whether the names and other identifying information about government investigators may be withheld under Exemption 6 is a two-part inquiry. First, the Court must determine whether the personal information is contained in a file similar to a medical or personnel file. In considering whether the information is contained in a "similar" file, the Court must ask whether the records at issue are likely to contain the type of personal information that would be in a medical or personnel file. *Id.* at 601, 102 S.Ct. 1957 (citing *Dep't of Air Force v. Rose,* 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1975)). At the second step of the analysis under Exemption 6, the Court balances the public's need for the information against the individual's privacy interest to determine whether the disclosure of the names would constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *U.S. Dep't of State v. Ray,* 502 U.S. 164, 175, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991).

Personnel and medical files generally contain a variety of information about a person, such as "place of birth, date of birth, date of marriage, employment history, and comparable data." *Washington Post Co.,* 456 U.S. at 600, 102 S.Ct. 1957. Although these details are not considered intimate, the disclosure of this information is subject to the balancing analysis under Exemption 6. *Id.* at 600-01, 102 S.Ct. 1957. Such files, however, are also likely to contain information about an individual's spouse and children, including their birth dates, social security numbers, and other identifying information. Whether this information may be withheld plainly would be the proper subject of the balancing analysis under Exemption 6 as well. *See Simpson v. Vance,* 648 F.2d 10, 17 (D.C.Cir.1980) (holding that marital status and names of spouses of foreign service personnel were properly withheld under Exemption 6), *abrogated on other grounds, Washington Post Co.,* 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358.

Even if the personal information satisfies the first step of the inquiry (being part of a personnel or medical file or "similar document"), it may be withheld only if the disclosure of the government employee's identities would result in a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To make this determination, a court must balance the public's interest in disclosure against the individuals' privacy interests. *Rose,* 425 U.S. at 372, 96 S.Ct. 1592; *Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 86-87 (2d Cir.1991). The privacy side of the balancing test is broad and "encompasses all interests involving `the individual's control of information concerning his or her person.'" *Hopkins,* 929 at 87 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 763, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)). On the other side of the balance, the relevant interest is "the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up

to." *Bibles v. Or. Natural Desert Ass'n,* 519 U.S. 355, 355-56, 117 S.Ct. 795, 136 L.Ed.2d 825 (1997) (internal citation and quotation marks omitted).

Names and other identifying information do not always present a significant threat to an individual's privacy interest. *See Ray,* 502 U.S. at 177, 112 S.Ct. 541 n. 12. Instead, whether the disclosure of names of government employees threatens a significant privacy interest depends on the consequences likely to ensue from disclosure. *Id.* Here, CBP contends that withholding the disclosure of its agents identities "protects CBP personnel from harassment and annoyance in their private lives due to the conduct of their official duties, which could conceivably result from public disclosure of their identity." While the Second Circuit has held, in some instances, that government investigative personnel may be subject to harassment or embarrassment if their identities are disclosed. *See, e.g. Halpern v. FBI,* 181 F.3d 279, 297 (2d Cir.1999) (holding that FBI agents and other government employees have an interest against the disclosure of their identities to the extent that disclosure might subject them to embarrassment or harassment in their official duties or personal lives); these involved investigative agents, not public-facing border officers who greet hundreds if not thousands of travelers daily while wearing name badges on their uniforms.

Indeed, "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public... is not a subject of Fourth Amendment protection."); *id.* at 361, 88 S.Ct. 507 (Harlan, J., concurring) ("[C]onversations in the open would not be protected against being overheard, for the expectation of privacy under the circumstances would be unreasonable."). Police officers "performing their duties in public and speaking at a volume audible to bystanders" lack any "reasonable expectation of privacy" for

purposes of the Fourth Amendment. *American Civil Liberties Union of Ill. v. Alvarez*, 679 F. 3d 583, 605-606 (7th Cir. 2012).

In this case, release of the names of the CBP employees would not constitute an "unwarranted invasion of personal privacy." There is no reasonable expectation of privacy in a public-facing law enforcement career. In any event, this interest against possible harassment and embarrassment of investigative personnel raises a measurable privacy concern that must be weighed against the public's interest in disclosure.

To the extent that the records contained personal information, perhaps such as addresses, social security numbers, or other non-public information regarding the CBP officials, there may be some privacy interest attached, however, the defendant makes no mention of what information other than mere names is redacted and certainly did not expand on their speculation that harassment could occur if the names of their agents were divulged. There is a strong public interest in the accountability of law enforcement officials. We do not have a masked, anonymous police force as some tyrannical regimes might. Our law enforcement officers proudly wear their names on their badges and do not hide behind helmets and masks, except when undertaking certain high-risk duties such as riot policing or high-risk raids by SWAT teams.

Here, where Plaintiff was personally attacked by CBP officers – his wife was physically injured by Vincent Mordino in 2013, he was lunged at by Vincent Mordino, he was assaulted by two other officers in 2023 after filing this lawsuit – he has an interest in knowing the names of the officers who made remarks or comments on the file CBP maintains on Plaintiff. That interest outweighs whatever privacy interest may be enjoyed by a uniformed law enforcement official. That being said, in its Vaughn index, CBP did not even bother to specify whether the redacted

names were those of public-facing, armed law enforcement officers who wear badges and interact with travelers, or of back-office bureaucrats. We simply don't have the level of detail necessary to make a full analysis here, because CBP, which like other components of the Department of Homeland Security prefers to operate behind a shroud of secrecy – prefers to obfuscate rather than abide by the letter and spirit of FOIA and has used little more than boilerplate, conclusory statements in the *Vaughn* index. This renewed motion for summary judgment is not meaningfully different than the initial motion in that regard.

      Likewise, with respect to the deliberative process privilege under (b)(5) – there is no specificity about what the e-mails contain. How are we to trust their word that those e-mails were part of a deliberative process and that they were "pre-decisional"?  In order for a document to be protected by deliberative process privilege, it must be: (1) an inter-agency or intra-agency document; (2) "predecisional"; and (3) deliberative. *See Klamath,* 532 U.S. at 8, 121 S.Ct. 1060 (discussing the agency-origin requirement); *Local 3, Int'l Bhd. of Elec. Workers v. NLRB,* 845 F.2d 1177, 1180 (2d Cir.1988) (enumerating the predecisional and deliberative requirements); *Lead Indus. Ass'n, Inc. v. OSHA,* 610 F.2d 70, 83 (2d Cir.1979) (same). Only an *in camera* review can resolve this matter.

      Likewise, with respect to the exclusion under (b)(7)(E) – Inspection techniques and procedures --  "Exemption (b)(7)(E) is limited to `techniques and procedures not generally known to the public.'" *Doherty v. U.S. Dep't of Justice,* 775 F.2d 49, 52 & n. 4 (2d Cir.1985). "While the government retains the burden of persuasion that information is not subject to disclosure under FOIA, a party who asserts that material is publicly available carries the burden of production on that issue." *Inner City Press/Cmty. on the Move v. Bd. of Governors of Fed. Reserve Sys.,* 463 F.3d 239, 245 (2d Cir.2006) (internal quotation marks and citation omitted);

*accord N.Y. Civil Liberties Union v. Dep't of Homeland Sec.,* 771 F.Supp.2d 289, 292 (S.D.N.Y.2011). Additionally, it is well-established that "an agency does not have to release all details concerning law enforcement techniques just because some aspects of them are known to the public." *ACLU v. U.S. Dep't of Justice,* 2014 WL 956303, at *7 (S.D.N.Y. Mar. 11, 2014) (citation omitted); *accord Barnard v. Dep't of Homeland Sec.,* 598 F.Supp.2d 1, 23 (D.D.C.2009) (finding that Exemption 7(E) applied even though the techniques were "known to the public to some extent"). Indeed, courts have acknowledged that "Exemption 7(E) applies even when the identity of the techniques has been disclosed, but the manner and circumstances of the techniques are not generally known, or the disclosure of additional details could reduce their effectiveness." *Council on American-Islamic Relations, Cal. v. F.B.I.,* 749 F.Supp.2d 1104, 1123 (S.D.Cal.2010) (citing *Bowen v. U.S. Food & Drug Admin.,* 925 F.2d 1225, 1228-29 (9th Cir.1991)); *accord Vazquez v. U.S. Dep't of Justice,* 887 F.Supp.2d 114, 116 (D.D.C.2012) ("Even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness.") (internal quotation marks and citation omitted); *Church of Scientology of Tex. v. I.R.S.,* 816 F.Supp. 1138, 1162 (W.D.Tex.1993) ("[E]ven if known by the public to some extent, [the techniques and procedures] are nevertheless exempt if disclosure of the circumstances of their use could lessen their effectiveness.") (internal quotation marks and citation omitted).

Unfortunately, this Court cannot analyze whether or not this exclusion properly applies because CBP has not provided adequate specificity in the *Vaughn* index about the types of "techniques and procedures" the withheld text in the FOIA response discusses. Plaintiff believes that CBP is taking an unduly broad view of this exclusion, but without being able to see the redacted information, has no idea what CBP is actually talking about. The *Vaughn* index does

not shed any light on it. The new declaration filed with the summary judgment motion does not either. They make boilerplate assertions that the release of this information "presents a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law." Plaintiff views this assertion as highly suspect. Plaintiff, who has no criminal record, has never circumvented the law and cannot fathom what inspection "technique or procedure" that was applied to him was taken with a genuine law enforcement concern in mind. Rather, Plaintiff suspects that the redacted information likely shows CBP bias against him, bias which has vocalized against him on numerous occasions since he dared to speak up and challenge the agency after CBP physically attacked and injured his wife. Thus, the Court should either order all the records to be released in full with no redactions, or do an *in camera* review of the withheld information to determine whether such redactions are justified.

**Dated: September 24, 2024**

                                                        Respectfully submitted,

                                                        _Matthew K. Borowski /s/_____
                                                        Matthew K. Borowski, Esq.
                                                        4343 Union Road
                                                        Buffalo, NY 14225
                                                        (716) 330-1503 tel
                                                        (716) 710-5445 fax
                                                        E-mail: matthew@borowskilaw.com

                                                        *Pro Se*