UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MATTHEW BOROWSKI,

                    Plaintiff,

       v.

U.S. CUSTOMS AND BORDER
PROTECTION,

                    Defendant.

_____

**DECISION AND ORDER**

1:23-CV-00257 EAW

## INTRODUCTION

Plaintiff Matthew Borowski ("Plaintiff") asserted claims against defendant U.S. Customs and Border Protection ("CBP," "Defendant," or "the agency") pursuant to the Administrative Procedure Act (the "APA"), 5 U.S.C. § 706(2)(A), and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. (Dkt. 9).[1]

Currently pending before the Court are two motions: (1) Plaintiff's motion to expand the administrative record and compel Defendant's privilege log related to his APA claim, (Dkt. 52); and (2) Defendant's renewed motion for summary judgment on the FOIA claim, (Dkt. 44). For the reasons discussed below: (1) Plaintiff's motion to expand the administrative record and compel Defendant's privilege log is granted in part and denied in part; and (2) Defendant's renewed summary judgment motion on the FOIA claim is granted in part and denied in part. The Court sets a status conference for <u>Friday, April 11,</u>

---

[1]      On February 21, 2024, the Court issued a Decision and Order dismissing Plaintiff's FTCA and constitutional claims for lack of subject matter jurisdiction. (Dkt. 29).

2025, at 10:00 a.m. at United States Courthouse, Two Niagara Square, Buffalo, New York.

All parties and/or their counsel must appear in person at the status conference.

## **BACKGROUND**

The factual and procedural background of this matter is set forth in detail in the Court's Decision and Order of May 10, 2024 (Dkt. 37 (hereinafter the "May D&O")), familiarity with which is assumed for purposes of the instant Decision and Order. The Court briefly sets forth below facts relevant to the pending motions.[2]

This matter arises from the revocation of Plaintiff's membership in the expedited border processing program called NEXUS. (Dkt. 9 at ¶ 27; Dkt. 44-2 at ¶¶ 2, 12, 16). After his NEXUS membership was revoked by Defendant, Plaintiff submitted a FOIA request on December 22, 2022, in which he sought the following information:

> All documents, records, information, database entries, or any other
> electronically stored information (ESI), papers, notes, documents pertaining

---

[2]    The following facts are taken from Defendant's "Statement of Material Facts as to which there is No Genuine Issue to be Tried" ("statement of undisputed material facts") (Dkt. 44-2) and Defendant's exhibits submitted in support of the renewed motion. Similar to the prior summary judgment motion, Plaintiff failed to respond to each numbered paragraph in Defendant's statement of undisputed material facts as required by Local Rule 56(a)(2). (*See* Dkt. 61). In his unsworn response to the renewed motion, Plaintiff does not contest any of the facts set forth in Defendant's statement of undisputed facts. (*See* Dkt. 61). In the prior summary judgment motion, Plaintiff contested three facts that Defendant included in its prior statement of uncontested facts, but he did not provide any contrary proof or argue that the contested facts were material. (*See* Dkt. 23 at 5). Accordingly, the Court deemed Defendant's statement of material facts admitted in the May D&O. (Dkt. 37 at 2 n.2); *see also* Loc. R. Civ. P. 56(a)(2); *N.Y. State Teamsters Conf. Pension & Ret. Fund v. Express Servs. Inc.*, 426 F.3d 640, 648 (2d Cir. 2005)). As Plaintiff did not contest any of the facts in Defendant's statement of undisputed material facts submitted in support of its renewed motion, the Court, once again, treats Defendant's facts admitted for purposes of the instant motion when supported by admissible evidence in the record. Loc. R. Civ. P. 56(a)(2).

> to the trusted Traveler Program application(s), renewals, revocations, denials, for MATTHEW BOROWSKI with NEXUS Program Membership #982419666, relating to the denial/revocation dated December 20, 2022 including reason(s) for denial.  I also request any and all notes, document, derogatory information, information about any purported violations, and/or entries in CBP Databases that were consulted or used as a basis for the denial.

(Dkt. 44-2 at ¶ 28).  Defendant provided its FOIA response to Plaintiff on May 25, 2023.

(*Id.* at ¶ 54).  On July 2, 2024, Defendant re-processed the requested documents and rereleased all previously provided pages to Plaintiff with fewer redactions on three records.

(*Id.* at ¶ 55).

In Plaintiff's amended complaint, he alleges that Defendant improperly withheld records requested by Plaintiff and wrongfully redacted information in violation of FOIA.

(Dkt. 9 at ¶¶ 80-83).  Defendant moved for partial summary judgment on the FOIA claim, arguing that it properly withheld exempt information from disclosure.  (Dkt. 19-3 at 13-30).  The Court denied Defendant's summary judgment motion, holding that Defendant did not provide an adequate explanation to demonstrate the reasonableness of its search for documents nor did Defendant's *Vaughn* submission provide enough detail for the Court to evaluate the appropriateness of each exemption applied.  (Dkt. 37 at 12-30).  The Court granted Defendant 60 days to renew its partial summary judgment motion to address the deficiencies identified in the May D&O.  (Dkt. 37 at 33).

Defendant filed the instant renewed motion for summary judgment on July 9, 2024, directed to Plaintiff's FOIA claim.  (Dkt. 44).  Shortly thereafter, Defendant filed an Amended Administrative Record related to Plaintiff's APA claim, containing the documents considered by Defendant when it denied his NEXUS membership renewal.

(Dkt. 45).[3]  Before responding to the renewed summary judgment motion, Plaintiff filed a motion to expand the administrative record and compel the production of Defendant's privilege log.  (Dkt. 52).  Defendant filed its opposition to Plaintiff's motion on September 23, 2024.  (Dkt. 59).  Plaintiff responded to the renewed summary judgment motion the same day (Dkt. 61), and Defendant replied thereafter (Dkt. 64).

## DISCUSSION

### I.    Motion to Expand Administrative Record and Compel Privilege Log

The Court turns first to Plaintiff's motion to expand the administrative record and compel production of Defendant's privilege log.  (Dkt. 52).  Plaintiff's request regarding the administrative record is twofold.  First, he argues that Defendant did not produce all the documents and information that was considered when Defendant denied his NEXUS application.  (*Id.* at 4-7).  Second, Plaintiff argues that the documents produced by Defendant in the administrative record should be unredacted.  (*Id.* at 4).  Plaintiff also requests that Defendant produce its privilege log related to the administrative record, asserting that is the only way to confirm that all material was properly produced.  (*Id.* at 7).  For the following reasons, the Court grants Plaintiff's motion in part and denies it in part.

---

[3]    Defendant filed a separate version of the Amended Administrative Complaint at Docket 58 on September 23, 2024.  This updated version redacted Plaintiff's personally identifying information in blue and all other redactions in black.  (Dkt. 58 at ¶ 6).  However, the redacted material in the updated version filed at Docket 58 does not align with the Amended Administrative Record filed at Docket 45.  (*Compare* Dkt. 58-1 at 37-41 *with* Dkt. 45 at 40-44).  Due to the discrepancy, the Court will refer to the Amended Administrative Record filed at Docket 45 for the purposes of this motion.

"Under the APA, a court that reviews agency action to determine if it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' is to 'review the whole record or those parts of it[] cited by a party.'" *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 308 (S.D.N.Y. 2012) (quoting 5 U.S.C. § 706(2)(A)). "Courts have consistently held that the term 'the whole record' refers to the full record that was before the agency, meaning the agency decision-maker, at the time of the decision." *Id.* at 308. "An agency's designation of the administrative record is entitled to a rebuttable presumption of administrative regularity, and a court is to assume the agency properly designated the Administrative Record absent clear evidence to the contrary." *Farm Sanctuary v. United States Dep't of Agric.*, 664 F. Supp. 3d 334, 346 (W.D.N.Y. 2023) (quotation and citation omitted). Indeed, "deference is due to the agency's judgment as to what constitutes the whole administrative record." *Comprehensive Cmty. Dev. Corp.*, 890 F. Supp. 2d at 309.

## A. Supplementation or Expansion of the Administrative Record

"[I]n an APA case, a court should only consider materials outside the certified administrative record in special circumstances." *Rosati v. Mayorkas*, 691 F. Supp. 3d 597, 602 (N.D.N.Y. 2023) (quoting *Saleh v. Blinken*, 596 F. Supp. 3d 405, 413 (E.D.N.Y. 2022), *aff'd*, No. 22-1168, 2023 WL 5091819 (2d Cir. Aug. 9, 2023)). "Supplementation of the record as designated by the agency is, thus, the exception, not the rule." *Comprehensive Cmty. Dev. Corp.*, 890 F. Supp. 2d at 309 (citations omitted). However, "[c]ourts have delineated several circumstances in which a party may nevertheless include evidence

beyond the scope of the designated administrative record." *Saget v. Trump*, 375 F. Supp. 3d 280, 341 (E.D.N.Y. 2019).

> A court may consider extra-record or supplemental evidence when: (1) the agency's designated administrative record is incomplete, and the district court cannot conduct its review in accordance with the APA's "whole record" requirement; (2) when supplemental materials would illuminate a complex record; (3) when the court must look to supplemental materials to evaluate whether the agency failed to consider all relevant factors, ignored an important aspect of the problem, or deviated from established agency practices; and (4) when a plaintiff makes a "strong showing" the Government's decision was in bad faith.

*Id.* Plaintiff's arguments do not support supplementing the administrative record through any of these avenues.

Plaintiff asserts that there was additional information considered by Defendant regarding the denial of his NEXUS application that was not included in the administrative record. (Dkt. 52 at 4-5). According to Plaintiff, this material included: (1) Plaintiff's entire travel history; (2) documents related to an incident in which Plaintiff alleges his wife was attacked by a CBP officer; (3) a letter Plaintiff submitted to a CBP supervisor; and (4) audio and video files of Plaintiff's encounters with CBP. (*Id.*). Plaintiff argues that these examples indicate that Defendant "is taking a narrow view" of the information that was considered by Defendant in denying his NEXUS application. (*Id.* at 4). Yet Plaintiff does not provide an argument for why these alleged records should be included in the administrative record other than alleging that their absence demonstrates that Defendant "want[s] to cover up the fact that [its] officers can enter whatever 'junk data' into their system as they see fit, and make false claims that [Plaintiff] was being 'uncooperative' or 'confrontational.'" (*Id.* at 5).

- 6 -

To demonstrate that an administrative record is incomplete, the party seeking to supplement the record "must show that the materials sought to be added were before the agency *decision-maker*. It is not enough to show that these materials were somewhere within the agency. . . ." *Comprehensive Cmty. Dev. Corp.*, 890 F. Supp. 2d at 309 (emphasis in original). Plaintiff provides no argument nor proof that any of these records were considered by the decision-maker in rejecting his NEXUS application other than his mere say-so. Plaintiff instead uses the alleged existence of these records to indicate that "it is almost certain that there are numerous other materials which [Defendant] left out" of the administrative record. (Dkt. 52 at 7). However, these assertions do not constitute the "clear evidence" necessary to overcome the presumption that Defendant properly designated the administrative record. *See Farm Sanctuary*, 664 F. Supp. 3d at 346. Indeed, Plaintiff has not provided any proof other than his own unsworn conclusory arguments that there was additional material that Defendant considered when it denied his NEXUS membership.

Furthermore, to the extent that Plaintiff argues that Defendant acted in bad faith in compiling the administrative record, Plaintiff's argument also fails. "[A] party may ask that the court consider extra-record evidence, *i.e.*, evidence that was not necessarily considered by the agency." *Comprehensive Cmty. Dev. Corp.*, 890 F. Supp. 2d at 309. "However, a court may review extra-record evidence only where 'there has been a strong showing in support of a claim of bad faith or improper behavior on the part of the agency decision-maker or where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice.'" *Id.* (quoting *Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997)).

As stated above, Plaintiff claims that Defendant omitted documents from the administrative record because it "want[ed] to cover up the fact that [its] officers can enter whatever 'junk data' into their system as they see fit, and make false claims that [Plaintiff] was being 'uncooperative' or 'confrontational.'" (Dkt. 52 at 5). Plaintiff hypothesizes that the only reason Defendant denied his NEXUS application membership is because he is an "advocate for immigrants' rights and [he] protested against now-convicted felon Donald Trump's portrait in the Immigration Court corridor." (Dkt. 52 at 6). Plaintiff's unsworn speculative assertions do not constitute the "strong showing" necessary to support the argument that the administrative record was compiled in bad faith. *See Hadwan v. United States Dep't of State*, No. 17-CV-578 (VEC), 2021 WL 4037714, at *4 (S.D.N.Y. Sept. 3, 2021) ("[A] 'strong showing' cannot be made merely through 'naked assertions of bad faith.'") (citation omitted). Moreover, Plaintiff's arguments of bad faith are primarily framed as merit arguments regarding Defendant's decision to deny his NEXUS application. (Dkt. 52- at 6). Such arguments are not appropriate for the purpose of his motion and "it is well-established that an agency's alleged errors in the decisionmaking process do not themselves establish bad faith." *Comprehensive Cmty. Dev. Corp.*, 890 F. Supp. 2d at 315 (citations omitted); *see also Rosati*, 691 F. Supp. 3d at 603 (holding that the plaintiff's "allegations in favor of supplementation of the administrative record relate to the merits of his APA claim" and that "such a determination is appropriate in the context of a motion for summary judgment, not a motion to supplement the record.").

In sum, Plaintiff's claim that Defendant did not include "any of the voluminous other information which could be seen or accessed by [its] Trusted Traveler Program staff"

is insufficient to rebut the presumption that the agency properly designated the administrative record. Because Plaintiff has not met the requisite showing to supplement or expand the administrative record, his motion seeking such relief is denied.

### B. Redacted Material in the Administrative Record

Related to the administrative record, Plaintiff also argues that Defendant should "un-redact everything," arguing that "[i]t's not possible to fully understand what [Defendant's] decision was based upon, because of the redactions." (Dkt. 52 at 4, 7). Defendant asserts that it need not produce the redacted content as part of the administrative record because that information is privileged. (Dkt. 59 at 15-16).

"The administrative record does not technically include privileged documents." *New York v. Wolf*, No. 20-CV-1127 (JMF), 2020 WL 2049187, at *1 (S.D.N.Y. Apr. 29, 2020) (citation omitted). "But significantly, that is true only if the privilege was properly invoked, and without a privilege log, a court is unable to evaluate the Government's assertions of privilege." *Id.* (quotations and internal citations omitted).

Defendant's Certification of the Amended Administrative Record provides that "[r]edactions have been applied within the attached Amended Administrative Record to information which is protected by the deliberative process privilege, information consisting of law enforcement sensitive techniques and procedures, and the personally identifiable information of both CBP personnel and third parties." (Dkt. 45 at 1). Plaintiff also produced its privilege log in which it recorded which privilege was asserted for each group of redacted documents. (*See* Dkt. 60 at 8-14). The privilege log indicates that the law enforcement privilege was applied to documents CBP 001 to CBP 076 in the Amended

Administrative Record. (*See id.* at 8-14). The privilege log also indicates that the deliberative process privilege was applied to Document 11 (CBP 037 - CBP 041). (*See id.* at 11).

### 1. The Deliberative Process Privilege

"The deliberative process privilege[] shields from disclosure intra-agency or inter-agency documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions are formulated." *Citizens Against Casino Gambling In Erie Cnty. v. Stevens*, 814 F. Supp. 2d 261, 265-66 (W.D.N.Y. 2011) (citation omitted). It applies to content that is "(1) predecisional, *i.e.,* prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.,* actually . . . related to the process by which policies are formulated." *Am. Civil Liberties Union v. Nat'l Sec. Agency*, 925 F.3d 576, 592 (2d Cir. 2019) (citation omitted); *see Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999) (noting that "[t]he privilege protects recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" (quotation and citation omitted)). "The burden of establishing that a document falls within the parameters of the privilege rests with the government." *Citizens Against Casino Gambling In Erie Cnty.*, 814 F. Supp. 2d at 266.

Defendant submitted a declaration from Ray Provencio, Acting Executive Director of Admissibility and Passenger Programs within CBP, with its privilege log ("the Provencio declaration"). (*See* Dkt. 60 at 1). The Provencio declaration asserts that redactions were made pursuant to the deliberative process privilege across "a chain of seven (7) internal

- 10 -

emails sent on April 2, 2014, April 4, 2014, April 17, 2014, April 18, 2014, and April 22, 2014." (*Id.* at 4-5).  The content of those redactions included "deliberations, opinions, and recommendations regarding whether Plaintiff's NEXUS program history and compliance with CBP's border inspectional process supported reinstatement of Plaintiff's NEXUS pass in 2014." (*Id.* at 5).  Specifically, those deliberations related to CBP's ultimate decision to approve Plaintiff's reinstatement in the NEXUS program on April 25, 2014. (*Id.*).  With that information, Defendant has met its burden in demonstrating that this material was properly redacted under the deliberative process privilege.

## 2.  Law Enforcement Privilege

"[T]he party asserting the law enforcement privilege bears the burden of showing that the privilege indeed applies to the documents at issue."  *In re The City of New York*, 607 F.3d 923, 948 (2d Cir. 2010) (citation omitted).

> To show that the privilege applies, the party asserting the privilege must demonstrate that the documents contain information that the law enforcement privilege is intended to protect.  Specifically, the party asserting the privilege must show that the documents in question contain (1) information pertaining to "law enforcement techniques and procedures, (2) information that would undermine the confidentiality of sources, (3) information that would endanger witness and law enforcement personnel, (4) information that would undermine the privacy of individuals involved in an investigation, or (5) information that would seriously impair the ability of a law enforcement agency to conduct future investigations[.]

*Id.* (quotations and internal citations omitted).  Defendant has not met its burden regarding redactions made pursuant to the law enforcement privilege.

The Provencio declaration states:

> The Law Enforcement Privileged ("LEP") information redacted from the Administrative Record consists of: non-public law enforcement system and

database information, functionalities, and capabilities; non-public, law enforcement sensitive CBP codes and identifiers; techniques and procedures utilized by CBP law enforcement in inspecting individuals crossing the United States border; criteria used by CBP to determine which travelers require additional border inspection; methods for processing and querying records in CBP law enforcement systems and databases; non-public, intra-agency contact information; non-public CBP system website addresses and information pertaining to access of those systems; and investigative conclusions and determinations compiled for law enforcement purposes.

(Dkt. 60 at 3).  The Provencio declaration does not provide any specific information regarding the content of the redacted material.  The privilege log also does not provide any specific information related to the redactions.

For example, Document 6 in the privilege log is described as "Risk Assessment Worksheet relating to CBP's December 20, 2022 Determination of Plaintiffs NEXUS Eligibility." (*Id.* at 9).  In the "Privilege(s) Description" column for Document, Defendant states that "LEP information redacted consisting of non-public law enforcement system and database information, functionalities, and capabilities; non-public, CBP codes and identifiers which are law enforcement sensitive; and methods for processing and querying records in law enforcement systems and databases." (*Id.*).  There is no additional information provided.  Similar conclusory assertions are provided for each of the documents listed in the privilege log identified as withheld pursuant to the law enforcement privilege.

Such conclusory statements are insufficient for the Court to determine that Defendant redacted content that the law enforcement privilege was intended to protect. Upon reviewing the Amended Administrative Record and the privilege log, the Court is unable to ascertain whether each redaction "clearly relates to law enforcement techniques

and procedures." *See In re The City of New York*, 607 F.3d at 944 (quotation and citation omitted). Defendant has therefore not met its "burden of showing that the privilege indeed applies to the documents at issue." *See id.* at 948. Accordingly, Defendant must either produce additional information establishing that the law enforcement privilege is properly asserted for the redacted content in the Amended Administrative Record or produce these records in an unredacted format.

### 3. Personally Identifying Information

The Provencio declaration provides that "the names of CBP personnel and personally identifiable information of third parties" were redacted from the Amended Administrative Record. (Dkt. 60 at 5).

Defendant identified the type of personally identifying information that was redacted and on which pages the redactions were made in the Amended Administrative Record. (Dkt. 59 at 20-21). Specifically, Defendant states that "the names of CBP employees were redacted from Administrative Record document numbers 3 (pp. 5-11), 7 (pp. 20-24), 8 (pp. 25, 27), 9 (pp. 29-30), 10 (pp. 31-36), 11 (pp. 37-41), 12 (pp. 42, 44), 13 (pp. 46, 48), 14 (pp. 49-56), and 77 (pp. 66-67, 69)" and that "[n]ames and/or identifying information of third parties were redacted from Administrative Record document numbers 9 (p. 30), 11 (pp. 37-41), 12 (pp. 44-45), and 17 (p. 69)." (*Id.*). However, Defendant does not cite to a standard for evaluating the redaction of personally identifying information in an administrative record. Instead, Defendant simply asserts that the redactions were proper because the identifying information is "irrelevant to the challenged decision underlying Plaintiff's APA claim." (*Id.* at 21).

Redactions of personally identifying information may be proper "as long as the redacted information was not 'directly or indirectly considered by agency decision-makers' during the challenged decisions." *Pub. Emps. for Env't Resp. v. Beaudreau*, No. CV 10-1067 RBW/DAR, 2012 WL 12942599, at *7 (D.D.C. Nov. 9, 2012), *objections overruled sub nom. Pub. Emps. for Env't Resp. v. Beaudreu*, No. CV 10-1073, 2013 WL 12193038 (D.D.C. May 16, 2013) (citation omitted); *see also Int'l Longshoremen's Ass'n, AFL-CIO v. Nat'l Mediation Bd.*, No. CIV.A. 04-824 (RBW), 2006 WL 197461, at *4 n.4 (D.D.C. Jan. 25, 2006) ("While the Court appreciates the defendant's desire to protect the confidentiality of the witnesses, if doing so compromises this Court's ability to adequately review the administrative record, the redactions are not appropriate."). Therefore, if "the [personal information] was before the decision-maker at the time of the challenged decision . . . . it should be included in the administrative record unless both parties agree that the information is not necessary for judicial review." *Pub. Emps. for Env't Resp.*, 2012 WL 12942599, at *8. Absent an agreement from the parties, the Defendant must produce the Amended Administrative Record with the personal identifying information or seek a protective order for such information. *See id.* at *7-8.

### C. Privilege Log

Plaintiff requests that Defendant produce its privilege log related to the administrative record in order to ensure fair adjudication of his APA claim. (Dkt. 52 at 4, 7). As discussed above, Defendant provided such a privilege log in its response to the motion. (*See* Dkt. 60 at 8-14). Accordingly, Plaintiff's request to compel the production of Defendant's privilege log related to the administrative record is denied as moot.

## II.    <u>Defendant's Renewed Motion for Summary Judgment</u>

### A.  Legal Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial."  *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).  Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown*, 654 F.3d at 358.

Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

## B. Plaintiff's Opposition to the Summary Judgment Motion

Similar to Plaintiff's response to the prior partial summary judgment motion, his opposition to Defendant's renewed motion is fundamentally inadequate.[4]  The Court previously outlined various deficiencies in Plaintiff's prior papers in the May D&O, but once again Plaintiff has failed to comply with this District's Local Rules in his response and he did not submit any evidentiary proof in support of his arguments.  Indeed, Plaintiff's opposition to the renewed summary judgment motion is almost entirely a word-for-word recitation of his initial opposition papers.  Like all parties opposing a summary judgment motion, Plaintiff was required to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact," *see Brown*, 654 F.3d at 358, and he plainly has not done so.

However, the Court is still obligated under Rule 56 to assess whether a party moving for summary judgment is entitled to judgment as a matter of law.  Even if Plaintiff entirely

---

[4]    Plaintiff once again signed his response to the instant motion "*Pro Se*," seemingly to argue that he should be treated as a *pro se* litigant.  (*See* Dkt. 61 at 16; *see also* Dkt. 23 at 19).  As discussed in the May D&O and the Court's Decision and Order dated February 21, 2024, the Court rejects this argument.  (*See* Dkt. 37 at 9 n.6; Dkt. 29 at 2-3 n.2); *see Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).  Accordingly, Plaintiff will be held to the same standards and expected to comply with the same requirements applicable to all attorneys appearing before the Court.

failed to oppose the renewed motion for summary judgment, the Court would have an independent duty to determine whether Defendant has satisfied its legal burden. *See, e.g.*, *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004) ("Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law."). Accordingly, the Court turns to the merits of Defendant's motion.

### C. Defendant's Motion is Granted in Part and Denied in Part

The Court held in the May D&O that Defendant did not adequately demonstrate the reasonableness of its search for records related to Plaintiff's FOIA claim and also failed to sufficiently explain material withheld under the FOIA statute. (Dkt. 37 at 12-30). Defendant's submissions in support of its renewed motion for partial summary judgment cured only some of the errors identified by the Court and as such, the Defendant's motion is granted in part and denied in part.

### 1. Legal Standard for Summary Judgment on FOIA Claim

"FOIA was enacted 'to facilitate public access to Government documents,' and was designed 'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 283 (2d Cir. 2009) (internal citations omitted). "Consistent with FOIA's purpose and design, 'the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents.'" *Id.* (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). A district court reviews an agency's withholding of records based

on a FOIA exemption *de novo*. *See, e.g.*, *Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 606 (S.D.N.Y. 2018); *see also* 5 U.S.C. § 552(a)(4)(B).

"Summary judgment is the procedural vehicle by which most FOIA actions are resolved." *Seife*, 298 F. Supp. 3d at 604 (quoting *N.Y. Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 509 (S.D.N.Y. 2007)). "A federal agency responding to a FOIA request must (1) conduct an adequate search using reasonable efforts, (2) provide the information requested, unless it falls within a FOIA Exemption, and (3) provide any information that can be reasonably segregated from the exempt information." *N.Y. Times Co. v. U.S. Dep't of Just.*, 390 F. Supp. 3d 499, 511 (S.D.N.Y. 2019) (citation omitted); *see also* 5 U.S.C. §§ 552(a)(3) and (b). In addition, pursuant to the FOIA Improvement Act (the "FIA") of 2016, "it is not enough for the Government to show that an exemption applies. Rather, the Government must also demonstrate that '(i) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or (ii) disclosure is prohibited by law.'" *N.Y. Times Co. v. Dep't of Health & Hum. Servs.*, 513 F. Supp. 3d 337, 346 (S.D.N.Y. 2021) (quoting 5 U.S.C. § 552(a)(8)(A)), *aff'd sub nom. N.Y. Times Co. v. U.S. Dep't of Health & Hum. Servs.*, 15 F.4th 216 (2d Cir. 2021). "Stated differently, pursuant to the FOIA Improvement Act, an agency must release a record— *even if it falls within a FOIA exemption*—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law." *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 486 F. Supp. 3d 669, 691 (S.D.N.Y. 2020) (emphasis in original) (quoting *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018).

"A district court in a FOIA case may grant summary judgment in favor of an agency on the basis of agency affidavits if they contain *reasonable specificity* of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Grand Cent. P'ship, Inc.*, 166 F.3d at 478 (quotation and citation omitted) (emphasis in original); *see N.Y. Times Co.*, 390 F. Supp. 3d at 512 ("[A]n agency is entitled to summary judgment when it has thoroughly searched for responsive records and has articulated reasonably detailed explanations why any withheld documents fall within an exemption." (citation omitted)). The Second Circuit "accord[s] a presumption of good faith to an agency's affidavits or declarations, such that when an agency provides reasonably detailed explanations to support its decision to withhold a document, its justification is sufficient if it appears logical and plausible[.]" *Behar v. U.S. Dep't of Homeland Sec.*, 39 F.4th 81, 88 (2d Cir. 2022) (internal quotations and citations omitted).

### 2. Reasonableness of the Search for Responsive Records

Defendant argues that it conducted a search reasonably designed to locate documents responsive to Plaintiff's FOIA request by determining where responsive information would likely be contained and then searching in two of its systems for the information. (Dkt. 44-1 at 12). Plaintiff makes no argument to the contrary. With the additional information provided on its renewed motion, the Court agrees with Defendant that the agency conducted a reasonable search.

"The agency bears the burden to demonstrate 'beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Knight First*

*Amend. Inst. at Columbia Univ. v. Centers for Disease Control & Prevention*, 560 F. Supp. 3d 810, 820 (S.D.N.Y. 2021) (quoting *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency*, 877 F. Supp. 2d 87, 95 (S.D.N.Y. 2012)); *see Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994) ("In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate. . . ."). "[A]n agency's search need not be perfect, but rather need only be reasonable." *Grand Cent. P'Ship*, 166 F.3d at 489 (citation omitted).

To demonstrate the reasonableness of its search, "an agency must search all locations likely to contain responsive records[.]" *NAACP Legal Def. & Educ. Fund, Inc. v. Dep't of Just.*, 463 F. Supp. 3d 474, 484 (S.D.N.Y. 2020) (citation omitted). "In applying this reasonableness standard, courts consider, among other things, the search terms and type of search performed and the nature of the records system or database searched." *Id.* (quotation and citation omitted). The agency "must identify the searched files and describe at least generally the structure of the agency's file system which renders any further search unlikely to disclose additional relevant information." *Nat'l Day Laborer Org. Network*, 877 F. Supp. 2d at 96 (quotations and citations omitted). Agency affidavits can establish the adequacy of a search when the affidavits are "relatively detailed and nonconclusory, and submitted in good faith." *Seife*, 298 F. Supp. 3d at 607 (quoting *Grand Cent. P'ship*, 166 F.3d at 489).

Defendant searched for records responsive to Plaintiff's FOIA request in two of its system databases, the Global Enrollment System ("GES") and the Analytical Framework for Intelligence ("AFI") system. (Dkt. 44-2 at ¶ 30). In the May D&O, the Court held that

Defendant did not sufficiently describe the structure of its file system in order for it to demonstrate that these were the only two databases likely to contain responsive records. (Dkt. 37 at 14-16). On the renewed motion, Defendant provides the missing context and thereby satisfies its burden of demonstrating a reasonable search.

Defendant submitted a supplemental declaration of Patrick Howard ("the supplemental Howard declaration") in support of its renewed motion that provides additional insight to the agency's file systems and databases. (*See* Dkt. 44-3 at 3-36). The supplemental Howard declaration explains that Defendant framed Plaintiff's FOIA request into two categories of requested information: first, "information relating to the applications, renewals, denial and revocation of Plaintiff's NEXUS membership" and second, "records that were consulted as part of the decision to deny and revoke Plaintiff's NEXUS membership." (*Id.* at 5). Records related to the first category were likely to be stored on the GES database, whereas the records related to the second category were likely to be contained in the AFI system. (*Id.*)

According to the supplemental Howard declaration, the GES database is the "sole repository for trusted traveler program enrollment, application, and background investigation data." (*Id.*). Therefore, "[r]ecords related to CBP's assessment of a particular individual's eligibility and application processing are contained within the GES system." (*Id.*). The supplemental Howard declaration further describes that the AFI system incorporates information from a range of CBP and other government databases and indexes that information. (*Id.* at 5-6). The supplemental Howard declaration lists ten government databases from which the AFI sources its information. (*Id.*). One of the databases that the

AFI system obtains its information from is called TECS (not an acronym). (*Id.* at 5). As explained in the supplemental Howard declaration, TECS is the "data repository for border screening and reporting for CBP's primary and secondary inspection processes, including the enforcement or inspection records pertaining to individuals." (*Id.* at 6). Records of border inspections are entered into TECS. (*Id.*). Because the AFI system incorporates information from several CBP and other government databases, including TECS, a search of the AFI system "is inclusive of searching those records ingested from TECS and other source systems." (*Id.*). The supplemental Howard declaration provides that "[t]he records that formed the basis of the December 2022 denial of Plaintiff's NEXUS membership included Plaintiff's trusted traveler records, found in GES . . . as well as CBP border inspection records, which are found in AFI system." (*Id.* at 5). Accordingly the Court agrees with Defendant that its search of these two databases was "reasonably calculated to uncover all relevant documents." *See Knight First Amend. Inst. at Columbia Univ.*, 560 F. Supp. 3d at 820.

Additionally, the Court held in the May D&O that Defendant did not adequately explain "why it chose to search GES using Plaintiff's NEXUS membership number and AFI using Plaintiff's first and last name, or why these search terms were comprehensive enough to locate responsive records." (Dkt. 37 at 14-15). This too has been remedied by Defendant's submissions on its renewed motion. Regarding the GES system, the supplemental Howard declaration explains that "[a]ll individuals accepted into the NEXUS program receive a membership identification card and membership number specific to that individual." (Dkt. 44-3 at 5). A search using an individual's NEXUS membership number

will return all trusted traveler records relating to that individual. (*Id.*). On the other hand, the AFI system is indexed to permit searches by an individual's name that will produce results from the AFI system's sourced records. (*Id.* at 6). As noted above, Defendant considered trusted traveler records contained in the GES system and border inspection records in making its determination to deny and revoke Plaintiff's NEXUS membership. (*Id.* at 5). At primary and secondary border inspections, "CBP will collect a traveler's complete name (last name, first name, and middle name or initial)" and enter it into TECS. (*Id.* at 6). In order to search for an individual's border inspection records contained in the AFI system, it is then appropriate to use the individual's complete name. (*Id.* at 6-7). The supplemental Howard declaration also points out that a search of Plaintiff's first and last name in conjunction—i.e. "Matthew Borowski"—was "reasonably designed to produce all records responsive to Plaintiff's request" as searches of Plaintiff's first and last name separately would likely produce "voluminous records non-responsive to Plaintiff's request." (*Id.*).

The supplemental Howard affirmation provides "sufficiently detailed descriptions of the underlying facts," *Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Immigr. & Customs Enf't*, 571 F. Supp. 3d 237, 246-47 (S.D.N.Y. 2021), regarding Defendant's database systems and the searches performed in response to Plaintiff's FOIA request. Equipped with this new information, the Court concludes that Defendant has met its burden of demonstrating that it conducted a search of its records reasonably calculated to uncover all relevant documents related to Plaintiff's request.

### 3.  Documents Redacted Under the Exemptions

Having found CBP's search to be adequate, the Court now turns to CBP's withholdings and redactions.  Defendant maintains that it properly withheld information that fell within four defined exemptions under the FOIA statute, specifically Exemption 5, Exemption 6, Exemption 7(C), and Exemption 7(E).  (*See* Dkt. 44-1 at 18-33).  Plaintiff continues to contend that Defendant's justifications for the withholdings are vague, inadequately supported, and made in bad faith given the history between the parties.  (*See* Dkt. 61 at 7-16).

"An agency that has withheld responsive documents pursuant to a FOIA exemption can carry its burden to prove the applicability of the claimed exemption by affidavit[.]" *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009); *see also* 5 U.S.C. § 552(a)(4)(B).  "Summary judgment is warranted . . . when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Spadaro v. U.S. Customs & Border Prot.*, 978 F.3d 34, 42 (2d Cir. 2020) (quoting *N.Y. Times v. Cent. Intel. Agency*, 965 F.3d 109, 114 (2d Cir. 2020)).  The agency "should describe the documents with as much information as possible without thwarting the exemption's purpose and . . . specifically identif[y] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply." *Cox v. Dep't of Just.*, 504 F. Supp. 3d 119, 128 (E.D.N.Y. 2020) (quotation and citation omitted); *see N.Y. Times Co. v. U.S. Food & Drug Admin.*, 529 F. Supp. 3d 260,

279 (S.D.N.Y. 2021) (agency affidavits "characterized by conclusory statements and devoid of fact-specific justifications" are insufficient).

It is well-established that an agency can prepare a submission pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), listing the titles and descriptions of records "to identify responsive documents and discharge its obligation to assert any claimed FOIA exemptions to the various documents withheld." *N.Y. Times Co. v. U.S. Dep't of Just.*, 758 F.3d 436, 438 (2d Cir. 2014) (collecting cases), *supplemented*, 762 F.3d 233 (2d Cir. 2014); *see Seife*, 298 F. Supp. 3d at 606 ("[W]hen invoking a FOIA exemption, agencies submit a '*Vaughn* index'—a list of withheld documents and claimed exemptions—and a '*Vaughn* affidavit,' describing the documents and the agency's rationale for withholding them."). The *Vaughn* submission has three functions:

> [1] it forces the government to analyze carefully any material withheld, [2] it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, [3] and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court.

*Halpern*, 181 F.3d at 291 (citation omitted). The Second Circuit has "eschewed rigid adherence to any particular indexing format under the *Vaughn* standard, opting instead for a functional approach." *Id.*

As explained above, demonstrating that a document falls within an exemption does not end the analysis. The FIA requires an agency to release even information that falls within a FOIA exemption if it cannot show that it "reasonably foresees that disclosure would harm an interest protected by an exemption" or that "disclosure is prohibited by law." *N.Y. Times Co.*, 513 F. Supp. 3d at 346. The Second Circuit has held that the FIA

"imposes an additional, independent burden on the agency" before it may withhold a record under one of FOIA's exemptions.  *Seife v. U.S. Food & Drug Admin.*, 43 F.4th 231, 235 (2d Cir. 2022).  To ascertain whether an agency has shown that it reasonably foresees that disclosure would harm an interest protected by a FOIA exemption, the court "must first discern the interests protected by" the exemption invoked.  *See Seife*, 43 F.4th at 234.

### a.  Defendant's *Vaughn* Submission

Compared to its submission in support of the prior summary judgment motion, Defendant's new *Vaughn* submission provides a greater level of specificity and detail regarding the documents withheld in response to Plaintiff's FOIA request.  In the May D&O, the Court held that Defendant's *Vaughn* submission regarding Exemptions 6, 7(C), and 7(E) was "fundamentally flawed because it lack[ed] the requisite 'reasonably specific detail' throughout to allow the Court to evaluate the appropriateness of each exemption applied."  (Dkt. 37 at 19) (citing *Spadaro*, 978 F.3d at 42).

In Defendant's first partial summary judgment motion, its *Vaughn* index divided the 251 responsive documents into seven groups, each of which ranged from one to 167 pages in length, and material was withheld in six of the seven groups.  (*See* Dkt. 19-2 at 11-19).[5] Defendant cited multiple FOIA exemptions for each group of documents with little effort to delineate which exemptions applied to which pages or sections of pages.  (*See id.*).  In the May D&O, the Court held that Defendant's *Vaughn* submission did not specify which

---

[5]    In the seventh group, Defendant released a 52-page spreadsheet (Bates numbers 000200-000251) depicting Plaintiff's border crossings with no redactions.  (*See* Dkt. 19-2 at 19).

statutory exemptions applied to which documents or sections of documents to the degree necessary for the Court to ensure that the exemption was properly applied. (Dkt. 37 at 19-20). Furthermore, the Court held that Defendant's *Vaughn* submission was "devoid of fact-specific" rationales necessary to justify the redactions. *Id.* (citing *U.S. Food & Drug Admin*, 529 F. Supp. 3d at 279).

Defendant has now adjusted its *Vaugh* submission by adding "subcategories" to the asserted exemptions. (*See* Dkt. 44-3 at 8-12; 14-36). For example, Defendant delineated seven subcategories to Exemption 7(E), which applies to records or information compiled for law enforcement purposes. (*See id.* at 9). Subcategory (b)(7)(E)-1 relates to "non-public law enforcement system and database information, functionalities, and capabilities, including how a database is utilized in the execution of CBP's law enforcement mission." (*Id.* at 9-10). Subcategory (b)(7)(E)-2 separately relates to "non-public law enforcement sensitive CBP codes, numbers, and identifiers utilized in CBP law enforcement systems and databases." (*Id.* at 10).

Defendant's *Vaughn* index once again has a column entitled "Basis for Withholding," which provides general explanations for each of the exemption subcategories and the potential harm that would result if the redacted material was released. For example, the "Basis for Withholding" column for subcategory (b)(7)(E)-1 states:

> Exemption (b)(7)(E) has been applied to investigative techniques and procedures, specifically to non-public database information, functionalities, and capabilities. This includes how CBP's law enforcement databases are utilized in the generation of certain law enforcement reports, and otherwise utilized in executing CBP's law enforcement mission. Such information is not generally known or publicly disclosed. Disclosure of such law enforcement techniques and procedures would be debilitating and

detrimental to both CBP and the law enforcement community. Release of non-public database information, either standing alone or in combination with other information, presents a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law, detrimental to CBP's mission in securing the U.S. border and facilitating lawful travel and trade.

(*Id.* at 16). Defendant provides a similar statement for subcategory (b)(7)(E)-2:

Exemption (b)(7)(E) has been applied to investigative techniques and procedures, specifically to non-public, sensitive, CBP codes and identifiers. Such information is not generally known or publicly disclosed. Disclosure of such law enforcement techniques and procedures would be debilitating and detrimental to both CBP and the law enforcement community. Because CBP assigns unique codes and identifiers to certain efforts, release of this information would provide individuals a means of tracking CBP's border enforcement efforts. Release of non-public, law enforcement sensitive CBP codes and identifiers, either standing alone or in combination with other information, presents a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law, detrimental to CBP's mission in securing the U.S. border and facilitating lawful travel and trade.

(*Id.* at 17).

Defendant's *Vaughn* index delineates 71 different groups of responsive records generally ranging from one to three pages. (*See id.* at 19-36). Similar to the prior submission, the updated *Vaughn* index includes a column entitled "Document Name and Description," a column entitled "Exemptions," which lists the exemptions applied to record, and a column entitled "Bates Page(s)," which provides the page range for each record. (*See id.* at 19). For example, in the first document group of the *Vaughn* index, the entry for the Document Name and Description is "Plaintiff's Trusted Traveler Program Records from the Global Enrollment System, including Plaintiff's application history and

CBP comments," the range of bates pages is listed as 000001-000008, and in the "Exemptions" column, Defendant lists six subcategories: "(b)(6), (b)(7)(C)-1; (b)(6), (b)(7)(C)-2; (b)(7)(E)-1; (b)(7)(E)-2; (b)(7)(E)-3; (b)(7)(E)-6." (*See id.*).

### b. Exemption 5

Defendant initially identified five pages of intra-agency email communications that were completely redacted under Exemption 5. (Dkt. 19-1 at ¶ 50; Dkt. 19-2 at 11). In the May D&O, the Court held that Defendant did not "me[et] its burden of establish[ing] that the emails in question were deliberative and predecisional, and that withholding them complies with the FIA." (Dkt. 37 at 26-30). Based on the new information provided by Defendant, the Court holds that the agency has met its burden on the email communications redacted pursuant to Exemption 5, but has not established that the redactions comply with the FIA.

As an initial matter, Defendant now avers that it "re-processed" the 251 records responsive to Plaintiff's FOIA request and "un-redacted portions of the intra-agency emails (pages 000019-000023 of the FOIA release)." (Dkt. 44-2 at ¶¶ 55-56). Defendant maintains that portions of the email communications are properly redacted pursuant to Exemption 5. (*See* Dkt. 44-3 at 20).

Defendant provided enough information regarding the context of the email communications sufficient for the Court to analyze whether the agency has met its burden to justify the redactions under the exemption claimed. The supplemental Howard declaration describes the email communications as "constitut[ing] internal, predecisional deliberations and recommendations of CBP employees pertaining to Plaintiff's NEXUS

- 29 -

eligibility, and they predate CBP's decision regarding Plaintiff's NEXUS eligibility." (Dkt. 44-3 at 8). This is the same information provided in support of Defendant's first partial summary judgment motion. (*See* Dkt. 19-2 at 6). Whereas the Court held in the May D&O that Defendant's prior submissions were insufficient to permit the Court to determine whether the withheld internal email communications were predecisional and deliberative, (*see* Dkt. 37 at 29-30), the Court now holds that Defendant has provided the necessary information and context on the renewed motion to meet this initial burden.

Exemption 5 allows "intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency" to be withheld. 5 U.S.C. § 552(b)(5). This "exemption has been interpreted to encompass traditional common law privileges against disclosure, including the . . . deliberative-process privilege[]." *Brennan Ctr. for Just. at New York Univ. Sch. of L. v. U.S. Dep't of Just.*, 697 F.3d 184, 189 (2d Cir. 2012) (citing *Nat'l Council of La Raza v. Dep't of Justice,* 411 F.3d 350, 356 (2d Cir. 2005)); *see Grand Cent. P'Ship*, 166 F.3d at 481 ("The 'deliberative process privilege,' . . . is encompassed within the executive privilege" under Exemption 5 of FOIA.). The Second Circuit's "precedents have established that the deliberative process privilege protects only those records that 'bear on the formulation or exercise of policy-oriented judgment.'" *Nat. Res. Def. Council v. U.S. Env't Prot. Agency*, 19 F.4th 177, 184-85 (2d Cir. 2021) (quoting *Grand Cent. P'ship*, 166 F.3d at 482). "By contrast, '[t]he release of materials that do not embody agency judgments—for example, materials relating to standard or routine computations or measurements over which the agency has no significant discretion—is unlikely to diminish officials' candor or otherwise injure the

quality of agency decisions.'" *Id.* at 185 (quoting *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1436 (D.C. Cir. 1992)).  "Whether the deliberative process privilege is asserted in an APA case or in the Freedom of Information Act context, the test for the privilege's applicability is the same.  To qualify for the privilege, a document must be both 'predecisional' and 'deliberative.'" *Nat. Res. Def. Council, Inc. v. Doremus*, No. 20-CV-1150 (CRC), 2021 WL 2322349, at *2 (D.D.C. June 7, 2021) (internal citation omitted).

In determining whether a document is predecisional, courts consider whether the government is able to: "(i) pinpoint the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document precedes, in temporal sequence, the decision to which it relates." *N.Y. Times Co. v. Dep't of Educ.*, 658 F. Supp. 3d 171, 185 (S.D.N.Y. 2023) (citation omitted); *see Seife*, 298 F. Supp. 3d at 614.  In assessing whether a document is deliberative,

> [c]ourts have looked to factors such as whether the document (i) formed an essential link in a specified consultative process, (ii) reflects the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency.

*N.Y. Times Co.*, 658 F. Supp. 3d at 185 (quotation and citation omitted).  "As a general matter, the deliberative process 'privilege generally does not extend to purely factual material,' and any non-privileged material that is 'reasonably segregable' from the deliberative portions of records must be produced." *Id.*  (internal citations omitted).

The information submitted by Defendant is sufficient for the Court to determine that the intra-agency email communications were properly redacted under Exception 5 as predecisional and deliberative. In the May D&O, the Court identified several deficiencies in Defendant's submissions related to its Exemption 5 redactions, including the failure to identify the authors of the emails, the positions or roles of the email authors, the dates the emails were sent, and whether the redacted information reflected the agency's final determination on the decision discussed in the documents. (*See* Dkt. 37 at 26-28). The Court also determined that Defendant did not "me[et] its burden under the FIA to demonstrate that it reasonably foresees that disclosure of information withheld pursuant to Exemption 5 would harm an interest protected by this exemption." (*Id.* at 28-29). Defendant's new submissions address each of the deficiencies related to whether Exemption 5 was properly applied; however Defendant still has not demonstrated a reasonably foreseeable harm if the redacted material was released.

The supplemental Howard declaration states that the "the intra-agency emails consist of seven (7) emails sent on April 2, 2014, April 4, 2014, April 17, 2014, April 18, 2014, and April 22, 2014." (Dkt. 44-3 at 8). The email authors and recipients included: an ombudsman for CBP's Trusted Traveler Programs; two border security managers; an assistant port director; and a supervisory CBP officer. (*Id.*). The email communications involved a discussion on whether to approve Plaintiff's NEXUS membership in April 2014 and the ombudsman on the email discussion was the decision-maker for that determination. (*Id.*). The supplemental Howard declaration then discusses the content that was redacted pursuant to Exemption 5, stating "[t]he content of the redacted portions of the emails

include[] deliberations, the expression of opinions, and recommendations as to whether Plaintiff's NEXUS program history and compliance with CBP's border inspectional process supports a reinstatement of Plaintiff's trusted traveler status." (*Id.*).

This additional information rises above mere boilerplate assertions that the email communications were predecisional and deliberative. Plaintiff's NEXUS membership was terminated on December 16, 2013, and then reinstated on April 25, 2014. (Dkt. 44-2 at ¶¶ 4-5). Based on the timeframe of the emails, spanning from April 2 through 22, 2014, the Court is able to confirm that these communications were, indeed, predecisional regarding Plaintiff's reinstatement in the NEXUS program. Furthermore, with the description of the content of the communications and personnel involved, the Court is also able to confirm that the information discussed was deliberative as it related to the determination of whether Plaintiff's NEXUS membership should be reinstated. As established by the supplemental Howard declaration, the emails involved the decision-maker on whether Plaintiff's NEXUS program membership should be reinstated communicating with other CBP personnel regarding Plaintiff's NEXUS program history and border crossing history. (*See* Dkt. 44-3 at 8). These deliberations involved recommendations from CBP personnel on whether Plaintiff's membership should be reinstated. (*See id.*). That is sufficient for the Court to determine that the email communications are deliberative. Again, the final decision was issued to Plaintiff on April 25, 2014. (*Id.*).

However, Defendant has once again not met its burden under the FIA to demonstrate that it reasonably foresees that disclosure of information withheld pursuant to Exemption

5 would harm an interest protected by this exemption.  "[A]n agency must explain *how* a particular Exemption 5 withholding would harm the agency's deliberative process.  An agency may not perfunctorily state that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information among or between government officials."  *Nat'l Day Laborer Org. Network*, 486 F. Supp. 3d at 691-92 (emphasis added) (quotations and citation omitted).  In the May D&O, the Court held that Defendant's claimed harm of a "'a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occur when CBP officials engage in decision-making processes,' causing these officials 'to be more circumspect in what they put in writing, thereby impeding candid discussions of the issues surrounding a decision'" was not sufficient.  (Dkt. 37 at 29) (quoting Dkt. 19-3 at 16).

Defendant adds little regarding the potential harm that would result if these emails were disclosed to Plaintiff in its new submissions.  In its *Vaughn* index submitted in support of its renewed motion, Defendant now also avers:

> Specifically, as relevant here, a determination as to whether a particular individual is eligible to participate in the NEXUS program includes intra-agency communication and deliberation to inform the decision-maker ultimately tasked with determining whether an applicant can satisfy CBP of his or her low-risk status or meet other program requirements.  Release of the predecisional records containing intra-agency deliberations concerning a NEXUS eligibility determination would reasonably be expected to impede the open and candid expression of recommendations and opinions necessary to making such a determination.

(Dkt. 44-3 at 14).  Once again, these assertions do not rise above the boilerplate language necessary to satisfy FIA's standard.  *See, e.g.*, *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 375 F. Supp. 3d 93, 101 (D.D.C. 2019) (rejecting justification that "release of the redacted

- 34 -

material would have the foreseeable harm of discouraging a frank and open dialogue among interagency staff"). The assertion in Defendant's *Vaughn* index does not explain *how* the release of this information would "impede the open and candid expression of recommendations." (*See* Dkt. 44-3 at 14).

Defendant's memorandum of law in support of the renewed motion does not provide any additional insight on how the release of this material would create a chilling effect on internal agency deliberations. Defendant summarily states:

> If all NEXUS applicants could access internal deliberations about NEXUS eligibility, agency decisionmakers would be less likely to engage in open and candid expression of recommendations and opinions necessary to making such a determination. This, in turn, could negatively impact the quality of decisions affecting CBP's ability to carry out its mission in securing the United States border.

(Dkt. 44-1 at 22). Defendant again fails to explain how this disclosure would lead CBP officers to be less likely to engage in open and candid discussions. Defendant further argues that the release of the email communications "could create public confusion," (*see id.*), but also does not explain this conclusory harm.

In sum, while Defendant has provided sufficient information and context to demonstrate that the content of intra-agency emails may be withheld under Exemption 5, the agency still has not met its burden to demonstrate that withholding that content complies with the FIA. Accordingly, Defendant is not entitled to summary judgment on documents redacted under Exemption 5.

### c. Exemption 6 and Exemption 7(C)

"FOIA Exemptions 6 and 7(C) protect against disclosures that implicate personal privacy interests." *Hetzler v. Rec./Info. Dissemination*, 896 F. Supp. 2d 207, 216 (W.D.N.Y. 2012). Defendant argues that it appropriately withheld the names and other personally identifying information of CBP personnel pursuant to Exemption 6 and Exemption 7(C). (Dkt. 44-1 at 18). The Court agrees that Defendant met its burden related to these redactions.

As noted above, the Court held in the May D&O that Defendant's *Vaughn* submission regarding Exemptions 6 and 7(C) "lack[ed] the requisite 'reasonably specific detail' throughout to allow the Court to evaluate the appropriateness of each exemption applied."[6] (Dkt. 37 at 19) (citing *Spadaro*, 978 F.3d at 42). On the renewed motion, Defendant's *Vaughn* submission provides sufficient information and context for the Court to determine whether the Exemption 6 and 7(C) were appropriately applied.

Defendant delineated three subcategories of redacted material made under Exemption 6 and 7(C). (Dkt. 44-3 at 11). Subcategory (b)(6), (b)(7)(C)-1 withheld information that included the "names of CPB personnel within CBP's Trusted Traveler Program and those personnel involved in assessing and determining Plaintiff s NEXUS eligibility" as well as "the names of CBP officers involved in the border inspection process." (*Id.*). The supplemental Howard declaration states that Defendant applied

---

[6]    This reasoning was also applied to Defendant's application of Exemption 7(E) in the May D&O. (*See* Dkt. 37 at 19). The Court addresses Defendant's application of Exemption 7(E) in greater detail below.

subcategory (b)(6), (b)(7)(C)-1 redactions to bates pages 000001-000008; 000019-000023;

and 000028-000199. (*Id.*) Subcategory (b)(6), (b)(7)(C)-2 withheld "personally

identifying information of CBP personnel," including "the user identification codes of CBP

employees within CBP's Trusted Traveler Program" and "the computer workspace

identification numbers assigned to individual CBP employees involved in the border

inspection process." (*Id.* at 12). In applying subcategory (b)(6), (b)(7)(C)-2, Defendant

redacted unique personally identifying information of CBP personnel on bates pages

000005-000007; 000010; 000012; 000013; 000016; 000017; and 000026, and CBP

employee individual workplace identification numbers from bates pages 000058-000105

and 000108-000199. (*Id.*). Subcategory (b)(6), (b)(7)(C)-3 was applied to "withhold the

names of non-employee third parties, as well as information by which those individuals

could be identified." (*Id.*). As noted above, the *Vaughn* index provides a general

description of the records. With this information, the Court is able to analyze whether

Defendant appropriately applied these redactions.

Exemption 6 provides that "personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal privacy"

are exempt from disclosure. 5 U.S.C. § 552(b)(6). "The phrase 'similar files' sweeps

broadly and has been interpreted by the Supreme Court to mean 'detailed Government

records on an individual which can be identified as applying to that individual.'" *Cook v.*

*Nat'l Archives & Recs. Admin.*, 758 F.3d 168, 174 (2d Cir. 2014) (quoting *U.S. Dep't of*

*State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)).

"Exemption 7(C) protects records compiled for law enforcement purposes 'to the extent that the production of such information could reasonably be expected to constitute an unwarranted invasion of personal privacy.'" *Associated Press v. U.S. Dep't of Just.*, 549 F.3d 62, 65 (2d Cir. 2008) (quoting 5 U.S.C. § 552(b)(7)(C)).  "To meet the threshold requirement that the withheld records or information were compiled for law enforcement purposes, 'an agency must establish a rational nexus between the agency's activity in compiling the documents and "its law enforcement duties."'" *CLEAR v. U.S. Customs & Border Prot.*, No. 19-CV-7079 (RER), 2022 WL 16636686, at *9 (E.D.N.Y. Nov. 2, 2022) (quoting *Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. Dep't of Homeland Sec.*, 331 F. Supp. 3d 74, 97 (S.D.N.Y. 2018)).  Other courts have held that documents created by CBP in furtherance of its "mission to secure the border" meet the threshold requirement imposed by Exemption 7.  *See Sabra v. U.S. Customs & Border Prot.*, No. CV 20-681 (CKK), 2023 WL 1398473, at *8-9 (D.D.C. Jan. 31, 2023), *aff'd*, No. 23-5069, 2024 WL 5182911 (D.C. Cir. Dec. 20, 2024); *Bishop v. U.S. Dep't of Homeland Sec.*, 45 F. Supp. 3d 380, 386-87 (S.D.N.Y. 2014) (threshold requirement satisfied when documents contain information "from law enforcement databases" and "collected and used by CBP in its mission to secure the border").

As the statutory language suggests, "the standard for evaluating the privacy interests implicated in records compiled for law enforcement purposes under Exemption 7(C) is 'somewhat broader' than that applicable under Exemption 6 to personnel, medical, or other files." *Associated Press*, 549 F.3d at 65 (quoting *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989)).  "Where records are compiled for law

- 38 -

enforcement purposes, a 'two-part test' governs the application of Exemption 7(C)." *Sorin v. U.S. Dep't of Just.*, 280 F. Supp. 3d 550, 564 (S.D.N.Y. 2017), *aff'd sub nom. Sorin v. U.S. Dep't of Just.*, 758 F. App'x 28 (2d Cir. 2018) (citing *N.Y. Times Co. v. U.S. Dep't of Homeland Sec.*, 959 F. Supp. 2d 449, 452 (S.D.N.Y. 2013)). "First, the court determines whether there is any privacy interest in the information sought." *Id.* (quoting *N.Y. Times Co.*, 959 F. Supp. 2d at 452). "Then the Court must 'balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect.'" *Id.* (quoting *U.S. Dep't of Just.*, 489 U.S. at 776 ). "The 'only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contribut[ing] significantly to public understanding of the operations or activities of the government.'" *Project S. v. United States Immigr. & Customs Enf't*, No. 121CV08440ALCBCM, 2024 WL 1116164, at *13 (S.D.N.Y. Mar. 12, 2024) (quoting *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495 (1994)).

Defendant applied Exemption 6 and 7(C) in conjunction with each other. (*See* 44-3 at 11-12). "[B]ecause Exemption 7(C) is more protective of privacy than Exemption 6 (and thus presents a 'lower bar' for withholding materials), the Court 'need only consider whether [the Government] properly invoked Exemption 7(C).'" *Am. C.L. Union v. U.S. Dep't of Homeland Sec.*, 973 F. Supp. 2d 306, 315 (S.D.N.Y. 2013) (quoting *Am. C.L. Union v. U.S. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011)). Defendant established its burden that the personal information redacted pursuant to Exemption 7(C) was appropriate.

First, Defendant has satisfied the threshold issue for Exemption 7 redactions by showing that the documents were compiled for law enforcement purposes. Defendant

argues that this threshold issue is satisfied because all of "the responsive records were compiled for law enforcement purposes in that they were created and used by CBP in its law enforcement mission to secure the international borders of the United States."  (Dkt. 44-1 at 25).  Defendant states that Plaintiff's border inspection records, and records relating to his NEXUS program participation directly relate to this mission.  (*Id.*).  As noted above, caselaw supports Defendant's argument.  *See Sabra*, 2023 WL 1398473, at *8-9 (holding that records relating to the plaintiff's border crossings were qualified as "records or information compiled for law enforcement purposes" under Exemption 7); *Bishop*, 45 F. Supp. 3d at 386-87 ("[T]hese documents satisfy the 'law enforcement purposes' requirement inasmuch as they pertain to CBP's attempts to control the borders and identify potential criminal activity or illegal immigration."); *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 30 F. Supp. 3d 67, 74-75 (D.D.C. 2014) (records that "describe CBP's procedures for detaining or processing individuals" properly withheld because they "ha[ve] a rational nexus to the agency's law-enforcement duties, including the prevention of terrorism and unlawful immigration").  The Court is accordingly satisfied that Defendant has met Exemption 7's threshold requirement that the redacted records be compiled for law enforcement purposes.

Next, the Court agrees with Defendant that the CBP employees and other third-parties have a "protectable privacy interest in the nondisclosure of their identity or other identifying information." (*see* Dkt. 44-1 at 25).  "It is well established that identifying information such as names, addresses, and other personal information falls within the ambit of privacy concerns under FOIA." *Associated Press*, 554 F.3d at 285.  The supplemental

Howard declaration was clear that Defendant redacted the names or other personally identifying information of CBP employees or third parties from the responsive records. (*See* Dkt. 44-3 at 11-12).

Furthermore, the balancing weighs in favor of redacting this personally identifying information. The individual identifying information in this case is not a strong public interest as it does not contribute to the public understanding of government operations. Plaintiff's FOIA demand also did not identify any particular person nor request any information relating to a particular individual. (*See* Dkt. 44-2 at ¶ 28).

Finally, Defendant has satisfied its burden under the FIA. The supplemental Howard declaration outlines the potential harm that may flow from the release of any personally identifying information:

> Because CBP employees occupy sensitive, law enforcement positions, they face an increased risk of becoming the targets of harassment or attack. Withholding this information protects CBP employees from harassment in their private lives due to the conduct of their official duties, which could result from public disclosure of their identity.

(Dkt. 44-3 at 12). The supplemental Howard declaration provides a similar argument regarding the release of third-party personally identifying information. (*Id.*). The Court agrees that this is a reasonably foreseeable harm that satisfies the FIA. *See Reps. Comm. for Freedom of Press v. Fed. Bureau of Investigation*, No. CV 17-1701 (RC), 2022 WL 13840088, at * 5 (D.D.C. Oct. 21, 2022) ("Having established that Exemption 7(C) applies, the [agency] has also shown that it reasonably foresees disclosure would harm an interest protected by the exemption. . . . [as] [t]he agency has stated that disclosure of agent names could lead to harassment of agents and their families and also impair their duties."), *on*

*reconsideration*, No. CV 17-1701 (RC), 2024 WL 5264334 (D.D.C. Sept. 20, 2024). Accordingly the Court grants summary judgment in favor of the redactions and withholdings Defendant made pursuant to Exemption 7(C).

### d. Exemption 7(E)

Finally, Defendant argues that it properly redacted material pursuant to Exemption 7(E). (Dkt. 44-1 at 27-33). The Court disagrees, finding that Defendant's arguments for the Exemption 7(E) withholdings suffer from the same fatal flaw as the prior summary judgment motion.

As previously noted, the May D&O held that Defendant's submissions did not provide a sufficient level of specificity necessary for the Court to evaluate whether withholdings made pursuant to Exemption 7(E) were appropriately applied. (*See* Dkt. 37 at 19). On the renewed summary judgment motion, this fundamental flaw persists.

Although Defendant has further delineated the document names and descriptions of the responsive records and added exemption subcategories in its *Vaugh* submission, the Court is still unable to ascertain whether Defendant properly applied Exemption 7(E) to the redacted material. The supplemental Howard declaration describes seven Exemption 7(E) subcategories. (*See* Dkt. 44-3 at 9-10). Subcategories (b)(7)(E)-1 and (b)(7)(E)-2 were applied to non-public law enforcement "information relating to CBP systems and databases. . . ." (*Id.*). Subcategories (b)(7)(E)-3 through (b)(7)(E)-7 were applied to "information relating to law enforcement techniques and procedures utilized in furtherance of CBP's mission in securing the United States border and facilitating lawful trade and travel." (*Id.* at 9-10). The supplemental Howard declaration provides additional specificity

of the material included in each subcategory, but the *Vaughn* submission does not provide any additional insight into how the subcategories were applied.

Using the document name and description provided above—"Plaintiff's Trusted Traveler Program Records from the Global Enrollment System, including Plaintiff's application history and CBP comments"— as an example, the *Vaughn* index indicates that Defendant applied four different Exemption 7(E) subcategories across eight pages of records. (*See* Dkt. 44-3 at 19). Defendant's submission lacks any clarity regarding how these redactions were applied across those eight pages and the Court is fundamentally unable to conduct meaningful review "to fulfill its duty of ruling on the applicability of the exemption" to a specific withholding. *See Halpern*, 181 F.3d at 291. Defendant does not specify which pages each Exemption 7(E) subcategory was applied to, why that content qualified for redaction under the subcategory, nor provide any additional details about the documents for the Court to be able to scrutinize whether the exemption was properly applied.

Turning to subcategory (b)(7)(E)-1 for a closer example, the supplemental Howard declaration explains that this category withheld "non-public law enforcement system and database information, functionalities, and capabilities, including how a database is utilized in the execution of CBP's law enforcement mission." (Dkt. 44-3 at 9-10). The *Vaughn* index indicates that this exemption was applied to the group of responsive records described above, spanning eight pages. (*See id.* at 19). However, Defendant provides no information about what type of "non-public law enforcement system and database information, functionalities, and capabilities" is included in this group of documents for

the Court to determine if this exemption was appropriately applied. These shortcomings exist throughout Defendant's *Vaugh* submission for Exemption 7(E). *See Cox*, 504 F. Supp. 3d at 128 ("[T]he agency should describe the documents with as much information as possible without thwarting the exemption's purpose and provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." (quotations and citation omitted)). Accordingly, Defendant's request for summary judgment related to its application of Exemption 7(E) is denied.

### 4. *In Camera* Review is Not Warranted at this Time

Plaintiff once again requests that the Court conduct an *in camera* review of the information that Defendant has withheld based on the vague, boilerplate nature of the *Vaughn* submission. (Dkt. 61 at 7-8). Plaintiff makes the same argument for an *in camera* review as he did in his response to the prior summary judgment motion. (*See* Dkt. 23 at 11; Dkt. 61 at 8). Despite Defendant's insufficient *Vaughn* submission, the Court denies Plaintiff's request for an *in camera* review.

"Courts have broad discretion to decide whether *in camera* review is necessary." *Khatchadourian v. Def. Intel. Agency*, 453 F. Supp. 3d 54, 83 (D.D.C. 2020) (quotations and citation omitted); *see* 5 U.S.C. § 552(a)(4)(B) ("[T]he court shall determine the matter de novo, and *may* examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth[.]" (emphasis added)). But "the district court's inspection prerogative is not a substitute for the government's burden of proof, and should not be resorted to lightly."

*Halpern*, 181 F.3d at 295 (citation omitted).  On the renewed motion, Defendant was able to meet its burden regarding the withholdings applied under Exemption 7(C).  However, the information provided for the redactions made under Exemption 7(E) is still not sufficient for the Court to conduct its requisite inquiry, nor has Defendant met its burden under the FIA with respect to the information withheld pursuant to Exemption 5.

"Where, as here, an agency 'fails to provide a sufficiently detailed [*Vaugh* submission] to enable the district court to make a de novo determination of the agency's claims of exemption, the district court then has several options, including inspecting the documents in camera, requesting further affidavits, or allowing the plaintiff discovery.'" *Radar Online LLC v. Fed. Bureau of Investigation*, 692 F. Supp. 3d 318, 360 (S.D.N.Y. 2023).  As noted above, "[a] district court should not undertake in camera review of withheld documents as a substitute for requiring an agency's explanation of its claimed exemptions in accordance with Vaughn."  *Id.* at 360-61 (quoting *N.Y. Times Co.*, 529 F. Supp. 3d at 270).  Since *in camera* review should not be used as a substitute for the agency's burden, the Court concludes that *in camera* review is not warranted at this time.  *See Trea Senior Citizens League v. U.S. Dep't of State*, 923 F. Supp. 2d 55, 71 (D.D.C. 2013) ("[T]he Court concludes, in its discretion, that *in camera* inspection of the disputed documents is unnecessary at this time and would not serve the interests of judicial economy.").  Here, Defendant has had two opportunities to come forward with the information necessary for the Court to review whether it appropriately applied the withholdings under Exemption 7(E) and has failed to meet this threshold burden both times.  Defendant also failed to

demonstrate a reasonably foreseeable harm that would result from the disclosure of the content redacted pursuant to Exemption 5.

**<u>CONCLUSION</u>**

For the foregoing reasons Plaintiff's motion to expand the administrative record and compel production of Defendant's privilege log, (Dkt. 52), is granted in part and denied in part. In addition, Defendant's renewed motion for summary judgment (Dkt. 44) is granted in part and denied in part. A status conference to discuss the next steps in this litigation is hereby scheduled to take place on <u>Friday, April 11, 2025, at 10:00 a.m. in the United States Courthouse, Two Niagara Square, Buffalo, New York</u>. All parties and/or their counsel must appear in person at the status conference.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: March 20, 2025
        Rochester, New York

- 46 -