UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MATTHEW BOROWSKI

                              Plaintiff,                            23-CV-257

v.

U.S. CUSTOMS AND BORDER PROTECTION

                              Defendant.
_____

## SUPPLEMENTAL DECLARATION OF PATRICK A. HOWARD

I, Patrick A. Howard, hereby state as follows:

1. I am a Branch Chief within the Freedom of Information Act Division ("FOIA Division") at U.S. Customs and Border Protection ("CBP"), U.S. Department of Homeland Security ("DHS"). I have been a Branch Chief in the FOIA Division since February 8, 2015. In this capacity, I oversee a staff of Government Information Specialists involved in the processing of requests for records submitted to CBP pursuant to Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; the Privacy Act ("PA"), 5 U.S.C. § 552a; and other activities conducted pursuant to applicable records access provisions.

2. The statements I make in this declaration are based on my personal knowledge, which includes knowledge acquired through information furnished to me in the course of my official duties and CBP files that I personally reviewed in the course of my official duties.

3. I am familiar with the FOIA request submitted to CBP on December 22, 2022, by Plaintiff Matthew Borowski.

4. I make this supplemental declaration in support of the *Vaughn* Index being submitted to the Court in response to the Decision and Order, dated March 20, 2025 (Dkt. No. 65, the "Decision and Order"), and the text Order, dated July 25, 2025 (Dkt. No. 79, "Order").

5. In its Decision and Order, this Court found that Defendant's arguments for Exemption 7(E) in both its Motion for Partial Summary Judgment (Dkt. No. 19), and its Renewed Motion for Partial Summary Judgement (Dkt. No. 44), did not provide a sufficient level of specificity necessary for the Court to evaluate whether such withholdings were appropriately applied. In its Order, the Court granted Defendant the opportunity to submit supplemental information detailing whether Exemption 7(E) was properly applied to the withheld material disclosed to Plaintiff in response to his FOIA request. Accordingly, Defendant submits the attached *Vaughn* Index in response to the Decision and Order and Order.

1

6.  Exemptions 5, 6, and 7(C) are referenced within this *Vaughn* Index to provide context and consistency with previously filed *Vaughn* Indices (Dkt. Nos. 19-2 and 44-3).  However, these exemptions are not further addressed in this *Vaughn* Index as this Court is conducting an *in camera* review of the records that contain Exemption 5 (Bates 000019-000023), and this Court has already granted summary judgement in favor of the redactions and withholdings made pursuant to Exemptions 7(C) (noting that Exemption 7(C) is more protective of privacy than Exemption 6, so the Court only needed to consider whether Exemption 7(C) was properly invoked).

7.  FOIA Exemption 7(E) exempts from disclosure "records or information compiled for law enforcement purposes" that, if released "would disclose techniques and procedures for law enforcement investigations or prosecutions" or "would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  This exemption covers law enforcement "techniques and procedures" not generally known to the public, and it covers law enforcement "guidelines" if disclosure of those guidelines "could reasonably be expected to risk circumvention of the law."

8.  In order to provide a sufficient level of detail regarding the withheld information, the previously asserted Exemption 7(E) subcategories in the *Vaughn* Index to the Defendant's Renewed Motion for Summary Judgment (Dkt. No. 44-3) are not utilized in this *Vaughn* Index.  To do so would undermine the purpose of Exemption 7(E), and reveal the information that Exemption 7(E) is designed to protect.

9.  With respect to the four (4) documents at Bates pages 000001-000018, these documents all concern the NEXUS Program pass application and NEXUS Program pass renewal applications submitted by Plaintiff, and CBP's Trusted Traveler Program (TTP) Office's review of the respective applications.  These documents reflect law enforcement database queries conducted, the results of those queries, non-public law enforcement database identification numbers, internal CBP codes and coded designators of databases.  Release of this information could be used to access, navigate, or even alter law enforcement systems and databases, which could not only significantly compromise these systems and databases, but it could also facilitate the circumvention of border security laws.  FOIA Exemption 7(E) has also been applied to portions of information in these documents as it relates to CBP's techniques and procedures in assessing risks and determining whether an individual should be admitted to, or should continue to remain, in the NEXUS Program, which includes comments, analysis, and determinations made by CBP's TTP Office regarding Plaintiff's eligibility for a NEXUS Program.  This law enforcement sensitive information is not publicly known and release of this information could significantly compromise the integrity of this program as it could be anticipated that applicants and members would attempt to avoid the rigorous evaluation demanded by CBP's TTP.  This would result in individuals being granted this expedited processing at the United States border when they would otherwise be deemed unqualified, which would circumvent CBP's efforts to administer this low-risk traveler program and enforce border security laws.

10. The documents at Bates pages 000028-000032 include four (4) narratives reflecting CBP Officers' encounter with Plaintiff at primary and secondary inspections. These narratives summarize CBP Officers' interactions with Plaintiff on four different dates. FOIA Exemption 7(E) has been applied to only a small portion of the narratives. Specifically, the names of border inspection techniques used for screening and inspecting international travelers and their vehicles were redacted, and certain factors taken into consideration by the inspecting CBP Officers when deciding how to proceed with the inspection were also withheld. This information is generally not known to the public. Release of this information would be detrimental to CBP's mission in securing the United States border as it could be used by individuals attempting to circumvent or violate border security laws to alter patterns of behavior, predict CBP's investigative strategies, and adopt new methods or countermeasures to undermine the inspection process and CBP's law enforcement efforts.

11. The documents at Bates pages 000033-000199 consist of three (3) different types of incident logs. Specifically, Bates pages 000033-000043 include six (6) "Land Baggage Secondary Inspection" logs which document secondary inspections where Plaintiff's baggage and/or agricultural items were inspected. Bates pages 000044-000057 include incident logs that summarize secondary inspections of Plaintiff from seven (7) different dates. And Bates pages 000058- 0000199 include forty-five (45) incident logs that capture both the primary and secondary inspections of Plaintiff on various dates. All three types of incident logs contain information in a data entry style format with fields of data arranged by sections (*e.g.*, biographical information, travel document information, date, time and location of inspection, etc.).

12. FOIA Exemption 7(E) was applied to portions of information in these inspection logs that would reveal CBP procedures and techniques used for screening and inspecting international travelers during both primary and/or secondary inspections that is not generally known to the public. To reveal the scope and focus of certain law enforcement sensitive examinations and techniques, along with the findings of such examinations, would enable potential violators to design strategies to circumvent the examination procedures developed and employed by CBP in its mission to secure the border and enforce border security laws by allowing potential violators to better prepare themselves to evade certain CBP inspections and examinations.

13. Further, the names of specific law enforcement databases used, the methods used for conducting queries of the databases, and the results of such queries (such as checks against DHS and other federal agency records) are included in these records. These logs also contain internal CBP codes, non-public law enforcement database identification numbers, and certain coded designations. Release of this non-public database information, either individually or in combination, along with CBP codes and identifiers, poses a risk to the integrity of CBP systems by allowing a violator to more easily access, navigate, or even exploit the information contained therein. Also, release of such information would reveal the types of investigative data collected and analyzed by CBP as part of its mission in securing the United States border.

14. Some of the incident logs also contain the names of specific technologies or equipment used by CBP during border inspections. And when conducting inspections, certain factors are considered by CBP Officers when deciding how to proceed with the inspection, which may include particular conclusions and determinations made by the inspecting officers, which is not known to the public. Release of such information would enable violators to use countermeasures to avoid the specific technologies and/or equipment used by CBP, alter their behavior, and undermine the inspection process and CBP's law enforcement efforts.

15. I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 25th day of September, 2025.

*Patrick Howard*
_____
Patrick A. Howard
Branch Chief, FOIA Division
Privacy, FOIA and EEO Office
Office of the Commissioner