*Matthew Borowski v. U.S. Customs and Border Protection*
Case No. 23-CV-257

| *VAUGHN* INDEX ||||| 
|---|---|---|---|---|
| **Document Name and Description** | **Bates Page(s)** | **Exemptions** | **Document Disposition** | **Basis for Withholding** |
| This Trusted Traveler Program Record is pulled from the Global Enrollment System ("GES") and consists of eight (8) pages. This record summarizes the U.S. Customs and Border Protection (CBP or Agency) Trusted Traveler Program Office's review of Plaintiff's April 12, 2023 NEXUS renewal application which includes a review of Plaintiff's prior application and renewal history and CBP comments.<br><br>Included in this document is biographical information provided to CBP by Plaintiff when he applied to participate in the NEXUS Trusted Traveler Program. It also contains information on Plaintiff's passports, driver's licenses, and recent travel history. This document also includes comments made by CBP Officers as they evaluated Plaintiff's eligibility for admission to and continued participation in the Trusted Traveler Program. These comments include the CBP Officers' review of Plaintiff's information and their processing and analyzing of data received from law enforcement databases and sources, both within and outside CBP. | 000001-000008 | (b)(7)(E)<br><br>(b)(6), (b)(7)(C)-1; (b)(6), (b)(7)(C)-2;<br><br>Exemptions (b)(6) and (b)(7)(C) were also applied to this document and this Court has already ruled on these exemptions as discussed above. | Released in part. | GES documents are created and maintained by CBP for law enforcement purposes. The GES assists the Trusted Traveler Program Office in evaluating individuals for participation in expedited clearance programs for pre-approved, vetted, low-risk travelers upon entry to the United States.<br><br>FOIA Exemption (b)(7)(E) has been applied to portions of information in these records which contain internal CBP codes, queries conducted in law enforcement databases and the results of those queries, and non-public law enforcement database identification numbers. Release of such internal codes, non-public database information and query results could significantly compromise CBP systems.<br><br>FOIA Exemption (b)(7)(E) has also been applied to CBP's techniques and procedures related to the internal analytical processes utilized by CBP Officers as they assess risks and determine whether an individual should be admitted to or should continue to remain in the NEXUS Program. This also includes CBP Officers' comments, investigative conclusions and determinations compiled for assessing Plaintiff's eligibility for the NEXUS program and factors |

| | | | | |
|---|---|---|---|---|
| | | | | considered by CBP for membership in the NEXUS program that are not publicly known. Should these factors become known, it can be anticipated that applicants and members will attempt to conceal any derogatory information on their record or withhold certain information to avoid detection and thus enable them to avoid the type of rigorous evaluation demanded by the Trusted Traveler Programs. This could result in applicants receiving membership into the NEXUS program, which would grant them expedited processing while entering the United States and these unqualified individuals would then be in a position to circumvent and frustrate Agency application of border security laws. Thus, CBP foresees that a harm to the interests protected by (b)(7)(E) is reasonably expected to occur if this information is publicly disclosed. |
| This is a three (3) page CBP Risk Assessment Worksheet relating to Plaintiff's Initial NEXUS Enrollment in 2011, from the Global Enrollment System.<br><br>The Risk Assessment Worksheet documents the database queries and analyses performed by the Trusted Traveler Program Office when evaluating Plaintiff's application for initial enrollment in the NEXUS program. It includes a listing of non-public law enforcement databases queried by the CBP's Trusted Traveler Program Office, the results of those queries, and comments and analysis entered by a CBP Officer regarding Plaintiff's program eligibility. | 000009-000011 | (b)(7)(E)<br><br>(b)(6), (b)(7)(C)-2;<br><br>Exemptions (b)(6) and (b)(7)(C) were also applied to this document and this Court has already ruled on these exemptions as discussed above. | Released in part. | The Risk Assessment Worksheet is an integral component of the GES documents which are created and maintained by CBP for law enforcement purposes. The GES assists the Trusted Traveler Program Office in evaluating individuals for participation in expedited processing programs for pre-approved, vetted, low-risk travelers upon entry to the United States. The Risk Assessment Worksheet contains information about the results of background investigations of Program applicants and members.<br><br>FOIA Exemption (b)(7)(E) is applied to certain elements of information in the Risk Assessment Worksheet which are either coded designators of |

| | | | | |
|---|---|---|---|---|
| The databases queried are maintained by CBP and other law enforcement organizations. In the Risk Assessment Worksheet, the databases are identified by coded designations. The results of the queries are listed alongside the relevant database.<br><br>The Risk Assessment Worksheet also includes the CBP analyst's recommendation as to whether Plaintiff satisfied the criteria for participation in the NEXUS Program. | | | | databases utilized by CBP as it performs background verification reviews on NEXUS Program applicants and members, or the results of those reviews. This exemption is also applied to analyses conducted by CBP Officers which can appear in the record. Which databases CBP consults for specific applications are generally not known to the public, nor is the specific information considered by the Trusted Traveler Program Office when evaluating individuals for membership in the Trusted Traveler Programs. Disclosure of this Risk Assessment Worksheet would reveal specific information CBP considers when evaluating applicants for Trusted Traveler Program memberships. Release of this information could reasonably be expected to enable individuals to circumvent CBP's efforts to administer this low-risk traveler program and enforce border security laws. |
| This is a three (3) page CBP Risk Assessment Worksheet relating to Plaintiff's NEXUS renewal application in 2017, from the Global Enrollment System.<br><br>The Risk Assessment Worksheet documents the database queries and analyses performed by the Trusted Traveler Program Office when evaluating Plaintiff's application for renewal in the NEXUS program. It includes a listing of non-public law enforcement databases queried by the CBP's Trusted Traveler Program Office, the results of those queries, and comments and analysis entered by CBP Officers regarding Plaintiff's program eligibility. | 000012-000014 | (b)(7)(E)<br><br>(b)(6),(b)(7)(C)-2;<br><br>Exemptions (b)(6) and (b)(7)(C) were also applied to this document and this Court has already ruled on these exemptions as discussed above. | Released in part. | The Risk Assessment Worksheet is an integral component of the GES documents which are created and maintained by CBP for law enforcement purposes. The GES assists the Trusted Traveler Program Office in evaluating individuals for participation in expedited processing programs for pre-approved, vetted, low-risk travelers upon entry to the United States. The Risk Assessment Worksheet contains information about the results of background investigations of Trusted Traveler Program applicants and members.<br><br>FOIA Exemption (b)(7)(E) is applied to certain elements of information in the Risk Assessment Worksheet which are either coded designators of |

| | | | | |
|---|---|---|---|---|
| The databases queried are maintained by CBP and other law enforcement organizations. In the Risk Assessment Worksheet, the databases are identified by coded designations. The results of the queries are listed alongside the relevant database.<br><br>The Risk Assessment Worksheet also includes the CBP analyst's recommendation as to whether Plaintiff satisfied the criteria for continued participation in the NEXUS Program. | | | | databases utilized by CBP as it performs background verification reviews on NEXUS Program applicants and members, or the results of those reviews. This exemption is also applied to analyses conducted by CBP Officers which can appear in the record. Which databases CBP consults for specific renewal applications are generally not known to the public, nor is the specific information considered by the Trusted Traveler Program Office when evaluating individuals for renewed membership in the Trusted Traveler Programs. Disclosure of this Risk Assessment Worksheet would reveal specific information CBP considers when evaluating applicants for renewed memberships in the Trusted Traveler Programs. Release of this information could reasonably be expected to enable individuals to circumvent CBP's efforts to administer this low-risk traveler program and enforce border security laws. |
| This is a three (3) page CBP Risk Assessment Worksheet relating to Plaintiff's NEXUS renewal application in 2022, from the Global Enrollment System.<br><br>The Risk Assessment Worksheet documents the database queries and analyses performed by the Trusted Traveler Program Office when evaluating Plaintiff's application for renewal in the NEXUS program. It includes a listing of non-public law enforcement databases queried by the CBP's Trusted Traveler Program Office, the results of those queries, and comments and | 000015-000018 | (b)(7)(E)<br><br>(b)(6), (b)(7)(C)-2;<br><br>Exemptions (b)(6) and (b)(7)(C) were also applied to this document and this Court has already ruled on these exemptions as discussed above. | Released in part. | The Risk Assessment Worksheet is an integral component of the GES documents which are created and maintained by CBP for law enforcement purposes. The GES assists the Trusted Traveler Program Office in evaluating individuals for participation in expedited processing programs for pre-approved, vetted, low-risk travelers upon entry to the United States. The Risk Assessment Worksheet contains information about the results of background investigations of Program applicants and members. |

| | | | | |
|---|---|---|---|---|
| analysis entered by CBP Officers regarding Plaintiff's program eligibility.<br><br>The databases queried are maintained by CBP and other law enforcement organizations. In the Risk Assessment Worksheet, the databases are identified by coded designations. The results of the queries are listed alongside the relevant database.<br><br>The Risk Assessment Worksheet also includes the CBP analyst's recommendation as to whether Plaintiff satisfied the criteria for continued participation in the NEXUS Program. | | | | FOIA Exemption (b)(7)(E) is applied to certain elements of information in the Risk Assessment Worksheet which are either coded designators of databases utilized by CBP as it performs background verification reviews on NEXUS Program applicants and members, or the results of those reviews. This exemption is also applied to analyses conducted by CBP Officers which can appear in the record. Which databases CBP consults for specific renewal applications are generally not known to the public, nor is the specific information considered by the Trusted Traveler Program Office when evaluating individuals for renewed membership in the Trusted Traveler Programs. Disclosure of this Risk Assessment Worksheet would reveal specific information CBP considers when evaluating applicants for renewed memberships in the Trusted Traveler Programs. Release of this information could reasonably be expected to enable individuals to circumvent CBP's efforts to administer this low-risk traveler program and enforce border security laws. |
| Intra-Agency Emails, dated April 2, 2014, to April 22, 2014, from the Global Enrollment System. | 000019-000023 | (b)(7)(E)<br><br>(b)(5);<br><br>Exemption (b)(5) is not addressed in this Vaughn Index as per the Court order of July 25, 2025 (Dkt. No. 79) | Released in part. | Exemption (b)(7)(E) is applied to one non-public, intra-agency email address. |

| | | | | |
|---|---|---|---|---|
| | | | it is conducting an *in camera* review of these emails.<br><br>(b)(6), (b)(7)(C)-1;<br>(b)(6), (b)(7)(C)-2;<br>(b)(6), (b)(7)(C)-3;<br><br>Exemptions (b)(6) and (b)(7)(C) were also applied to this document and this Court has already ruled on these exemptions as discussed above. | | |
| Plaintiff's Virginia Criminal Court Order, from the Global Enrollment System. | 000024-000025 | Not applicable. | Released in full. | |
| Plaintiff's signed 2011 NEXUS Briefing, from the Global Enrollment System. | 000026 | Not applicable as only exemptions (b)(6) and (b)(7)(C) were applied and this Court has already ruled on these exemptions. | Released in part. | |
| Fax Cover Sheet, sent by Plaintiff, with Plaintiff's Virginia Criminal Court Order, from the Global Enrollment System. | 000027 | Not applicable. | Released in full. | |
| Narrative from Analytical Framework for Intelligence system, one (1) page in length, relating to Plaintiff's border inspection on March 19, 2013. | 000028 | (b)(7)(E)<br><br>(b)(6), (b)(7)(C)-1;<br><br>Exemptions (b)(6) and (b)(7)(C) were also applied to this | Released in part. | Exemption (b)(7)(E) is applied as the basis to redact two pieces of information from this narrative that would reveal CBP techniques for screening and inspecting international travelers and their vehicles. Such a release would enable potential violators to design strategies to circumvent the inspection techniques developed |

| | | | | |
|---|---|---|---|---|
| This narrative relates to the primary and secondary inspections conducted of Plaintiff when he presented himself for admission into the United States using his Trusted Traveler Program NEXUS pass. The narrative documents CBP Officers interaction with Plaintiff during the inspection processes, including a reminder to him that committing NEXUS violations could result in revocation of NEXUS status. This narrative also includes the names of two border inspection techniques, which are not known to the public. | | document and this Court has already ruled on these exemptions as discussed above. | | and employed by CBP in its mission to secure the border by allowing potential violators to better prepare themselves to evade these techniques used to enforce border security law. |
| This is a one (1) page narrative from Analytical Framework for Intelligence system, relating to Plaintiff s border inspection on April 18, 2013.<br><br>This narrative relates to the outbound inspection conducted of Plaintiff when he was traveling from the United States to Canada. The narrative documents CBP Officers interaction with Plaintiff during the secondary inspection process in which he continually questioned CBP's border search authority. Upon completion of the secondary inspection, the narrative notes that Plaintiff was allowed to enter the United States. This narrative also includes the name of one border inspection technique which is not known to the public. | 000029 | (b)(7)(E)<br><br>(b)(6), (b)(7)(C)-1;<br><br>Exemptions (b)(6) and (b)(7)(C) were also applied to this document and this Court has already ruled on these exemptions as discussed above. | Released in part. | Only one redaction was made to this narrative under Exemption (b)(7)(E) and release of this information would reveal the name of a CBP inspection technique used for screening and inspecting international travelers and their vehicles. Such a release would enable potential violators to design strategies to circumvent the examination procedures developed and employed by CBP by allowing potential violators to better prepare themselves to evade these techniques. Such circumvention would pose a significant risk to CBP and its mission to enforce border security laws. |
| This is a one (1) page narrative from the Analytical Framework for Intelligence system, relating to Plaintiff s border inspection on November 3, 2014. | 000030 | (b)(7)(E)<br><br>(b)(6), (b)(7)(C)-1;<br><br>Exemptions (b)(6) and (b)(7)(C) were | Released in part. | Only one redaction was made to this narrative under Exemption (b)(7)(E) and release of this information would reveal the name of a CBP inspection technique used for screening and inspecting international travelers and their vehicles. Such a release would enable potential |

| | | | | |
|---|---|---|---|---|
| This narrative relates to the secondary inspection conducted of Plaintiff's vehicle when presenting himself for admission into the United States. The narrative documents Plaintiff's conduct as CBP Officers attempted to search his vehicle, while further noting that once the vehicle search was completed, Plaintiff was allowed to enter the United States. This narrative also contains the name of one inspection examination and technique which is not known to the public. | | also applied to this document and this Court has already ruled on these exemptions as discussed above. | | violators to design and employ strategies to evade these examination procedures and inspection techniques which would undermine CBP's mission in enforcing border security laws. |
| This is a two (2) page narrative from Analytical Framework for Intelligence system, relating to Plaintiff's border inspection on December 14, 2013.

This narrative relates to CBP Officers' interaction with Plaintiff while conducting outbound operations on this date, in which Plaintiff's "argumentative" and "provoking" behavior was noted. The narrative documents that Plaintiff's NEXUS card was "detained and forwarded to the NEXUS enrollment center for review," and that Plaintiff departed the CBP inspection site.

The narrative includes border inspection techniques and procedures used during the operation on this date, and CBP Officer comments regarding Plaintiff's behavior and law enforcement risks presented. | 000031-000032 | (b)(7)(E)

(b)(6), (b)(7)(C)-1; (b)(6), (b)(7)(C)-3;

Exemptions (b)(6) and (b)(7)(C) were also applied to this document and this Court has already ruled on these exemptions as discussed above. | Released in part. | Exemption (b)(7)(E) was applied to portions of information in this narrative, including factors taken into consideration by the inspecting officers when deciding how to proceed with the inspection, and techniques used in assessing any law enforcement risks associated with Plaintiff. This exemption was also applied to certain conclusions or determinations made by the CBP Officers during the inspection process. Releasing such information could enable potential violators to develop strategies to circumvent these inspection procedures which would undermine CBP's mission in enforcing border security laws. |

| | | | | |
|---|---|---|---|---|
| These records are pulled from the Analytical Framework for Intelligence system and consist of six (6) "Land Baggage Secondary Inspection" logs that are two (2) pages in length, which capture secondary inspections where Plaintiff's baggage, and/or agricultural items were inspected.<br><br>The type of search, summary of the inspection, and the results of the inspection are captured in these logs, including whether the inspection resulted in a seizure, fine, or other enforcement action. For example, one record captures Plaintiff's attempt to enter prohibited citrus fruit into the United States, and his ultimate abandonment of the fruit.<br><br>Each record contains information in a data entry style format with fields of data arranged by sections. The sections include basic biographical information, crossing information including date, time, and location of CBP inspection, travel documents utilized by Plaintiff to enter the United States, (*e.g.*, passport or NEXUS pass), referral and vehicle information to include license plate information, miscellaneous information, inspection results, and remarks/comments of the inspecting CBP Officer(s).<br><br>The logs also capture internal CBP codes and identifiers, queries of non-public law enforcement databases, and the results of those queries, including queries conducted to assess border security risks presented by Plaintiff. | 000033-000043 | (b)(7)(E)<br><br>(b)(6), (b)(7)(C)-1;<br><br>Exemptions (b)(6) and (b)(7)(C) were also applied to this document and this Court has already ruled on these exemptions as discussed above. | Released in part. | FOIA Exemption (b)(7)(E) has been applied to portions of information in these records that would reveal CBP procedures and techniques used for screening and inspecting international travelers that is not generally known to the public. This includes CBP border inspection examinations and inspection procedures, along with the scope and focus of such examinations and techniques.<br>For example, one particular type of inspection is a baggage inspection in which the CBP Officer records the specific type of examination being performed (*e.g.*, bag examination, person examination, baggage X-ray), the findings of the inspection, and whether the inspection was positive or negative. Such a release would enable potential violators to design strategies to circumvent the examination procedures developed and employed by CBP in its mission to secure the border and enforce border security laws by allowing potential violators to better prepare themselves to evade and exploit certain CBP inspections and examinations. This type of information is not available to the public.<br><br>Further, the names of specific law enforcement databases used, the methods used for conducting queries of the databases, and the results of such queries (such as checks against DHS and other federal agency records) are included in these records. They also contain internal CBP codes and non-public law enforcement database identification numbers. Release of non-public database information, either individually or in combination, and CBP codes and identifiers poses |

| | | | | |
|---|---|---|---|---|
| Different border inspection techniques and procedures utilized during these inspections are also captured within these logs, including factors considered by CBP in how to proceed with its inspection.<br><br>Comments of the inspecting CBP Officers (both primary and secondary), determinations and conclusions made during both the primary inspection and secondary inspection are also annotated on the printouts. | | | | a risk to the integrity of CBP systems by allowing a violator to more easily navigate the system and exploit the information contained therein. Also, release of such information would reveal the types of investigative data collected and analyzed by CBP as part of its mission. This poses a risk to CBP's mission in securing the United States border.<br><br>Additionally, when conducting inspections, certain factors are considered by CBP Officers when deciding how to proceed with the inspection, which may include the conclusions and determinations made by the inspecting officers, which is not known to the public. The names of specific technologies or equipment used by CBP during border inspections also cannot be released as it would enable violators to use countermeasures to avoid the specific technologies and/or equipment. This would be detrimental to CBP's border security mission. |
| These records are pulled from the Analytical Framework for Intelligence system and consist of seven (7) incident logs that are two (2) pages in length, which document Plaintiff's secondary inspections from various dates.<br><br>Each incident log captures details relating to certain significant incidents or events relevant to the inspection process that may have occurred during the secondary inspection. Each record contains information in a data-entry style format with fields of data arranged by different sections. The sections include | 000044-000057 | (b)(7)(E)<br><br>(b)(6), (b)(7)(C)-1<br><br>Exemptions (b)(6) and (b)(7)(C) were also applied to this document and this Court has already ruled on these exemptions as discussed above. | | FOIA Exemption (b)(7)(E) has been applied to portions of information in these records that would reveal CBP procedures and techniques used for screening and inspecting international travelers that is not generally known to the public.<br><br>This includes certain sensitive law enforcement information that CBP documents and records for risk assessment purposes while processing travelers during secondary inspection. Release of such information would reveal the types of investigative data collected and analyzed by CBP and it would allow potential violators to alter |

| | | | | |
|---|---|---|---|---|
| basic biographical information on Plaintiff, addresses, information relating to the conveyance Plaintiff used to travel to the port of entry site, dates, times, location of port of entry site, and Plaintiff's travel documents. None of the information contained in the above sections has been redacted.<br><br>These incident logs also include a section on "Incident Details" along with any comments, conclusions, or determinations made by the inspecting CBP Officers during secondary inspection.<br><br>These incident logs also contain certain coded designations, and the names of different law enforcement techniques and examinations used by CBP during its border inspections, including those used to assess whether there was any enforcement risk associated with Plaintiff when he was seeking admission into the United States on the date of the record.<br><br>It also includes certain methods for processing and querying law enforcement databases utilized during the inspection processes and the results of such queries. | | | | their conduct and elude CBP inspection processes. Such a release would enable potential violators to design strategies to circumvent the examination procedures developed and employed by CBP in its mission to secure the border and enforce border security laws by allowing potential violators to better prepare themselves to evade and exploit certain CBP inspections and examinations. This type of information is not available to the public.<br><br>Further, the methods used for conducting queries of law enforcement databases, and the results of such queries (such as checks against DHS and other federal agency records) are included in these records. They also contain internal CBP codes and non-public law enforcement database identification numbers. Release of non-public database information, either individually or in combination, and CBP codes and identifiers poses a risk to the integrity of CBP systems by allowing a violator to more easily navigate the system and exploit the information contained therein. |
| These records are pulled from the Analytical Framework for Intelligence system and consist of forty-five (45) incident logs that are two (2), three (3), or four (4) pages in length, which summarize both the primary and secondary inspections of Plaintiff on various dates. | 000058-000199 | (b)(7)(E)<br><br>(b)(6), (b)(7)(C)-1;<br>(b)(6), (b)(7)(C)-2;<br>(b)(6), (b)(7)(C)-3; | | These logs capture details from both primary and secondary inspections. FOIA Exemption (b)(7)(E) has been applied to portions of information in these records that would reveal CBP procedures and techniques used for screening and inspecting international travelers during both primary and/or secondary that is not |

11

| | | | |
|---|---|---|---|
| Each record contains information in a data entry style format with fields of data arranged by sections. The sections include basic biographical information, travel document information, crossing information including date, time, and location of port of entry site, package/baggage information, referral information such as type of referral and reason, miscellaneous information, vehicle referral and vehicle inspection information, agriculture information, referral reasons for secondary inspection, admissibility data, and remarks/comments by the inspecting CBP Officers.<br><br>The logs also capture internal CBP codes and identifiers, names of non-public CBP databases, queries of non-public law enforcement databases, and the results of those queries, including queries conducted to assess border security risks presented by Plaintiff.<br><br>Different border inspection techniques and procedures utilized during these specific inspections of Plaintiff are also captured on the logs, including factors considered by CBP in how to proceed with its inspection.<br><br>These logs also include comments, determinations, and conclusions made by inspecting CBP Officers during the primary and secondary inspections. | | Exemptions (b)(6) and (b)(7)(C) were also applied to this document and this Court has already ruled on these exemptions as discussed above. | | generally known to the public. This includes CBP border inspection examinations and inspection procedures, along with the scope and focus of such examinations and techniques.<br><br>The names of specific law enforcement databases used, the methods used for conducting queries of the databases, and the results of such queries (such as checks against DHS and other federal agency records) are included in these records. They also contain internal CBP codes and non-public law enforcement database identification numbers. Release of non-public database information, either individually or in combination, and CBP codes and identifiers poses a risk to the integrity of CBP systems by allowing a violator to more easily navigate the system and exploit the information contained therein. Also, release of such information would reveal the types of investigative data collected and analyzed by CBP as part of its mission. This poses a risk to CBP's mission in securing the United States border.<br><br>Additionally, when conducting primary or secondary inspections, certain factors are considered by CBP Officers when deciding how to proceed with the inspection, which may include the conclusions and determinations made by the inspecting officers, which is not known to the public. And the names of specific technologies or equipment used by CBP during border inspections also cannot be released as it |

| | | | | would enable violators to use countermeasures to avoid the specific technologies and/or equipment. This would be detrimental to CBP's border security mission. |
|---|---|---|---|---|
| Spreadsheet depicting Plaintiffs border crossings on and between March 2, 1999, and April 13, 2023, fifty-two (52) pages in length. | 000200-000251 | Not applicable. | Released in full. | Spreadsheet depicting Plaintiffs border crossings on and between March 2, 1999, and April 13, 2023, fifty-two (52) pages in length. |