UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MATTHEW BOROWSKI

                              Plaintiff,                      1:23-CV-257-EAW

v.

U.S. CUSTOMS AND BORDER PROTECTION

                              Defendant.

---

## **DECLARATION OF MATTHEW S. DAVIES**

I, Matthew S. Davies, pursuant to 28 U.S.C., § 1746, and based upon my personal knowledge acquired through information made known to me, or reviewed by me, in the course of my official duties, hereby make the following declaration with respect to the above-captioned matter:

1. I am currently the Executive Director, Office of Admissibility and Passenger Programs (APP), Office of Field Operations (OFO), U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). I have been in this position since November 4, 2020, first in a temporary acting role, which became permanent on January 3, 2021. During my 23 years of Federal service, I have held various leadership positions, including Acting Director, Field Operations for the Baltimore Field Office; Director for the Electronic System for Travel Authorization Program Management Office in Washington, D.C.; Area Port Director in Chicago, Illinois; Acting Executive Director for Acquisition Policy and Oversight in Washington, D.C.; Port Director in Dublin, Ireland; and Acting Division Chief- Mission Support at San Diego Border Patrol Sector.

1

2. In my current position, I am responsible for overseeing and coordinating OFO programs and policy related to the admission and processing of international visitors and travelers to the United States at over 328 ports of entry. I oversee more than 170 employees across nine Director level program offices, including the Trusted Traveler Programs (TTP) office.

3. In my role as Executive Director, APP, I am responsible for executing the mission of CBP and, in particular, OFO. The CBP mission includes the enforcement of the customs, immigration, and agriculture laws of the United States and hundreds of other laws on behalf of numerous federal agencies. OFO is the primary CBP office responsible for securing the U.S. border at ports of entry (POEs) and preclearance locations outside the United States, while facilitating lawful international trade and travel. Among other things, OFO is responsible for coordinating and conducting the enforcement activities of CBP at POEs to deter and prevent terrorists and criminals from entering the United States. TTPs are a key part of CBP's law enforcement mission and are designed specifically to facilitate lawful travel by low-risk individuals. I am responsible for overseeing the establishment of policy to ensure that individuals who apply for participation in one of CBP's TTPs meet all appropriate qualifications for the program and do not pose a risk to the United States.

4. I am familiar with the amended complaint filed in *Borowski v. U.S. Customs and Border Protection*, No. 1:23-CV-257 (W.D.N.Y.), and Plaintiff's claims contained therein.

5. The purpose of this declaration is to provide background on Plaintiff's 2023 application to CBP's NEXUS program, and the information that CBP considered in making its March 2025 decision denying Plaintiff's application.

## The NEXUS Program

6. The NEXUS program is a voluntary membership program operated by CBP that provides pre-approved, low-risk travelers with facilitated entry processing into the United States through dedicated travel lanes (unless the traveler has items to declare, there is a specific enforcement issue to address, or the traveler is chosen for selective or random secondary inspection, which involves further processing).

7. Approval for NEXUS membership is contingent on CBP's vetting of a traveler's application against various government databases, a fingerprint law enforcement check, and a personal interview with a CBP Officer.

8. CBP uses the interview and information contained in its law enforcement databases to inform its low-risk determination, which includes information relating to previous encounters with the applicant. Further, CBP's assessment of an individual's eligibility includes an analysis of whether the applicant will be compliant with the laws enforced by CBP and the directions provided by CBP officers.

9. When an individual is granted membership into the NEXUS program, CBP conducts recurrent vetting to ensure that the member remains low risk and is eligible to continue using NEXUS processing to enter the United States.

10. Additionally, while CBP Officers are generally able to spend less time inspecting NEXUS members, relative to travelers who do not have NEXUS membership, NEXUS members are still subject to inspection when seeking entry into the United States and they must comply with all inspection requirements, including answering all routine inspectional questions, as well as any others asked of the inspecting CBP Officer.

**Plaintiff's NEXUS Membership History**

11.     As previously asserted in the Declaration of Michael J. Millich, filed May 26, 2023 (Dkt. No. 7), Plaintiff submitted his initial application for NEXUS membership on or about November 13, 2011. His application was approved, and he was enrolled in the NEXUS Program on or about January 3, 2012.

12.     Following a CBP inspection in December 2013, Plaintiff's membership was revoked on December 16, 2013. That inspection is described in great detail in the Memorandum of Law in Support of Motion to Dismiss filed herewith, but briefly, on December 14, 2013, during an outbound inspection, Plaintiff was immediately confrontational and uncooperative with the inspecting Officer in challenging CBP's border inspection authority.

13.     Plaintiff sought review by the CBP TTP Ombudsman, who granted discretionary consideration, and his NEXUS membership was restored on or about April 25, 2014.

14.     Plaintiff applied to renew his membership on or about August 25, 2017. His application was approved, effective on or about September 17, 2017.

15.     Plaintiff again applied to have his NEXUS membership renewed on or about May 26, 2022. After conducting a risk assessment, CBP denied this application on December 20, 2022, determining that Plaintiff did not meet the program eligibility requirements. In connection with the risk assessment, the Agency took into consideration the following encounters with Plaintiff which outline a pattern of non-compliance with border inspections and confrontational behavior with CBP Officers:

- On March 19, 2013, during a primary canine inspection, Plaintiff became argumentative with the CBP Canine Officer about the examination. Plaintiff was referred to secondary inspection to continue the inspection. When Plaintiff arrived at the secondary inspection

area, a CBP Officer instructed Plaintiff to park, but Plaintiff became more argumentative and irate about the secondary inspection while also refusing to get off his cell phone despite being asked three times to do so. At that time, additional officer assistance was requested and when additional officers arrived, Plaintiff finally became complaint and exited his vehicle, so that the secondary inspection could be completed. While Plaintiff was in the secure secondary waiting area, a supervisor reviewed the NEXUS program and NEXUS lane procedures with Plaintiff and reminded him that all NEXUS pass holders are still subject to CBP inspection when seeking to enter the United States. (See attached March 19, 2023 Incident Report; also filed at Dkt. No. 45, CBP 049-056, noting that for purposes of this Declaration, Defendant cites to Dkt. No. 45 in accordance with the Court's Decision and Order, dated March 20, 2025, fn. 3.)

- On April 18, 2013, during an outbound inspection, a CBP Officer asked Plaintiff, "where are you coming from?" and Plaintiff replied, "I'm a United States citizen." The CBP Officer repeated the question and Plaintiff replied, "a meeting." The CBP Officer asked Plaintiff to open his trunk and Plaintiff responded by asking, "Under what authority?" Plaintiff was then asked to proceed to the secondary inspection area where CBP's border authorities would be explained to him. Plaintiff began to pull over his vehicle, but stopped, blocking all lanes of traffic and began yelling out his window that he wished to withdraw his application for admission. Only after several verbal commands to pull into the secondary inspection area, did Plaintiff comply. When in the secondary inspection area, Plaintiff continually stated that he was a U.S. citizen and questioned CBP's border inspection authority. Plaintiff was then told several times to exit his vehicle so that the inspection could be completed, but it was not until the Officers opened his vehicle door

5

and guided him from the vehicle that he complied. During the rest of the inspection process, Plaintiff repeatedly questioned CBP's border inspection authority. (See attached April 18, 2023 Incident Report; also filed at Dkt. No. 45, CBP 046-048.)

- On December 14, 2013 (referenced above in paragraph 12), during an outbound inspection, Plaintiff was immediately confrontational and uncooperative with the inspecting Officer in challenging CBP's border inspection authority and refusing to produce his vehicle registration. Throughout the inspection process, he was loud, argumentative and provoking, insisting that he was a lawyer, while attempting to recite his knowledge and interpretation of federal law. It was a result of Plaintiff's confrontational nature during this encounter, and the prior cited encounters, that Plaintiff's NEXUS membership was revoked (albeit after Plaintiff asked for further review of the revocation, CBP granted discretionary authority and restored his membership on or about April 25, 2014). (See attached December 14, 2013 Incident Report; also filed at Dkt. No. 45, CBP 042-045.)

- On November 3, 2014, Plaintiff was referred to secondary inspection. While Plaintiff's vehicle was being inspected outside, Plaintiff exited the secure secondary inspection facility because he wanted to watch his vehicle be inspected. A CBP Officer repeatedly asked Plaintiff to return the secure secondary area, but Plaintiff refused to comply. It was only when the CBP Officer placed his hand on Plaintiff's arm and escorted him back into the facility that Plaintiff complied. (See attached November 3, 2014 Incident Report; also filed at Dkt. No. 45, CBP 031-036.)

- On May 22, 2016, Plaintiff and his family were encountered at primary inspection, and upon being asked their citizenship, Plaintiff responded that they were all U.S. citizens. The inspecting officer then attempted to obtain a verbal declaration from Plaintiff's wife who was seated in the passenger seat, but Plaintiff raised his voice and stated again that they were all U.S. citizens. The CBP Officer advised Plaintiff that he needed a verbal declaration from all adults in the vehicle, including his wife, to which Plaintiff raised his voice and argued that he could speak for everyone. Plaintiff stated that he was an immigration lawyer and he can answer for his wife as well. The CBP Officer once more asked Plaintiff's wife for her citizenship and she finally confirmed that she was a citizen of the United States. After finally obtaining a verbal declaration of citizenship from Plaintiff's wife the CBP Officer continued to ask further routine inspectional questions, but Plaintiff continued to be argumentative and confrontational in response to each question, and repeatedly reminded the CBP Officer that he was an immigration lawyer. Plaintiff further stated to the CBP Officer that because they were NEXUS pass holders that they did not need to answer a lot of questions, to which the CBP Officer reminded Plaintiff that all travelers crossing the border are subject to inspection. Plaintiff became visibly irate, informing the CBP Officer that he was wrong and should go talk to a supervisor. Throughout the entire inspection process, Plaintiff was uncooperative and argumentative. (See attached May, 22, 2016 Incident Report; also filed at Dkt. No. 45, CBP 029-030.)

16.     CBP's decision to deny Plaintiff's renewal application was relayed to Plaintiff via two letters dated December 20, 2022—one letter revoking his NEXUS membership, and the other denying the renewal of his membership. The letter revoking Plaintiff's NEXUS membership advised him that if he believed that the decision was based on incomplete or inaccurate information, he may request reconsideration.

17.     Plaintiff submitted a request for reconsideration on December 20, 2022.

18.     Upon review, the Ombudsman sustained the denial on April 12, 2023 and the decision was communicated to Mr. Borowski via a letter dated April 12, 2023. This decision was based on the totality of noncompliance with the inspection process on numerous occasions including a recent inspection that occurred on April 5, 2023.

- On April 5, 2023, during primary inspection, Plaintiff was asked routine inspection questions, but responded that he would only state that he has nothing to declare. A CBP Officer requested that Plaintiff step out of his vehicle and the Officer asked if Plaintiff had any weapons on his person or in the vehicle. In response, Plaintiff asked, "what is a weapon?" Plaintiff was then directed to secondary inspection, but stated that he did not want anyone to touch or move his vehicle. His vehicle was, in fact, inspected and once that inspection was completed, Plaintiff requested to speak with a supervisor. Plaintiff informed the supervisor that he will not answer questions he felt that a United States citizen does not need to answer such as "where are you going?" Plaintiff claimed that the inspecting Officer did not need to know such information. The supervisor advised him that it is within CBP's authority to conduct a border inspection of all travelers seeking to enter the United States. (See attached April 5, 2023 Inspection Report; also filed at Dkt. No. 45, CBP 005-011.)

8

**Plaintiff's April 2023 Re-Application to the NEXUS Program**

19.    Plaintiff submitted a re-application to the NEXUS program on April 12, 2023.

20.    After conducting a risk assessment, CBP denied this application on March 26, 2025 as it was determined that Plaintiff did not meet the program eligibility requirements based on a history of noncompliant behavior during multiple prior CBP border inspections. In the course of the risk assessment, CBP took into consideration the aforementioned encounters with Plaintiff (set forth at paragraphs 15 and 18), as well as the following encounters:

- On June 8, 2023, during primary inspection, the CBP Officer asked Plaintiff what was the purpose of his travel. Plaintiff responded by stating that he is American and did not need to answer any of the inspecting Officers questions. The inspecting CBP Officer referred Plaintiff to secondary inspection, and as the Officer was explaining how to proceed to the secondary inspection area, Plaintiff began to drive away. The inspecting Officer started shouting at Plaintiff that the CBP Officer in secondary needs to indicate that it is okay to proceed to the secondary inspection area, so the Officer can stop any tractor trailers for his safety. In response, Plaintiff shouted in a hostile tone that he knows how to drive and doesn't need to be instructed. At this time, Plaintiff was ordered to stop his vehicle, turn it off, and hand over his vehicle keys. Plaintiff refused to do so. Officer assistance was requested. Several Officers arrived at the inspection lane and ordered Plaintiff out of his vehicle, but Plaintiff still refused to comply. At this point, the vehicle door was opened, and Plaintiff eventually removed his seat belt. Hold was taken of Plaintiff's arm and he was removed from the vehicle. Plaintiff was then asked to stand with his arms out in front of him so the Officers could conduct a patdown for officer safety. Initially, Plaintiff complied, but he then twisted away from the Officers, stating that they were to get their

hands off of him. Plaintiff was then handcuffed and escorted to secondary inspection for further inspection. (See attached June 8, 2023 Incident Reports.)

- On August 1, 2023, Plaintiff presented himself for admission into the United States, but refused to answer routine inspection questions at primary inspection. Plaintiff complained to the inspecting Officer that a forty-minute wait to enter the United States was too long, and Plaintiff stated that he was an immigration lawyer, and could ask whatever questions he wanted of the inspecting Officer. After his primary inspection was completed and he was released as a U.S. citizen, Plaintiff instead voluntarily drove to the secondary areas and sought out a supervisor to complain about the forty-minute wait and claimed that CBP illegally confiscated his NEXUS pass. (See attached August 1, 2023 Incident Report.)

21. Accordingly, CBP's decision to deny Plaintiff's re-application was relayed to Plaintiff via a letter dated March 26, 2025, and it also advised him that if he believed that the decision was based on incomplete or inaccurate information, he may request reconsideration.

22. To date, Plaintiff has not sought reconsideration of the Agency's March 26, 2025 decision to deny his re-application.

23. I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 16th day of October, 2025.

_____
Matthew S. Davies
Executive Director
Admissibility and Passenger Programs
Office of Field Operations
U.S. Customs and Border Protection