UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MATTHEW BOROWSKI

                                    Plaintiff,                              1:23-CV-257-EAW

v.

U.S. CUSTOMS AND BORDER PROTECTION

                              Defendant.

_____


### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS


MICHAEL DIGIACOMO
United States Attorney
MICHAEL S. CERRONE
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5851
michael.cerrone@usdoj.gov

i

## INTRODUCTION

This Memorandum of Law is submitted on behalf of Defendant U.S. Customs and Border Protection ("CBP") in support of its motion to dismiss Plaintiff Matthew Borowski's ("Borowski") Administrative Procedure Act ("APA") claim on the grounds of mootness.

## STATEMENT OF FACTS

### Background

Borowski, an attorney representing himself in this action, is a U.S. citizen who practices immigration law in the Buffalo area. Dkt. # 9, ¶ 6. He claims that he has engaged in political speech criticizing the federal government's immigration policies. Dkt. # 9, ¶ 6. As part of his law practice, Borowski represents non-U.S. citizens in immigration court and federal court. Dkt. # 9, ¶ 6. He is a licensed attorney in New York and Canada. Dkt. # 1, ¶ 76. Borowski alleges that he has clean criminal and driving records and has not violated customs laws or regulations. Dkt. # 9, ¶ 76.

Borowski alleges that he regularly commutes between his home in Canada and his law office in Cheektowaga, New York. Dkt. # 9, ¶¶ 7, 9. Because of this, Borowski obtained membership in the NEXUS program to expedite his border crossings by using dedicated lanes at ports of entry. Dkt. # 9, ¶¶ 7, 9. Borowski applied for NEXUS program membership on or about November 13, 2011, and CBP approved his application on or about January 3, 2012. Dkt. # 19-1, ¶¶ 9-10; Declaration of Matthew S. Davies, dated October 16, 2025 ("Davies Dec."), ¶ 11.

Borowski alleges that he used his NEXUS card "the vast majority of the time" to cross the border since he was approved for the NEXUS program in approximately 2012 and began his law practice in the Buffalo area in 2013. Dkt. # 9, ¶¶ 8-9. Borowski claims that he relied

on his NEXUS membership to routinely travel across the border for over ten years.  Dkt. # 9, ¶¶ 8-9.

**The NEXUS Program**

The NEXUS program is jointly administered by the United States and Canada and allows pre-approved, low-risk travelers expedited processing when traveling between the two countries.  Dkt. # 19-1, ¶ 1; Davies Dec., ¶ 6.  CBP and the Canada Border Services Agency must both approve applicants for the program.  Dkt. # 19-1, ¶ 2.  CBP reviews an individual's application and checks it against various government databases, and applicants who meet the eligibility criteria can schedule an interview at a CBP Enrollment Center.  Dkt. # 19-1, ¶¶ 3-4; Davies Dec., ¶¶ 7-8.  Approval for NEXUS membership is contingent on CBP's vetting of the application, fingerprint submission, and the interview results.  Dkt. # 19-1, ¶ 5; Davies Dec., ¶¶ 7-8. NEXUS membership is valid for five years, after which a member must apply for renewal, which includes checks of government databases, vetting, and may require an interview.  Dkt. # 19-1, ¶¶ 6-7.  CBP also vets program members on a recurring basis by checking law enforcement databases and may revoke an individual's enrollment before the membership period has concluded.  Dkt. # 19-1, ¶ 9; Davies Dec., ¶ 9.  Additionally, while CBP Officers are generally able to spend less time inspecting NEXUS members, relative to travelers who do not have NEXUS membership, NEXUS members are still subject to inspection when seeking entry into the United States and they must comply with all inspection requirements, including answering all routine inspectional questions, as well as any others asked of the inspecting CBP Officer.  Davies Dec., ¶ 10.

**The December 14, 2013 Incident**

On December 14, 2013, Borowski and his wife had an encounter at the border with CBP Officer Vincent Mordino ("Officer Mordino"). Borowski v. Mordino, No. 116CV999LJVMJR, 2020 WL 6084941, at *2 (W.D.N.Y. July 21, 2020), report and recommendation adopted, No. 16-CV-00999-LJV-MJR, 2020 WL 6083425 (W.D.N.Y. Oct. 15, 2020); Davies Dec., ¶ 12. That evening, Officer Mordino "and other CPB officers were conducting outbound border inspections of individuals and vehicles traveling from the United States to Canada at the Peace Bridge Port of Entry in Buffalo, New York." Id. "The purpose of outbound inspections is to intercept the flow of narcotics, illicit currency, and individuals with outstanding warrants or possible ties to terrorism, from the United States to Canada." Id. "The weather on the evening of December 14, 2013 was snowy, windy and dark, with poor visibility." Id.

Borowski's wife, Carianne Borowski ("Mrs. Borowski"), "a citizen of the United States who resides in Canada, traveled to the United States on December 14, 2013 to shop and go out to eat." Id. "She was accompanied by her husband," Borowski, "and their three minor children." Id. "Following dinner, the family intended to return to their residence in Canada." Id. "Borowski was driving a 2007 Subaru Impreza with an Ontario license plate, and Mrs. Borowski was seated in the front passenger seat." Id. "The three children, including a five-month-old infant boy strapped into a car seat, were seated in the backseat of the vehicle." Id. "As the family drove toward the Peace Bride Port of Entry, the infant began crying." Id. "Mrs. Borowski asked Mr. Borowski to pull the car over into the parking lot of the Peace Bridge Duty Free store, so that she could attend to the baby before they crossed the bridge into Canada." Id. "As they approached the entrance to the Peace Bridge Duty Free

3

store, Mr. Borowski observed cones blocking the entrance to the parking lot." Id.  "Officer Mordino was standing on the side of the roadway" and he "motioned for Mr. Borowski to pull over the vehicle over for inspection, which he did." Id.

"Officer Mordino approached the front driver's side of the Impreza and asked Mr. Borowski for the vehicle's registration." Id. at * 3.  "In response, Mr. Borowski asked Officer Mordino to identify himself and to explain why he stopped the vehicle." Id.  "Mr. Borowski also questioned whether Officer Mordino had probable cause for the stop, since the family was exiting the United States rather than seeking permission to enter." Id.  It was taking some time for Mr. Borowski to locate the registration, and traffic was beginning to line-up behind his vehicle." Id.  "Thus, Officer Mordino instructed Mr. Borowski to pull off the roadway to a separate area where secondary inspections are conducted." Id.  "Mr. Borowski drove to the secondary inspection area and Officer Mordino followed on foot." Id.  "At no time during the initial stop did Mrs. Borowski inform Officer Mordino that she wanted to exit the vehicle to attend to any of the minor children, including the infant." Id.

"When the Impreza arrived at the secondary inspection area, Officer Mordino approached the front driver's side of vehicle and again asked Mr. Borowski for the vehicle's registration." Id.  "At that time, Mrs. Borowski abruptly exited the front passenger door of the vehicle and walked toward the rear passenger door." Id.  "Prior to exiting the vehicle, Mrs. Borowski did not ask for permission to exit the vehicle nor did she inform Officer Mordino that she intended to exit the vehicle before doing so." Id.  "Further, Mr. Borowski did not indicate that his wife wanted to exit the vehicle." Id.  "Upon seeing Mrs. Borowski exit the vehicle, Officer Mordino instructed her to get back inside." Id.  "Specifically, he looked directly at Mrs. Borowski and yelled several times 'get back in the car' while repeatedly

pointing his flashlight directly at her while motioning toward the front seat." Id. "Mrs. Borowski did not return to the front passenger seat as instructed, but instead continued toward the rear passenger side, eventually opening the rear passenger door of the vehicle and reaching her upper body and arms into the back seat." Id. "In response, Officer Mordino walked from the front driver's side of the vehicle to the rear passenger side of the vehicle, while continuing to point his flashlight at Mrs. Borowski and commanding her to get back into the vehicle." Id. "She did not comply, but instead continued to reach into the vehicle." Id. "Upon arriving at the rear passenger door, Officer Mordino reached inside the vehicle and tapped Mrs. Borowski on the shoulder." Id. "He again told her to get back into the vehicle, and again she did not comply." Id. "Officer Mordino then placed his hand on Mrs. Borowski's shoulder to guide her away from the backseat." Id. "Mrs. Borowski pulled away from him." Id. "In response, Officer Mordino grasped her left shoulder and right arm and pulled her upper body fully outside of the vehicle." Id. "She never fell to the ground, and she remained in a standing position." Id. "Once fully outside, Mrs. Borowski immediately stood erect and placed her hands on the exterior of the vehicle." Id.

"Officer Mordino then secured Mrs. Borowski's hands, and another officer handcuffed her." Id. at * 4. "Mrs. Borowski did not resist the handcuffing, and there was nothing unusual in the manner she was handcuffed." Id. "Mrs. Borowski was then placed in a CPB vehicle and taken to a secondary inspection building." Id. "She was issued a violation notice for failing to obey Officer Mordino's instructions and was permitted to leave the Peace Bridge Port of Entry to return home that evening." Id.

CBP revoked Borowski's membership in the NEXUS program on December 16, 2013, following the December 14, 2013 incident. Dkt. # 19-1, ¶ 11; Davies Dec. ¶ 12. At Borowski's

request, CBP's Ombudsman reviewed the revocation and granted "discretionary consideration," and Borowski's membership was restored on or about April 25, 2014.  Dkt. # 19-1, ¶ 12; Davies Dec. ¶ 13.

**Borowski v. Mordino, 1:16-CV-999 LJV (MJR)**

Mrs. Borowski commenced a federal lawsuit arising out of the December 14, 2013 incident.  Borowski, 2020 WL 6084941, at *2.  She asserted tort claims under the FTCA as well as constitutional claims under the First, Fourth, and Fifth Amendments to the U.S. Constitution.  Id.  All of Mrs. Borowski's claims were dismissed on October 19, 2017, except her "Fourth Amendment claim of excessive force against Mordino in his individual capacity." Id.

On July 21, 2020, Magistrate Judge Michael J. Roemer issued a Report and Recommendation which recommended granting the Government's motion for summary judgment dismissing the remaining Fourth Amendment claim against Officer Mordino.  Id. The Magistrate Judge found that Officer Mordino's actions "were objectively reasonable under the circumstances, and that no reasonable juror could conclude otherwise."  Id. at 7.

The Report and Recommendation was adopted by the district court on October 15, 2020.  Borowski v. Mordino, No. 16-CV-00999-LJV-MJR, 2020 WL 6083425 (W.D.N.Y. Oct. 15, 2020).

**NEXUS Renewal Application in 2022**

Borowski applied to renew his NEXUS membership on May 26, 2022.  Dkt. # 9, ¶ 26; Davies Dec., ¶ 15.  By letters dated December 20, 2022, CBP revoked Borowski's NEXUS membership and denied the renewal of his membership.  Davies Dec., ¶¶ 15-16, Exhibit 1. CBP revoked Borowski's NEXUS membership because of a pattern of non-compliance with

border inspections and confrontational behavior with CBP Officers. Davies Dec., ¶ 15. Those incidents include the December 14, 2013 incident described above as well as the following:

- On March 19, 2013, during a primary canine inspection, Borowski became argumentative with the CBP Canine Officer about the examination. Borowski was referred to secondary inspection to continue the inspection. When Borowski arrived at the secondary inspection area, a CBP Officer instructed Borowski to park, but Borowski became more argumentative and irate about the secondary inspection while also refusing to get off his cell phone despite being asked three times to do so. At that time, additional officer assistance was requested and when additional officers arrived, Borowski finally became compliant and exited his vehicle, so that the secondary inspection could be completed. While Borowski was in the secure secondary waiting area, a supervisor reviewed the NEXUS program and NEXUS lane procedures with Borowski and reminded him that all NEXUS pass holders are still subject to CBP inspection when seeking to enter the United States.

- On April 18, 2013, during an outbound inspection, a CBP Officer asked Borowski, "where are you coming from?" and Borowski replied, "I'm a United States Citizen." The CBP Officer repeated the question and Borowski replied, "a meeting." The CBP Officer asked Borowski to open his trunk and Borowski responded by asking, "Under what authority?" Borowski was then asked to proceed to the secondary inspection area where CBP's border authorities would be explained to him. Borowski began to pull over his vehicle, but stopped, blocking all lanes of traffic and began yelling out his window that he wished to

withdraw his application for admission. Only after several verbal commands to pull into the secondary inspection area, did Borowski comply. When in the secondary inspection area, Borowski continually stated that he was a U.S. citizen and questioned CBP's border inspection authority. Borowski was then told several times to exit his vehicle so that the inspection could be completed, but it was not until the Officers opened his vehicle door and guided him from the vehicle that he complied. During the rest of the inspection process, Borowski repeatedly questioned CBP's border inspection authority.

• On November 3, 2014, Borowski was referred to secondary inspection. While Borowski's vehicle was being inspected outside, Borowski exited the secure secondary inspection facility because he wanted to watch his vehicle be inspected. A CBP Officer repeatedly asked Borowski to return to the secure secondary area, but Borowski refused to comply. It was only when the CBP Officer placed his hand on Borowski's arm and escorted him back into the facility that Borowski complied.

• On May 22, 2016, Borowski and his family were encountered at primary inspection, and upon being asked their citizenship, Borowski responded that they were all U.S. citizens. The inspecting officer then attempted to obtain a verbal declaration from Borowski's wife who was seated in the passenger seat, but Borowski raised his voice and stated again that they were all U.S. citizens. The CBP Officer advised Borowski that he needed a verbal declaration from all adults in the vehicle, including his wife, to which Borowski raised his voice and argued that he could speak for everyone. Borowski stated that he was an

immigration lawyer and he can answer for his wife as well. The CBP Officer once more asked Borowski's wife for her citizenship and she finally confirmed that she was a citizen of the United States. After finally obtaining a verbal declaration of citizenship from Borowski's wife the CBP Officer continued to ask further routine inspectional questions, but Borowski continued to be argumentative and confrontational in response to each question and repeatedly reminded the CBP Officer that he was an immigration lawyer. Borowski further stated to the CBP Officer that because they were NEXUS pass holders that they did not need to answer a lot of questions, to which the CBP Officer reminded Borowski that all travelers crossing the border are subject to inspection. Borowski became visibly irate, informing the CBP Officer that he was wrong and should go talk to a supervisor. Throughout the entire inspection process, Borowski was uncooperative and argumentative.

Davies Dec., ¶ 15, Exhibits 2-6.

The letter revoking Borowski's NEXUS membership advised him that if he believed that the decision was based on incomplete or inaccurate information, he may request reconsideration. Davies Dec., ¶ 16, Exhibit 1. On December 20, 2022, Borowski submitted to CBP a "Reconsideration Request." Dkt. # 9, ¶ 28; Davies Dec., ¶ 17. On April 12, 2023, CBP's Ombudsman affirmed the denial of Plaintiff's reconsideration request to reinstate his NEXUS membership "based on the totality of noncompliance with the inspection process on numerous occasions," including an incident on April 5, 2023. Dkt. # 9, ¶ 41; Davies Dec., ¶ 18, Exhibit 7. On April 5, 2023, during primary inspection, Borowski was asked routine inspection questions, but responded that he would only state that he has nothing to declare.

Davies Dec., ¶ 18, Exhibit 8.  A CBP Officer requested that Borowski step out of his vehicle and the Officer asked if Borowski had any weapons on his person or in the vehicle.  Id.  In response, Borowski asked, "what is a weapon?"  Id.  Borowski was then directed to secondary inspection, but stated that he did not want anyone to touch or move his vehicle.  Id.  His vehicle was, in fact, inspected and once that inspection was completed, Borowski requested to speak with a supervisor.  Id.  Borowski informed the supervisor that he will not answer questions he felt that a United States citizen does not need to answer such as "where are you going?"  Id.  Borowski claimed that the inspecting Officer did not need to know such information.  Id.  The supervisor advised him that it is within CBP's authority to conduct a border inspection of all travelers seeking to enter the United States.  Id.

**Plaintiff's April 2023 New Application to the NEXUS Program**

Borowski submitted a new application to the NEXUS program on April 12, 2023 – the same day that CBP's Ombudsman affirmed the denial of his reconsideration request.  Davies Dec., ¶ 19.  After conducting a risk assessment, CBP denied this application on March 26, 2025 as it was determined that Borowski did not meet the program eligibility requirements.  Davies Dec., ¶ 20, Exhibit 9.  In connection with the risk assessment, CBP took into consideration the aforementioned encounters with Borowski, as well as the following encounters:

> • On June 8, 2023, during primary inspection, the CBP Officer asked Borowski what was the purpose of his travel.  Borowski responded by stating that he is American and did not need to answer any of the inspecting Officer's questions.  The inspecting CBP Officer referred Borowski to secondary inspection, and as the Officer was explaining how to proceed to the secondary

inspection area, Borowski began to drive away. The inspecting Officer started shouting at Borowski that the CBP Officer in secondary needs to indicate that it is okay to proceed to the secondary inspection area, so the Officer can stop any tractor trailers for his safety. In response, Borowski shouted in a hostile tone that he knows how to drive and doesn't need to be instructed. At this time, Borowski was ordered to stop his vehicle, turn it off, and hand over his vehicle keys. Borowski refused to do so. Officer assistance was requested. Several Officers arrived at the inspection lane and ordered Borowski out of his vehicle, but Borowski still refused to comply. At this point, the vehicle door was opened, and Borowski eventually removed his seat belt. Hold was taken of Borowski's arm and he was removed from the vehicle. Borowski was then asked to stand with his arms out in front of him so the Officers could conduct a pat down for officer safety. Initially, Borowski complied, but he then twisted away from the Officers, stating that they were to get their hands off of him. Borowski was then handcuffed and escorted to secondary inspection for further inspection.

• On August 1, 2023, Borowski presented himself for admission into the United States, but refused to answer routine inspection questions at primary inspection. Borowski complained to the inspecting Officer that a forty-minute wait to enter the United States was too long, and Borowski stated that he was an immigration lawyer, and could ask whatever questions he wanted of the inspecting Officer. After his primary inspection was completed and he was released as a U.S. citizen, Borowski instead voluntarily drove to the secondary

areas and sought out a supervisor to complain about the forty-minute wait and

claimed that CBP illegally confiscated his NEXUS pass.

Davies Dec., ¶ 20, Exhibits 10-11.  CBP's decision to deny Borowski's new application was

relayed to Borowski via a letter dated March 25, 2025, and it also advised him that if he

believed that the decision was based on incomplete or inaccurate information, he may request

reconsideration.    Davies Dec., ¶ 21, Exhibit 9.    To date, Borowski has not sought

reconsideration of the Agency's March 26, 2025 decision to deny his new application.  Davies

Dec., ¶ 22.

## PROCEDURAL HISTORY

Borowski commenced this action on March 22, 2023.  Dkt. # 1.  He filed an amended

complaint on June 20, 2023.  Dkt. # 9.  In his amended complaint, Borowski asserts a claim

under the APA alleging that CBP's decision to deny his 2022 NEXUS renewal application

was "arbitrary and capricious and/or in violation of the law, as a retaliatory measure taken

by CBP."  Dkt. # 9, ¶ 79.  Borowski also alleges a claim under the Freedom of Information

Act ("FOIA") arising out of his December 22, 2022 FOIA request.  Dkt. # 9, ¶¶ 80-83.

Additionally, Borowski asserted claims for false arrest, false imprisonment, assault and

battery, unlawful seizure, intentional infliction of emotional distress, and claims under the

First, Fourth, and Fifth Amendments to the U.S. Constitution.  Dkt. # 9, ¶¶ 84-100.

On July 21, 2023, CBP moved to dismiss the amended complaint.  Dkt. # 13.  On

February 21, 2024, the Court (Wolford, C.J.): (i) sustained the APA claim holding that CBP's

"published factors listed in the Federal Register Notice and on the NEXUS eligibility website

provide law to apply and meaningful standards against which to judge the agency's exercise

of discretion," Dkt. # 29, p. 18; (ii) dismissed Borowski's FTCA claims for failure to exhaust

administrative remedies, Dkt. # 29, p. 20; and (iii) dismissed Borowski's constitutional claims as CBP may not be held liable on <u>Bivens</u> theories, Dkt. # 29, p. 21.  Thus, following Chief Judge Wolford's February 21, 2024 Decision and Order, only Borowski's APA and FOIA claims remain in the case.

On October 16, 2023, CBP moved for summary judgment on the FOIA claim.  Dkt. # 19.  On May 10, 2024, the Court denied CBP's motion without prejudice.  Dkt. # 37.

On July 9, 2024, CBP renewed its summary judgment motion on the FOIA claim in order to address the deficiencies cited by the Court in its May 10, 2024 Decision and Order. Dkt. # 44.

On March 20, 2025, the Court issued its Decision and Order on CBP's second motion for summary judgment on the FOIA claim.  Dkt. # 65.  This Decision and Order also addressed Borowski's motions concerning his APA claim: his motion to expand the administrative record because "he argues that Defendant did not produce all the documents and information that was considered when Defendant denied his NEXUS application," Dkt. # 65, p. 4, and his motion arguing that documents in the administrative record should be unredacted.  <u>Id.</u>  The Court denied Borowski's motion to expand the administrative record. Dkt. # 65, pp. 7-9.  With regard to redactions in the administrative record, the Court held that CBP established that certain documents were properly redacted on the basis of the deliberative process privilege.  Dkt. # 64, pp. 10-11.  The Court, however, held that CBP failed to prove that the law enforcement privilege applies and that "Defendant must either produce additional information establishing that the law enforcement privilege is properly asserted for the redacted content in the Amended Administrative Record or produce these records in an unredacted format."  Dkt. # 65, pp. 12-13.  The Court also held that CBP did not show why

personally identifiable information should be redacted from the administrative record and concluded that "[a]bsent an agreement from the parties, the Defendant must produce the Amended Administrative Record with the personal identifying information or seek a protective order for such information." Dkt. # 65, pp. 13-14. The Court granted CBP's summary judgment motion with respect to FOIA Exemptions 6 and 7(C) but denied the motion with respect to FOIA Exemptions 5 and 7(E). Dkt. # 65, p. 35.

In a July 25, 2025 Text Order, the Court directed that (1) CBP may file a motion to dismiss the APA claim on or before September 25, 2025; (2) regarding the FOIA claim, CBP may submit to this Court for *in camera* review, on or before August 25, 2025, the five pages of intra-agency emails withheld pursuant to Exemption 5 and a supplemental declaration explaining the harm that would result from the production of these records; (3) on or before September 25, 2025, CBP may submit supplemental information detailing whether Exemption 7(E) was properly applied to the withheld material; and (4) any response to the supplemental submission from Borowski is due by October 16, 2025. Dkt. # 79.

CBP submitted the requested materials to the Court on August 25, 2025 for *in camera* review. On September 4, 2025, the Court extended the time for CBP to make the motion to dismiss the APA claim to October 17, 2025. Dkt. # 81. CBP filed its supplemental summary judgment motion concerning FOIA Exemption 7(E) on September 25, 2025. Dkt. # 82. The Court extended the time for CBP to make the motion to dismiss the APA claim to October 24, 2025. Dkt. # 84.

## ARGUMENT

## POINT I

## THE COURT LACKS JURISDICTION OVER THE APA CLAIM

**A.    Standard of Review on a Rule 12(b)(1) Motion**

A plaintiff bears the burden of establishing this Court's subject matter jurisdiction. Luckett v. Bure, 290 F.3d 493, 496- 497 (2d Cir. 2002). While "a motion to dismiss for want of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is reviewed under the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)," [Pennacchio ex rel. Old World Brewing Company, Inc. v. Powers, No. 05-CV-0985, 2007 WL 446355 (E.D.N.Y. Feb. 5, 2007)], "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Financial Services Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).

"In resolving the question of jurisdiction, the … Court can refer to evidence outside the pleadings ...." Luckett, 290 F.3d at 496-497. Affidavits and other materials may be considered to resolve jurisdictional questions. Alliance For Environmental Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.8 (2d Cir. 2006). However, the consideration of such materials does not convert the motion to one for summary judgment. Id. A motion directed to the Court's subject matter jurisdiction may be heard at any time. Fed. R. Civ. P. 12(h)(3).

**B.    Governing Law Concerning the APA**

15

"Section 706(2) of the APA gives a reviewing court authority to 'hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" <u>Farm Sanctuary v. United States Dep't of Agric.</u>, 664 F. Supp. 3d 334, 363 (W.D.N.Y. 2023) (Wolford, C.J.) (<u>quoting</u> 5 U.S.C. § 706(2)(A)).  "In an APA case, the court relies on the administrative record for the material facts to determine if the agency's decision exceeds the agency's statutory authority or is arbitrary and capricious or an abuse of discretion."  <u>Farm Sanctuary</u>, 664 F. Supp. 3d at 347–48 (citations and internal quotation marks omitted).

## C.    Governing Law Concerning Mootness

"Article III, § 2 of the United States Constitution limits this Court's subject matter jurisdiction to matters presenting an actual case or controversy."  <u>Mulkey v. Niagara Cnty. Sheriff</u>, 720 F. Supp. 3d 237, 241–42 (W.D.N.Y. 2024) (Wolford, C.J.) (<u>citing</u> <u>Blackwelder v. Safnauer</u>, 866 F.2d 548, 550 (2d Cir. 1989) ("Mootness is a jurisdictional matter relating to the Article III requirement that federal courts hear only 'cases' or 'controversies.' ") (<u>quoting</u> <u>Preiser v. Newkirk</u>, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)).  "If the issues presented by the case are no longer live or the parties lack a legally cognizable interest in the outcome, the case is moot, thereby depriving the court of jurisdiction to hear it." <u>Mulkey</u>, 720 F. Supp. 3d at 241–42 (W.D.N.Y. 2024) (citations and internal quotation marks omitted). "To sustain jurisdiction, a dispute must not only be alive when filed, but throughout its pendency."  <u>Doe v. McDonald</u>, 128 F.4th 379, 385 (2d Cir. 2025); <u>ABC, Inc. v. Stewart</u>, 360 F.3d 90, 97 (2d Cir. 2004).  "This means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." <u>Mulkey</u>, 720 F. Supp. 3d at 242 (<u>quoting</u> <u>Spencer</u>

v. Kemna, 523 U.S. 1, 7 (1998) and Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990) (internal quotation marks omitted).  "Once a case is moot, federal courts lack subject matter jurisdiction over it."  Meng v. United States Citizenship & Immigr. Servs., 597 F. Supp. 3d 552, 553–54 (E.D.N.Y. 2022) (quoting Fox v. Bd. of Trustees of the State Univ. of New York, 42 F.3d 135, 140 n.2 (2d Cir. 1994) (internal quotation marks omitted).

Subsequent administrative action by a federal agency can moot an APA challenge to an agency's initial action. In Dine Citizens Against Ruining our Env't v. Klein, the plaintiff Navajo Nation leased a portion of its land in New Mexico for mining.  747 F. Supp. 2d 1234, 1240 (D. Colo. 2010).  "Because the original lease pre-dated the National Environmental Policy Act ("NEPA"), the Navajo Mine evaded meaningful environmental review for much of its early existence."  Id. at 1240.  In 1985, the lessor "applied for a permit to continue surface coal mining operations at the Navajo Mine."  Id.  "In connection with its review of [the lessor's] permit application, the Office of Surface Mining ("OSM") conducted an Environmental Assessment … which resulted in a finding that [the lessor's] proposal … would have no significant impact on the quality of the human environment."  Id. at 1240-1241.  The permit was for a term of five years under the Surface Mining Control and Reclamation Act ("SMCRA"), but the lessor "could, as a matter of right subject to certain limitations, apply for successive five-year renewals with respect to areas within the boundaries of its existing permit."  Id. at 1241.  OSM approved the lessor's 2004 five-year renewal application and determined that "its decision to approve the renewal application was categorically excluded from NEPA's procedural requirements."  Id.  Among other things, the plaintiff challenged OSM's approval of the 2004 permit under the APA arguing that the government violated NEPA and the APA by issuing the 2004 permit "without complying with certain NEPA

procedural requirements or satisfying NEPA's public notice and participation requirements." Id. at 1242.  The Court held that the plaintiff's challenge to the 2004 permit was moot because, since the filing of the lawsuit, "the 2004 Permit Renewal has been superseded by a statutorily required 2009 Permit Renewal."  Id. at 1246.  The Court reasoned that "[a]lthough Plaintiffs assert that OSM failed to cure the complained of defects in its issuance of the 2009 Permit Renewal, the controversy relating to the 2004 Permit Renewal is no longer live.  An injunction limiting mining activities pursuant to the 2004 Permit Renewal would be meaningless and a declaratory judgment would be a constitutionally impermissible advisory opinion."  Id. at 1246-1247; see also Morrison v. Noem, No. 1:24-CV-01765 (TNM), 2025 WL 2651247, at *3 (D.D.C. Sept. 16, 2025) (finding case moot where plaintiff challenged the revocation of his Global Entry status where the government subsequently reinstated his status after plaintiff filed a new application).

**D.    Discussion**

Here, Borowski challenges (i) CBP's December 20, 2022 revocation of his NEXUS membership and the denial of the renewal of his membership, and (ii) CBP's April 12, 2023 affirmance of the denial of his reconsideration request.  Dkt. # 9, ¶ 79.  As discussed above, Borowski submitted a new application to the NEXUS program on April 12, 2023 – the same day that CBP's Ombudsman affirmed the denial of his reconsideration request.  That new application was denied by CBP on March 26, 2025 based on Borowski's pattern of non-compliance with border inspections and confrontational behavior with CBP Officers, including two incidents that occurred (on June 8, 2023 and August 1, 2023) after his new application on April 12, 2023.  Thus, since Borowski filed his amended complaint on June 20, 2023, CBP has issued a new decision denying him NEXUS membership based, in part,

on two additional confrontational encounters with CBP Officers.  Like in <u>Dine Citizens</u>, "the controversy relating to the" first final agency action "is no longer live," <u>id.</u> at 1246-1247, because of the existence of a second final agency action.  <u>Mulkey</u>, 720 F. Supp. 3d at 241–42 (a case is moot "[i]f the issues presented by the case are no longer live.") (citations and internal quotation marks omitted).   Therefore, even if the Court were to find that CBP's first decision was arbitrary and capricious, such a decision would constitute "a constitutionally impermissible advisory opinion," <u>id.</u> at 1246-1247, because CBP subsequently rendered a new denial of Borowski's NEXUS membership based on new incidents that occurred after the initial denial.  <u>Doe</u>, 128 F.4th at 385 ("To sustain jurisdiction, a dispute must not only be alive when filed, but throughout its pendency.").  Accordingly, the Court should find that it lacks subject matter jurisdiction over Borowski's APA claim on the grounds of mootness.

Moreover, as stated above, the APA requires a "reviewing court" to "hold unlawful and set aside agency action, findings, and conclusions found to be--(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  Thus, "[i]n the usual case, when an agency violates its obligations under the APA, we will vacate a judgment and remand to the agency to conduct further proceedings."  <u>Guertin v. United States</u>, 743 F.3d 382, 388 (2d Cir. 2014) (<u>citing</u> <u>Ward v. Brown</u>, 22 F.3d 516, 522 (2d Cir.1994)).  Accordingly, if Borowski is successful on his APA claim, the most likely result would be a (i) vacatur of (a) the December 20, 2022 revocation of his NEXUS membership and the denial of the renewal of his membership, and (b) CBP's April 12, 2023 affirmance of the denial of his reconsideration request, and (ii) a remand for further proceedings on his request for renewal of his NEXUS membership.  <u>See</u> <u>Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.</u>, 690 F. Supp. 3d 322, 353 (S.D.N.Y. 2023) ("Vacatur and remand has long

been held to be the appropriate remedy when, as here, an agency acts contrary to law or when agency action is found to be arbitrary and capricious.") (citations and internal quotation marks omitted); <u>McLean v. Morgan</u>, No. 20-2145-JWB, 2020 WL 5094683, at *7 (D. Kan. Aug. 28, 2020) (finding that denial of Global Entry application was arbitrary and capricious under the APA but "[t]he court expresses no opinion on the outcome of the matter on remand."). Borowski, however, has already availed himself of this exact remedy in every practical sense when he voluntarily filed a new application for NEXUS membership on April 12, 2023. Following Borowski's new April 12, 2023 application, CBP completed a new, independent assessment of Borowski's NEXUS eligibility and issued its decision on March 26, 2025. By filing a new application, Borowski afforded himself of the only appropriate relief available should the Court find that CBP's actions were arbitrary and capricious with respect to the first final agency action. Thus, Borowski's APA claim should be dismissed as moot, as there is no further relief that can be granted.

## <u>CONCLUSION</u>

For the foregoing reasons, CBP's motion to dismiss should be granted.

DATED: Buffalo, New York, October 24, 2025

MICHAEL DIGIACOMO
United States Attorney


BY:    s/MICHAEL S. CERRONE
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5851
michael.cerrone@usdoj.gov