UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MATTHEW BOROWSKI

                           Plaintiff,                        23-CV-257

v.

U.S. CUSTOMS AND BORDER PROTECTION

                           Defendant.

---

## <u>SUPPLEMENTAL DECLARATION OF PATRICK A. HOWARD</u>

I, Patrick A. Howard, hereby state as follows:

1. I am a Branch Chief within the Freedom of Information Act Division ("FOIA Division") at U.S. Customs and Border Protection ("CBP"), U.S. Department of Homeland Security ("DHS"). I have been a Branch Chief in the FOIA Division since February 8, 2015. In this capacity, I oversee a staff of Government Information Specialists involved in the processing of requests for records submitted to CBP pursuant to Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; the Privacy Act ("PA"), 5 U.S.C. § 552a; and other activities conducted pursuant to applicable records access provisions.

2. The statements I make in this declaration are based on my personal knowledge, which includes knowledge acquired through information furnished to me in the course of my official duties and CBP files that I personally reviewed in the course of my official duties.

3. I am familiar with the FOIA request submitted to CBP on December 22, 2022, by Plaintiff Matthew Borowski.

4. I make this supplemental declaration in response to the Decision and Order of the Court dated March 20, 2025 (Dkt. No. 65, the "Decision and Order"), and the Order of the Court dated July 25, 2025 (Dkt. No. 79, "Order").

5. Specifically, the Decision and Order held that while CBP "has provided sufficient information and context to demonstrate that the content of the intra-agency emails may be withheld under Exemption 5, the agency still has not met its burden to demonstrate that withholding that content complies with the [FOIA Improvement Act]." (Opinion and Order at 35).

6. Further, the Order stated that CBP "may submit to this Court for *in camera* review, on or before August 25, 2025, the five pages of intra-agency emails withheld pursuant to Exemption

1

5 and a supplemental declaration explaining the harm that would result from the production of these records." (Dkt. No.79).

7.    In light of the holding in the Decision and Order, and after subsequent agency review, CBP determined to voluntarily release additional portions of the intra-agency emails on pages 000020-000021 to the Plaintiff on August 22, 2025.[1]  The additional information released to Plaintiff concerned how Plaintiff could initiate a request for reconsideration of the Agency's denial of his NEXUS application and CBP's receipt of that request.

8.    A true copy of the intra-agency emails (pages 00019-000023) is attached hereto for the Court's *in camera* review.  The redactions are outlined in either a red or green box[2] and the Court can view the specific exemption applied to the redacted content by scrolling over the marked red or green box.[3]

9.    As stated in my earlier declarations, the intra-agency emails constitute internal predecisional deliberations and recommendations of CBP employees pertaining to Plaintiff's NEXUS eligibility.  These employees specifically are an Ombudsman for CBP's Trusted Traveler Programs; two (2) Border Security managers in the Boston and Buffalo Field Offices, respectively; an Assistant Port Director within the Port of Buffalo; and a Supervisory CBP Officer.  The emails were exchanged for the purpose of assisting, and considered as part of, the Ombudsman's decision ultimately approving the reinstatement of Plaintiff's membership in the NEXUS program on April 25, 2014.

10.    The NEXUS program is a joint United States and Canada program that allows members traveling between the United States and Canada to take advantage of facilitated entry processing through dedicated commuter lanes at select land border ports of entry.  Applicants who are granted NEXUS membership are considered low-risk travelers, and they will receive the benefit of an expedited inspection process when making future entries into the United States.  As such, applicants must be robustly vetted because they will be subject to less scrutiny during future inspections.

11.    Disclosure of the intra-agency emails would harm CBP's deliberative process because it could lead to a less rigorous vetting process.  Specifically, in the course of evaluating an applicant's eligibility, CBP employees need to be able to consider all pertinent information and give their full and honest assessment as to whether an applicant is a low-risk traveler.  Disclosing these intra-agency emails would harm future discussions by discouraging CBP employees from openly sharing their opinions and recommendations.  If employees believe their internal deliberations could be made public, they may withhold valuable insights or temper their evaluations, ultimately undermining the quality of the deliberations.  This may especially be the case where employees may disagree as to whether an applicant is eligible for NEXUS

---

[1] While information was only un-redacted on pages 000020 and 000021, for purposes of continuity all five pages of these intra-agency emails were re-released to Plaintiff on August 25, 2025.

[2] The difference in color between the outlined boxes merely indicates redactions made by two different CBP FOIA Specialists.

[3] In addition to being exempt under (b)(5), these five pages of records also contain information that is further exempt from disclosure under Exemptions (b)(6) and (b)(7)(C) and in the Decision and Order this Court has already held that the personal information that was redacted pursuant to Exemption (b)(7)(C) was appropriate.

membership.  Additionally, if employees constrain their deliberations due to concerns over public disclosure, this would undermine the reliability of the vetting process which is to ensure that membership is only extended to eligible low-risk travelers.  This would also erode the integrity of the NEXUS program and affect CBP's ability to carry out its mission in securing the United States border.

12.    Further, disclosure of the withheld information would cause public confusion.  Because internal discussions, recommendations, and preliminary analyses may differ from CBP's ultimate decision, applicants may mistakenly interpret predecisional communications as CBP's final decision.  Moreover, applicants may mistakenly believe that they were granted or denied NEXUS membership when in fact that was not CBP's ultimate decision.

13.    The withheld information includes the opinions and underlying rationale of CBP employees, which were shared exclusively for internal deliberative purposes.  Disclosure of this information would be harmful as the release of such predecisional exchanges could create the appearance that NEXUS eligibility is based solely on the set of criteria contained in these intra-agency communications.  While specific factors are considered during the application process, each applicant's unique background also requires the exercise of discretion in the final decision-making process.  Thus, disclosure of this information may create public misunderstanding by suggesting that CBP only considers a fixed or uniform set of eligibility factors when, in fact, determinations are made based on the specific circumstances of each application.

14.  I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 25th day of August, 2025.


*Patrick Howard*
_____
Patrick A. Howard
Branch Chief, FOIA Division
Privacy, FOIA, and EEO Office
Office of the Commissioner

3