UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MATTHEW BOROWSKI,

                    Plaintiff,                            **DECISION AND ORDER**

          v.
                                                         1:23-CV-00257 EAW

U.S. CUSTOMS AND BORDER
PROTECTION,

                    Defendant.

---

## <u>INTRODUCTION</u>

Plaintiff Matthew Borowski ("Plaintiff") brings this action against defendant U.S. Customs and Border Protection ("Defendant" or "CBP") asserting claims pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. (Dkt. 9).[1] Currently pending before the Court are two motions: (1) Defendant's renewed motion to dismiss Plaintiff's APA claim (Dkt. 86); and (2) Defendant's second-renewed motion for summary judgment on Plaintiff's FOIA claim (Dkt. 82). For the following reasons, Defendant's renewed motion to dismiss the APA claim (Dkt. 86) is denied, and Defendant's second-renewed motion for partial summary judgment (Dkt. 82) is granted.

---

[1]    On February 21, 2024, the Court issued a Decision and Order dismissing Plaintiff's Federal Tort Claims Act and constitutional claims. (Dkt. 29).

## BACKGROUND

The Court presumes the parties' familiarity with the factual and procedural background of this case. Facts relevant to the pending motions are briefly set forth below.[2]

Plaintiff filed a FOIA request with Defendant after his membership in the expedited border processing program NEXUS was revoked in December 2022. (Dkt. 44-2 at ¶¶ 2, 16, 28). Plaintiff alleges that Defendant improperly withheld records and wrongfully redacted information in its FOIA response. (Dkt. 9 at ¶¶ 81-83). Defendant moved for summary judgment on the FOIA claim (Dkt. 19), which the Court denied but permitted Defendant to address the identified deficiencies in a renewed summary judgment motion. (Dkt. 37). The Court granted the renewed motion in part and denied it in part, holding that Defendant did not meet its burden related to material withheld pursuant to FOIA's Exemption 5 and Exemption 7(E), and set a status conference. (Dkt. 65).

At the status conference, the parties agreed to meet and confer on the next steps in this action. (Dkt. 69). The parties filed a joint submission in which they proposed Defendant file a renewed motion to dismiss the APA claim and requested the Court conduct an in-camera review of the portions of Defendant's FOIA response that were redacted and withheld pursuant to Exemption 5 and Exemption 7(E). (Dkt. 78). The Court granted the

---

[2]    The factual background is taken from Defendant's Statement of Material Facts as to which there is No Genuine Issue to be Tried ("statement of undisputed material facts") submitted in connection with the renewed motion for summary judgment. (Dkt. 44-2). As explained in the Court's Decision and Order dated March 20, 2025, the Court treats Defendant's facts admitted for purposes of the instant motion when supported by admissible evidence in the record as Plaintiff did not contest any of Defendant's facts. (Dkt. 65 at 2).

joint request in part, permitting Defendant to file a renewed motion to dismiss the APA claim, to submit five pages of intra-agency email communications for in-camera review with a new supplemental declaration, and to submit further briefing on whether Exemption 7(E) was properly applied to Defendant's FOIA response.  (Dkt. 79).  Defendant submitted the material for in-camera review, filed the supplemental information regarding Exemption 7(E) as a second-renewed motion for partial summary judgment (Dkt. 82), and filed its renewed motion to dismiss the APA claim for lack of subject matter jurisdiction (Dkt. 86). Plaintiff responded to both motions (Dkt. 85; Dkt. 88),[3] and Defendant filed a reply in support of the motion to dismiss (Dkt. 89).[4]

## DISCUSSION

### I.    Legal Standards

#### A. Motion to Dismiss

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the

---

[3]    Plaintiff's opposition to Defendant's second-renewed motion for summary judgment on the FOIA claim does not specifically address Defendant's new submissions but broadly asserts that the supplemental documents provided by Defendant continue to be impermissibly vague and boilerplate justifications for the redactions made pursuant to Exemption 7(E).  (*See* Dkt. 85).  For the reasons explained in further detail below, the Court disagrees.

[4]    Plaintiff thereafter filed an unauthorized sur-reply in opposition to the motion to dismiss (Dkt. 90), which the Court will not consider.  Plaintiff did not seek permission to file the sur-reply and this District's Local Rules are clear that "[a]bsent permission of the Judge hearing the motion, sur-reply papers are not permitted."  Loc. R. Civ. P. 7(a)(6).

action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms, S.á.r.l*, 790 F.3d 411, 416-17 (2d Cir. 2015) (citation modified). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "When considering a motion to dismiss for lack of subject matter jurisdiction . . . a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings," *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002), but it "may not rely on conclusory or hearsay statements contained in . . . affidavits." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

**B.  Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials

of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

## II.    Motion to Dismiss the APA Claim

Defendant contends that Plaintiff's APA claim is now moot because Plaintiff submitted a new application to the NEXUS program in April 2023, which Defendant denied in March 2025. (Dkt. 86-17 at 19-21). Plaintiff does not deny that he submitted a new NEXUS application in April 2023 or that it was denied. (Dkt. 88 at 1). But Plaintiff argues that the denial of his subsequent application does not render his APA claim regarding the 2022 revocation moot as the Court may still find the revocation to be arbitrary and capricious. (*Id.* at 4). The Court agrees that the APA claim is not moot.

Article III, § 2 of the United States Constitution limits this Court's subject matter jurisdiction to matters presenting an actual case or controversy. *See Blackwelder v. Safnauer*, 866 F.2d 548, 550 (2d Cir. 1989) ("Mootness is a jurisdictional matter relating to the Article III requirement that federal courts hear only 'cases' or 'controversies.'" (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975))). If the issues presented by the case "are no longer 'live' or the parties 'lack a legally cognizable interest in the outcome,'" the case is moot, thereby depriving the court of jurisdiction to hear it. *Id.* at 551 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)), *as revised* (Feb. 9, 2016). A defendant's "burden of demonstrating mootness is a heavy one." *Int'l Refugee Assistance Project, Inc. v. U.S. Citizenship & Immigr. Servs.*, 551 F. Supp. 3d 136, 152 (S.D.N.Y. 2021) (quoting *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979)).

Defendant has not established that Plaintiff's APA claim is moot. Plaintiff alleges that the revocation of his NEXUS membership was "arbitrary and capricious" and taken as a "retaliatory measure" against him. (Dkt. 9 at ¶ 79). He seeks an Order restoring his NEXUS membership. (Dkt. 9). Defendant's subsequent denial of Plaintiff's 2023 application does not eliminate Plaintiff's stake in the outcome of this claim as the relief he seeks may still be available.

Defendant principally relies on *Dine Citizens Against Ruining our Env't v. Klein*, 747 F. Supp. 2d 1234 (D. Colo. 2010) in support of its motion. (Dkt. 86-17 at 18-19). In

that case, the plaintiffs alleged that a government agency's decision to renew a mining permit in 2004 violated the APA and National Environmental Policy Act and sought declaratory and injunctive relief. *Dine Citizens Against Ruining our Env't*, 747 F. Supp at 1241-43. In holding that the plaintiffs' claim was moot, the district court observed that "[s]ince Plaintiffs' filing of this complaint . . . the 2004 Permit Renewal has been superseded by a statutorily required 2009 Permit Renewal." *Id.* at 1246. Therefore, "[a]n injunction limiting mining activities pursuant to the 2004 Permit Renewal would be meaningless" in light of the 2009 permit renewal. *Id.* 1246-47.

Unlike *Dine Citizens Against Ruining our Env't*, Defendant's decision to deny Plaintiff's 2023 NEXUS application does not render review of the 2022 revocation meaningless. The Court may still find that the 2022 decision to revoke Plaintiff's NEXUS membership was unlawful and direct Plaintiff's reinstatement to the program, regardless of the denial of the 2023 application. Indeed, Defendant states that in denying Plaintiff's 2023 application, it primarily considered the same information that formed the basis for the 2022 revocation. (Dkt. 86-17 at 11; Dkt. 86-1 at ¶ 20).[5]

Defendant cites no caselaw directly supporting its contention that a subsequent agency decision denying the relief sought by a plaintiff on an APA challenge renders that claim moot. Its reliance on *Morrison v. Noem*, No. 1:24-CV-01765 (TNM), 2025 WL 2651247 (D.D.C. Sept. 16, 2025) is misplaced. In *Morrison*, the U.S. Department of

---

[5] Defendant states that it considered Plaintiff's same border encounters that served as the basis to revoke his NEXUS membership in 2022 in addition to two other border encounters in 2023 previously not considered. (Dkt. 86-17 at 11-13).

Homeland Security ("DHS") revoked the plaintiff's Global Entry status.[6] *Id.* at *1. While the plaintiff's claim was pending in federal court, DHS *reinstated* the plaintiff's Global Entry status and as he "already received the relief that his Complaint requested," the district court held that the case was moot. *Id.* at *2-4. That is not the case here because Plaintiff has not yet received the relief requested in the amended complaint. Accordingly, Defendant's motion to dismiss the APA claim as moot is denied.

### III.    <u>Motion for Summary Judgment on the FOIA Claim</u>

The Court grants Defendant's second-renewed motion for summary judgment related to the FOIA response material redacted or withheld pursuant to Exemption 5 and Exemption 7(E). For the reasons explained below, Defendant has now met its burden of demonstrating that the redactions made pursuant to those exemptions were proper.

### A. Exemption 5

In the Decision and Order entered on March 20, 2025, the Court held that the five pages of intra-agency emails redacted pursuant to Exemption 5 fell within the scope of that exemption—i.e. the redacted material was "predecisional and deliberative"—but that Defendant did not show the disclosure of that information "would harm an interest protected by this exemption" as required by the FOIA Improvement Act. (Dkt. 65 at 33-35). The Court therefore denied summary judgment as to the redactions and withholdings made pursuant to Exemption 5. (*Id.* at 35).

---

[6]    Global Entry is an expedited border processing program similar to NEXUS. *See Morrison v. Noem*, No. 1:24-CV-01765 (TNM), 2025 WL 2651247, at *1 (D.D.C. Sept. 16, 2025) ("The Global Entry program allows pre-approved, low risk travelers to pass more quickly through airport processing lines.").

Exemption 5 permits an agency to withhold information responsive to a FOIA demand if the records are "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). As explained in the Court's Decisions and Orders entered on May 10, 2024 (Dkt. 37), and March 20, 2025 (Dkt. 65), the FOIA Improvement Act requires an agency to release even information that falls within a FOIA exemption if it cannot show that it "reasonably foresees that disclosure would harm an interest protected by an exemption" or that "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). Under this requirement, Defendant must explain how disclosure of the intra-agency emails would harm the agency's deliberative process. "[B]oilerplate and generic assertions that release of any deliberative material would necessarily chill internal discussions" will not do. *See Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 370 (D.C. Cir. 2021). Based on its review of the in-camera material and other supplemental papers, the Court is now satisfied that Defendant has met its burden of demonstrating reasonably foreseeable harm.

Defendant's supplemental declaration from U.S. Customs and Border Protection FOIA Division Branch Chief Patrick Howard, identifies two harms caused by further disclosure of the intra-agency emails: (1) "a less rigorous vetting process;" and (2) "public confusion." (Dkt. 93 at ¶¶ 11-12).[7]

---

[7]    Defendant's supplemental declaration from U.S. Customs and Border Protection FOIA Division Branch Chief Patrick Howard provides that "after subsequent agency review," Defendant voluntarily released additional portions of the five pages of intra-agency emails to Plaintiff on August 22, 2025. (Dkt. 93 at ¶ 7).

According to the supplemental declaration, disclosure of the intra-agency emails "would harm future discussions by discouraging CBP employees from openly sharing their opinions and recommendations." (*Id*. at ¶ 11). The declaration states such disclosure would cause the employees to "withhold valuable insights or temper their evaluations, ultimately undermining the quality of the deliberations," which would "undermine the reliability of the [NEXUS application] vetting process. . . ." (*Id.*). Other courts have identified the deliberative process privilege embodied in Exemption 5 to protect "'debate and candid consideration of alternatives within an agency,' thus improving agency decisionmaking." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (quoting *Jordan v. U.S. Dep't of Just.*, 591 F.2d 753, 772 (D.C. Cir. 1978), *overruled in part on other grounds by Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051 (D.C. Cir. 1981)). Indeed, "experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process." *Id.* (quoting *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975)).

The supplemental declaration adequately explains that potential disclosure of intra-agency communications evaluating an individual's eligibility for NEXUS membership would discourage CBP employees from openly sharing their opinions and recommendations, particularly where there may be disagreement about an applicant's eligibility for NEXUS membership. (Dkt. 93 at ¶ 11). The supplemental declaration contends that such restriction on the candid exchange of ideas may "undermine the reliability of the [NEXUS] vetting process," (*id.*), and the "chilling of candid advice is

- 10 -

exactly what the [deliberative process] privilege seeks to prevent," *Machado Amadis*, 971 F.3d at 371. The Court is accordingly satisfied that release of the intra-agency emails would cause foreseeable harm. The Court therefore grants Defendant's summary judgment motion on the FOIA claim as to the five pages of intra-agency emails submitted for in-camera review.[8]

**B. Exemption 7(E)**

The Court has already twice denied Defendant's request for summary judgment on the material redacted pursuant to Exemption 7(E). (*See* Dkt. 37 at 21-22; Dkt. 65 at 42-44). But upon review of Defendant's supplemental submissions, the Court grants summary judgment in favor of Defendant on the Exemption 7(E) redactions.

As discussed in the previous Decisions and Orders, Exemption 7(E) permits government agencies to withhold information that would disclose "techniques and procedures for law enforcement investigations or prosecutions" or "guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).[9] The Court of Appeals for the

---

[8]  As the Court concludes that Defendant has established a foreseeable harm based on the chilling effect public disclosure may have on internal deliberations, the Court need not consider whether Defendant met is burden that "public confusion" is another foreseeable harm. *Cf. Juul Labs, Inc. v. Food & Drug Admin.*, 731 F. Supp. 3d 46, 74 (D.D.C. 2024) (noting that one reasonably foreseeable harm "suffices" for material withheld under Exemption 5).

[9]  There is also a threshold requirement for all Exemption 7 redactions that the withheld material must be "compiled for law enforcement materials." 5 U.S.C. § 552(b)(7); *see Bishop v. U.S. Dep't of Homeland Sec.*, 45 F. Supp. 3d 380, 386 (S.D.N.Y. 2014) ("A threshold requirement for the application of Exemption 7(E) is that the documents must be 'compiled for law enforcement purposes.'"). The Court previously

Second Circuit has explained that "the phrase 'techniques and procedures,' . . . refers to how law enforcement officials go about investigating a crime" while "'guidelines' . . . generally refers in the context of Exemption 7(E) to resource allocation." *Allard K. Lowenstein Int'l Hum. Rts. Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 682 (2d Cir. 2010). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

Defendant submitted a separate supplemental declaration from Patrick Howard in support of its renewed summary judgment motion related to the Exemption 7(E) redactions. (Dkt. 82-1). This supplemental declaration included a new *Vaughn* index. (Dkt. 82-2). The new material provided by Defendant indicates that the redactions made pursuant to Exemption 7(E) related to three general categories: (1) law enforcement database queries; (2) evaluation of Plaintiff's NEXUS application; and (3) border inspection techniques. (Dkt. 82-1 at ¶¶ 9-13).

### 1.  Databases and Queries

Defendant properly redacted material related to queries and databases. The *Vaughn* index identifies six groups of documents that were redacted in part because the documents include information about queries from non-public databases and the results of those queries. (*See* Dkt. 82-2 at 1-5, 9-12). The supplemental declaration states that the redacted material includes "the names of specific law enforcement databases used, the methods used

---

held that Defendant met this requirement in its Decision and Order entered on March 20, 2025. (Dkt. 65 at 39-40).

for conducting queries of the databases, and the results of such queries" and that release of this non-public information, including agency "codes and identifiers," could cause a bad actor to access or otherwise compromise Defendant's internal systems. (Dkt. 82-1 at ¶ 13).

Other courts have concluded that queries of law enforcement databases constitute "techniques and procedures" for the purposes of Exemption 7(E). *See, e.g.*, *Bishop v. U.S. Dep't of Homeland Sec.*, 45 F. Supp. 3d 380, 388 (S.D.N.Y. 2014) (producing query results from law enforcement databases "would plainly 'disclose . . . procedures for law enforcement investigations' within the meaning of Exemption 7(E)"); *McRae v. U.S. Dep't of Just.*, 869 F. Supp. 2d 151, 169 (D.D.C. 2012) ("[R]edacted codes, case numbers, and other computer information pertaining to . . . databases maintained by [law enforcement] authorities are techniques and procedures for law enforcement investigation[.]"). The Court reaches the same conclusion.

It is clear from Defendant's submissions that the methods used to query CBP and other law enforcement databases are investigative techniques used to evaluate an individual's application or ongoing membership in the NEXUS program. Defendant provided an adequate description of the redacted documents for the Court to conclude that Exemption 7(E) was properly applied to the query and database information. For example, the *Vaughn* index identifies bates pages 000001-000008 as "Trusted Traveler Program Record[s]" which consists of Plaintiff's biographical information submitted in connection with his NEXUS application. (Dkt. 82-2 at 1). Defendant explains that these documents contain "CBP Officers' review of Plaintiff's information and their processing and analyzing of data received from law enforcement databases and sources, both within and outside

CBP." (*Id.*). The *Vaughn* index then provides that Exemption 7(E) was applied to the records that "contain internal CBP codes, queries conducted in law enforcement databases and the results of those queries, and non-public law enforcement database identification numbers." (*Id.*). With that description, the Court is able to determine that the query and database information was properly redacted pursuant to Exemption 7(E). Defendant also provided sufficient information for the Court to reach the same conclusion regarding the database query content redacted from the Risk Assessment Worksheet documents at bates pages 000009-000018 and Analytical Framework for Intelligence records at bates pages 000033-000057. (*See id.* at 1-4, 9-11).

Furthermore, Defendant demonstrated that release of this information related to database queries would cause reasonably foreseeable harm as required by the FOIA Improvement Act. The *Vaughn* index explains that the release of the redacted database query information would pose security risks as the disclosure of non-public database codes would enable a "violator to more easily navigate" CBP's internal systems and extract information therein. (*Id.* at 9-11). The Court agrees that disclosure of database information could increase the risk of a cyber-attack and a hacker's ability to navigate CBP's internal systems. Other courts have reached the same conclusion. *See, e.g.*, *Long v. Immigr. & Customs Enf't*, 464 F. Supp. 3d 409, 422 (D.D.C. 2020) ("[B]y enabling a hacker to move faster through the databases to view, modify, or delete data, disclosure of the requested information could incentivize future attacks and make those attacks more harmful. This increased risk of harm is well within the scope of FOIA's Exemption 7(E)").

- 14 -

## 2. NEXUS Application Evaluation

Defendant also properly redacted information regarding the techniques and procedures used to evaluate Plaintiff's NEXUS membership. The supplemental declaration explains that Plaintiff's Trusted Traveler Program application material and CBP's Risk Assessment Worksheets at bates pages 000001-000018 were redacted to avoid disclosure of "CBP's techniques and procedures in assessing . . . whether [Plaintiff] should be admitted to, or should continue to remain, in the NEXUS Program[.]" (Dkt. 82-1 at ¶ 9). This information includes the CBP officer's "comments, analysis, and determinations" (*id.*) as well as the factors "considered by CBP for membership in the NEXUS program that are not publicly known" (Dkt. 82-2 at 2). The Court agrees that redacting CBP's internal processes for evaluating NEXUS membership is proper pursuant to Exemption 7(E).[10]

Defendant also identified reasonably foreseeable harm that would flow from the release of this information. According to the supplemental declaration, the disclosure of this information would permit other applicants to "avoid the rigorous evaluation demanded by CBP's [Trusted Traveler Program]" and jeopardize the integrity of the low-risk traveler programs and thus Defendant's ability to "enforce border security laws." (Dkt. 82-1 at

---

[10]     Although Defendant did not make the argument, the Court notes that this material may also be properly redacted pursuant to Exemption 5. *See Ibrahim v. U.S. Dep't of State*, 311 F. Supp. 3d 134, 142-43 (D.D.C. 2018) (holding that "USCIS official's notes and credibility assessments, explaining why the official believed Mr. Ibrahim was not eligible for refugee resettlement" contained in the plaintiff's Refugee Application Assessment were properly redacted pursuant to Exemption 5, in addition to the techniques and procedures also contained therein pursuant to Exemption 7(E))

¶ 9).   The Court agrees that disclosing Defendant's method for reviewing NEXUS applications and its evaluative procedures may encourage other applicants to attempt to sidestep those methods, thereby reducing the integrity of the program.  *See Knight First Amend. Inst. at Columbia Univ. v. U.S. Citizenship & Immigr. Servs.*, 30 F.4th 318, 330 (2d Cir. 2022) ("Releasing [guidance for adjudicating U.S. visas] would allow an individual with actual terrorist ties to better tailor his or her application to avoid detection."). Therefore, the Court holds that the redacted comments, analysis, and determinations made by CBP officers in evaluating Plaintiff's NEXUS membership were properly redacted pursuant to Exemption 7(E).

### 3.  Border Inspection Techniques

Defendant also properly redacted information related to its techniques and procedures used to inspect international travelers at the border.  The *Vaughn* index identifies seven groups of documents spanning bates pages 000028-000199 that were redacted in part because they contain inspection techniques used for screening international travelers.  (Dkt. 82-2 at 6-11).   Similar to the database queries, other courts have held that CBP's "investigative techniques" for border inspections may be redacted pursuant to Exemption 7(E).  *See Bishop*, 45 F. Supp. 3d at 390 (release of "investigative techniques used by CBP, including examination and inspection procedures" would "disclose CBP's law enforcement procedures and techniques" and therefore was properly redacted); *Knight First Amend. Inst. at Columbia Univ. v. Dep't of Homeland Sec.*, No. 17-CV-0548 (TSC), 2026 WL 1223986, at *14 (D.D.C. May 5, 2026) (redaction of CBP's border inspection techniques proper under Exemption 7(E)).

Defendant's submissions adequately described redactions made to Plaintiff's border crossing inspection records. The *Vaughn* index explains that the documents at bates pages 000028-000032 contain narratives related to Plaintiff's border inspections, including screening techniques used by CBP officers and the factors considered by the inspecting officers on how to proceed with an inspection. (Dkt. 82-2 at 6-8). Defendant's submissions also detail how inspection techniques and procedures were redacted from the produced incident logs provided at bates pages 000033-000199. (Dkt. 82-1 at ¶ 11; Dkt. 82-2 at 9-12). These documents are comprised of "Land Baggage Secondary Inspection" logs, primary and secondary inspection logs related to Plaintiff's border crossings on various dates, and summaries of the primary and secondary inspections. (Dkt. 82-1 at ¶ 11; Dkt. 82-2 at 9-12). The Court agrees that techniques used for inspecting international travelers contained in those incident logs are properly redacted.

The same foreseeable risk of harm related to disclosure of Defendant's database query procedures and NEXUS membership evaluation also applies to Defendant's border inspection techniques. As the supplemental declaration explains, disclosure of these techniques contained in bates pages 000028-000032 may permit individuals to "circumvent or violate border security laws [by altering] patterns of behavior . . . and adopt new methods or countermeasures to undermine the inspection process and CBP's law enforcement efforts." (Dkt. 82-1 at ¶ 10). The *Vaughn* index provides a similar rationale for the inspection techniques contained in bates pages 000033-000199. (Dkt. 82-2 at 9-11). Accordingly, the Court holds that Defendant has now met its burden regarding the

- 17 -

Exemption 7(E) redactions and grants the second-renewed motion for summary judgment as to those withholdings.

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons, Defendant's renewed motion to dismiss the APA claim as moot (Dkt. 86) is denied, and Defendant's second-renewed motion for summary judgment as to the FOIA claim (Dkt. 82) is granted. Defendant has now met its burden of demonstrating that all redactions and withholdings made in its FOIA response were proper and Plaintiff's FOIA claim is accordingly dismissed.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: July 13, 2026
        Rochester, New York